1  Bruce H. Jackson, State Bar No. 98118
   bruce.jackson@bakermckenzie.com
2  Colin H. Murray, State Bar No. 159142
   colin.murray@bakermckenzie.com
3  Keith L. Wurster, State Bar No. 198918
   keith.wurster@bakermckenzie.com
4  **BAKER & McKENZIE LLP**
   Two Embarcadero Center, 11th Floor
5  San Francisco, CA 94111
   Telephone: +1 415 576 3000
6  Facsimile: +1 415 576 3099

7  Nicholas O. Kennedy, State Bar No. 280504
   nicholas.kennedy@bakermckenzie.com
8  **BAKER & McKENZIE LLP**
   2300 Trammell Crow Center
9  2001 Ross Avenue
   Dallas, TX 75201
10 Telephone: +1 214 978 3000
   Facsimile: +1 214 978 3099

11
   Attorneys for Petitioner
12 VITALY IVANOVICH SMAGIN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VITALY IVANOVICH SMAGIN, <br><br> Petitioner, <br><br> v. <br><br> ASHOT YEGIAZARYAN, a.k.a. ASHOT EGIAZARYAN <br><br> Respondent. | Case No. 2:14-CV-09764 <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD AND IN SUPPORT OF *EX PARTE* APPLICATION FOR RIGHT TO ATTACH ORDER AND TEMPORARY PROTECTIVE ORDER** |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

6725408-v4\SFODMS

Case No. 2:14-CV-09764
MEMO IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT AND TRO

In this action, Petitioner Vitaly Ivanovich Smagin ("**Smagin**") seeks to confirm a final international arbitration award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards; June 10, 1958 ("**New York Convention**"). *See* 21 U.S.T. 2517, 330 U.N.T.S. 38, available at 1970 WL 104417; 9 U.S.C. §§ 201 et seq. Because the award meets the criteria for confirmation under the New York Convention, the Petition for confirmation should be granted and judgment should be entered in favor of Smagin pursuant to the terms of the foreign arbitration award.

Smagin also has applied for an *ex parte* right to attach order and temporary protective order pursuant to Federal Rules of Civil Procedure 64 and 65 and California Code of Civil Procedure §§ 483.010, 484.020, 482.210, and 486.010 to prevent the dissipation, concealment, or transfer to a foreign jurisdiction of assets necessary to satisfy the terms of the arbitration award and expected judgment by this Court. There is a danger that the property sought to be attached would be concealed or otherwise made unavailable to levy if issuance of the order were delayed until the matter could be heard on notice. Much of the basis of the London Award rests upon Yegiazaryan's past acts to conceal and misappropriate assets from Smagin through the use of entities in foreign jurisdictions, including Cyprus and the British Virgin Islands. Moreover, Yegiazaryan is currently an international fugitive on Interpol's wanted list as a result of his arrest *in abstentia* in Russia for financial crimes, including those against Smagin forming the basis of the London Award.

Because Smagin's application, supporting affidavits, and arguments and other evidence satisfies the statutory requirements, Smagin respectfully submits that a right to attach order and temporary protective order should issue on an *ex parte* basis to avoid the irreparable harm that would arise if it is not granted.

I.   **FACTUAL BACKGROUND**

Smagin received an award from the London Court of International Arbitration in *Vitaly Ivanovich Smagin, Claimant, v. Kalken Holdings Limited and Ashot Yegiazaryan, Respondents*, LCIA Case No. 101721, on November 11, 2014 (the

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

1

Case No. _____
MEMO IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT AND TRO

"**London Award**"), pursuant to an arbitration conducted in London during the period of September 23-27, 2013, January 14, 2014 and April 15, 2014.  Pet. ¶ 8; Declaration of Bruce H. Jackson ("**Jackson Decl.**") ¶ 5 & Ex. 1; *see also* Declaration of Vitaly Smagin ("**Smagin Decl.**") ¶¶ 3, 21-22 & Ex. A.  The London Award resulted from a business venture between Smagin and respondent Ashot Yegiazaryan ("**Yegiazaryan**") related to the development and operation of a retail center project in Moscow, Russia.  Pet. ¶ 9; Jackson Decl. ¶ 4; Smagin Decl. ¶¶ 14-22, .

The London Award found Yegiazaryan and the Cypriot entity he controls[1] jointly and severally liable and ordered them to pay to Smagin a total sum of $84,290,064.20, broken down as follows: (a) $72,243,000 as compensation for losses suffered by Smagin; (b) pre-award interest on the $72,243,000 at an annual simple rate of 7 per cent, in the amount of $6,899,701.32; (c) post-award interest on the $72,243,000 in damages and $6,899,701.32 in pre-award interest at an annual quarterly compounded rate of 8%; (d) legal fees of $4,959,416.88[2]; and arbitration costs of $187,946[3].  Pet. ¶ 13; Jackson Decl. ¶¶ 9-10 & Ex. A (London Award) at 49-50; Smagin Decl. ¶ 22.

