Bruce H. Jackson, State Bar No. 98118
  bruce.jackson@bakermckenzie.com
Colin H. Murray, State Bar No. 159142
  colin.murray@bakermckenzie.com
Keith L. Wurster, State Bar No. 198918)
  keith.wurster@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111
Telephone: +1 415 576 3000
Facsimile: +1 415 576 3099

Nicholas O. Kennedy, State Bar No. 280504
  nicholas.kennedy@bakermckenzie.com
**BAKER & McKENZIE LLP**
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Telephone: +1 214 978 3000
Facsimile: +1 214 978 3099

Attorneys for Petitioner
VITALY IVANOVICH SMAGIN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VITALY IVANOVICH SMAGIN, <br><br> Petitioner, <br><br> v. <br><br> ASHOT YEGIAZARYAN, a.k.a. ASHOT EGIAZARYAN <br><br> Respondent. | **Case No.** 2:14-CV-09764 <br><br> **DECLARATION OF VITALY IVANOVICH SMAGIN IN SUPPORT OF *EX PARTE* APPLICATION FOR WRIT OF ATTACHMENT AND TPO** |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel 415 576 3000

Case No. 2:14-CV-09764
DECLARATION OF VITALY SMAGIN IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT AND TPO

I, Vitaly Smagin, declare as follows:

**INTRODUCTION**

1.    I have personal knowledge of the facts set forth in this declaration, the facts are true and correct, and if called as a witness I could and would testify to them. I am over eighteen years of age and have never been convicted of a felony.

2.    I reside at Krasnoproletarskaya st., h. 9, 127006, Moscow, Russia.  I make this declaration in support of an application for an *ex parte* writ of attachment and temporary protective order attaching and preventing the disposition of certain assets of Respondent Ashot Yegiazaryan ("**Yegiazaryan**"), a Russian national domiciled at 655 Endrino Place, Beverly Hills, California 90201, United States of America.  (the "**Application**")

3.    The purpose of the Application is to protect my rights under an arbitration award issued by the London Court of International Arbitration in Case No. 101721 on November 11, 2014 (the "**London Award**").  A true and correct copy of the London Award is attached hereto as **Exhibit A**.   As set forth more fully below, the London Award ordered Yegiazaryan and an entity he controls to pay me the total sum of  $84,290,064.20 (converted as necessary to US Dollars at the applicable conversion rates as of the date of the award) as compensation for, *inter alia*, his breaches of certain business agreements.

4.    Despite his obligation to do so, Yegiazaryan has not paid any of the amount due to me pursuant to the London Award, and has ignored my requests for payment.  Accordingly, I have filed the above-captioned action to confirm the London Award and the accompanying Application to ensure the availability of funds for payment of the London Award once confirmed.

5.    The London Award represents a claim for money based upon a contract for a fixed or readily ascertainable amount.  Specifically, the London Award is for the total amount of $84,290,064.20. *See* Ex. A at 49-50.  The London Award is not secured by an interest in real property, and arose out of the business conduct of

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

Case No. _____
DECLARATION OF VITALY SMAGIN IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT AND TPO

1  Yegiazaryan.  Enforcement of the London Award has not been stayed by a bankruptcy

2  proceeding, nor has the claim been discharged in bankruptcy.

3       6.      I have already prevailed on the claims underlying the London Award, as

4  set forth more fully in the award itself and findings it sets forth on behalf of the

5  arbitration tribunal impaneled by the London Court of International Arbitration.  It is

6  my understanding that the London Award is subject to confirmation and enforcement

7  by this Court subject to the New York Convention, and in conjunction with this

8  application I am filing a petition to confirm and enforce that award under the terms of

9  the New York Convention.

10      7.      The Application is not sought for a purpose other than recovery of the

11 sums payable to me pursuant to the London Award.  Instead, the Application is sought

12 only to secure the payment of the London Award by Yegiazaryan and prevent his

13 dissipation, concealment, or transfer to a foreign jurisdiction of assets that may be

14 used to satisfy the London Award.

15      8.      Through the Application, I am seeking to attach non-exempt assets of

16 Yegiazaryan sufficient to satisfy the London Award.  This includes any non-exempt

17 property of Yegiazaryan subject to levy, including specifically the funds from an

18 anticipated payment to be received by Yegiazaryan on or around December 5, 2014 in

19 satisfaction of an award made to Yegiazaryan in an unrelated arbitration proceeding.  I

20 am informed and believe that the funds from the payment of this award are not

21 exempt.

22      9.      As set forth more fully below, Yegiazaryan's past actions and ability to

23 move funds to and through many different foreign jurisdictions raise a substantial risk

24 and likelihood that Yegiazaryan will dissipate, conceal, or transfer to a foreign

25 jurisdiction the funds necessary to satisfy the London Award if he is not restrained

26 from doing so.

27      10.     Time is of the essence in granting the relief requested in the Application.

28 If Yegiazaryan receives notice of this Application or there is a delay in issuance of the

2

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel 415 576 3000

Case No.
DECLARATION OF VITALY SMAGIN IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT

relief requested by this Application to allow for regular notice, it would cause great or irreparable injury to me by affording Yegiazaryan an opportunity to dissipate, conceal, or transfer to a foreign jurisdiction his assets. This would substantially decrease the likelihood that I will recover the amounts due to me under the London Award.

## PERSONAL BACKGROUND

11.    I am a Russian citizen and businessman. I graduated from the Moscow State Medical Stomatological University named after N. Semashko, in 1993, and received my BA from the state and municipal management department of the Moscow State University named after M. Lomonosov in 2007. My business activities date back to the early 1990s, when I started my career in various real estate projects in and around Moscow.

12.    Yegiazaryan is a well-known member of the Russian State Duma, Russia's lower legislative house, and a member of Russia's Liberal Democratic Party. He was also a businessman with various commercial interests in Russia, including for example the "Prof-Media" group of companies (which own and operate a number of television stations and other media assets in Russia), banks called "Unicombank" and "Moscow National Bank" and a business center in central Moscow called "Daev Plaza". Yegiazaryan also has business interests in a variety of foreign jurisdictions, including Cyprus and the British Virgin Islands. Yegiazaryan currently resides in Beverly Hills, California.

