1   Bruce H. Jackson, State Bar No. 98118
      bruce.jackson@bakermckenzie.com
2   **BAKER & McKENZIE LLP**
    Two Embarcadero Center, 11th Floor
3   San Francisco, CA  94111
    Telephone: +1 415 576 3000
4   Facsimile: +1 415 576 3099

5   Nicholas O. Kennedy, State Bar No. 280504
      nicholas.kennedy@bakermckenzie.com
6   **BAKER & McKENZIE LLP**
    2300 Trammell Crow Center
7   2001 Ross Avenue
    Dallas, TX  75201
8   Telephone: +1 214 978 3000
    Facsimile:  +1 214 978 3099

9
    Attorneys for Petitioner
10  VITALY IVANOVICH SMAGIN

11

12                  UNITED STATES DISTRICT COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14                        WESTERN DIVISION

15

16  VITALY IVANOVICH SMAGIN,          **Case No.  14-cv-09764-R (PLAx)**

17              Petitioner,            **MEMORANDUM OF POINTS
                                       AND AUTHORITIES IN
18         v.                          SUPPORT OF PETITIONER'S
                                       *EX PARTE* MOTION FOR
19  ASHOT YEGIAZARYAN, a.k.a.          TEMPORARY RESTRAINING
    ASHOT EGIAZARYAN                   ORDER, EXPANDED
20                                     PRELIMINARY INJUNCTION
              Respondent.             AND EXPEDITED DISCOVERY**
21
                                       Date:        September __, 2015
22                                     Time:        10:00 a.m.
                                       Before:      The Hon. Manuel L. Real
23                                     Courtroom: 8, 2nd Floor
                                                    312 N. Spring Street
24                                                  Los Angeles, CA  90012

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

803778-v9\DALDMS

Case No. 14-cv-09764-R (PLAx)
P&A ISO PETITIONER'S EX PARTE MOTION FOR TRO, EXPANDED PI AND EXPEDITED DISCOVERY

# **TABLE OF CONTENTS**

**Page No.**

I.      INTRODUCTION ..............................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND .......................3

III.    ARGUMENT AND AUTHORITIES ...........................................12

     A.    Mr. Smagin is entitled to a preliminary injunction to prevent Yegiazaryan's concealment of assets worldwide ...................12

          1.    Mr. Smagin is likely to succeed in confirming the London Award..................................................................14

          2.    Mr. Smagin will suffer irreparable harm if the current injunction is not expanded and Yegiazaryan is able to further conceal assets ...............................................15

              a.    The evidence demonstrates Yegiazaryan's willingness to misappropriate property and conceal assets through the use of nominees and offshore companies....................16

              b.    Mr. Yegiazaryan is the beneficiary of a $250 million arbitral award and is likely in the process of putting the proceeds of that award out of each of Mr. Smagin. ....18

          3.    The balance of equities support an injunction to protect Mr. Smagin's rights to payment under the London Award.................18

          4.    The public interest favors an injunction .......................................19

          5.    An injunction must cover Yegiazaryan's assets worldwide that are held by him or on his behalf, as to which he has any legal or beneficial ownership interest and over which he has direct or indirect control .................................................20

     B.    Mr. Smagin is entitled to expedited discovery regarding Yegiazaryan's assets ..................................................22

IV.     CONCLUSION ..............................................................................24

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

i

Case No. 14-cv-09764-R (PLAx)
P&A ISO PETITIONER'S EX PARTE MOTION FOR TRO, EXPANDED PI AND EXPEDITED DISCOVERY

1

# TABLE OF AUTHORITIES

2

**Page No(s).**

3

## Cases

4

*Alliance for the Wild Rockies v. Cottrell*,

5

632 F.3d 1127 (9th Cir. 2011) ................................................................. 12

6

*Beaty v. Brewer*,

7

649 F.3d 1071 (9th Cir. 2011) ................................................................. 12

8

*Datatech Enters LLC v. FF Magnat Ltd.*,

9

No. C 12-04500, 2012 U.S. Dist. LEXIS 144120 (N.D. Cal. Oct. 4, 2012) ........... 16

10

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,

11

321 F.3d 878 (9th Cir. 2003) ................................................................. 17

12

*Cont'l Transfert Tech., Ltd. v. Fed. Gov't of Nigeria*¸

932 F. Supp. 2d 153 (D. D.C. 2013) ......................................................... 15

13

*Developers Sur. & Indem. Co. v. Bi-Tech Constr., Inc.*,

14

964 F. Supp. 2d 1304 (S.D. Fla. 2013) ...................................................... 20

15

*In re Estate of Ferdinand Marcos, Human Rights Litig.*,

16

25 F.3d 1467 (9th Cir. 1994) ............................................................. 16,20

17

*Garcia v. Google, Inc.*,

18

786 F.3d 733 (9th Cir. 2015) ................................................................. 14

19

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,

20

284 F.3d 1114 (9th Cir. 2002) ........................................................... 12, 14

21

*Hall Steel Co. v. Metalloyd Ltd.*,

492 F. Supp. 2d 715 (E.D. Mich. 2007) ...................................................... 14

22

*Johnson v. Couturier*,

23

572 F.3d 1067 (9th Cir. 2009) ........................................................... 15, 17

24

*Kremen v. Cohen*,

25

No. 5:11-cv-05411-LHK, 2011 U.S. Dist. LEXIS 141273

26

(N.D. Cal. Dec. 7, 2011) ........................................................ 16, 19, 20, 22

27

*Ministry of Def. of Islamic Republic v. Gould, Inc.*,

28

969 F.2d 764 (9th Cir. 1992) ................................................................. 14

ii

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

803778-v9\DALDMS

Case No. 14-cv-09764-R (PLAx)
P&A ISO PETITIONER'S EX PARTE MOTION FOR TRO, EXPANDED PI AND EXPEDITED DISCOVERY

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
   422 F.3d 782 (9th Cir. 2005) ...................................................................... 14

*NML Capital, Ltd. v. Spaceport Sys. Int'l L.P.*,
   788 F. Supp. 2d 1111 (C.D. Cal. 2011) ..................................................... 12

*Omnium Lyonnais D'Etancheit Et Revetement Asphalte v. Dow Chem. Co.*,
   441 F. Supp. 1385 (C.D. Cal. 1977) .......................................................... 20

*Pyro Spectaculars North, Inc. v. Souza*,
   No. S-12-0299 GGH, 2012 U.S. Dist. LEXIS 15801
   (E.D. Cal. Feb. 8. 2012) ............................................................................ 22

*Ram Head Outfitters, Ltd. v. Mecham*,
   No. CV 09-1382-PHX-MHM, 2011 U.S. Dist. LEXIS 40903
   (D. Ariz. April 14, 2011) .............................................................................. 4

*Reebok Int'l v. McLaughlin¸*
   49 F.3d 1387 (9th Cir. 1995) ....................................................................... 4

*Republic of Philippines v. Marcos*,
   862 F.2d 1355 (9th Cir. 1988) ........................................................ 12, 14, 21

