Michael S. Adler, SBN 190119
  madler@ta-llp.com
Joel M. Tantalo, SBN 206096
  jtantalo@ta-llp.com
**TANTALO & ADLER LLP**
1901 Avenue of the Stars, Ste. 1000
Los Angeles, CA 90067

Telephone:  (310) 734-8695
Fax:            (310) 734-8696

Attorneys for Respondent
Ashot Yegiazaryan

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VITALY IVANOVICH SMAGIN, <br><br> Petitioner, <br><br> v. <br><br> ASHOT YEGIAZARYAN, <br><br> Respondent. | **CASE NO. 14-cv-09764-R (PLAx)** <br><br> Before the Honorable Manuel L. Real United State District Judge <br><br> **OPPOSITION TO *EX PARTE* REQUEST FOR A TEMPORARY RESTRAINING ORDER** |

## I.   ARGUMENT

This Opposition is addressed solely to the *ex parte* motion to expand the existing Preliminary Injunction.  **There is no basis for *ex parte* relief here**, by which Petitioner is attempting to deprive Mr. Yegiazaryan and his counsel of any time to properly review this matter and brief the issues.

Notably, Petitioner's motion is based on an English court ruling of July 9, 2015 – more than two months ago.  Nevertheless, **despite the passage of more than two months**, and despite putting together a phone book of 15 separate documents in support of the moving papers here, **Petitioner provided barely half an hour notice before seeking this additional *ex parte* relief, and such notice was provided only in the afternoon**.  [Adler Dec. ¶¶ 6-8 and Ex. 1.]  The timing of the notice is particularly egregious since, as Petitioner is well aware, Mr. Yegiazaryan's lead counsel on these matters is located in London, England and Engish counsel had already left for the day when Petitioner provided the minimal notice.  [*Id.* ¶ 6.]  Mr. Yegiazaryan's California counsel will have to coordinate this matter with English counsel, and English counsel was not even available to *begin* the discussion at the time Petitioner provided notice of the motion at issue.  [*Id.* ¶¶ 5-6]

In addition, Petitioner fails to identify any new information that would justify this expanded request for relief, much less any information that would justify doing so on an *ex parte* basis.   Petitioner's primary argument for relief is the argument that Mr. Yegiazaryan uses off-shore entities.  Not only is this argument largely irrelevant, but these facts were available to Petitioner nine months ago when he made his original request for relief.

In short, both the lack of new grounds and the unreasonable timing of the *ex parte* motion to expand the Preliminary Injunction make it abundantly clear that the *ex parte* motion is a tactical attempt to take advantage of this Court and the system, rather than a reasonable attempt to secure a claim.  In this respect, the Court should keep in

1

**OPPOSITION TO *EX PARTE* REQUEST FOR A TEMPORARY RESTRAINING ORDER**

mind the following facts:

(1)   At the inception of this case, Petitioner brought a motion for interim relief to secure the assets, and Mr. Yegiazaryan agreed to an order freezing the assets that Petitioner originally sought to freeze in California. **That prior Preliminary Injunction in favor of Petitioner remains in full force and effect**.  [Adler Dec. ¶10.] Petitioner has identified no development that justifies a different scope of relief, much less any sudden development in the last few hours or days that would justify *ex parte* relief without statutory (or even reasonable) notice.

(2)   As Petitioner himself acknowledges (although it is buried in his moving papers), the English trial court ruled in favor of Petitioner *but* that English court specifically granted Mr. Yegiazaryan a ***discretionary*** appeal.  In other words, the English proceedings have finished one stage, but the English court expressly ruled that the issues were unsettled enough to justify a further review by an English appellate court.  [Adler Dec. ¶ 3 (Appellate review not automatic here, but has been permitted here based on the English court's consideration of the merits).]  In other words, this case was stayed pending the English proceedings, and the English courts have expressly declined to bring those proceedings to a close.

(3)   The requested *ex parte* relief goes far beyond the interim relief typically available in support of a private litigant's attempt to freeze assets in advance of a judgment.  Petitioner cites only *one* case for Petitioner's claim that the Court is empowered to freeze assets outside of the United States, and that twenty-five year old case involved a Securities and Exchange Commission enforcement action against foreign parties trying to defraud American citizens.  *SEC v. Int'l Swiss Inv. Corp.*, 895 F.2d 1272 (9th Cir. 1990).  By contrast, a California federal court sitting on an attempt to secure assets for a private right of action typically applies the California procedure established for a writ of attachment.  *Hamilton Beach Brands, Inc. v. Metric and Inch Tools, Inc.,* 615 F.Supp.2d 1056, 1061 (C.D. Cal. 2009).

