Bruce H. Jackson, State Bar No. 98118
  bruce.jackson@bakermckenzie.com
Anne M. Kelts, State Bar No. 298710
  anne.kelts@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111
Telephone: +1 415 576 3000
Facsimile: +1 415 576 3099

Nicholas O. Kennedy, State Bar No. 280504
  nicholas.kennedy@bakermckenzie.com
**BAKER & McKENZIE LLP**
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX  75201
Telephone: +1 214 978 3000
Facsimile: +1 214 978 3099

Attorneys for Petitioner
VITALY IVANOVICH SMAGIN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| VITALY IVANOVICH SMAGIN,<br><br>Petitioner,<br><br>v.<br><br>ASHOT YEGIAZARYAN a/k/a ASHOT EGIAZARYAN,<br><br>Respondent. | **Case No.  14-cv-09764-R (PLAx)**<br><br>**DECLARATION OF EDWARD ELCOAT POULTON IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Fed.R.Civ.P. 56;<br>Local Rules 56-1 to 56-3]<br><br>Date: March 7, 2016<br>Time: 10:00 a.m.<br>Courtroom: 8, 2nd Floor<br>Before: The Hon. Manuel L. Real |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

6750073-v4\SFODMS

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

I, Edward E. Poulton, declare as follows:

1. I am a solicitor of the Senior Courts of England and Wales and a partner in the London office of Baker & McKenzie LLP. I make this declaration in support of the motion for summary judgment of Petitioner Vitaly Ivanovich Smagin ("**Mr. Smagin**"). Unless otherwise indicated, I make this declaration of my own personal knowledge, and, if called as a witness, I could and would testify competently thereto.

2. In December 2014 Baker & McKenzie's London office was instructed by Mr. Smagin in relation to Mr. Yegiazaryan's challenge to the arbitration award issued in Mr. Smagin's favor in November 2014. I continue to have conduct of that matter on behalf of Mr. Smagin. Baker & McKenzie was not instructed by Mr. Smagin in relation to the underlying arbitration.

3. I am duly authorized by Mr. Smagin to make this statement on his behalf.

## A. BACKGROUND TO THE ARBITRATION

4. I understand from reviewing the files pertaining to the arbitration in my firm's possession that, on October 26, 2010, Mr. Smagin commenced an arbitration against Mr. Yegiazaryan under the rules of the London Court of International Arbitration ("**LCIA**") (the "**Arbitration**").

5. The detailed background to Mr. Smagin's claims is set out in paragraphs 68-85 of the award in the Arbitration dated November 11, 2014, (the "**London Award**") and is summarized in the following Paragraphs 6-13. A true and correct copy of the London Award is attached hereto as **Exhibit A**.

6. Mr. Smagin and Mr. Yegiazaryan were investors in Europark through a Russian company named CJSC Centurion Alliance ("**Centurion**"). By 2006, the shares in Centurion were held as to 20% by Mr. Smagin, 73% by Mr. Yegiazaryan's nominees, and 7% by Mr. Dimitry Garkusha (a then associate of Mr. Yegiazaryan).

7. In September 2006, Mr. Yegiazaryan requested that Europark be provided as security in relation to a loan to be obtained from Deutsche Bank ("**DB**"

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

6750073-v4\SFODMS

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

and the "**DB Loan**") to finance another project in which Mr. Yegiazaryan was involved (the "**Hotel Moscow Project**"). Mr. Smagin had no involvement in the Hotel Moscow Project, but agreed to the request. He did so based on assurances from Mr. Yegiazaryan that Mr. Smagin's interest in Europark would be protected. Contractual arrangements were agreed to give effect to this, as explained below.

8. The DB Loan (a US$100 million facility) was entered into on October 6, 2006, the borrower being Blidensol Trading & Investments Limited ("**Blidensol**") – another of Mr. Yegiazaryan's Cypriot companies. The security arrangements included a mortgage over Europark and pledges, guarantees, and indemnities from its owners. For this purpose, DB required changes to the ownership structure of Europark: the parties' shares in Centurion were transferred to Doralin Trading & Investments ("**Doralin**") (a Cypriot company); and the shares in Doralin were in turn held by the parties through Tufts Invest & Trade Inc. ("**Tufts**") (a BVI company). Tufts then pledged its shares in Doralin to DB; Doralin did likewise with its shares in Centurion; and Centurion, Doralin, and Tufts each entered into deeds of guarantee and indemnity with DB.