The agreements forming the basis of the London Award contained arbitration clauses.  Pet. ¶ 9; Jackson Decl. ¶ 6; Ex. A(London Award) ¶¶ 76; 80-81; Smagin Decl. ¶ 21; *see also* Jackson Decl. Ex. 2 (agreements with arbitration clauses).

---

[1] Kalken Holdings Limited, a company existing under the laws of Cyprus, registered under Company No. 167709 and with its address at 15 Agiou Pavlou Street, LEORA House, Agios Andreas 1105, Nicosia, Cyprus and controlled by Yegiazaryan was also a respondent in the arbitration giving rise to the London Award.  Pet. ¶ 8 & n.1; Smagin Decl. ¶ 16.  Although the London Award was issued jointly and severally as to both respondents, confirmation here is sought only as to Yegiazaryan.  Pet. ¶ 8 & n. 1.

[2] The London Award enumerated the awarded fees as 2,658,151.9. GBP, 2,958,750 RUB and $672,354.08.  Pet. ¶ 13; Jackson Decl. ¶ 9-10 & Ex. A (London Award) at 49-50.  The above figure represents conversion to U.S. dollars at the exchange rates on the date of the London Award.  *See Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 161-62 (D. D.C. 2013) (concluding that arbitral award denominated in foreign currency should be converted to U.S. dollars using the exchange rate in effect on date of award); *see also* Jackson Decl. ¶¶ 10-11 & Ex. 3.

[3] The London Award provided for GBP 118,321,.75 in arbitration costs.  The above figure represents conversion to U.S. dollars at the exchange rate on the date of the London Award.  *Id.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

2

Case No. _____
MEMO IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT AND TPO

Yegiazaryan was represented by counsel throughout the proceedings giving rise to the London Award. Pet. ¶¶ 10-12; Jackson Decl. ¶¶ 7-9 & Ex. A; Smagin Decl. ¶ 21. Moreover, the parties extensively litigated the issues of arbitrability and jurisdiction in front of the arbitration panel, including through the use of expert witnesses and a live hearing on jurisdiction. *See, e.g.,* Pet. ¶ 10; Jackson Decl. ¶ 10 & Ex. A ¶¶ 10-16, 155-176; Smagin Decl. ¶ 21. After hearing and considering all of the arguments and evidence, the arbitration panel confirmed that the claims raised were within the scope of the arbitration agreements, that the arbitration panel had the power to hear the dispute, and that it had jurisdiction over Yegiazaryan. Pet. ¶ 10; Jackson Decl. ¶ 7 & Ex. A ¶¶ 155-176; Smagin Decl. ¶ 21.

The London Award was issued in London, England on November 11, 2014 and pursuant to English law immediately became final and enforceable. Pet. ¶ 14; Jackson Decl. ¶ 12; *see also* London Court of International Arbitration Rule 26.9[4] ("All awards shall be final and binding on the parties. By agreeing to arbitration under these Rules, the parties undertake to carry out any award immediately and without any delay… the parties also waive irrevocably their right to any form of appeal, review, ore recourse to any state court or other judicial authority, insofar as such waiver may be validly made"). On December 9, 2014, Yegiazaryan filed an action in an English court seeking to set aside the London Award on the same jurisdictional grounds raised, thoroughly contested, and rejected, at the arbitration. Jackson Decl. ¶ 13. On December 12, 2014, the English court granted Yegiazaryan an *ex parte* stay, the effect

---

[4] A true and correct copy of this Rule is attached to the Jackson Declaration as Exhibit 4. The Court may consider this as evidence of foreign law under Federal Rule of Civil Procedure 44.1. *See* Fed. R. Civ. P. 44.1 ("[i]n determining foreign law, the court may consider any relevant material or source … whether or not admissible under the Federal Rules of Evidence"); *Reebok Int'l v. McLaughlin*, 49 F.3d 1387, 1392 n.4 (9th Cir. 1995). Alternatively, the Court may take judicial notice of this rule under Federal Rule of Evidence 201 as a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2); *see Ram Head Outfitters, Ltd. v. Mecham*, No. CV 09-1382-PHX-MHM, 2011 U.S. Dist. LEXIS 40903, at *27 n.1 (D. Ariz. April 14, 2011) (taking judicial notice of exchange rate under Federal Rule of Evidence 201); *see also* Request for Judicial Notice, filed concurrently herewith.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