13.    I understand that Yegiazaryan has been placed on the Interpol wanted list on the basis of his arrest in absentia in Russia for various financial crimes, including the illegitimate actions carried out against me forming the basis of the London Award.

## THE BASIS OF THE LONDON AWARD

14.  Since 2000, I have developed a multifunction retail park in Moscow named Europark. After my original partners withdrew in 2002, Yegiazaryan became involved in the Europark project, along with his partner Mr. Garkusha. As a result, I entered into an agreement on August 29, 2003 with four companies

3

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

Case No. _____
DECLARATION OF VITALY SMAGIN IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT

controlled by Yegiazaryan, represented by Garkusha (the "**2003 Agreement**") to regulate the division of profits from the Europark project.

15.     In the course of his involvement in a project related to the renovation of a historic Moscow hotel (the "**Moscow Hotel Project**"), Yegiazaryan approached me in September 2006 to ask whether I would allow Europark to be used as security for a loan to be obtained from Deutsche Bank (the "**Deutsche Bank Loan**").  Eventually, I agreed and the Deutsche Bank Loan was made to an entity in Cyprus of which Yegiazaryan was the beneficial owner.

16.     In conjunction with this loan, I entered into a shareholders agreement on December 26, 2006 with Garkusha and Kalken Holdings Limited ("**Kalken**"), a Cypriot entity controlled by Yegiazaryan which was also found liable to me in the London Award. (the "**Shareholders Agreement**")  The Shareholders Agreement was structured to mirror the ownership structure of the Europark project and contained several layers of entities owned or controlled by Yegiazaryan organized in Cyprus and the British Virgin Islands.  The intention of the Shareholders Agreement was to safeguard and protect my interest in Europark in the event that the Deutsche Loan was not repaid on time and Deutsche Bank sought to enforce its security (i.e. Europark).

17.     Additionally, I entered into an escrow agreement with Kalken on November 13, 2007 through which Kalken placed it shares in the holding company set up under the Shareholders Agreement into escrow (the "**Escrow Agreement**").  This was intended to protect me in the event that Yegiazaryan defaulted on the Deutsche Bank Loan by allowing me to obtain and sell these shares to pay off the Deutsche Bank Loan and avoid losing my interest in Europark.

18.     Yegiazaryan did not personally sign the 2003 Agreement, the Shareholders Agreement or the Escrow Agreement because his membership in the Russian Duma prevented him from entering commercial contracts in his own name.  Instead, all three of these Agreements were signed by Kalken, the company controlled by Yegiazaryan which was found jointly and severally liable along with Yegiazaryan

4

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

Case No. _____
DECLARATION OF VITALY SMAGIN IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT

to me in the London Award.  It was the understanding of all parties involved that Yegiazaryan would be bound by the terms of the 2003 Agreement, the Shareholders' Agreement and the Escrow Agreement notwithstanding his lack of personal signature. Moreover, Yegiazaryan assured me on numerous occasions that my interest in Europark would be protected.

19.    On March 3, 2008, Yegiazaryan personally signed a partnership agreement with me to allay my concerns that the Deutsche Bank Loan would not be repaid, provide me additional protections, and extend the time period for which Europark could be used as security for the Deutsche Bank Loan (the "**2008 Agreement**").

20.    Between 2009 and 2010, Yegiazaryan and Kalken (which he controlled) took several steps to deprive me of my interest in Europark.  These included restructuring of the various holding companies, transfer of assets, and changes to corporate bylaws without my consent.  The effect of these changes deprived me of the protections of the 2008 Agreement along with the other agreements and represented a breach of those agreements.

21.    Yegiazaryan was represented by counsel during the arbitration proceedings giving rise to the London Award.  At those proceedings, he vigorously contested the jurisdiction of the arbitration tribunal, the arbitrability of the dispute, and the merits of the claims. I argued that the 2008 Agreement gave the tribunal jurisdiction over Yegiazaryan's breaches not only of the 2008 Agreement, but also over the alleged breaches of the Shareholders Agreement and the Escrow Agreement (see London Award ¶ 156, Ex. A at 29). The arbitration tribunal held that it did have jurisdiction over Yegiazaryan on the basis of the 2008 Agreement (*see* London Award ¶¶ 155 - 185, Ex. A at 29-37).

22.    On November 11, 2014 the arbitration tribunal entered the London Award in my favor based on the events detailed above.  The London Award entitled me to a payment of $84,290,064.20(*See* Ex. A at 49-50).  The arbitration tribunal's

5

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel. 415 576 3000

Case No.
DECLARATION OF VITALY SMAGIN IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT

reasons are set out at paragraphs 142 to 233 of the London Award. *See* Ex. A at 25-49. These findings included:

    a. the purpose of the Shareholders' Agreement, the Escrow Agreement and the 2008 Agreement was to protect the ownership structure of Europark and my interest in it;

    b. to fail to preserve the ownership structure would render any protection to me illusory (like a "house of cards") (*See* London Award ¶ 191, Ex. A at 38);

    c. "fundamentally [rearranging]" the shareholding structure in 2010 meant that my shares meant to protect my ownership structure in Europark "became worthless" (*See* London Award ¶ 194, Ex. A at 39);

    d. Yegiazaryan took active steps to change the ownership structure and transfer assets which caused me to lose the protections I had bargained for and prevented me from obtaining and selling the shares from escrow to recoup my losses; (London Award ¶¶ 194-95, Ex. A at 39)

    e. Accordingly, Yegiazaryan breached under the 2008 Agreement and those breaches caused me damages.

23.     Yegiazaryan has made no payments to me pursuant to the London Award, nor has he expressed any willingness or intent to do so.

**ASSETS OF YEGIAZARYAN TO SATISFY LONDON AWARD**

24.     It is my understanding that Yegiazaryan is entitled to a payment of roughly $250 million pursuant to an award in his favor from an unrelated arbitration against Russian businessman Suleyman Kerimov ("**Kerimov**") and an entity Kerimov controls. (the **Kerimov Award**") The Kerimov Award is related to the Moscow Hotel Project, which was financed at least in part with the Deutsche Bank Loan for which I provided security in the form of Europark and which formed the basis of the London Award.