*SEC v. Int'l Swiss Inv. Corp.*,
   895 F.2d 1272 (9th Cir. 1990) ............................................................. 13, 20

*Sony Ericsson Mobile Communs. AB v. Delta Elecs. Pub. Co.*,
   No. C-09-1326, 2009 U.S. Dist. LEXIS 36497
   (N.D. Cal. April 15, 2009) .......................................................................... 15

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) ................................................................... 19

*Univ. of Hawaii Prof. Assembly v. Cavetano*,
   183 F.3d 1096 (9th Cir. 1999) ................................................................... 18

*Westernbank P.R. v. Kachkar*,
   No. 07-1606, 2008 U.S. Dist. LEXIS 109809 (D. P.R. July 23, 2008) ................. 15

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ....................................................................................... 12

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

iii

1

## Statutes and Rules

9 U.S.C. §§ 201 *et seq.* ...........................................................................1,14

Fed. R. Civ. P. 44.1 ....................................................................................4

Fed. R. Civ. P. 65 .....................................................................................12

Fed. R. Evid. 201 .......................................................................................5

London Court of International Arbitration Rule 26.9....................................4

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

iv

Case No. 14-cv-09764-R (PLAx)
P&A ISO PETITIONER'S EX PARTE MOTION FOR TRO, EXPANDED PI AND EXPEDITED DISCOVERY

## I.    INTRODUCTION

In this action, Petitioner Vitaly Ivanovich Smagin seeks to confirm a final international arbitration award entitling him to over $84 million from Respondent Ashot Yegiazaryan (the "London Award"), pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards: June 10, 1958 (the "New York Convention"). *See* 21 U.S.T. 2517, 330 U.N.T.S. 38, available at 1970 WL 104417; 9 U.S.C. §§ 201 *et seq.* By this motion, Mr. Smagin seeks an *ex parte* Temporary Restraining Order, a preliminary injunction, and expedited discovery in support of his petition to confirm the London Award.

Along with his complaint, Mr. Smagin previously sought a right to attach order and a temporary restraining order to ensure that Yegiazaryan would not further conceal or transfer assets to prevent collection of the London Award upon its confirmation. This relief was sought because Yegiazaryan has attempted to frustrate Mr. Smagin's right to collect the London Award through a series of challenges. He has also taken active steps to conceal his assets. Yegiazaryan himself has acknowledged in sworn testimony that he has deliberately structured his holdings so that he owns assets through nominees and noncommercial companies. Indeed, the London Award itself arises from steps taken by Yegiazaryan to misappropriate assets from Mr. Smagin through the use of offshore entities in Cyprus and the British Virgin Islands. Moreover, Yegiazaryan is on Interpol's wanted list because of his arrest *in absentia* in Russia for financial crimes, including those against Mr. Smagin which form the basis of the London Award.

On December 23, 2014, this Court granted Mr. Smagin an *ex parte* TRO to prevent Yegiazaryan from further concealing his assets so that Mr. Smagin may recover amounts due to him under the London Award. ECF No. 9. However, notwithstanding Mr. Smagin's request for restraint against transfer of assets anywhere, the Court limited the relief to Yegiazaryan's assets in California. On February 4, 2015, the TRO was converted to a preliminary injunction and the case was stayed

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

pending a ruling on Yegiazaryan's challenge to the London Award in the English High Court of Justice. ECF No. 26. Because that ruling has been issued, that stay is no longer in effect. And the current injunction limited to Yegiazaryan's assets in California does not adequately protect Mr. Smagin in light of two recent and important developments.

First, Yegiazaryan's attempt to invalidate the London Award was squarely rejected by the English High Court of Justice in a written judgment that seriously impugns Yegiazaryan's credibility. This judgment also explicitly recognizes that Yegiazaryan uses nominees and offshore companies to conceal his assets. While Yegiazaryan has predictably appealed that decision, his appeal is unlikely to fare any better than his previous challenges.

Second, Mr. Smagin has recently learned that Yegiazaryan has received (or is in the process of receiving) a large payment in settlement of a $250 million arbitration award in his favor in a different dispute. Yegiazaryan's history suggests that he will seek to conceal these funds and avoid California in order to frustrate the current injunction and impede Mr. Smagin's ability to collect the amounts due to him under the London Award. As a result, an injunction limited to California does not provide Mr. Smagin adequate security to ensure payment of the London Award.

Accordingly, Mr. Smagin respectfully requests that the previously granted injunctive relief be expanded in order to effectively preserve Mr. Smagin's ability to recover the $84 million judgment which he will receive after confirming the London Award. The injunction should restrain Yegiazaryan from transferring any assets worldwide held by or on his behalf or over which he can exercise direct or indirect control (i.e., through nominees, etc.), and particularly any sums related to any recovery from the other arbitration award.

Notably, Yegiazaryan should not object to this form of relief because he recently received an injunction in Cyprus to secure an arbitration award in his favor that is nearly identical to the injunction Mr. Smagin seeks here to secure the London

2

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
P&A ISO PETITIONER'S EX PARTE MOTION FOR TRO, EXPANDED PI AND EXPEDITED DISCOVERY

Award.  Yegiazaryan was granted an *ex parte* order by the Cyprus court imposing a worldwide freeze on roughly $245 million of assets held by Yegiazaryan's opponent in that case and several companies in which the opponent held an interest.  That injunction also prevented the transfer of ownership of those companies, efforts to change their corporate structure, and allowed the search of the premises of one of those companies.   Because the Court has personal jurisdiction over Yegiazaryan, it may enjoin him (as Yegiazaryan had the Cyprus court enjoin Kerimov) from taking such actions, not only in California, but anywhere in the world.

Because Yegiazaryan's past actions demonstrate his willingness and ability to conceal assets, Mr. Smagin also respectfully requests a TRO be entered immediately (as the Court did on the prior application) on the same terms as the requested injunction to remain in effect until the hearing on the expanded preliminary injunction. This is necessary to maintain the status quo and prevent the transfer or concealment of assets by Mr. Yegiazaryan in the time before the hearing can be held.