2

**OPPOSITION TO *EX PARTE* REQUEST FOR A TEMPORARY RESTRAINING ORDER**

As the Court is no doubt aware, "'California's writ of attachment law is purely statutory, and strictly construed.'" *Hamilton Beach Brands, Inc. v. Metric and Inch Tools, Inc.,* 615 F.Supp.2d 1056, 1060 (C.D. Cal. 2009) (quoting *Kemp Bros. Construct. Inc. v. Titan Elec. Corp.*, 146 Cal.App.4th 1474, 1476 (2007); *Pacific Decision Sci. Corp. v. Sup. Ct.*, 121 Cal.App.4th 1100, 1106 (2004)). This is because "'[a]ttachment is a harsh remedy because it causes the defendant to lose control of his property.'" *Hamilton Beach,* 615 F.Supp.2d at 1060 (quoting *Martin v. Aboyan,* 148 Cal.App.3d 826, 831 (1983)). As such, it implicates constitutionally-protected property interests. *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 606, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin,* 407 U.S. 67, 86, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

Moreover, under California law, it is inappropriate for a private party to seek to freeze pre-judgment property outside of California (much less on a world-wide basis). *Pacific Decision Sci. Corp. v. Sup Ct.*, 121 Cal.App. 4th 1100, 1110 (2004) (reversing turnover order for property outside of California as beyond trial court's jurisdiction).

(4)   Mr. Yegiazaryan and his counsel have not had an opportunity to fully review the extensive filings from Petitioner, much less discuss the facts with English (and Cypriot) counsel nor research the new issues raised in these papers. [Adler Dec. ¶ 5.] This is precisely the kind of unfair and unreasonable abuse of the *ex parte* process that the Central District warned against in *Mission Power* nearly two decades ago:

> The fact that opposing parties are usually given an opportunity to argue or file opposing papers does not mask the plain truth: these hybrid ex parte motions are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system. Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced. **Often, the moving**

3

**OPPOSITION TO *EX PARTE* REQUEST FOR A TEMPORARY RESTRAINING ORDER**

> **party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two. This is due primarily to gamesmanship. The opposing party is usually told by telephone when the moving party has completed all preparation of the papers and has a messenger on the way to court with them**. The goal often appears to be to surprise opposing counsel or at least to force him or her to drop all other work to respond on short notice.

*Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 490 (C.D. Cal. 1995) (emphasis added).  That is exactly what happened here: Petitioner has obviously spent weeks preparing this motion, and notified Mr. Yegiazaryan's Los Angeles counsel of this new request literally half an hour before 16 separate documents were e-filed.  [Adler Dec. ¶¶ 6-8 and Ex. 1.]

In this matter, Petitioner is already protected by a Preliminary Injunction which provided him essentially the entire relief he thought necessary or appropriate at the time that he initiated the case.  Petitioner had identified nothing that has happened in the last hours, days, or even weeks that would justify addressing this matter outside of standard timing, and nothing is threatened to happen in the next hours, days, or weeks that would justify issuing an extensive order (far beyond the Court's usual jurisdiction) without giving Mr. Yegaizaryan a full opportunity to consider the matter and respond.  This Court should reject the gamesmanship by Petitioner and deny this unnecessary and harassing *ex parte* motion.

///

///

///

4

**OPPOSITION TO *EX PARTE* REQUEST FOR A TEMPORARY RESTRAINING ORDER**

## II.    CONCLUSION

If the matter is set to be heard on a regularly noticed basis, Mr. Yegiazaryan will have the opportunity to fully evaluate, research, and brief the issue at hand.  However, in the interim, Petitioner is already protected by the relief he previously sought, and there is no basis for the *ex parte* request here.  The Court should deny the *ex parte* motion and set the matter to be heard on a regularly noticed basis.

DATED:  September 17, 2015

                                        Tantalo & Adler LLP

                                        By:  /s/ Michael S. Adler
                                        Michael S. Adler
                                        Attorneys for Respondent

5

**OPPOSITION TO *EX PARTE* REQUEST FOR A TEMPORARY RESTRAINING ORDER**