9. Subject to these arrangements and encumbrances, the shares in Tufts were held as to 20% by Mr. Smagin, 73% by Kalken, and 7% by Mr. Garkusha, i.e. in the same proportions as Messrs. Smagin, Yegiazaryan and Garkusha had previously held shares in Centurion and (therefore) in Europark.

10. To protect Mr. Smagin's interest in Europark, a shareholders' agreement was entered into on December 26, 2006, between the Tufts shareholders (the "**Shareholders Agreement**"). It required the transfer of Kalken's and Mr. Garkusha's shares in Tufts to escrow in the event that the DB Loan was not repaid. An associated escrow agreement of the same date was entered into (the "**Escrow Agreement**"). Each agreement contained an LCIA arbitration clause.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

2

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

11. By 2008, the DB Loan was outstanding, DB's security in relation Europark remained in place and the Tufts shares had not been placed in escrow. Mr. Smagin raised his concerns about this with Mr. Yegiazaryan. Following a number of meetings, on March 3, 2008, Mr. Yegiazaryan and Mr. Smagin entered into an agreement pursuant to which (among other things) Mr. Yegiazaryan assumed obligations to increase and protect Mr. Smagin's interest in Europark (the "**2008 Agreement**"). The 2008 Agreement also contained an LCIA arbitration clause.

12. In breach of those agreements, Mr. Yegiazaryan and Kalken took steps to misappropriate Mr. Smagin's interest in Europark in 2009/10. These included in particular (and without Mr. Smagin's consent): (i) excluding Mr. Smagin's representatives at Centurion; (ii) failing to transfer the Tufts shares to escrow; (iii) amending Tufts' Articles of Association; (iv) removing Mr. Smagin as a director of Tufts and installing another of Mr. Yegiazaryan's Cypriot companies, MPH Law Services Limited as sole director; and (v) causing Tufts to transfer its interest in Doralin and Centurion to companies under the control of Mr. Yegiazaryan and a new third party partner and; thereby (vi) leaving Tufts (and so Mr. Smagin) with no interest in Europark.

13. In these circumstances, Mr. Smagin claimed in the Arbitration (among other things) damages to compensate him for the loss of his highly valuable interest in Europark, interest, and costs.

**B.   MR. YEGIAZARYAN'S FIRST CHALLENGE TO THE JURISDICTION OF THE ARBITRAL TRIBUNAL**

14. I understand from reviewing the files pertaining to the Arbitration in my firm's possession that the tribunal that heard Mr. Smagin's claims was a three person tribunal of experienced and well regarded arbitrators: Mr. Michael Lee, Mr. Per Runeland and Professor. Dr. Kaj Hober, (Chair) (the "**Tribunal**").

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

3

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

15. On September 8, 2011, Mr. Yegiazaryan filed an Objection to Jurisdiction alleging that Mr. Smagin had repudiated any existing arbitration agreement by submitting a claim for compensation in Russian criminal proceedings against Mr. Yegiazaryan.

16. On January 13, 2012, the Tribunal heard the parties' submissions in respect of Mr. Yegiazaryan's jurisdiction challenge. Expert witnesses were made available for cross-examination at the hearing.

17. On February 14, 2012, the Tribunal rendered its award on jurisdiction. The Tribunal denied Mr. Yegiazaryan's request that the Tribunal dismiss Mr. Smagin's claim for lack of jurisdiction.

## C. MR. YEGIAZARYAN'S ARGUMENTS IN THE ARBITRATION

18. I understand from reviewing the files pertaining to the Arbitration in my firm's possession that the Arbitration process lasted over four years, during which detailed pleadings, witness statements, expert reports, and submissions were exchanged.