3

Case No. _____
MEMO IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT AND TPO

of which was to prohibit all efforts by Smagin to enforce the London Award. *Id.* On December 22, 2014, this order was modified by the English court to allow immediate foreign enforcement actions after Smagin had an opportunity to respond to the application and explained to the English court (at an *ex parte* hearing) the nature and urgency of the matter along with the prejudice and irreparable harm he would face if prevented from enforcing the London Award immediately. *Id.*

Despite his clear obligation to do so, Yegiazaryan has neither paid the London Award nor indicated that payment is forthcoming. Smagin Decl. ¶¶ 4, 23, 33. To the contrary, Yegiazaryan ignored a letter sent to his attorneys requesting payment and his attorneys have avoided questions regarding payment. Smagin Decl. ¶ 33. Accordingly, Smagin has been forced to initiate this action to obtain an enforceable California judgment to levy upon Yegiazaryan's assets and collect the amounts due under the London Award.

Because Yegiazaryan currently resides in California, it is likely that he has assets within the state subject to levy, including for example bank accounts. *See* Smagin Decl. ¶ 28. In addition, Yegiazaryan is expected to have received a payment on December 5, 2014 (or to receive one in the near future) as a result of a $250 million award he received in an unrelated arbitration against fellow Russian businessman Suleyman Kerimov (the "**Kerimov Award**"). Smagin Decl. ¶¶ 24-25. Because Yegiazaryan currently lives in California and the Kerimov Award must be paid in U.S. dollars, it is likely that the funds that have been or will be paid to Yegiazaryan in satisfaction of the Kerimov award will be or have been paid to or through California. Smagin Decl. ¶ 26.

Past experience with Yegiazaryan suggests that he is very likely to transfer the proceeds of the Kerimov Award, along with other assets, out of California and into a foreign jurisdiction shortly after receipt of funds from Kerimov in order to avoid his payment obligations to Smagin under the London Award. Smagin Decl. ¶ 27, 29, 36-37. Yegiazaryan has a long history of moving assets to foreign jurisdictions to avoid

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

4

Case No. _____
MEMO IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT AND TPO

satisfying his obligations to Smagin and others. Smagin Decl. ¶¶ 29-37. Unsurprisingly, much of the basis of the London Award rests upon Yegiazaryan's past acts to conceal and misappropriate assets from Smagin through the use of entities in foreign jurisdictions, including Cyprus and the British Virgin Islands. Smagin Decl. ¶¶ 14-22, 30-31. Moreover, the arbitration panel made several findings demonstrating Yegiazaryan's lack of trustworthiness, including its rejection of his argument that the operative agreement was forged. Smagin Decl. ¶ 34.

The financial crimes against Smagin giving rise to the London Award are not alone—Yegiazaryan has been the subject of investigations and charges for numerous other financial crimes in Russia. Smagin Decl. ¶ 33 & Exs. C, D. In fact, Yegiazaryan is currently an international fugitive on Interpol's wanted list as a result of his arrest *in abstentia* in Russia for financial crimes, including those against Smagin forming the basis of the London Award. Smagin Decl. ¶ 13. Yegiazaryan fled Russia and did not even appear in London to testify at the arbitration, demonstrating that he is willing to remove himself (or his assets) from a jurisdiction in order to avoid his responsibilities. Smagin Decl. ¶ 35.

As a result of Yegiazaryan's past dealings—including using foreign entities to conceal assets from Smagin himself—Smagin has filed the application for a right to attach order and temporary protective order to protect himself from the irreparable harm of Yegiazaryan further concealing his assets. *See* Smagin Decl. ¶¶ 36-37. And because Yegiazaryan is likely to act fast to conceal or transfer these assets if he receives notice, that application is made *ex parte*. *Id.*

## II. ARGUMENT AND AUTHORITIES

### A. The London Award should be confirmed under the New York Convention.

The London Award should be confirmed because it and the Petition satisfy all requirements of the New York Convention. As a threshold matter, the New York Convention governs the confirmation of the London Award because that award was

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

5

Case No. _____
MEMO IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT AND TPO

issued in the United Kingdom, which—like the United States— is a signatory to the New York Convention. *See* 9 U.S.C. §§ 201-02; *Hall Steel Co. v. Metalloyd Ltd.*, 492 F. Supp. 2d 715, 717 (E.D. Mich. 2007) (noting that both the United States and United Kingdom are signatories to the New York Convention); *see also Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1121 (9th Cir. 2002) (New York Convention governs confirmation if nation where award was entered is party to New York Convention). The arbitration agreement and London Award fall under the New York Convention because they arise out of legal and contractual, relationships that are commercial, and are not entirely between citizens of the United States. Furthermore, the relationships from which the dispute arose involved property located abroad, envisaged performance or enforcement abroad and had other reasonable relationships with one or more foreign states. *See* 9 U.S.C. § 202.