25.     I understand that the Kerimov Award is likely to be paid in two tranches,

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel 415 576 3000

with the first payment to be made to Yegiazaryan on or around December 5, 2014 and the second payment to follow in the near future. I do not know the date when the second payment will be made.

26. I believe that it is highly likely that the payments made in satisfaction of the Kerimov Award will be or have been made to Yegiazaryan either to or through a bank within California, particularly in light of Yegiazaryan's current residence in California and the fact that the Kerimov Award must be paid in U.S. dollars.

27. I also believe that it is highly likely that Yegiazaryan will transfer the funds from the payment in satisfaction of the Kerimov Award out of the United States and to a foreign jurisdiction shortly after receipt in order to prevent my enforcement of the London Award.

28. Yegiazaryan currently resides in California, at 655 Endrino Place, Beverly Hills, California 90201, United States of America. *See* London Award ¶ 3, Ex. A at 1. Given that Yegiazaryan is living in the US (and has been for some time), it is extremely likely that he has set up a bank account and has assets in California, in light of the difficulties of living in a country or state without a local bank account. I also understand that Yegiazaryan is registered for tax purposes in the United States. Again, this suggests that Yegiazaryan has an income stream in the United States and has access to a US bank account.

**LIKELIHOOD OF HARM**

29. I believe that it is highly likely that Yegiazaryan will dissipate, conceal, or transfer to a foreign jurisdiction any funds paid to him pursuant to the Kerimov Award in order to avoid his obligation to pay me the sums due under the London Award. This belief is supported by my past dealings with Yegiazaryan, the facts and circumstances underlying the London Award, and the facts set forth in this declaration.

30. As detailed in the London Award and described briefly in Paragraphs 14-23 above, Yegiazaryan has a history of taking steps to move assets out of my reach to

7

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel 415 576 3000

Case No.
DECLARATION OF VITALY SMAGIN IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT

1  various offshore companies in foreign jurisdictions in order to avoid his contractual

2  and other obligations.  These previous actions deceived me and caused harm to me.

3      31.    Yegiazaryan also has assets and controls entities in numerous foreign

4  jurisdictions, including by way of example Cyprus (in the form of Kalken and other

5  companies), the British Virgin Islands, and possibly Russia.

6      32.    My attorneys sent a letter to Yegiazaryan's attorneys on November 26,

7  2014 demanding payment of the amount due to me under the London

8  Award.  Yegiazaryan has not made payment nor responded to the letter.  Moreover,

9  although Yegiazaryan's attorneys acknowledged receipt of the letter, they did not

10  indicate that payment would be forthcoming despite more than one attempt over the

11  phone by one of my attorneys to clarify this point.  A true and correct copy of the

12  letter sent by my attorneys to Yegiazaryan's attorneys at Gibson Dunn LLP (with my

13  bank account number redacted) is attached hereto as **Exhibit B**.

14      33.    Yegiazaryan has been the subject of numerous investigations in which his

15  honesty has called into question.  Among the evidence of these investigations are (1) a

16  media article dated September 12, 2012 which contains references to Yegiazaryan

17  having previously "stole 75,330 shares" from the owner of the Daev Plaza business

18  center, and (2) a media article dated November 10, 2012, which describes the

19  numerous criminal proceedings to which Yegiazaryan has been subject in Russia.  A

20  true and correct copy of the September 12, 2012 article is attached hereto as **Exhibit**

21  **C**.  A true and correct copy of the November 10, 2012 article is attached hereto as

22  **Exhibit D**.

23      34.    The arbitration tribunal that entered the London Award also made several

24  findings that demonstrate Yegiazaryan's lack of credibility.  For example, the

25  arbitration tribunal rejected Yegiazaryan's assertions that his signature on the 2008

26  Agreement was forged.  *See* London Award ¶¶ 163-64, Ex. A at 31.

27      35.    Yegiazaryan fled to the United States following the instigation of

28  proceedings against him and did not appear to testify during the London arbitration

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

Case No.
DECLARATION OF VITALY SMAGIN IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT

despite the significant amount of money at stake.  Yegiazaryan has thus demonstrated that he is willing to remove himself from a jurisdiction in order to avoid his responsibilities, which suggests that he is similarly likely to dissipate, conceal, or remove from the jurisdiction his funds in order to avoid his responsibilities.

36.     In light of the substantial risk the funds to be paid to Yegiazaryan pursuant to the Kerimov Award will be dissipated, concealed, or transferred to a foreign jurisdiction, there is an urgent need for a preventative measures to protect my interest in receiving payment pursuant to the London Award and prevent the irreparable harm of concealment of the funds from which a payment in satisfaction of that award can be made.  Without judicial intervention, enforcement of the London Award will become prohibitively difficult and it is likely that the payment to which I am entitled under the terms of the London Award will never be made.

37.     Time is of the essence in granting the relief sought in the Application.  If Yegiazaryan receives notice of this proceeding or there is a delay to provide notice, it is likely that any funds available for satisfaction of the London Award will be dissipated, concealed, or transferred to a foreign jurisdiction.  Relief without notice to Yegiazaryan is essential to provide me any real relief because Yegiazaryan has repeatedly demonstrated his ability and willingness to conceal, transfer, and otherwise put assets out of my reach, including through the use of foreign entities and bank accounts.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed by me at _____  _____, _Moscow_____ on December 12, 2014.