Finally, because Yegiazaryan has demonstrated a propensity to structure his holdings to conceal his assets, Mr. Smagin respectfully requests that the Court allow expedited discovery of Yegiazaryan's assets in support of the petition and motion for preliminary injunction.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

**The London Award**

The London Award was issued by the London Court of International Arbitration on November 11, 2014.  It was based on Yegiazaryan's misappropriation of Mr. Smagin's interest in a retail shopping center in Moscow (using offshore nominee companies), and Yegiazaryan's subsequent efforts to conceal that misappropriation.  Petition (ECF No. 1) ¶ 9; Declaration of Bruce H. Jackson (ECF No. 1-2) ("Jackson Decl.") ¶ 4; Declaration of Vitaly Smagin (ECF No. 5-2) ("Smagin Decl.") ¶¶ 14-22.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

1    Yegiazaryan had previously agreed to arbitrate the dispute.  Pet. ¶ 9; Jackson

2    Decl. ¶ 6, Ex. 1 (London Award) ¶¶ 76; 80-81; Smagin Decl. ¶ 21; *see also* Jackson

3    Decl. Ex. 2 (agreements with arbitration clauses).    Nevertheless, Yegiazaryan

4    challenged and the parties extensively litigated the issues of arbitrability and

5    jurisdiction to the arbitration tribunal.  This resulted in a full evidentiary hearing that

6    included the testimony of several expert and fact witnesses.  *See, e.g.,* Pet. ¶ 10;

7    Jackson Decl. ¶ 10, Ex. 1 ¶¶ 10-16, 155-176; Smagin Decl. ¶ 21.

8    Following seven days of hearings in London in late 2013 and early 2014,[1]  the

9    arbitration tribunal confirmed that the claims raised were within the scope of the

10    arbitration agreements, that the tribunal had the power to hear the dispute, and that it

11    had jurisdiction over Yegiazaryan.  Pet. ¶¶ 8, 10; Jackson Decl. ¶ 5,7, Ex. 1 ¶¶ 155-

12    176; *see also* Smagin Decl. ¶¶ 3, 21-22.

13    The London Award also found decisively in favor of Mr. Smagin on the merits

14    and required Yegiazaryan and the Cypriot entity he controls[2] jointly and severally to

15    pay to Smagin $84,290,064.20 plus interest.  Pet. ¶ 13; Jackson Decl. ¶¶ 9-10, Ex. 1

16    ¶¶ 49-50; Smagin Decl. ¶ 22.  Under English law, the London Award became final

17    and enforceable when issued.  Pet. ¶ 14; Jackson Decl. ¶ 12; *see also* London Court of

18    International Arbitration Rule 26.9[3] ("All awards shall be final and binding on the

19
20    [1] The arbitration was captioned *Vitaly Ivanovich Smagin, Claimant, v. Kalken Holdings Limited and Ashot Yegiazaryan, Respondents*, LCIA Case No. 101721.
21    [2] Kalken Holdings Limited, a company existing under the laws of Cyprus, registered under Company No. 167709 and with its address at 15 Agiou Pavlou Street, LEORA House, Agios Andreas 1105, Nicosia, Cyprus and controlled by Yegiazaryan was also a respondent in the arbitration giving rise to the London Award. Pet. ¶ 8, n.1; Smagin
22    Decl. ¶ 16. Although the London Award was issued jointly and severally as to both respondents, confirmation here is sought only as to Yegiazaryan. Pet. ¶ 8, n. 1.
23    [3] A true and correct copy of this Rule is attached to the Jackson Declaration as Exhibit
24    5. The Court may consider this as evidence of foreign law under Federal Rule of Civil Procedure 44.1. *See* Fed. R. Civ. P. 44.1 ("[i]n determining foreign law, the court may consider any relevant material or source … whether or not admissible under the Federal Rules of Evidence"); *Reebok Int'l v. McLaughlin,* 49 F.3d 1387, 1392 n.4 (9th
25    Cir. 1995). Alternatively, the Court may take judicial notice of this rule under Federal Rule of Evidence 201 as a fact that is not subject to reasonable dispute because it "can
26    be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2); *see also Ram Head Outfitters, Ltd.*
27    *v. Mecham*, No. CV 09-1382-PHX-MHM, 2011 U.S. Dist. LEXIS 40903, at *27 n.1 (D. Ariz. April 14, 2011) (taking judicial notice of exchange rate under Federal Rule
28

4

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
P&A ISO PETITIONER'S EX PARTE MOTION FOR TRO, EXPANDED PI AND EXPEDITED DISCOVERY

1  parties.  By agreeing to arbitration under these Rules, the parties undertake to carry

2  out any award immediately and without any delay… the parties also waive irrevocably

3  their right to any form of appeal, review, or recourse to any state court or other

4  judicial authority, insofar as such waiver may be validly made").

5  **Yegiazaryan's Challenge of the London Award in the English High Court**

6      Yegiazaryan has disregarded this finality and the findings of the tribunal and

7  has refused to pay the amounts due to Mr. Smagin under the London Award.  Instead,

8  Yegiazaryan filed a challenge to the London Award in the English High Court of

9  Justice (the "English Challenge") raising the same jurisdictional arguments that had

10  been heard and rejected by the arbitration tribunal.  Second Declaration of Bruce H.

11  Jackson ("Second Jackson Decl.") ¶¶ 2-3.  Yegiazaryan also fought Mr. Smagin's

12  efforts to enforce the London Award against his Cypriot entity (Kalken), with whom

13  Yegiazaryan was jointly and severally liable.  Second Jackson Decl. ¶ 7.  To avoid

14  being forced to litigate Yegiazaryan's challenge a third time, Mr. Smagin agreed on

15  February 3, 2015 to a stay of the California proceedings under Article VI of the New

16  York Convention, pending resolution of Yegiazaryan's Challenge to the London

17  Award in the English High Court of Justice.  ECF No. 23.

18      Over four days from June 23-26, 2015, the English court heard Yegiazaryan's

19  challenge.   The court reviewed all relevant documents, heard five hours of live

20  testimony from Yegiazaryan and three hours from Mr. Smagin, and received expert

21  opinions in relation to Yegiazaryan's claim that his signature on one of the key

22  documents had been forged.  Second Jackson Decl. ¶ 3.  In a judgment dated July 9,

23  2015, the English court decisively rejected Yegiazaryan's challenge to the London

24  Award.[4]  Second Jackson Decl. ¶¶ 3-6.

25

26  _____
of Evidence 201).

27  [4] The Judgment of Mr. Justice Teare in Case No: 2014 FOLIO 1479 before the High
Court of Justice, Queen's Bench Division, Commercial Court, dated 9 July 2015 (the

28  "English Judgment") is attached as Exhibit A to the Second Declaration of Bruce
Jackson filed concurrently herewith.  Second Jackson Decl. ¶ 3, Ex. A.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

The English court found specifically that Yegiazaryan "did not tell the court the truth" in critical testimony about his business interests and that "the manner in which he gave his evidence did not suggest that he was seeking to assist the court".  English Judgment ¶¶ 15, 35; Second Jackson Decl. ¶ 5.  Accordingly, the English court concluded that it should treat Yegiazaryan's testimony "with caution and indeed skepticism".  English Judgment ¶ 15.  According to the English Judgment, Yegiazaryan' evidence that he was neither the beneficial owner of, nor in control of the Cypriot entity Kalken Holdings Limited was "inconsistent with the probabilities".  English Judgment ¶ 6; Second Jackson Decl. ¶ 6.  Mr. Justice Teare thus concluded that he "was unable to accept this evidence." English Judgment ¶ 6; Second Jackson Decl. ¶ 6.  Instead, Mr. Justice Teare concluded that Yegiazaryan is the beneficial owner of and controls Kalken Holdings Limited.