19. In his pleadings and submissions, Mr. Yegiazaryan raised various arguments in response to the claims made against him (as did Kalken). The arguments raised by Mr. Yegiazaryan included:

a) That Mr. Yegiazaryan's signature on the 2008 Agreement was forged. Mr. Yegiazaryan argued that, as a result, the 2008 Agreement was not binding on him and the Tribunal had no jurisdiction over him. **Exhibit A, LondonAward ¶ 117**.

b) That, even if the 2008 Agreement were enforceable the arbitration agreement linking a breach of a specific article in the 2008 Agreement to the right to invoke an arbitration provision in a separate agreement to which Mr. Yegiazaryan was not a party (i.e. the Shareholders Agreement) was not binding. Accordingly, even if the Tribunal were to find that the 2008

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

4

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

Agreement was signed, binding and enforceable, it provided no basis for jurisdiction over Mr. Yegiazaryan. **Exhibit A, London Award ¶ 121**.

20. As set out in more detail below, these arguments, and others, were fully considered and rejected by the Tribunal.

### D. THE AVAILABILITY OF DISCOVERY IN THE ARBITRATION

21. I understand from reviewing the files pertaining to the Arbitration in my firm's possession that, as part of the Arbitration process, Mr. Smagin requested disclosure/discovery of documents from Mr. Yegiazaryan. No such disclosure/discovery of documents was requested of Mr. Smagin by Mr. Yegiazaryan.

22. On September 26, 2011, the Tribunal issued a procedural order (the "Procedural Order") which provided that by March 28, 2012 the parties were to: "submit any Requests to Produce documents in the form of Redfern Schedules, such Requests to Produce to be made in accordance with the IBA Rules ". A Redfern Schedule is often used by parties to an international arbitration to create a record of requests for disclosure of documents. It is a collaborative document, to which the claimant, respondent and tribunal usually contribute. A true and correct copy of the Procedural Order is attached hereto as **Exhibit B**.

23. The Procedural Order also provided that by April 11, 2012 the parties were to: "produce to each other (but not to the Tribunal) the documents requested and/or to submit any Objections to Requests to Produce, using Redfern Schedules".

24. Mr. Smagin subsequently provided a Redfern Schedule to Mr. Yegiazaryan, to which Mr. Yegiazaryan replied, resisting disclosure of the requested information.

25. I have seen no record of Mr. Yegiazaryan filing a Redfern Schedule requesting disclosure/discovery of documents from Mr. Smagin. This is confirmed by the fact that the Procedural History contained in the London Award only mentions Mr. Smagin's request for document production. (**Exhibit A, London Award ¶ 19**). If

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

5

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

Mr. Yegiazaryan had filed a Redfern Schedule as he was entitled to do, reference to it would have been made in the London Award.

26. Accordingly, it appears that, although he was entitled to do so, Mr. Yegiazaryan made no disclosure/discovery request of Mr. Smagin during the Arbitration, in spite of the opportunity afforded to him to do so.

### E. THE ARBITRATION HEARING

27. I understand from reviewing the files pertaining to the Arbitration in my firm's possession that live evidence and oral submissions were heard during a hearing of Mr. Smagin's claims held before the Tribunal in London on September 23-27, 2013. Mr. Yegiazaryan fully participated in the hearing through experienced arbitration counsel. Unlike Mr. Smagin, Mr. Yegiazaryan elected to give no evidence himself.

### F. THE LONDON AWARD

28. On November 11, 2014, the Tribunal issued the London Award in Mr. Smagin's favor. The London Award dealt with the Tribunal's jurisdiction and the merits of Mr. Smagin's claims (including quantum). The Tribunal took jurisdiction over Mr. Yegiazaryan based on his signature of the 2008 Agreement, holding that Article 2.10 of the 2008 Agreement provides for LCIA arbitration of the claims for relief against Mr. Yegiazaryan. The Tribunal rejected Mr. Yegiazaryan's assertions (based solely on expert evidence) that his signature on the 2008 Agreement was forged and rejected his contention that Article 2.10 was not, as a matter of construction, an effective arbitration clause. The Tribunal also rejected Kalken's jurisdictional objections.

29. Mr. Yegiazaryan and Kalken were each ordered (on a joint and several liability basis) to pay to Mr. Smagin sums in excess of US$72 million, plus interest and costs.