The New York Convention manifests "'a general pro-enforcement bias'" for foreign arbitration awards. *Ministry of Def. of Islamic Republic v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992) (quoting *Parson & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 973 (2d Cir. 1974)). As a result, "[t]he district court's … review of a foreign arbitration award is quite circumscribed" and "'the court *shall* confirm the award unless it finds one of the [seven] grounds for refusal … specified in the [New York] Convention.'" *Gould,* 969 F.2d at 770 (second quotation quoting 9 U.S.C. § 207) (emphasis in original); *see also* 9 U.S.C. § 201, note (providing limited grounds to deny confirmation).

The Petition and supporting evidence establish that the London Award is final and enforceable, and that the arbitration panel had jurisdiction over the parties and the dispute. Notwithstanding Yegiazaryan's challenge in England, the London Award is still final and binding. *See Fertilizer Corp. of India v. IDI Mgmt., Inc.*, 517 F. Supp. 948, 956-58 (S.D. Ohio 1981) ("The award will be considered 'binding' for the purposes of the Convention if no further recourse may be had to another arbitral tribunal (that is, an appeals tribunal). The fact that recourse may be had to a court of

6

Case No. _____
MEMO IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT AND TPO

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

law does not prevent the award from being 'binding.'").[5]  Accordingly, the London Award should be confirmed.  *See, e.g.*, *Cont'l Transfert Tech., Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 157 (D. D.C. 2013) (recognizing previous confirmation of UK arbitration award under New York Convention while modifying calculation of interest).

**B. The Court should issue an ex parte right to attach order and temporary protective order to prevent irreparable harm from the concealment or transfer of assets.**

Federal Rule of Civil Procedure 64 allows this Court to apply California state attachment procedures to preserve assets for a future judgment.  *See* Fed. R. Civ. P. 64 ("every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment").  This remains true for the enforcement of foreign arbitral awards because "[a]attachment and provisional remedies for enforcement of a foreign arbitral award … are compatible with the [New York] Convention."  *Glencore*, 284 F.3d at 1127.  The Court may also issue a temporary protective (or restraining) order to protect the status quo and prevent the transfer or concealment of assets by Yegiazaryan.  *See* Fed. R. Civ. P. 65; Cal. Code Civ. P. §§486.010; *see also, e.g., Zhenua Logistics (H.K.) Co. v. Metamining, Inc.*, No. C-13-2658, 2013 U.S. Dist. LEXIS 87089, at *12 (N.D. Cal. June 30, 2013) (granting right to attach order and TRO to prevent transfer of assets that may be used to satisfy an eventual judgment).

**1. The statutory requirements for a writ of attachment and temporary protective order have been satisfied.**

California law allows the Court to issue a Right to Attach Order on an unsecured claim for a fixed or readily ascertainable amount of money based on a contract that, for an individual, arises in the course of that individual's business.  Cal.

---

[5] Even if the Court exercises its discretion to delay final confirmation until determination of the pending challenge in the English court, it need not (and should not) forgo granting the preliminary relief sought in the Application to maintain the status quo pending final confirmation.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

7

Case No. _____
MEMO IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT AND TPO

Code Civ. P. § 483.010.  In addition, the application for attachment must state the amount to be secured, state that the attachment is not sought for an improper purpose and state that the claim has not been discharged or stayed by bankruptcy.  *Id.* § 484.020.  The application must be supported by a declaration demonstrating that the plaintiff "on the facts presented would be entitled to a judgment on the claim", that the property is not exempt, and, for *ex parte* relief, that the plaintiff "would suffer great or irreparable injury … if issuance of the order were delayed until the matter could be heard on notice."  *Id.* § 485.210.

Smagin has made this showing.  Concurrently herewith, Smagin has submitted an Application for Right to Attach Order and Temporary Protective Order using this Court's form (the "**Application**") that satisfies these requirements.  Smagin has also submitted concurrently herewith the Smagin Declaration and Jackson Declaration, which attaches the London Award, providing further support.