_____
Vitaly Ivanovich Smagin

9

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

Case No.
DECLARATION OF VITALY SMAGIN IN SUPPORT OF EX PARTE APPL FOR WRIT OF ATTACHMENT

Брюс Х. Джексон, член адвокатуры штата № 98118
  bruce.jackson@bakermckenzie.com
Колин Х. Мюррей, член адвокатуры штата № 159142
  colin.murray@bakermckenzie.com
Кит Л. Вурстер, член адвокатуры штата № 198918)
  keith.wurster@bakermckenzie.com
**Бейкер и Макензи ЛЛП**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111
Телефон:   +1 415 576 3000
Факс: +1 415 576 3099

Николас О. Кеннеди, член адвокатуры штата № 280504
  nicholas.kennedy@bakermckenzie.com
**Бейкер и Макензи ЛЛП**
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX  75201
Телефон:   +1 214 978 3000
Факс: +1 214 978 3099

Адвокаты Подателя Ходатайства,
ВИТАЛИЯ ИВАНОВИЧА СМАГИНА

ОКРУЖНОЙ СУД США

ЦЕНТРАЛЬНЫЙ ОКРУГ ШТАТА КАЛИФОРНИЯ

| | |
|---|---|
| ВИТАЛИИ ИВАНОВИЧ СМАГИН,<br><br>Податель Ходатайства<br><br>против<br><br>АШОТА ЕГИАЗАРЯНА,<br><br>Ответчика. | Дело № _____<br><br>**ЗАЯВЛЕНИЕ ВИТАЛИЯ ИВАНОВИЧА СМАГИНА В ПОДТВЕРЖДЕНИЕ ОДНОСТОРОННЕГО ХОДАТАЙСТВА О НАЛОЖЕНИИ АРЕСТА И ВЫНЕСЕНИИ РАСПОРЯЖЕНИЯ СУДА О ВРЕМЕННОМ ОГРАНИЧЕНИИ В ПРАВЕ РАСПОРЯЖЕНИЯ В ОТНОШЕНИИ ИМУЩЕСТВА** |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel  415 576 3000

Дело №_____
ЗАЯВЛЕНИЕ ВИТАЛИЯ СМАГИНА В ПОДТВЕРЖДЕНИЕ ОДНОСТОРОННЕГО ХОДАТАЙСТВА О НАЛОЖЕНИИ АРЕСТА И ВЫНЕСЕНИИ РАСПОРЯЖЕНИЯ О ВРЕМЕННОМ ЗАПРЕТЕ РАСПОРЯЖЕНИЯ В ОТНОШЕНИИ ИМУЩЕСТВА
SFODMS-#6725081-v1

1    Я, Виталий Смагин, заявляю следующее.

2    **ВВЕДЕНИЕ**

3        1.    Мне лично известны факты, приведенные в настоящем заявлении;

4    эти факты являются верными и соответствующими действительности, и я в

5    случае привлечения меня в качестве свидетеля могу и буду использовать их в

6    своих показаниях. Я являюсь совершеннолетним и никогда не был осужден за

7    уголовные преступления.

8        2.    Я проживаю по следующему адресу: Россия, 127006 Москва, ул.

9    Краснопролетарская, д. 9.  Я делаю настоящее заявление в подтверждение

10   ходатайства *ex parte* (одностороннего) о наложении ареста и вынесении

11   распоряжения о временном ограничении в праве распоряжения в отношении

12   некоторого имущества Ответчика Ашота Егиазаряна (далее "**Егиазарян**"),

13   гражданина России, проживающего по адресу 655 Эндрино Плейс, Беверли

14   Хиллс, Калифорния 90201, Соединенные Штаты Америки (655 Endrino Place,

15   Beverly Hills, California 90201, United States of America) (далее "**Ходатайство**").

16       3.    Целью Ходатайства является защита моих прав согласно

17   арбитражному решению, принятому 11 ноября 2014 года Лондонским

18   международным арбитражным судом по Делу № 101721 (далее "**Решение**

19   **Лондонского арбитражного суда**").  Верная и точная копия Решения

20   Лондонского арбитражного суда прилагается к настоящему заявлению в

21   качестве **Приложения А**.  Как более подробно указано ниже, в  Решении

22   Лондонского арбитражного суда вынесено распоряжение Егиазаряну и

23   подконтрольной ему организации уплатить мне сумму около $ 84.290.064,20 (по

24   мере необходимости конвертируемые в доллары США по курсу перевода на

25   день вынесения решения) в качестве компенсации за, в частности, нарушение

26   им некоторых коммерческих договоров.

27       4.    Несмотря на свое обязательство сделать это, Егиазарян не уплатил

28   мне суммы, причитающейся мне по Решению Лондонского арбитражного суда,

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel 415 576 3000                                                                              Дело №
        ЗАЯВЛЕНИЕ ВИТАЛИЯ СМАГИНА В ПОДТВЕРЖДЕНИЕ ОДНОСТОРОННЕГО ХОДАТАЙСТВА О НАЛОЖЕНИИ АРЕСТА И
              ВЫНЕСЕНИИ РАСПОРЯЖЕНИЯ О ВРЕМЕННОМ ЗАПРЕТЕ РАСПОРЯЖЕНИЯ В ОТНОШЕНИИ ИМУЩЕСТВА
SFODMS #6725081-v1

1  проигнорировав мое требование уплатить ее. В связи с этим я делаю настоящее

2  заявление в подтверждение Решения Лондонского арбитражного суда и подаю

3  Ходатайство, чтобы обеспечить наличие средств для уплаты суммы,

4  присужденной по Решению Лондонского арбитражного суда, когда оно будет

5  подтверждено.

6      5.    Решение Лондонского арбитражного суда представляет собой

7  денежное требование, основанное на договоре на фиксированную или не

8  требующую иных подтверждений денежную сумму.  Более конкретно, в

9  Решении Лондонского арбитражного суда фигурировала сумма в $

10 84.290.064,20.  *См.* Приложение A на стр. 49-50.  Решение Лондонского

11 арбитражного суда не обеспечивается долей в недвижимом имуществе, оно

12 возникло из коммерческой деятельности Егиазаряна.  Исполнительное

13 производство по Решению Лондонского арбитражного суда не было

14 приостановлено в процессе банкротства, равно как и исковое требование не

15 было снято на в связи с банкротством.

16     6.    Я уже выиграл иски, лежащие в основе Решения Лондонского

17 арбитражного суда, как это более полно описано в самом решении и выводах

18 суда, назначенного Лондонским международным арбитражным судом.

19 Насколько я понимаю, Решение Лондонского арбитражного суда должно быть

20 подтверждено и исполнено настоящим Судом согласно Нью-Йоркской

21 конвенции и, в соответствии с этим заявлением, я подаю петицию, чтобы

22 подтвердить и исполнить принятое решение, в соответствии с условиями Нью-

23 Йоркской конвенции.