On the other hand, with respect to the testimony of Mr. Smagin, the English court found that "the manner in which he was able to answer, fluently and without hesitation, all questions … suggested that he was an honest witness and had a good recollection" and that "his evidence was worthy of belief."  English Judgment ¶ 20.  The English court, like the arbitration tribunal, therefore concluded that Yegiazaryan had agreed to arbitrate the dispute and therefore rejected Yegiazaryan's attempt to invalidate the London Award.  *Id*. at ¶ 56.

## Yegiazaryan's Appeal to the English Court of Appeal

Notwithstanding the clear judgment in Mr. Smagin's favor, Yegiazaryan still refuses to comply with the London Award.  Instead, he has filed yet another challenge—this time in the form of an appeal to the English Court of Appeal.  Second Jackson Decl. ¶¶ 9-10.  Permission to appeal was granted by Mr. Justice Teare on July 9, 2015.  *Id*. at ¶ 9.  The hearing of Yegiazaryan's appeal has not yet been scheduled, but it is expected that the appeal will not be resolved until the later part of 2016—two years after the London Award was issued.  *Id*. at ¶ 10.

6

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
P&A ISO PETITIONER'S EX PARTE MOTION FOR TRO, EXPANDED PI AND EXPEDITED DISCOVERY

## Payment to Yegiazaryan of the Kerimov Award

While fighting to avoid paying the London Award to Mr. Smagin, Yegiazaryan pursued payment of a $250 million award in his favor in an unrelated arbitration against fellow Russian businessman Suleyman Kerimov (the "Kerimov Award"). Smagin Decl. ¶¶ 24-25. This is the same Kerimov Award referenced in the current preliminary injunction, the proceeds of which (within California) Yegiazaryan was ordered not to conceal or dissipate. ECF No. 26. Mr. Smagin recently learned that Yegiazaryan has agreed to accept $100 million from Kerimov in settlement of the Kerimov Award. Second Declaration of Vitaly Smagin ("Second Smagin Decl.") ¶¶ 3-4. That $100 million is an asset of Yegiazaryan against which Mr. Smagin should be entitled to enforce the London Award.

Based on this information, Mr. Smagin's legal team immediately took steps to obtain more definitive information on the status of the Kerimov Award. Second Smagin Decl. ¶ 5. Mr. Smagin's Cyprus counsel searched court records there because Kerimov's companies were registered in Cyprus. Counsel's first attempt to search the court file in Cyprus was blocked, however, because it was confidential and available only to parties in that proceeding. Declaration of Menelaos Kyprianou ("Kyprianou Decl.") ¶ 2. On September 2, 2015, Mr. Smagin's Cypriot counsel obtained leave to search the file from the President of the District Court of Nicosia. Kyprianou Decl. ¶ 3. Only then was Mr. Smagin able to verify the status and details of the Kerimov Award.

The Cyprus court records indicate that on January 5, 2015, Yegiazaryan filed an action in Cyprus to enforce the Kerimov Award. Kyprianou Decl. ¶ 4, Ex. A. This application confirms the details of the award – a USD 250 million award in Yegiazaryan's favor. *Id*. On January 13, 2015, Yegiazaryan was granted an *ex parte* order by the Cyprus court imposing a worldwide freeze on roughly $245 million of assets held by Kerimov and several companies in which he held an interest. *Id*. at ¶¶ 5-6, Exs. B, C. That injunction also prevented the transfer of ownership of these

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

companies, efforts to change their corporate structure, and allowed the search of the premises of one of these companies and seizure of related documents. *Id.*

In other words, Yegiazaryan was granted an injunction to secure the Kerimov Award that was nearly identical to the injunction Mr. Smagin seeks here to secure the London Award. At a hearing on May 7, 2015, counsel for Kerimov and his related entities suggested that Kerimov and his related entities deposit the $250 million in cash at the Russian Commercial Bank in Russia in exchange for a release of the injunctions. Kyprianou Decl. ¶ 7, Ex. D.

The Cyprus court records also confirm Mr. Smagin's information that Yegiazaryan has agreed to settle the Kerimov Award, presumably based on a substantial payment in his favor. On May 26, 2015, Yegiazaryan asked for leave of court to withdraw the application to enforce the Kerimov Award and to release the injunctions. Kyprianou Decl. ¶ 8, Ex. E. As is reported in the court minutes of the hearing on this application, the stated basis for Yegiazaryan's request was that the case had been "settled out of court". *Id.* Counsel for Kerimov appeared and agreed to the withdrawal. *Id.* The court granted the request and all related injunctions were dissolved. *Id.* This direct evidence from the Cyprus court proceedings corroborates Mr. Smagin's understanding that the Kerimov Award was recently settled. Yegiazaryan is thus presumably in the process of receiving proceeds of that award in an amount sufficient to satisfy his obligations to Mr. Smagin. Based on his past actions, Yegiazaryan is presumably also in the process of putting those proceeds out of reach of Mr. Smagin.

**Yegiazaryan's Concealment of Assets**

There is ample evidence of Yegiazaryan's track record of concealing the beneficial interest in his assets. Much of this evidence has been recently developed and suggests that Yegiazaryan is likely to avoid California for his forthcoming payment of the Kerimov Award.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Many of the findings of the London Award rest upon Yegiazaryan's concealing and misappropriating assets from Mr. Smagin through the use of entities in "offshore" jurisdictions, including Cyprus and the British Virgin Islands. Smagin Decl. ¶¶ 14-22, 30-31. Moreover, the arbitration tribunal made several findings demonstrating Yegiazaryan's lack of trustworthiness, including its rejection of his arguments that he had no interest in certain assets and that the operative agreement was forged. Smagin Decl. ¶ 34. Those findings were echoed by the English High Court of Justice. *See* English Judgment, ¶¶ 6, 15, 17, 18, 35, 56.

These findings are buttressed by Yegiazaryan's own statements. Yegiazaryan admitted in the Kerimov Arbitration that he uses nominees and offshore companies to conceal his assets, and that this is a typical way of doing business in Russia and among Russian businessman. According to Yegiazaryan, "[i]n Russia, it is common to own the share interest in business through nominees and several noncommercial companies." Yegiazaryan's Second Witness Statement in Kerimov Arbitration dated Feb. 17, 2012[5] ¶ 2.3. Yegiazaryan further explained that this is to prevent corporate raiding by making it "more complicated for the potential raiders to define the owners of the assets within the different layers of the business and share interest." *Id*; Second Jackson Decl. ¶ 12. Of course, using nominees and offshore companies to make it more difficult to identify his assets is exactly what Yegiazaryan is doing here.

After this explanation of the purpose, Yegiazaryan further explained the structure of his nominee arrangements:

> I have been the beneficial owner of these companies. In general, these companies were registered under offshore jurisdictions. The shares were owned by my other companies or registered nominee shareholders appointed by me. I trusted these people and they have always followed my instructions. I did not document the agreements with the nominees. The documents were signed by the directors of

---

[5] Yegiazaryan's Second Witness Statement in the Kerimov Arbitration ("Yegiazaryan's Second Kerimov Statement") is attached as Exhibit B to the Second Jackson Declaration.