30. Specifically as regards Mr. Yegiazaryan's forgery allegations, the Tribunal concluded:

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

6

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

> [o]n the basis of the evidence before it, the Tribunal finds that [Mr. Yegiazaryan] has not been able to prove that the signature on the 2008 Agreement is not genuine. The burden of proof for an allegation of forgery must lie with the part (sic) making the allegation. [Mr. Yegiazaryan] has not met that burden of proof. The Tribunal will thus proceed on the basis that the signature on the 2008 Agreement is [Mr. Yegiazaryan's] genuine signature.
> **Exhibit A, London Award ¶ 164.**

31. As regards Mr. Yegiazaryan's allegations that the 2008 Agreement did not contain a valid arbitration agreement, the Tribunal concluded:

> [t]he Tribunal finds that the language of Article 2.10 and of Articles 2.1-2.4 as well as of the Shareholders' Agreement, to which reference is made, is broad enough to give the Tribunal jurisdiction over the claims raised by [Mr. Smagin] insofar as they are based on the Shareholders' Agreement, the Escrow Agreement and the 2008 Agreement.
> **Exhibit A, London Award ¶ 174.**

32. To date, the sums awarded to Mr. Smagin by the Tribunal remain unpaid.

## G. THE ENGLISH PROCEEDINGS

33. By way of an Arbitration Claim Form dated December 9, 2014, Mr. Yegiazaryan challenged the London Award in the London High Court of Justice under Section 67 (1)(a) of the Arbitration Act 1996 in an attempt to have it annulled on the basis of a lack of jurisdiction of the Tribunal (the "**English Proceedings**").

34. A true and correct copy of Mr. Yegiazaryan's Arbitration Claim Form is attached hereto as **Exhibit C**.

35. As set out in his Arbitration Claim Form, Mr. Yegiazaryan challenged the London Award on five bases:

   a) The 2008 Agreement, under which the Tribunal found jurisdiction, is a forgery, insofar as it is now relevant, the Tribunal's basis for concluding otherwise was unsound;

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

7

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

b) Article 2.10 of the 2008 Agreement (which the Tribunal found was the basis of its jurisdiction) is not an arbitration agreement at all but either (a) a statement as to the intentions of [Mr. Smagin] to bring a claim under the Shareholders' Agreement;

c) Even if Article 2.10 is an arbitration agreement, it contemplates a claim being brought under the Shareholders' Agreement and [Mr. Yegiazaryan] is not a party to the Shareholders' Agreement;

d) There is no basis for finding that Article 2.10 gives the Tribunal jurisdiction over any claims as relate to the Escrow Agreement; and

e) Article 2.10 creates as an express condition precedent to any claim of jurisdiction over [Mr. Yegiazaryan] under the Shareholders' Agreement the enforceability and/or performance of certain obligations under the 2008 Agreement. However these obligations are not enforceable and the conditions were never performed. Further the entire 2008 agreement is not enforceable." (See: the Arbitration Claim Form).

36. However, Mr. Yegiazaryan's challenge rested on two principal grounds: first, that Mr. Yegiazaryan's signature on the 2008 Agreement is a forgery; second, that Article 2.10 of the 2008 Agreement is not an effective arbitration clause. As he did in the Arbitration, Mr. Smagin vigorously opposed Mr. Yegiazaryan's jurisdictional challenge. These are the same grounds on which Mr. Yegiazaryan sought to argue that the Tribunal had no jurisdiction over him and, from a review of Yegiazaryan's Answer to the Petition to Confirm the London Award in this Court, the same grounds on which he argues for non-recognition under the New York Convention.

### H. THE AVAILABILITY OF DISCOVERY IN THE ENGLISH PROCEEDINGS

37. As a matter of English procedural law, Mr. Yegiazaryan had the opportunity to request disclosure/discovery from Mr. Smagin as part of English

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

8

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

Proceedings pursuant to Part 31 and Practice Direction 31A of the Civil Procedure Rules ("**CPR**"), which apply to arbitration claims brought in the London High Court (see CPR, r31.1(2) which states: "[t]his Part [31] applies to all claims except a claim on the small claims track."). By way of example, if Mr. Yegiazaryan had so wished he could have applied for an order for "specific disclosure" from Mr. Smagin, to compel Mr. Smagin to disclose to Mr. Yegiazaryan documents that were relevant to the issues in dispute before the court. No such application (or any application for disclosure) was made by Mr. Yegiazaryan as part of the English Proceedings. True and correct copies of CPR, r31.1(2), CPR, r31.12 and Practice Direction 31A are collectively attached hereto as **Exhibit D**.