These documents establish that the claim is for a fixed amount of $84,290,064.20.  Application ¶ 8; Pet. ¶ 13; Jackson Decl. ¶ 9; Smagin Decl. ¶ 3.  They state that the request is based on a contract—or more particularly a foreign arbitration award based on a contract that arose out of Yegiazaryan's business activities.  Application ¶¶ 3, 6; Smagin Decl. ¶ 5.  They further confirm that the claim is not subject to discharge or stayed by bankruptcy and that the attachment is sought only to protect Smagin's interest in payment of the London Award and not for an improper purpose.  Application ¶¶ 4-5; Smagin Decl. ¶¶ 5, 7.

The evidence and other materials on file also establish that Smagin is entitled to a judgment on his claim—namely a judgment enforcing the London Award.  The Smagin Declaration describes the proceedings and issuance of the London Award, along with the facts giving rise to that award.  *See generally,* Smagin Decl.  The Jackson Declaration attaches the London Award and, along with the thorough reasoning in the London Award itself, demonstrates that it is final and enforceable.  *See generally*, Jackson Decl. Ex. A.  As discussed above, there is a strong

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

8

Case No. _____
MEMO IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT AND TPO

presumption in favor of enforcing foreign arbitral awards under the New York Convention and none of the limited grounds to deny confirmation are present. *See* Sec. II.A, *supra*. Even if the Court exercises its jurisdiction to defer final judgment pending resolution of the English challenge, Smagin is still likely to prevail on his claims and preliminary relief is justified. This is especially true in light of the fact that the English action raises the same jurisdictional arguments that were already rejected by the arbitration panel and the English court modified its original *ex parte* stay to allow preliminary relief in this action after recognizing the irreparable harm and prejudice that Smagin would suffer from delayed enforcement. *See, e.g., Sony Ericsson Mobile Communs. AB v. Delta Elecs. Pub. Co.*, No. C-09-1326, 2009 U.S. Dist. LEXIS 57656, at *5 (N.D. Cal. June 19, 2009) (issuing writ of attachment covering accounts receivable to enforce foreign arbitration award).

### 2. Ex *parte* relief is necessary to prevent great or irreparable injury.

Smagin is entitled to an *ex parte* grant of the relief sought in the Application to avoid "great or irreparable injury". Cal. Code Civ. P. § 485.010(a); *see also* Fed. R. Civ. P. 65(b)(1). Specifically, based on the Application and supporting materials "it may be inferred that there is a danger that the property sought to be attached would be concealed … or otherwise made unavailable to levy if issuance of the order were delayed until the matter could be heard on notice." Cal. Code Civ. P. § 485.010(b)(1).

Yegiazaryan has demonstrated a willingness and ability to conceal assets using a variety of methods and foreign jurisdictions in order to avoid his obligations. It is likely he will do the same with the proceeds of the Kerimov Award, and at a minimum he undoubtedly has the ability to do so. *C.f. Datatech Enters LLC v. FF Magnat Ltd.*, No. C 12-04500, 2012 U.S. Dist. LEXIS 144120, at *5 (N.D. Cal. Oct. 4, 2012) (denying motion to reconsider order granting asset freeze: "the reason for the money disappearing abroad is less important than the fact it will move beyond this Court's reach").

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

9

Case No. _____
MEMO IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT AND TPO

Yegiazaryan has also fled Russia (where he is wanted for financial crimes) and has avoided requests for payment of the amounts due to Smagin. He has previously deceived Smagin and transferred and concealed his assets. And he has initiated proceedings in the English courts based on an already rejected argument and obtained an unjustified (and now modified) *ex parte* injunction in those proceedings. In modifying the injunction, the English court recognized the harm that Smagin would suffer if his foreign enforcement rights continued to be delayed. As a result, the requested relief must be issued without notice in order to constitute any relief at all. If Yegiazaryan receives notice, his past dealings and international connections would allow him to quickly conceal and transfer any assets out of this jurisdiction, thus preventing the recovery of the amount due to Smagin under the London Award. Accordingly, the requested relief should be issued *ex parte*. *See, e.g, Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (defendant's "own prior conduct establishes a likelihood that in the absence of an asset freeze and accounting, plaintiffs will not be able to recover the diverted funds and will thus be irreparably harmed"); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003) (district court did not err in finding a risk of concealment of assets in light of defendants' "history of fraudulent intra-family transfers.").

### III. CONCLUSION

For the foregoing reasons, Smagin respectfully requests that the Court enter an order confirming the London Award and enter judgment in accordance with its terms, grant the *ex parte* application for a right to attach order and temporary protective order, and award Smagin his costs and reasonable attorneys fees along with all other relief the Court deems just and proper.

Dated: December 22, 2014        BAKER & McKENZIE LLP

By: /s/ Bruce H. Jackson
Bruce H. Jackson
Attorneys for Plaintiff

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

10

Case No. _____
MEMO IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT AND TPO