24     7.    Ходатайство подано ни с какой иной целью, кроме взыскания сумм,

25 подлежащих уплате мне по Решению Лондонского арбитражного суда.

26 Ходатайство подано только с целью обеспечения выплаты мне Егиазаряном

27 суммы, фигурирующей в Решении Лондонского арбитражного суда, и для

28 предотвращения рассеивания, сокрытия или перевода в иностранную

2

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel 415 576 3000

Дело №.
ЗАЯВЛЕНИЕ ВИТАЛИЯ СМАГИНА В ПОДТВЕРЖДЕНИЕ ОДНОСТОРОННЕГО ХОДАТАЙСТВА О НАЛОЖЕНИИ АРЕСТА И ВЫНЕСЕНИИ РАСПОРЯЖЕНИЯ О ВРЕМЕННОМ ЗАПРЕТЕ РАСПОРЯЖЕНИЯ В ОТНОШЕНИИ ИМУЩЕСТВА
SFODMS-#6725081-v1

1  юрисдикцию имущества, которое может быть использовано для выполнения
2  Решения Лондонского арбитражного суда.

3       8.    Посредством Ходатайства я стремлюсь к тому, чтобы был наложен
4  арест на подлежащее аресту имущество Егиазаряна, достаточное для
5  выполнения Решения Лондонского арбитражного суда.  Сюда входит
6  подлежащее аресту имущество Егиазаряна, в частности средства, которые
7  Егиазарян должен получить примерно 5 декабря 2014 года в порядке
8  выполнения решения суда, вынесенного в пользу Егиазаряна на другом, не
9  связанным с этим арбитражном процессе.  Меня информировали, и я считаю,
10  что средства от выполнения этого арбитражного решения подлежат аресту.

11       9.    Как более подробно указано ниже, действия Егиазаряна в прошлом
12  и его способность перемещать средства за границу в различные юрисдикции
13  дают основания для возникновения значительного риска и возможности того,
14  что Егиазарян рассеет, скроет или переведет в иностранную юрисдикцию
15  средства, которые необходимы для выполнения Решения Лондонского
16  арбитражного суда, если не ограничить его возможности сделать это.

17       10.    Время является существенным фактором в предоставлении мер
18  судебной защиты, запрошенных в Ходатайстве.  Если Егиазарян получит
19  уведомление о настоящем Ходатайстве или произойдет задержка в
20  предоставлении мер судебной защиты, запрошенных в Ходатайстве, для
21  соблюдения установленных сроков уведомления, это нанесет мне большой
22  непоправимый вред и позволит Егиазаряну рассеять, скрыть или перевести за
23  границу в другие юрисдикции свое имущество.  Это существенно сократит
24  возможность получения мною сумм, причитающихся мне по Решению
25  Лондонского арбитражного суда.

26  **ЛИЧНЫЕ СВЕДЕНИЯ**

27       11.    Я являюсь гражданином России и предпринимателем. Я окончил
28  Московский государственный медицинский стоматологический университет им.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

1  Семашко в 1993 году и получил степень бакалавра на факультете

2  государственного и муниципального управления Московского государственного

3  университета им. М. Ломоносова в 2007 году.  Я начал свою коммерческую

4  деятельность еще в начале 1990-х годов, когда я начал свою карьеру, участвуя в

5  различных проектах, связанных с недвижимостью в городе Москве и ее

6  окрестностях.

7        12.    Егиазарян является известным депутатом Государственной Думы

8  России, нижней законодательной палаты, и членом Российской либерально-

9  демократической партии. Он был также предпринимателем и имел различные

10  коммерческие интересы в России, например в группе компаний "Проф-Медиа"

11  (которая владеет и управляет рядом телевизионных станций и других СМИ в

12  России), банках "Юникомбанк" и "Московский Национальный Банк" и в бизнес

13  центре в центральной части Москвы, носящем название "Даев плаза".  Егиазарян

14  имеет также коммерческие интересы в ряде иностранных юрисдикций, включая

15  Кипр и Британские Виргинские Острова.  В настоящее время Егиазарян

16  проживает в Беверли Хилс в Калифорнии.

17        13.    Насколько я знаю, Егиазарян числится в списках разыскиваемых

18  Интерполом на основании вынесения постановления о его заочном аресте в

19  России за различные финансовые преступления, включая противозаконные

20  действия, направленные против меня и явившиеся основанием для Решения

21  Лондонского арбитражного суда.

22  **ОСНОВАНИЯ ДЛЯ ПРИНЯТИЯ РЕШЕНИЯ ЛОНДОНСКОГО**

23  **АРБИТРАЖНОГО СУДА**

24        14.    Начиная с 2000 года я создавал мультифункциональный торговый

25  комплекс в Москве, носящий наименование "Европарк". После выхода из

26  проекта моих первоначальных партнеров в 2002 году в проекте "Европарк" стал

27  участвовать Егиазарян вместе со своим партнером г-ном Гаркушей. В

28  результате я заключил 29 августа 2003 года с четырьмя подконтрольными

4

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

*Дело № ____*
ЗАЯВЛЕНИЕ ВИТАЛИЯ СМАГИНА В ПОДТВЕРЖДЕНИЕ ОДНОСТОРОННЕГО ХОДАТАЙСТВА О НАЛОЖЕНИИ АРЕСТА И
ВЫНЕСЕНИИ РАСПОРЯЖЕНИЯ О ВРЕМЕННОМ ЗАПРЕТЕ РАСПОРЯЖЕНИЯ В ОТНОШЕНИИ ИМУЩЕСТВА
SFODMS#6725081-v1

Егиазаряну в лице Гаркуши компаниями соглашение, регулирующее разделение прибыли от проекта "Европарк" (далее "**Соглашение 2003 года**").

15.    В ходе своего участия в проекте, связанном с реконструкцией исторической гостиницы "Москва" (далее "**Проект "Гостиница "Москва"**"), Егиазарян обратился ко мне в сентябре 2006 года с вопросом, разрешу ли я использовать Европарк для обеспечения займа, предоставляемого банком "Дойче банк" (далее "**Кредит "Дойче банка"**"). В конечном счете я дал свое согласие, и Кредит "Дойче банка" был предоставлен компании на Кипре, бенефициарным владельцем которой являлся Егиазарян.