9

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
P&A ISO PETITIONER'S EX PARTE MOTION FOR TRO, EXPANDED PI AND EXPEDITED DISCOVERY

1  the companies that were assigned by me as well. They acted
2  in accordance with my instructions.

3  Yegiazaryan's Second Kerimov Statement ¶ 2.6.

4  Finally, Yegiazaryan identified several specific offshore entities and nominees
5  that he controlled. His offshore entities included British Virgin Islands entities
6  Blidensol Trading & Investments Limited and Hackham Invest Trade, Inc., along with
7  numerous others. *See, e.g.,* Yegiazaryan's Second Kerimov Statement ¶¶ 3.6, 3.8.
8  His nominees who held property and shares on his behalf and acted according to his
9  instructions included Yegiazaryan's brother Artem, his former employee Dimitriy
10 Garkusha, and his partner Vitaliy Gogokhiya. Yegiazaryan's Second Kerimov
11 Statement ¶¶ 2.5, 3.1. Yegiazaryan explained that when he referred to actions of these
12 individuals "[i]n fact, these were my actions carried out by nominees appointed by
13 me." Yegiazaryan's Second Kerimov Statement ¶ 2.7.

14 Yegiazaryan's record of concealing that he is the true beneficial owner of assets
15 through these type of nominee structures makes it likely that he will structure any
16 settlement of the Kerimov Award in a way to avoid payment directly to himself in
17 California where the proceeds would be subject to the present injunction. *See* Smagin
18 Decl. ¶¶ 29-37. It is entirely possible (indeed likely) that Yegiazaryan has instructed
19 that payment of the Kerimov Award be made entirely to one of the entities he controls
20 which were also claimants in the arbitration (i.e., Hackham or Blidensol). *See*
21 Yegiazaryan's Second Kerimov Statement ¶¶ 3.6, 3.8 . This belief is reinforced by
22 additional investigation that has uncovered that Yegiazaryan maintains very few assets
23 in his name in California, despite living in a multi-million dollar Beverly Hills
24 residence (which is also in the name of a separate entity of which Yegiazaryan's
25 brother is an Officer and Registered Agent). Second Jackson Decl. ¶ 11.
26 Furthermore, Yegiazaryan himself recognized this way of doing business and the
27 likelihood that such structures would be used to avoid payment when he sought a
28 worldwide injunction in connection with the Kerimov Award.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

10

Of course, as explained previously, Yegiazaryan is also the subject of a Russian criminal investigation in relation to numerous financial crimes.  Smagin Decl.  ¶ 33, Exs. C, D.   Yegiazaryan has fled Russia in response to the criminal investigation into his financial dealings.  He did not even appear in London to testify at the arbitration, demonstrating that he is willing to remove himself (or his assets) from a jurisdiction in order to avoid his responsibilities.  Smagin Decl. ¶ 35.

## The Requested Injunction

The injunction currently in place covers only assets brought within California. ECF No. 26.  Although Mr. Smagin previously requested a worldwide injunction in connection with this action, the Court limited the injunction to California.  The law is clear, however, that the Court has authority to expand that injunction worldwide, based on its personal jurisdiction over Yegiazaryan.  Such a modification is necessary in light of the evidence discussed above.  Second Smagin Decl. ¶¶ 3-4.

Mr. Smagin thus has a compelling need for an expanded preliminary injunction to cover assets of Yegiazaryan or assets held on his behalf wherever located.  This is the only way that Mr. Smagin can ensure that funds will be available to satisfy the London Award.  Mr. Smagin has a similarly compelling need for a TRO on the same terms.  Accordingly, Mr. Smagin respectfully requests an inunction, and in the interim a TRO, as follows:

"Respondent Ashot Yegiazaryan, a.k.a. Ashot Egiazaryan, and all entities or individuals acting under his direct or indirect control, direction, or who hold assets on his behalf shall not take any actions to transfer, assign conceal, diminish, dissipate, or otherwise obscure the true legal or beneficial ownership of any assets wherever located in an amount up to $84,290,064.20.  This includes specifically and without limitation the amounts received or to be received by or on behalf of Respondent Yegiazaryan, or any entities or individuals acting under his direct or indirect control or who hold assets on his behalf, in payment or satisfaction of an arbitration award in favor of Yegiazaryan in the arbitration against Suleyman Kerimov and Denoro

11

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
P&A ISO PETITIONER'S EX PARTE MOTION FOR TRO, EXPANDED PI AND EXPEDITED DISCOVERY

Investments Limited, along with any shares in Endrino Corporation or any other entity to the extent owned by or on behalf of Yegiazaryan. This prohibition shall encompass both active steps and the continuation of previously initiated actions that are within the scope of the prohibited actions. Petitioner's previous deposit of $10,000 in security with the Clerk of Court shall constitute adequate security for the Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65(c)."

## III.    ARGUMENT AND AUTHORITIES

### A.    Mr. Smagin is entitled to a preliminary injunction to prevent Yegiazaryan's concealment of assets worldwide

This Court's power to grant a temporary restraining order and preliminary injunction under Rule 65 extends to this confirmation proceeding because "[a]ttachment and provisional remedies for enforcement of a foreign arbitral award … are compatible with the [New York] Convention." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co*., 284 F.3d 1114, 1127 (9th Cir. 2002); *see* Fed. R. Civ. P. 65. In order to issue either order, the Court need only find that (1) Mr. Smagin is likely to succeed on the merits of his confirmation claim; (2) Mr. Smagin is likely to suffer irreparable harm absent an injunction; (3) the balance of the equities tips in favor of an injunction; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also, e.g., Republic of Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). This test applies to both the request for a TRO and for the preliminary injunction. "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *NML Capital, Ltd. v. Spaceport Sys. Int'l L.P.*, 788 F. Supp. 2d 1111, 1117 (C.D. Cal. 2011) (quoting *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995)); *see also Beaty v. Brewer*, 649 F.3d

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
P&A ISO PETITIONER'S EX PARTE MOTION FOR TRO, EXPANDED PI AND EXPEDITED DISCOVERY

1071, 1072 (9th Cir. 2011) (applying the same standard for a preliminary injunction and TRO).

The Court has already agreed that this test is met in these circumstances by granting the previous *ex parte* TRO. *See* ECF No. 9 (granting *ex parte* TRO). Yegiazaryan has similarly agreed that a preliminary injunction is appropriate. *See* ECF No. 23 (stipulation for stay and preliminary injunction). That TRO-turned-injunction remains in effect. The only issue subject to reasonable dispute is its scope. Mr. Smagin respectfully submits that the scope of the injunction must be broadened if it is to have any real impact on Mr. Smagin's ability to enforce the London Award, in light of the recent developments discussed above.