38.  In addition, if Mr. Yegiazaryan had wished to secure evidence from any particular individual for the purposes of the English Proceedings he could have requested that the court issue a witness summons in respect of individuals within England and Wales. In respect of individuals outside the jurisdiction, Mr. Yegiazaryan could have requested that the London High Court issue a letter of request to the judicial authorities of the country in which the proposed deponent is and request the assistance of the authorities in that jurisdiction to obtain the evidence required from the individual.

39.  Mr. Yegiazaryan did not request that the London High Court issue any such witness summons or letter of request.

I.     **THE HEARING OF MR. YEGIAZARYAN'S CHALLENGE**

40.  Mr. Yegiazaryan was represented in the English Proceedings by a firm of experienced and well regarded solicitors (Gibson, Dunn & Crutcher LLP) and two experienced and well regarded barristers (Ricky Diwan QC and Jeremy Brier). Like the Arbitration, detailed submissions, witness statements and expert reports were exchanged between the parties. Crucially, the hearing of Mr. Yegiazaryan's challenge represented a complete *de novo* hearing of the issues raised by the parties.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

9

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

41. A hearing was held in the London High Court over four days between June 23-26, 2015. The judge overseeing the proceedings (Mr. Justice Teare) is an experienced and well regarded judge. The hearing provided both parties the opportunity to present all evidence that they desired to present. It also heard three (3) hours of live testimony from Mr. Smagin and five (5) hours of live testimony from Mr. Yegiazaryan. The court also reviewed expert evidence regarding Mr. Yegiazaryan's claim that his signature on the 2008 Agreement had been forged.

## J.   THE ENGLISH JUDGMENT

42. After hearing all of the evidence and submissions from both parties, Mr. Justice Teare rejected Mr. Yegiazaryan's challenge and upheld the London Award. Attached hereto as **Exhibit E** is a true and correct copy of the Judgment of Mr. Justice Teare dated July 9, 2015 (the "**English Judgment**").

43. In the first paragraph of his judgment Mr. Justice Teare noted the two grounds on which Mr. Yegiazaryan had based his challenge and the scope of the court's role in assessing those grounds:

> [t]he challenge raises two points: (i) did [Mr. Yegiazaryan] sign a document known as the 2008 Agreement and (ii) if he did, does the 2008 Agreement contain an arbitration agreement? The first is a question of fact. The second is a question of construction. Both points were determined by the tribunal against [Mr. Yegiazaryan] after hearing evidence and argument.
> **Exhibit E, English Judgment ¶ 1.**

44. The judge was clear that the issues he was considering were identical to the issues that had been before the Tribunal and which, from my review, are the identical issues raised in this Court.

45. As regards the allegation that Mr. Yegiazaryan's signature on the 2008 Agreement was a forgery, the court approached this purely as a issue of fact. More specifically, the court noted:

> In order to resolve the question whether [Mr. Yegiazaryan] signed the 2008 Agreement (as alleged by [Mr. Smagin]) or whether the

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

10

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

> signature purporting to be his was a forgery (as alleged by [Mr. Yegiazaryan]) it is necessary to consider all the evidence in the case but in particular (i) the probabilities, (ii) the oral evidence, (iii) the documentary evidence and (iv) the evidence of handwriting experts.
>
> **Exhibit E, English Judgment ¶ 12.**

46. In respect of all four categories of evidence, the judge found in Mr. Smagin's favour.

47. As regards, Mr. Yegiazaryan's second ground of challenge (whether the 2008 Agreement contained a valid arbitration agreement), the court summed up the approach that it should take to that issue under English law (which applies to the 2008 Agreement and therefore to the interpretation of article 2.10 of the 2008 Agreement) as follows:

> [t]he court's task is to ascertain the meaning which article 2.10 [of the 2008 Agreement] would have conveyed to a reasonable person possessed of all relevant background reasonably available to both parties in March 2008.  Where the words of the contract are clear effect must be given to them.  The less clear the words are the more ready the court can properly be to depart from their natural meaning.
>
> **Exhibit E, English Judgment ¶ 40.**