16.    В связи с этим кредитом я заключил 26 декабря 2006 года соглашение акционеров с Гаркушей и кипрской компанией "Калкен Холдингс Лимитед" (далее "**Калкен**"), контролируемой Егиазаряном, которая также была названа моим должником в Решении Лондонского арбитражного суда (далее "**Соглашение акционеров**"). Структура Соглашения акционеров зеркально отражала структуру Европарка и имела несколько организаций различных уровней, принадлежащих или подконтрольных Егиазаряну и учрежденных на Кипре и Британских Виргинских Островах. Соглашение акционеров было направлено на защиту и обеспечение безопасности моих интересов в Европарке в случае непогашения в срок Кредита "Дойче банка", и Дойче банк возбудил исполнительное производство по обращению взыскания на это обеспечение (т.е. "Европарк").

17.    Кроме того, я заключил 13 ноября 2007 года договор эскроу с Калкен, через который Калкен разместила свои акции холдинговой компании, учрежденной по Соглашению акционеров, и предоставленные в условный депозит (далее "**Договор эскроу**"). Это было сделано для того, чтобы защитить меня в случае невыполнения Егиазаряном своих обязательств по Кредиту "Дойче банка": это позволяло мне получить и продать эти акции для погашения Кредита "Дойче банка" и избежать утраты моей доли участия в Европарке.

5

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel 415 576 3000
                                                                Дело №
ЗАЯВЛЕНИЕ ВИТАЛИЯ СМАГИНА В ПОДТВЕРЖДЕНИЕ ОДНОСТОРОННЕГО ХОДАТАЙСТВА О НАЛОЖЕНИЙ АРЕСТА И
ВЫНЕСЕНИИ РАСПОРЯЖЕНИЯ О ВРЕМЕННОМ ЗАПРЕТЕ РАСПОРЯЖЕНИЯ В ОТНОШЕНИИ ИМУЩЕСТВА
SFODMS-#6725081-v1

18.    Егиазарян лично не подписывал Соглашение 2003 года, Соглашение акционеров и Договор эскроу, потому что его членство в Государственной Думе не позволяло ему заключать коммерческие договоры от своего имени.    Вместо него все эти три договора были подписаны Калкен, подконтрольной Егиазаряну компанией, которая по Решению Лондонского арбитражного суда несла солидарную ответственность передо мной вместе с Егиазаряном.  Все участвующие в этом стороны придерживались мнения, что Егиазарян будет связан условиями Соглашения 2003 года, Соглашения акционеров и Договора эскроу несмотря на отсутствие его личной подписи в них. Кроме того, Егиазарян неоднократно заверял меня в том, что мои интересы в Европарке будут защищены.

19.    3 марта 2008 года Егиазарян лично подписал со мной партнерское соглашение, чтобы успокоить меня в отношении того, что Кредит "Дойче банка" может быть не погашен, предоставить мне дополнительную защиту и продлить срок, в течение которого можно было использовать Европарк в качестве обеспечения Кредита "Дойче банка" (далее **"Соглашение 2008 года"**).

20.    В период между 2009 и 2010 годами Егиазарян и Калкен (которую он контролировал) сделали несколько шагов для того, чтобы лишить меня моей доли участия в Европарке. Сюда входили реорганизация различных холдинговых компаний, перевод активов и внесение изменений в уставы компаний без моего согласия. Последствием этих изменений стало лишение меня защиты по Соглашению 2008 года и другим договорам и нарушение этих договоров.

21.    Во время судебного разбирательства, в результате которого было вынесено Решение Лондонского арбитражного суда, Егиазаряна представлял адвокат. В процессе судебного процесса он решительно оспаривал компетенцию арбитражного суда, подсудность спора и конкретные обстоятельства дела. Я аргументировал, что Соглашение 2008 года является источником судебной

6

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel. 415 576 3000

*Дело №*
ЗАЯВЛЕНИЕ ВИТАЛИЯ СМАГИНА В ПОДТВЕРЖДЕНИЕ ОДНОСТОРОННЕГО ХОДАТАЙСТВА О НАЛОЖЕНИИ АРЕСТА И
ВЫНЕСЕНИИ РАСПОРЯЖЕНИЯ О ВРЕМЕННОМ ЗАПРЕТЕ РАСПОРЯЖЕНИЯ В ОТНОШЕНИИ ИМУЩЕСТВА
SFODMS/#6725081-v1

1  юрисдикции над нарушениями Егиазаряна не только Соглашения 2008 года, но

2  и над предполагаемыми нарушениями им Соглашения акционеров и Договора

3  эскроу (*См.* Решение Лондонского арбитражного суда 156, Приложение А на

4  стр. 29). Арбитражный суд признал, что на основании Соглашения 2008 года

5  осуществлена юрисдикция над Егиазаряном (*См.* Решение Лондонского

6  арбитражного суда 155-185, Приложение А на стр. 29-37).

7      22.    11 ноября 2014 года было вынесено Решение Лондонского

8  арбитражного суда в мою пользу, основывающееся на вышеуказанных

9  событиях. Это Решение Лондонского арбитражного суда давало мне право на

10  получение $ 84.290.064,20(*См.* Приложение А на стр. 49-50).  Основания для

11  принятия этого арбитражного решения изложены в пунктах 142 - 233 Решения

12  Лондонского арбитражного суда.  *См.* Приложение А на стр. 25-49.  В число

13  установленных арбитражным судом фактов входили следующие:

14        a.  целью Соглашения акционеров, Договора эскроу и Соглашения 2008

15           года было сохранить структуру собственности в Европарке и

16           защитить мою долю участия в ней;

17        b.  если структура собственности не будет сохранена, это сделает

18           иллюзорной любую мою защиту (которая может рассыпаться как

19           "карточный домик") (*См.* Решение Лондонского арбитражного суда,

20           п. 191, Приложение А на стр. 38);

21        c.  "фундаментальная [реорганизация]" структуры акционерной

22           собственности в 2010 году означала, что мои акции,

23           предназначенные для защиты моей доли участия в Европарке,

24           "превратились в ничто" (*См.* Решение Лондонского арбитражного

25           суда, п. 194, Приложение А на стр. 39);

26        d.  Егиазарян принял активные меры для того, чтобы изменить

27           структуру собственности и перевести активы, что привело к тому,

28           что я утратил защиту, ради которой я заключал договоры, и не мог

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

*Дело №*
ЗАЯВЛЕНИЕ ВИТАЛИЯ СМАГИНА В ПОДТВЕРЖДЕНИЕ ОДНОСТОРОННЕГО ХОДАТАЙСТВА О НАЛОЖЕНИИ АРЕСТА И
ВЫНЕСЕНИИ РАСПОРЯЖЕНИЯ О ВРЕМЕННОМ ЗАПРЕТЕ РАСПОРЯЖЕНИЯ В ОТНОШЕНИИ ИМУЩЕСТВА
SFODMS-#6725081-v1

1  получить и продать акции, находящиеся на условном депозите, для

2  покрытия своих убытков; (Решение Лондонского арбитражного

3  суда, пп. 194-95, Приложение А на стр. 39);

4  e.  соответственно, Егиазарян нарушил Соглашение 2008 года и тем

5  самым причинил мне убытки.

6  23.  Егиазарян не произвел никаких выплат мне по Решению

7  Лондонского арбитражного суда и не выразил никакого желания или намерения

8  сделать это.

9  **АКТИВЫ ЕГИАЗАРЯНА, НЕОБХОДИМЫЕ ДЛЯ ВЫПОЛНЕНИЯ**

10  **РЕШЕНИЯ ЛОНДОНСКОГО АРБИТРАЖНОГО СУДА**

11  24.  Как я понимаю, Егиазарян имеет право на получение

12  приблизительно $250 миллионов долларов США по арбитражному решению в

13  его пользу в не связанном с данным арбитражном процессе против российского

14  бизнесмена Сулеймана Керимова (далее "**Керимов**") и подконтрольной

15  Керимову организации (далее "**Арбитражное решение по делу Керимова**").

16  Арбитражное решение по делу Керимова связано с Проектом гостиницы

17  "Москва", который финансировался, по крайней мере частично, посредством

18  Кредита "Дойче банка", под который я предоставил обеспечение в форме

19  Европарка и который стал основой Решения Лондонского арбитражного суда.

20  25.  Насколько я понимаю, указанная в Арбитражном решении по делу

21  Керимова сумма скорее всего будет выплачена двумя траншами, причем первая

22  выплата будет произведена Егиазаряну ориентировочно 5 декабря 2014 года, а

23  вторая выплата должна последовать в ближайшем будущем. Я не знаю дату, в

24  которую будет произведена вторая выплата.

25  26.  Я считаю весьма вероятным, что выплаты в порядке выполнения

26  Арбитражного решения по делу Керимова будут или были произведены

27  Егиазаряну в или через банк в штате Калифорния, в особенности потому, что

28  Егиазарян в настоящее время проживает в Калифорнии и указанная в

8

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel. 415 576 3000

Дело №
ЗАЯВЛЕНИЕ ВИТАЛИЯ СМАГИНА В ПОДТВЕРЖДЕНИЕ ОДНОСТОРОННЕГО ХОДАТАЙСТВА О НАЛОЖЕНИИ АРЕСТА И
ВЫНЕСЕНИИ РАСПОРЯЖЕНИЯ О ВРЕМЕННОМ ЗАПРЕТЕ РАСПОРЯЖЕНИЯ В ОТНОШЕНИИ ИМУЩЕСТВА
SFODMS-#6725081-v1

1  Арбитражном решении по делу Керимова сумма должна быть выплачена в

2  долларах США.

3      27.    Я считаю также весьма вероятным, что Егиазарян переведет

4  средства, полученные в порядке выполнения Арбитражного решения по делу

5  Керимова, из США в какое-нибудь иностранное государство вскоре после их

6  получения, чтобы воспрепятствовать мне в исполнительном производстве по

7  Решению Лондонского арбитражного суда.

8      28.    В настоящее время Егиазарян проживает в Калифорнии по адресу

9  655 Endrino Place, Beverly Hills, California 90201, United States of America. *См.*

10  Решение Лондонского арбитражного суда, п. 3, Приложение А на стр. 1.  С

11  учетом того, что Егиазарян проживает в США (уже некоторое время), весьма

12  возможно, что он открыл банковский счет и имеет активы в штате Калифорния,

13  поскольку трудно жить в стране или штате, не имея там банковского счета. Как

14  я понимаю, Егиазарян зарегистрирован также в налоговых органах США. И это

15  опять-таки предполагает, что Егиазаряну поступают доходы в Соединенные

16  Штаты Америки и у него есть доступ к банковскому счету в США.

17

18  **ВЕРОЯТНОСТЬ ПРИЧИНЕНИЯ ВРЕДА**

19      29.    Я считаю весьма вероятным, что Егиазарян рассеет, скроет или

20  переведет за границу средства, уплаченные ему по Арбитражному решению по

21  делу Керимова, чтобы уклониться от выполнения обязательства выплатить мне

22  суммы, причитающиеся мне по Решению Лондонского арбитражного суда.  Эта

23  уверенность подкрепляется моим прежним опытом ведения дел с Егиазаряном,

24  фактами и обстоятельствами, положенными в основу Решения Лондонского

25  арбитражного суда, и фактами, приведенными в настоящем заявлении.

26      30.    Как указывается в Решении Лондонского арбитражного суда и

27  кратко описано выше в пп. 14-23, Егиазарян и ранее предпринимал шаги по

28  удалению средств и переводу их в различные офшорные компании, чтобы они

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel 415 576 3000

*Дело №*
ЗАЯВЛЕНИЕ ВИТАЛИЯ СМАГИНА В ПОДТВЕРЖДЕНИЕ ОДНОСТОРОННЕГО ХОДАТАЙСТВА О НАЛОЖЕНИИ АРЕСТА И
ВЫНЕСЕНИИ РАСПОРЯЖЕНИЯ О ВРЕМЕННОМ ЗАПРЕТЕ РАСПОРЯЖЕНИЯ В ОТНОШЕНИИ ИМУЩЕСТВА
SFODMS-#6725081-v1

1    были мне недоступны, а он мог уклониться от выполнения своих договорных и

2    иных обязательств. Эти совершенные им ранее действия обманывали меня и

3    причиняли мне вред.

4        31.    Егиазарян имеет также активы и контролирует компании в

5    многочисленных иностранных юрисдикциях, включая, например, на Кипре (это

6    Калкен и другие компании), Британских Виргинских Островах и, возможно, в

7    России.

8        32.    26 ноября 2014 года мои адвокаты направили письмо адвокатам

9    Егиазаряна с требованием уплатить сумму, причитающуюся мне по Решению

10    Лондонского арбитражного суда.  Егиазарян не уплатил эту сумму и не ответил

11    на это письмо. Более того, хотя адвокаты Егиазаряна признали получение этого

12    письма, они не указали, несмотря на то, что мои адвокаты требовали сделать это

13    несколько раз, что этот платеж будет произведен. Верная и точная копия этого

14    письма, направленная моими адвокатами из "Бейкер и Макензи ЛЛП" адвокатам

15    Егиазаряна из фирмы "Гибсон Данн ЛЛП" (номер моего банковского счета

16    обезличен), прилагается к настоящему заявлению в качестве **Приложения B**.

17        33.    Егиазарян был предметом многочисленных расследований, в

18    которых под вопрос ставилась его честность.  В качестве подтверждения этих

19    расследований можно назвать (1) статью в СМИ от 12 сентября 2012 года, в

20    которой имеются ссылки на тот факт, что Егиазарян ранее "украл 75.330 акций"

21    у владельца бизнес-центра "Даев плаза", и (2) статью в СМИ от 10 ноября 2012

22    года, в которой описываются многочисленные уголовные процессы в России,

23    предметом которых был Егиазарян.  Верная и точная копия статьи от 12

24    сентября 2012 года прилагается к настоящему заявлению в качестве

25    **Приложения C**.  Верная и точная копия статьи от 10 ноября 2012 года

26    прилагается к настоящему заявлению в качестве **Приложения D**.

27        34.    Арбитражный суд, принявший Решение Лондонского арбитражного

28    суда, также установил несколько фактов, демонстрирующих отсутствие доверия

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel 415 576 3000

к Егиазаряну.  Например, этот арбитражный суд не принял утверждения Егиазаряна о том, что его подпись в Соглашении 2008 года была подделана. *См.* Решение Лондонского арбитражного суда, пп. 163-64, Приложение А на стр. 31.

35.    Егиазарян сбежал в Соединенные Штаты Америки, когда началось следствие по его делу, и не явился для дачи показаний в Лондонский арбитражный суд, несмотря на то, что под угрозой была значительная сумма денег. Таким образом Егиазарян продемонстрировал свое желание уехать из юрисдикции, чтобы уклониться от выполнения своих обязательств, что предполагает, что он таким же образом может рассеять, скрыть или удалить из юрисдикции свои средства, чтобы не выполнять свои обязательства.

36.    В свете существенного риска того, что средства, которые будут выплачены Егиазаряну по Арбитражному решению по делу Керимова, будут рассеяны, скрыты или переведены за границу, существует срочная необходимость принять превентивные меры, чтобы защитить мои интересы, касающиеся получения платежа по Решению Лондонского арбитражного суда, и предотвратить непоправимый вред, который может быть причинен в результате сокрытия средств, из которых может быть произведена выплата в порядке выполнения этого арбитражного решения.  Без судебного вмешательства исполнительное производство по Решению Лондонского арбитражного суда будет чрезвычайно затруднено и вполне вероятно, что выплата, на получение которой я имею право по Решению Лондонского арбитражного суда, так и не будет произведена.

37.    Время является существенным фактором в предоставлении мер судебной защиты, запрошенных в Ходатайстве.  Если Егиазарян получит уведомление об этих процессуальных действиях или произойдет задержка в предоставлении мер судебной защиты для соблюдения установленных сроков уведомления, это может позволить рассеять, скрыть или перевести за границу в другие юрисдикции средства, которые необходимы для выполнения Решения

11

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel 415 576 3000

Дело №.
ЗАЯВЛЕНИЕ ВИТАЛИЯ СМАГИНА В ПОДТВЕРЖДЕНИЕ ОДНОСТОРОННЕГО ХОДАТАЙСТВА О НАЛОЖЕНИИ АРЕСТА И ВЫНЕСЕНИИ РАСПОРЯЖЕНИЯ О ВРЕМЕННОМ ЗАПРЕТЕ РАСПОРЯЖЕНИЯ В ОТНОШЕНИИ ИМУЩЕСТВА
SFODMS #6725081-v1

1  Лондонского арбитражного суда. Предоставление мер судебной защиты без

2  уведомления Егиазаряна очень важно для того, чтобы я их действительно

3  получил, так как Егиазарян неоднократно демонстрировал свои способности и

4  намерения скрыть, перевести или иным образом удалить свое имущество из

5  пределов моей досягаемости, в том числе посредством использования

6  иностранных организаций и банковских счетов.

7       Под страхом наказания за лжесвидетельствование по законам

8  Соединенных Штатов Америки я заявляю, что вышеизложенное является

9  верным и точным и что настоящее заявление подписано мною собственноручно

10  в _____Москве_____, _____ 12 декабря 2014 года.

11

12  _____
       Виталий Иванович Смагин

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel  415 576 3000

Дело №
ЗАЯВЛЕНИЕ ВИТАЛИЯ СМАГИНА В ПОДТВЕРЖДЕНИЕ ОДНОСТОРОННЕГО ХОДАТАЙСТВА О НАЛОЖЕНИИ АРЕСТА И
ВЫНЕСЕНИИ РАСПОРЯЖЕНИЯ О ВРЕМЕННОМ ЗАПРЕТЕ РАСПОРЯЖЕНИЯ В ОТНОШЕНИИ ИМУЩЕСТВА
SFODMS-#6725081-v1