This Court has the power to grant an injunction restraining Yegiazaryan from concealing assets worldwide. "'Once personal jurisdiction of a party is obtained, the District Court has authority to order it to freeze property under its control, whether the property be within or without the United States.'" *SEC v. Int'l Swiss Inv. Corp.*, 895 F.2d 1272, 1276 (9th Cir. 1990) (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965)). There is no dispute that the Court has personal jurisdiction over Yegiazaryan. There can thus be no dispute that the Court has the power to broaden the current injunction beyond California.

Finally, for the same reason that the Court should issue the expanded injunction, it should immediately issue a TRO to preserve the status quo until a hearing on the preliminary injunction can be held. Yegiazaryan has the means and motivation to conceal assets even in the period of time while the preliminary injunction motion is briefed. If Yegiazaryan is not prevented from doing so, the injunction Mr. Smagin seeks (and the confirmation of the London Award) will likely be a hollow victory.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

### 1.    Mr. Smagin is likely to succeed in confirming the London Award

Mr. Smagin has established a likelihood that he will succeed in his petition to confirm the London Award.  To establish likelihood of success, Mr. Smagin need only demonstrate "a fair chance of success."  *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 794 (9th Cir. 2005) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (*en banc*)).  This success on the merits is the most important factor in granting a preliminary injunction.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).  Mr. Smagin's two previous victories and the pro-enforcement tilt of the New York Convention demonstrate more than a fair likelihood of success in confirming the London Award—they render it near-certain.

The London Award should be confirmed because it and the Petition satisfy all requirements of the New York Convention.[6]  The New York Convention manifests "'a general pro-enforcement bias'" for foreign arbitration awards.  *Ministry of Def. of Islamic Republic v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992) (quoting *Parson & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 973 (2d Cir. 1974)).  As a result, "[t]he district court's … review of a foreign arbitration award is quite circumscribed" and "'the court *shall* confirm the award unless it finds one of the [seven] grounds for refusal … specified in the [New York] Convention.'"  *Gould,* 969 F.2d at 770 (second quotation quoting 9 U.S.C. § 207) (emphasis in original); *see also* 9 U.S.C. § 201, note (providing limited grounds to deny confirmation).

Yegiazaryan cannot meet his burden to invalidate the London Award.  To the contrary, the Petition and supporting evidence establish that the London Award is

---

[6] The New York Convention governs because the London Award was issued in the United Kingdom, which—like the United States— is a signatory to the New York Convention.  *See* 9 U.S.C. §§ 201-02; *Hall Steel Co. v. Metalloyd Ltd.*, 492 F. Supp. 2d 715, 717 (E.D. Mich. 2007) (noting that both the United States and United Kingdom are signatories to the New York Convention); *see also Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1121 (9th Cir. 2002).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

final and enforceable, and that the arbitration panel had jurisdiction over the parties and the dispute.  Yegiazaryan challenged the arbitration tribunal's jurisdiction in front of the tribunal.  That challenge failed.  Yegiazaryan challenged the London Award and the tribunal's jurisdiction in the English High Court of Justice—which held a full hearing and re-evaluated all of the evidence.  That challenge also failed.  Yegiazaryan is unlikely to succeed if he raises those same challenges a third time to the English Court of Appeal or a fourth time to this Court (if not collaterally estopped from doing so).  Accordingly, the London Award should be confirmed.  *See, e.g.*, *Cont'l Transfert Tech., Ltd. v. Fed. Gov't of Nigeria¸* 932 F. Supp. 2d 153, 157 (D. D.C. 2013) (recognizing and enforcing previous confirmation of UK arbitration award under New York Convention); *Sony Ericsson Mobile Communs. AB v. Delta Elecs. Pub. Co.*, No. C-09-1326, 2009 U.S. Dist. LEXIS 36497 (N.D. Cal. April 15, 2009) (issuing temporary protective order and writ of attachment covering accounts receivable to enforce foreign arbitration award).

### 2.    Mr. Smagin will suffer irreparable harm if the current injunction is not expanded and Yegiazaryan is able to further conceal assets

The evidence demonstrates that Mr. Smagin will suffer irreparable harm if the current injunction is not expanded and Yegiazaryan is able to further conceal his assets.  "In the context of a motion to freeze assets, a court generally will find irreparable harm if the plaintiff provides evidence demonstrating 'a strong indication that the defendant may dissipate or conceal assets.'"  *Westernbank P.R. v. Kachkar*, No. 07-1606, 2008 U.S. Dist. LEXIS 109809, at *40 (D. P.R. July 23, 2008) (quoting *Micro Signal Research, Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005)); *see also, e.g., Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (an asset freeze is appropriate based on "a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages if relief is not granted.").  "An injunction freezing assets may also issue where plaintiff demonstrates that 'defendant has engaged in (*sic*) pattern of secreting or dissipating assets to avoid judgment.'"

15

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
P&A ISO PETITIONER'S EX PARTE MOTION FOR TRO, EXPANDED PI AND EXPEDITED DISCOVERY

1  *Kremen v. Cohen*, No. 5:11-cv-05411-LHK, 2011 U.S. Dist. LEXIS 141273, at *16

2  (N.D. Cal. Dec. 7, 2011) (quoting *In re Estate of Ferdinand Marcos, Human Rights*

3  *Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994)). This standard is met.

**a.**   **The evidence demonstrates Yegiazaryan's willingness to misappropriate property and conceal assets through the use of nominees and offshore companies**

Yegiazaryan has demonstrated a willingness and ability to conceal assets using a variety of methods and "offshore" jurisdictions in order to avoid his obligations and deceive others.  It is likely he will do the same with the proceeds of the Kerimov Award.  At a minimum he undoubtedly has the ability to do so.  Even if he claims the best intentions, that does not negate the harm it will cause Mr. Smagin.  *C.f. Datatech Enters LLC v. FF Magnat Ltd.*, No. C 12-04500, 2012 U.S. Dist. LEXIS 144120, at *5 (N.D. Cal. Oct. 4, 2012) (denying motion to reconsider order granting asset freeze: "the reason for the money disappearing abroad is less important than the fact it will move beyond this Court's reach").

Indeed, the London Award arose from Yegiazaryan's actions to misappropriate Mr. Smagin's interest in an investment known as Europark in which they invested together.  In September 2006, Yegiazaryan asked Mr. Smagin to allow Europark to be used as security for a loan financing Yegiazaryan's Hotel Moscow Project.  London Award ¶ 72.  Mr. Smagin had no involvement in that project.  London Award ¶ 73.  Nevertheless, Mr. Smagin agreed to allow the use of Europark as security based on contractual and other assurances from Yegiazaryan that his interest in Europark would be protected.  The London Award determined that Yegiazaryan breached these commitments to protect Mr. Smagin's interest and instead used a series of complicated transactions and offshore entities to misappropriate Mr. Smagin's interest in Europark.  London Award §§ 192-198.

Moreover, Yegiazaryan has admitted to using nominees and offshore jurisdictions to conceal his assets.  As he explained in the Kerimov arbitration, a key

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

goal of this structure was to obscure the true ownership of his assets.  Yegiazaryan's Second Kerimov Statement ¶ 2.3.  Yegiazaryan identified several of these nominees as those close to him, including his brother Artem Yegiazaryan, Vitaliy Gogokhiya, and Dimitry Garkusha.  *Id.*  ¶¶ 2.5, 3.1.  Yegiazaryan made clear, however, that he was the ultimate owner of the assets they held and that they always followed his instructions.  *Id.* ¶ 2.7 ("[i]n fact, these were my actions carried out by nominees appointed by me").

The English High Court of Justice's findings provide further evidence of Yegiazaryan's duplicitousness.  Yegiazaryan even attempted to conceal his beneficial interest in offshore entities from the English High Court of Justice.  Mr. Justice Teare, however, was not fooled and concluded that Yegiazaryan "did not tell the court the truth" with regard to his interest in such entities and his testimony "did not suggest that he was seeking to assist the court."  English Judgment ¶¶ 15, 35; *see also* Second Jackson Decl. ¶ 5.

Similarly, Yegiazaryan should not be expected to disclose readily the truth about his assets or the status of the Kerimov Award.  Rather, it is more likely that he will continue his established practice of putting assets in the hands of nominees, concealing his true beneficial interest in offshore companies, and putting the assets necessary to satisfy the London Award out of the reach of Mr. Smagin.  If Yegiazaryan is allowed to do so, Mr. Smagin will suffer irreparable harm because of the decreased likelihood that assets will be available for him to collect his judgment. *See, e.g, Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (defendant's "own prior conduct establishes a likelihood that in the absence of an asset freeze and accounting, plaintiffs will not be able to recover the diverted funds and will thus be irreparably harmed"); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003) (district court did not err in finding a risk of concealment of assets in light of defendants' "history of fraudulent intra-family transfers.").

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

b.    **Mr. Yegiazaryan is the beneficiary of a $250 million arbitral award and is likely in the process of putting the proceeds of that award out of reach of Mr. Smagin**

The recent access to court documents in Cyprus has confirmed the existence of the $250 million Kerimov Award and Yegiazaryan's application to enforce that award in Cyprus. Kyprianou Decl. ¶ 4, Ex. A. Access to those records also confirmed the recent withdrawal of that case because of a settlement of the Kerimov Award. Kyprianou Decl. ¶ 8, Ex. E. This corroborates that the Kerimov Award was settled and is consistent with Mr. Smagin's recently gained understanding that Yegiazaryan received, or is in the process of receiving, a $100 million payment from Kerimov. Second Smagin Decl. ¶¶ 3-4.

Yegiazaryan must be prevented from concealing the proceeds from the $250 million Kerimov Award and its settlement. Ironically, Yegiazaryan himself recognized the urgent need to enjoin the transfer of assets necessary to satisfy an award such as the London Award when he sought and obtained the same type of injunction Mr. Smagin seeks here—a worldwide freeze of assets of the judgment debtor and the companies he controls—to satisfy the Kerimov Award. *See* Kyprianou Decl. ¶¶ 5-6, Exs. B, C. Just as the Cyprus court recognized the irreparable harm Yegiazaryan argued he would suffer absent such a freeze, so too should this Court recognize the irreparable harm Mr. Smagin will suffer. A similar injunction should be issued here. Mr. Smagin will be irreparably harmed if Yegiazaryan is not enjoined from taking actions worldwide, including through the use of nominees and offshore companies, to conceal this payment it is highly likely that he recently received.

3.    **The balance of equities support an injunction to protect Mr. Smagin's rights to payment under the London Award**

The balance of equities favors an expanded injunction. This inquiry weighs "the possible harm caused by the preliminary injunction against the possibility of harm caused by not issuing it." *Univ. of Hawaii Prof. Assembly v. Cavetano*, 183 F.3d 1096, 1108 (9th Cir. 1999). Equity favors an injunction freezing assets to allow

18

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
P&A ISO PETITIONER'S EX PARTE MOTION FOR TRO, EXPANDED PI AND EXPEDITED DISCOVERY

collection of a judgment from an uncooperative judgment debtor.  *See Kremen*, 2011 U.S. Dist. LEXIS 141273, at \*19-\*20 ("Plaintiff is a judgment creditor and seeks only such equitable relief as is necessary to preserve his rights to recover his own property. … the balance of hardships weighs in Plaintiff's favor.  Plaintiff has been attempting to execute on his Judgment against [defendant] for over ten years and is pursuing a chimeric Judgment Debtor.").

Just as in *Kremen*, the balance of equities favors an injunction and accompanying TRO here.  Mr. Smagin has been attempting to collect the London Award for nearly a year.  Mr. Smagin seeks only to preserve enough assets to allow him to recover the $84 million to which he is entitled under the London Award.  And notably, this relief is exactly what Yegiazaryan sought—and was granted—in Cyprus to aid his attempt to collect the Kerimov Award.

Without the freeze, Yegiazaryan will continue to conceal his assets—most notably the recent or forthcoming settlement payment from the Kerimov Award.  This will likely prevent Mr. Smagin from recovering the London Award.  On the other hand, it will not burden Yegiazaryan to comply with the terms of the London Award to which he is already bound.  Nor will Yegiazaryan be harmed by being prevented from transferring or concealing assets beyond those needed for his day to day expenses, which are carved out from the injunction.  ECF No. 26 at 2.  *Compare Philippines v. Marcos*, 862 F.2d at 1362 (noting that the fact that living expenses were excluded from asset freeze meant that "[i]rreparable injury was weighed against zero evidence of hardship" and that therefore "the balance of hardships tipped decidedly in [plaintiff's] favor.").

### 4.     The public interest favors an injunction

The requested injunction and TRO are in the public interest.  "'When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis…'".  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009) (quoting *Bernhardt*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

*v. L.A. Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003)).  The public interest factor is neutral for an asset freeze because it generally effects only the party whose assets are frozen. *See Kremen*, 2011 U.S. Dist. LEXIS 141273, at *20.

The requested injunction and TRO would prevent only Yegiazaryan and persons acting under his direction and control from moving, concealing, or dissipating assets.  It would have no broader effect on the general public.  Moreover, preventing dissipation, transfer or concealment of assets, ensuring compliance with obligations, and protecting property rights is in the public interest.  *See, e.g., Domino's Pizza Franchising LLC v. Making the Dough*, Inc., 2009 U.S. Dist. LEXIS 32109 (M.D. Pa. Apr. 15, 2009) (granting injunction to protect plaintiffs' property rights during the pendency of the lawsuit); *Developers Sur. & Indem. Co. v. Bi-Tech Constr., Inc.*, 964 F. Supp. 2d 1304, 1310 (S.D. Fla. 2013) (injunction to force compliance with contractual obligations is in the public interest).  The public interest favors the injunction, or, at worst, is neutral.

### 5. An injunction must cover Yegiazaryan's assets worldwide that are held by him or on his behalf, as to which he has any legal or beneficial ownership interest and over which he has direct or indirect control

This Court may issue a worldwide injunction preventing Yegiazaryan from concealing assets up to the $84 million covered by the London Award.  "'Once personal jurisdiction of a party is obtained, the District Court has authority to order it to 'freeze' property under its control, whether the property be within or without the United States.'"  *Hilao v. Marcos (In re Estate of Marcos)*, 25 F.3d 1467, 1478 (9th Circ. 1994) (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965)).  Numerous courts have invoked this power to issue preliminary injunctions freezing assets worldwide to secure funds for an expected judgment.  *See, e.g., SEC v. Int'l Swiss Inv. Corp.*, 895 F.2d 1272 (9th Cir. 1990); *Omnium Lyonnais D'Etancheit Et Revetement Asphalte v. Dow Chem. Co.*, 441 F. Supp. 1385 (C.D. Cal. 1977).

20

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
P&A ISO PETITIONER'S EX PARTE MOTION FOR TRO, EXPANDED PI AND EXPEDITED DISCOVERY

The Ninth Circuit was confronted with a history of multinational financial concealment similar to Yegiazaryan's in *Republic of Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988). There, defendants concealed misappropriated assets through the use of a Beverly Hills bank account in the name of aliases and a Lichtenstein trust set up for the benefit of and controlled by defendants. *Id.* at 1362-63. The court recognized that "[h]ardship to the [plaintiffs] would have been great and irreparable if the district court had not taken its prudent, amply justified action to keep [defendants] assets from disappearing." *Id.* at 1364. It therefore concluded that the "[t]he scope of the injunction was justified [because] [i]t was imperative for the district court to preserve the status quo lest the defendants prevent resolution of the case by putting their property beyond the reach of the court." *Id.* at 1364. The court in *Marcos* stated: "The injunction is directed against individuals, not against property; it enjoins the Marcoses and their associates from transferring certain assets wherever they are located. Because the injunction operates *in personam*, not *in rem*, there is no reason to be concerned about its territorial reach." *Id.*

This Court should issue a similar injunction to prevent similar harm. Personal jurisdiction is undisputed and the Court may unquestionably enjoin Yegiazaryan and all those acting under his direction and control, including Hackham and Blidensol, from taking actions worldwide. Yegiazaryan, like the defendants in *Marcos*, has used a variety of financial structures and nominees, both in the U.S. and abroad, to conceal his assets. *See, e.g.*, English Judgment ¶ 6; Yegiazaryan's Second Kerimov Statement ¶¶ 2.5-2.7 (Yegiazaryan cataloguing nominees and offshore companies holding assets on his behalf and at his direction). Accordingly, this Court should issue the requested worldwide injunction to "keep [Yegiazaryan's] assets from disappearing" and preserve Mr. Smagin's ability to recover the expected judgment in his favor. *See, e.g., Philippines v. Marcos*, 862 F.2d at 1364.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

### B.    Mr. Smagin is entitled to expedited discovery regarding Yegiazaryan's assets

There is good cause to allow expedited discovery of Yegiazaryan's assets. Good cause for discovery "'may be satisfied where a party seeks a preliminary injunction.'"  *Kremen*, 2011 U.S. Dist. LEXIS 141273, at *27 (quoting *Am. Legalnet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009)).  Although a preliminary injunction does not entitle a party to automatic discovery, the discovery request need only be reasonable.  *Id.*  The factors commonly considered include "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (3) the burden on the responding party in complying with the request; and (5) how far in advance of the typical discovery process the request was made."  *Id.* (citing *Davis*, 673 F. Supp. 2d at 1067).

For example, in *Kremen*, the court granted an *ex parte* TRO to freeze the assets of a judgment debtor who had refused to pay and whose past actions made it likely that he would conceal assets necessary to satisfy the judgment.  *See* 2011 U.S. Dist. LEXIS 141273.  The court also allowed expedited discovery consisting of 1) a deposition of defendant and a representative of his corporation on 72 hours notice; 2) document production and interrogatories about the existence and movement of assets to be answered within 72 hours; and 3) third-party discovery from banks holding funds on behalf of the defendant.  *Id.* at *28-*29.  The court recognized the burden, but reasoned that the discovery "was narrowly tailored to discover evidence necessary to prove the probability of prevailing on the merits."  *Id.* at *29.  *See also, e.g., Pyro Spectaculars North, Inc. v. Souza*, No. S-12-0299 GGH, 2012 U.S. Dist. LEXIS 15801, at *9-*13 (E.D. Cal. Feb. 8. 2012) (granting expedited discovery including depositions, document requests, and imaging of hard drive in support of motion for preliminary injunction).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

The discovery Mr. Smagin seeks is reasonable.  In fact, it is less extreme than the search and seizure order obtained by Yegiazaryan in Cyprus in his efforts to enforce the Kerimov Award.  *See* Kyprianou Decl. ¶¶ 5-6, Exs. B, C.

First, the requested discovery is in support of both the existing preliminary injunction and the pending motion for an expanded injunction.  It is requested over eight months after the initial case was filed, and only shortly before the parties' Rule 26(f) planning conference must be held.  The discovery is narrowly tailored to uncover Yegiazaryan's assets to satisfy the London Award, which has already been held valid by the English High Court of Justice and is therefore likely to be converted into a U.S. judgment.

Moreover, the discovery will prevent Yegiazaryan from further transferring or concealing assets and will help ensure that he complies with the Court's orders. Finally, the discovery will not burden Yegiazaryan because it will only require him to sit for a short deposition and to identify the location of his assets.  It will not require extensive document review or preparation.

Accordingly, Mr. Smagin respectfully requests that the Court grant his motion for expedited discovery and order expedited discovery as follows.  First, a deposition of Yegiazaryan limited to identification of assets he owns or that are owned on his behalf, and the entities or individuals who hold those assets; second, a short set of interrogatories narrowly tailored to identify those assets and their ownership; third, production of documents identifying and documenting those assets, their chain of ownership, and their transfer history; and fourth, depositions of Yegiazaryan's brothers, Artem Yegiazaryan and Suren Yegiazaryan, as well as Dmitry Fitisov, all of whom Yegiazaryan has repeatedly identified as his business partners and who hold assets on his behalf.  *See, e.g.*, English Judgment ¶¶ 6, 26.

///

///

///

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

**IV.    CONCLUSION**

For the foregoing reasons, Mr. Smagin respectfully requests that the Court enter a preliminary injunction to prevent Yegiazaryan from transferring, dissipating, or concealing any assets located anywhere in the world over which he has either direct or indirect control, immediately enter a temporary restraining order on these same terms to remain in effect until the hearing on the preliminary injunction, enter an order allowing for the expedited discovery described herein, and award Mr. Smagin his costs and reasonable attorneys' fees along with all other relief the Court deems just and proper.

Dated:    September 16, 2015          Respectfully submitted,

**BAKER & McKENZIE LLP**
Bruce H. Jackson
Nicholas O. Kennedy

By:/s/ Bruce H. Jackson
Bruce H. Jackson
Attorneys for Petitioner
VITALY IVANOVICH SMAGIN

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000