48. The court then moved on to note that:

> [i]n the present case there is a problem with the words of article 2.10 [of the 2008 Agreement].  The article provides that Mr. Smagin will seek to enforce his rights under the Shareholders' Agreement but then provides that he will do so by filing a claim against [Mr. Yegiazaryan] . Yet [Mr. Yegiazaryan] was not expressed to be a party to the Shareholders' Agreement.  The meaning which the clause was intended to bear may therefore be said to be unclear.
>
> **Exhibit E, English Judgment ¶ 41.**

49. After considering the background to and nature of the dispute, the judge ultimately concluded that:

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

11

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

> [t]he reasonable man, with knowledge of the background reasonably available to both parties in March 2008, would understand article 2.10 [of the 2008 Agreement] as an arbitration clause which referred to LCIA arbitration claims by [Mr. Smagin] against [Mr. Yegiazaryan] for breach of the obligations in the Shareholders' Agreement and Escrow Agreement which he assumed in articles 2.1-2.2 of the 2008 Agreement, of the related obligations in articles 2.3-2.4 and of the implied term within them.
> **Exhibit E, English Judgment ¶ 55**.
>
> [Mr. Yegiazaryan] signed the 2008 Agreement. Article 2.10 of that agreement contained an arbitration clause which bound [Mr. Yegiazaryan] and conferred jurisdiction on the LCIA tribunal. The application under section 67 of the Arbitration Act 1996 must therefore be dismissed. **Exhibit E, English Judgment ¶ 56**.

50. Mr. Justice Teare also concluded that, aspects of Mr. Yegiazaryan's evidence was "inconsistent with the probabilities" **(Exhibit E, English Judgment ¶ 6)** and that he "was unable to accept this evidence". *Id.* Mr. Justice Teare also concluded that Mr. Yegiazaryan "did not tell the court the truth when he said he was not the beneficial owner of [Kalken Holdings Limited]." **(Exhibit E, English Judgment ¶ 15)** and that Mr. Yegiazaryan "must have known that was not the truth [that he was not the beneficial owner of Kalken]". *Id.* Mr. Justice Teare therefore concluded that he "must treat [Mr. Yegiazaryan's] evidence with regard to the 2008 Agreement with caution and indeed skepticism." *Id.*

51. In spite of this second robust rejection of Mr. Yegiazaryan's grounds for objecting to the jurisdiction of the Tribunal, Mr. Yegiazaryan still refused to pay the amounts owed to Mr. Smagin pursuant to the London Award and has since resisted all efforts to enforce the London Award against him.

K.   **MR. YEGIAZARYAN'S APPEAL**

52. Subsequent to the English Judgment, Mr. Yegiazaryan sought permission from the London High Court to appeal the English Judgment to the English Court of

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

12

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT

Appeal. Mr. Yegiazaryan's application for permission to appeal was only made in respect of one aspect of his challenge to the London Award: that the 2008 Agreement did not contain an arbitration agreement that was binding upon him. A true and correct copy of the transcript of the hearing at which Mr. Yegiazaryan requested permission to appeal the English Judgment is attached hereto as **Exhibit F**. (**Exhibit F, Transcript 10:30-34**). No application was made in respect of Mr. Yegiazaryan's allegation that his signature on the 2008 Agreement was forged. This issue is therefore not the subject of an appeal by Mr. Yegiazaryan.

53. Permission to appeal was granted by Mr. Justice Teare on July 9, 2015 on the basis of the construction of the arbitration agreement in the 2008 Agreement only. A true and correct copy of the Order made by Mr. Justice Teare in relation to Mr. Yegiazaryan's appeal is attached hereto as **Exhibit G**. Mr. Yegiazaryan's appeal will be the third time that a court/tribunal has had to consider his argument that clause 2.10 of the 2008 Agreement was not a valid arbitration clause.

54. Mr. Yegiazaryan filed his appeal to the English Court of Appeal on July 30, 2015. The Court of Appeal had previously indicated that the appeal would be heard by May 2016. However, based on conversations with the Court of Appeal listing office, it is my understanding that there is currently a significant backlog in the English Court of Appeal, such that the appeal is unlikely to be heard by May 2016 and is more likely to be heard later in 2016.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this Declaration was executed by me on February 5, 2016 in London, England.

/s/ *[signature]*
Edward E. Poulton

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

13

Case No. 14-cv-09764-R (PLAx)
POULTON DECL IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT