Michael S. Adler, SBN 190119
 madler@ta-llp.com
Joel M. Tantalo, SBN 206096
 jtantalo@ta-llp.com
**TANTALO & ADLER LLP**
1901 Avenue of the Stars, Ste. 1000
Los Angeles, CA 90067

Telephone: (310) 734-8695
Fax:       (310) 734-8696

Attorneys for respondent Ashot Yegiazaryan

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VITALY IVANOVICH SMAGIN<br><br>    Petitioner,<br><br>    v.<br><br>ASHOT YEGIAZARYAN,<br><br>    Respondent. | **CASE NO. 14-cv-09764-R (PLAx)**<br><br>Before the Honorable Manuel L. Real<br>United State District Judge<br><br>**EXPERT OPINION OF GALINA ANATOLYEVNA KYRLOVA IN IN SUPPORT OF RESPONDENT'S MOTION TO STAY ENFORCEMENT OF JUDGMENT PENDING ENGLISH APPELLATE PROCEEDINGS**<br><br>**Hearing Place:** Courtroom 8<br>**Hearing Date:** June 6, 2016<br>**Hearing Time:** 10:00 a.m. |

IN THE DISTRICT COURT OF NICOSIA  Case no. 6059/2015

**VITALY IVANOVICH SMAGIN**

**Plaintiff**

-и-

**(1) DENORO INVESTMENTS LIMITED**
**(2) BLIDENSOL TRADING AND INVESTMENT LIMITED**
**(3) SKENDLEBY INVESTMENTS LIMITED**
**(4) M P H MANAGEMENT LIMITED**
**(5) M P H LAW SERVICES LIMITED**

**Defendants**

---

**EXPERT OPINION OF GALINA ANATOLYEVNA KRYLOVA**

---

**2 FEBRUARY 2016**

*Translation from Russian*

## I. INTRODUCTION

1. I, Galina Anatolyevna Krylova, am a qualified advocate and a practising member of the Advocates' Chamber of Moscow. I have over 30 years of work experience as a professional lawyer. Having graduated from the Law Faculty of Lomonosov Moscow State University in 1983, I subsequently worked for 9 years supporting the State prosecution in criminal cases in the Moscow city district courts and the Moscow City Court, first as an assistant prosecutor in the Krasnopresnensky District of Moscow, and afterwards as a prosecutor in Directorate for Supervision of Criminal Litigation of the Moscow Prosecutor's Office (1983-1992). Since 1992 I have been practising as an advocate. For 10 years I carried out my practice in the Moscow City Collegium of Advocates (1992-2002), and from 2002 I was the senior partner in the law firm Zabralova, Krylova & Partners. Currently I am the senior lawyer of the law firm Berg and Green.

2. Throughout my entire professional career my practice has been focused on judicial disputes and I specialise in matters of Russian civil and criminal litigation. In my criminal practice I specialise primarily in white-collar crime and other types of economic crime. I am also the author of a series of books and numerous articles devoted to various aspects of the law, including problems of civil and criminal litigation. Although I have good comprehension of written English, I am able to read texts written in English and I can converse in English on an intermediate level, my native tongue is Russian. If called to give evidence before the court I would prefer to do so in Russian.

## II. INSTRUCTIONS

3. This legal opinion, which has been prepared on the instructions of the law firm Haviaras & Phillipou LLC. For the purpose of preparing my opinion I have been provided with the following documents:

    a)  a complaint of Vitaly Ivanovich Smagin ('V.I. Smagin') dated 19 August 2010 and addressed to the Prosecutor General of Russia;

    b)  an order dated 12 November 2010 recognising V.I. Smagin as a victim in a criminal case;

    c)  the civil claim of V.I. Smagin dated 12 November 2010 and the application of V.I. Smagin of 12 November 2010 requesting recognition as a civil claimant, both submitted in the criminal case;

    d)  an order dated 12 November 2010 recognising V.I. Smagin as a civil claimant in the criminal case;

    e)  an application of V.I. Smagin dated 12 November 2010 seeking a freezing order as security for the civil claim;

*Translation from Russian*

    f)    an order of the Basmannyy District Court of Moscow dated 25 November 2010 to freeze the property of Ashot Gevorkovich Egiazaryan ('A.G. Egiazaryan');

    g)    a legal opinion of Ms. Larisa Nikolayevna Maslennikova dated 27 October 2011 (the 'Maslennikova Opinion');

    h)    a document of Eversheds LLP dated 28 October 2011 'Claimant's Response to the Second Respondent's Objection to Jurisdiction' (the 'Eversheds Response').

    i)    an award of the London Court of International Arbitration in case no. 101721 dated 11 November 2014.

4.    I have been asked to comment on the whether the following legal conclusions made on the basis of Ms Maslennikova's opinion are well founded, which are referred to in the following submissions by Mr Smagin's lawyers to the Cyprus court:

Related Russian Proceedings

29. In relation to the facts that led to the LCIA proceedings (in other words the deprivation of the ownership of the interest in Europark), the applicant on 19/08/2010 proceeded with reporting to the general Attorney in Moscow against AE.

30. As a result of the above, on 6/11/2010 the criminal case number 201/355137-10 was filed.

31. On 12/11/2010 the applicant was recognized as a civil claimant in the aforementioned case number 201/355137-10, as a result of an investigation between 2006/2007 against AE which showed that illegally deprived the ownership of the applicant in Europark.

32. As a result of the criminal case AE:

    a. was placed on the Russian wanted list on 24/11/2010

    b. was accused in absentia on 27/12/2010

    c. was placed on the Interpol wanted list on 27/12/2010.

    d. was arrested in absentia on 31/01/2011

    e. The following assets were frozen:

        I.    Europark on 26/11/2010

        II.    three plots of land at Rublevskoye Highway on 16/12/2010

        III.    Money and shares on 21/01/2011.

33. I attach as Exhibit 11 an opinion dated 27/10/2011 is LN Maslennikova who is a lecturer of Criminal Proceedings at the Moscow State Academy of Law. In this opinion the proceedings against AE are explained. In this opinion it is also explained that the freezing of Europark does not secure the applicant. This is because a civil action filed within criminal proceedings in Russian differs from an action filed within civil procedures. The applicant has no saying or control of these proceedings. Only when the criminal proceedings come to an end, the civil proceedings may be initiated. In our scenario even if AE is to be found guilty it is not definite that the applicant will

3

*Translation from Russian*

receive any kind of damages. To the contrary if AE is not accused, due to any circumstances, then the applicant will not be in a position to initiate civil proceedings.

### III. OPINION

5. First, I should note that Ms Maslennikova's opinion was prepared in 2011 in the context of differenct proceedings, namely at the early stages of arbitration no. 101721 in the London Court of International Arbitration. During those proceedings, I prepared a reply to Ms Maslennikova's opinion and, although I do not agree with a number of her contentions, for the most part they do not concern the issues raised by Mr Smagin's lawyer in these proceedings. Therefore, instead of repeating them here, I have attached for the court's information a copy of my own opinion that was made for the purpose of arbitration no. 101721.

6. Second, I wish to note that the assertions of Mr Smagin's lawyers made in paragraph 33 of the above submissions are legally unsound and contrary to the presented materials for the following reasons:

*On the security of Mr Smagin's interests*

7. Contrary to the contentions of Mr Smagin's lawyers, Ms Maslennikova's opinion does not contain a conclusion that the freeze of the Europark Shopping Centre does not secure Mr Smagin's interests. Ms Maslennikova merely mentions the fact of the property freeze in passing on page 3.

8. Furthermore, the contention of Mr Smagin's lawyers that the freeze of the Europark Shopping Centre does not secure Mr Smagin's interests is contrary to the circumstances of the case. As can be seen from the application of Mr Smagin dated 12 November 2010 seeking to freeze property as security for his civil claim, and the decision of the Basmannyy District Court of Moscow of 25 November 2010 imposing a freeze on the property of Ashot Gevorkovich Egiazaryan ("A.G. Egiazaryan"), the freeze was imposed namely on the application of Mr Smagin and namely as security for his civil claim. Therefore, the decision to freeze the property secures namely Mr Smagin's interests up until the time it is overturned by a court.

9. It should also be noted that Mr Smagin's lawyers took the opposite position during examination of case no. 101721 in the London Court of International Arbitration. During the preparation of my opinion dated 13 December 2011, I was provided with submissions of Mr Smagin's lawyers dated 28 October 2011 with the title "Claimant's Response to the Second Respondent's Objection to Jurisdiction". At paragraph 111 of those submissions, Mr Smagin's lawyer admitted that the civil claim submitted by Mr Smagin in the context of the criminal case in Russia was filed after his arbitration claim and namely with the aim of securing a freeze of property to satisfy a future arbitral award:

> 111. Furthermore, Mr. Smagin is legitimately concerned over future enforcement of an arbitral award in Russia (where, he believes, the majority of Mr. Yegiazaryan's

      assets are located). The Russian Criminal Claim has therefore been commenced to enable freezing orders to be obtained from the Russian court. These freezing orders protect assets that may satisfy an arbitral award. It is not inconsistent with the arbitration proceedings to have these freezing orders in place (cf *Dubai Islamic Bank*).

10. Finally, I draw attention to the fact that, in the event that another participant in the criminal case makes an application to remove the freezing order, then Mr Smagin, as the civil claimant on whose behalf the freeze was imposed, is entitled to know about this, to lodge objections to any such application and to participate in its examination by the court under Article 44 of the Criminal Procedure Code of the Russian Federation.

11. Therefore, the conclusion that the freezing order in the criminal case does not secure Mr Smagin's interests is not based on the law and is contrary to the presented documents.

*Does Mr Smagin have the procedural possibility to commence proceedings to enforce the award of the London Court of International Arbitration dated 11 November 2014 in arbitration no. 101721 against property frozen as security for the civil claim in Russia?*

12. Mr Smagin of course has the procedural possibility to commence enforcement proceedings with the award of the London Court of International Arbitration dated 11 November 2014 in arbitration no. 101721. The law provides him with significant procedural powers to resolve the issue of recovering damages from the property frozen as security for his civil claim in Russia, regardless of the outcome of the unresolved criminal case.

13. In particular, the existence of an unresolved criminal case, including a criminal case in which property has been frozen as security for Mr Smagin's civil claim, in no way prevents him from filing a separate application in court to recognise and enforce the foreign arbitral award under the procedure prescribed by Chapter 45 of the Civil Procedure Code[1]. Resolution of a civil case with this subject matter does not depend upon the existence or outcome of the criminal case.

14. The special features of examination of a civil case brought in the context of criminal proceedings, which Ms Maslennikova refers to in her opinion (the conclusions of which I do not completely agree with for the reasons set out in my own earlier written opinion), do not apply to applications to recognise and enforce foreign arbitral awards, which are heard under the rules of civil procedure.

15. Moreover, if V.I. Smagin, contrary to the contentions made previously by his lawyers, considers that the pendency of his unresolved civil claim, which was secured by a freezing order in the context of the criminal case, is an obstacle to execution of the arbitral award against the frozen property, then he is entitled to apply to remove the freeze made in the criminal case in whole or in part, or to withdraw his civil claim altogether, which in accordance

---

[1] The text of chapter 45 of the Civil Procedure Code of the Russian Federation is attached.

5

*Translation from Russian*

with Article 44(5) of the Criminal Procedure Code may be done at any time during the criminal case right up until the moment the court goes into chambers to render judgment.

G.A. Krylova

2 February 2016

*Translation from Russian*

# CHAPTER 45. RECOGNITION AND EXECUTION OF THE DECISIONS OF FOREIGN COURTS AND OF FOREIGN TRIBUNALS (ARBITRATION)

[…]

**Article 411. Content of the Petition for a Forcible Execution of the Decision of a Foreign Court**

1. A petition for forcible execution of the decision of a foreign court shall contain:

1) the name of the exactor or of his representative, if the petition is submitted by the representative, an indication of the place of residence, and if the exactor is an organization, an indication of the place of its location;

2) the name of the debtor and an indication of his place of residence, and if the debtor is an organization, an indication of the place of its location;

3) the exactor's request for permitting a forcible execution of the decision or for pointing out from what particular moment its execution is to be demanded.

In the petition may also be supplied other information, including the telephone and fax numbers, and e-mail addresses, if these are necessary for a correct and timely resolution of the case.

[…]

3. The petition for a forcible execution of the decision of a foreign court shall be considered in an open court session, with the notification of the debtor about the time and the place of considering the petition. The failure to appear without a valid reason on the part of the debtor, to whom, as far the court knows, the summons was handed in, is not an obstacle to the consideration of the petition. If the debtor has filed to the court a request for postponing the time of the consideration of the petition and this request was recognized by the court as valid, the court shall postpone the time of the consideration and shall inform the debtor to this effect.

4. Having heard out the debtor's explanations and having considered the supplied proof, the court shall issue a ruling on the forcible execution of the decision of a foreign court, or on the refusal to do this.

5. On the grounds of the decision of a foreign court and of the court ruling on a forcible execution of this decision which has entered into legal effect, a writ of execution shall be issued, which shall be forwarded to the court at the place of execution of the decision of the foreign court.

6. If certain doubts arise in the court when it resolves the question of a forcible execution, it may request an explanation from the person who has filed the petition for a forcible execution of the decision of the foreign court, and may also interrogate the debtor on the merit of the petition, and if necessary, may demand an explanation from the foreign court which has adopted the decision.

**Article 412. Rejection of a Forcible Execution of the Decision of a Foreign Court**

1. A rejection of a forcible execution of the decision of a foreign court may be admissible if:

1) the decision in accordance with the law of the country on whose territory it was adopted has not entered into legal effect or is not subject to execution;

[…]

5) the execution of the decision may cause damage to the sovereignty of the Russian Federation or present a threat to the security of the Russian Federation, or contradicts public law and order in the Russian Federation;

[…]

2. The copies of the court ruling issued in conformity with the fourth part of Article 411 of the present Code shall be directed by the court to the exactor and to the debtor within three days of the day of

passing the court ruling. This ruling may be appealed against to a higher placed court in accordance with the procedure and within the time terms established in the present Code.

**Article 413. Recognition of the Decisions of Foreign Courts**

1. The decisions of foreign courts which do not require a forcible execution shall be regnoised without any further proceedings, unless objections to this come in from an interested person.

2. An interested person at the place of his residence or stay may submit to the Supreme Court of the Republic, to the territorial or the regional court, to the court of a city of federal importance, to the court of the autonomous region or to a court of an autonomous area the objections to the recognition of this decision within one month after he has learned about the arrival of the decision of the foreign court.

3. The objections of an interested person to the recognition of the decision of a foreign court shall be considered in an open court session with notifying this person about the time and the place of the consideration of the objections. The failure to appear of the interested person to whom, as the court knows, the summons was handed in, shall not be an obstacle to the consideration of the objections. If the interested person applies to the court with a request for putting off the time fixed for the consideration of the objections and if this request is recognized by the court as valid, the court shall postpone the time of the consideration and shall inform the interested person to this effect.

4. After the court has considered the objections to the recognition of the decision of a foreign court, the corresponding ruling shall be issued.

5. A copy of the court ruling shall be forwarded to the person at whose application the decision of the foreign court was recognised, and to his representative, as well as to the person who has submitted objections to the recognition of the decision. The court ruling may be appealed against to the higher-placed court in accordance with the procedure and within the time terms established in the present Code.

[…]

**Article 416. Recognition and Execution of the Decisions of Foreign Tribunals (Arbitrations)**

1. The rules of Articles 411-413 of the present Code, with the exception of the second part of Article 411 and of Items 1-4 and 6 of the first part of Article 412 of the present Code, shall also be applied towards the decisions of foreign tribunals (arbitrations).

2. The party requesting to recognise or execute the decision of a foreign tribunal (arbitration) shall present the genuine decision of the foreign tribunal (arbitration) or its properly certified copy, as well as the genuine arbitration agreement or its properly certified copy. If the arbitration decision or the arbitration agreement is rendered in a foreign language, the party shall is also obliged to present a certified translation of these documents into Russian.

**Article 417. Refusal in the Recognition and Execution of the Decisions of Foreign Tribunals (Arbitration)**

1. The recognition and the execution of the decision of a foreign tribunal (arbitration) may be refused:
1) at a request from the party against which it is directed, if this party presents to the competent court of which the recognition and the execution are requested evidence that:

- one of the parties of the arbitration agreement was to a certain extent legally incapable or this agreement is invalid in conformity with the law to which the parties have subjected it, and in the absence of such evidence - in conformity with the law of the country in which this decision was adopted;

- the party against which the decision was adopted was not properly notified about the appointment of an arbiter or about the arbitration investigation, or it could not have submitted evidence because of any other reasons, or the decision was passed on a dispute not envisaged in the arbitration agreement or not falling under its terms, or contains resolutions on issues outside the framework of the arbitration agreement. If the resolutions on the questions embraced by the arbitration agreement can be separated from the resolutions on the questions not embraced by such agreement the part of

*Translation from Russian*

the court decision in which the resolutions are contained on the questions embraced by the arbitration agreement, may be recognised and executed;

- the composition of the tribunal or the arbitration investigation did not correspond to the arbitration agreement or in the absence of such agreement it did not correspond to the law of the country in which the foreign tribunal (the arbitration) took place;

- the decision has not yet become obligatory for the parties, or it was cancelled, or its execution was suspended by the court of the country in conformity with whose law it was adopted;

2) if the court establishes that the dispute cannot be an object of the arbitration investigation in conformity with the federal law or that the recognition and execution of this decision of the foreign tribunal (arbitration) contradict the public law and order of the Russian Federation.

2. If in the court is put forth a petition for the cancellation or for the suspension of the execution of the decision of a foreign tribunal (arbitration), the court of which the recognition and the execution are requested may put off the adoption of its decision if it finds it proper.

В ОКРУЖНОМ СУДЕ НИКОСИИ            Дело № 6059/2015

**ВИТАЛИЙ ИВАНОВИЧ СМАГИН**

<u>Истец</u>

**-и-**

**(1) ДЕНОРО ИНВЕСТМЕНТС ЛИМИТЕД**
**(2) БЛИДЕНСОЛ ТРЕЙДИНГ ЭНД ИНВЕСТМЕНТС ЛИМИТЕД**
**(3) СКЭНДЛБИ ИНВЕСТМЕНТС ЛИМИТЕД**
**(4) ЭМ-ПИ-ЭЙЧ МЕНЕДЖМЕНТ ЛИМИТЕД**
**(5) ЭМ-ПИ-ЭЙЧ ЛОУ СЕРВИСЕС ЛИМИТЕД**

<u>Ответчики</u>

---

**ЭКСПЕРТНОЕ ЗАКЛЮЧЕНИЕ ГАЛИНЫ АНАТОЛЬЕВНЫ КРЫЛОВОЙ**

---

**2 ФЕВРАЛЯ 2016 ГОДА**

**I. ВВЕДЕНИЕ**

1. Я, Галина Анатольевна Крылова, являюсь квалифицированным адвокатом и практикующим членом Адвокатской палаты г. Москвы. Опыт моей работы в качестве профессионального юриста составляет более 30 лет. Окончив юридический факультет Московского государственного университета им. Ломоносова в 1983 году, я затем на протяжении 9 лет поддерживала государственное обвинение по уголовным делам в районных судах г. Москвы и Московском городском суде, работая помощником прокурора Краснопресненского района г. Москвы, а затем прокурором Управления по надзору за рассмотрением уголовных дел в судах Прокуратуры г. Москвы (1983-1992 гг.). С 1992 года я являюсь практикующим адвокатом. На протяжении 10 лет я осуществляла свою практику в Московской городской коллегии адвокатов (1992-2002 гг.), а с 2002 года являлась управляющим/старшим партнером адвокатского бюро «Забралова, Крыловы и партнеры». В настоящее время являюсь старшим партнером адвокатского бюро «Берг и Грин».

2. На протяжении всей моей профессиональной карьеры моя практика была сосредоточена на судебных спорах, и я специализируюсь по вопросам российского гражданского и уголовного процесса. В моей практике по уголовным делам я специализируюсь в основном на «беловоротничковой преступности» и другого рода экономических преступлениях. Я также являюсь автором ряд книг и многочисленных статей, посвященных различных аспектам права, в том числе и проблемам гражданского и уголовного процесса. Хотя у меня есть хорошее понимание английского языка и я могу читать текст, написанном на английском языке и общаться на английском на среднем уровне, мой родной язык - русский. В случае моего вызова перед судом для дачи показаний я предпочла бы выступать на русском языке.

**II. ПОРУЧЕНИЕ**

3. Настоящее правовое заключение подготовлено по поручению юридической фирмы «Haviaras & Phillipou LLC». В целях подготовки заключения мне представлены следующие документы:

    a) жалоба Виталия Ивановича Смагина («В.И. Смагин») от 19 августа 2010 года, поданная на имя Генерального прокурора Российской Федерации;

    b) постановление от 12 ноября 2010 года о признании В.И. Смагина потерпевшим по уголовному делу;

    c) гражданский иск В.И. Смагина от 12 ноября 2010 года и заявление В.И. Смагина от 12 ноября 2010 года о признании его гражданским истцом, поданные в рамках уголовного дела;

d) постановление от 12 ноября 2010 года о признании В.И. Смагина гражданским истцом по уголовному делу;

e) заявление В.И. Смагина от 12 ноября 2010 года о наложении ареста на имущество в обеспечение гражданского иска;

f) постановление Басманного районного суда г. Москвы от 25 ноября 2010 года о наложении ареста на имущество Ашота Геворковича Егиазаряна («А.Г. Егиазарян»);

g) юридическое заключение г-жи Ларисы Николаевны Масленниковой от 27 октября 2011 года («Заключение Масленниковой»);

h) документ «Eversheds LLP» от 28 октября 2011 с названием «Claimant's Response to the Second Respondent's Objection to Jurisdiction» («Отзыв Eversheds»);

i) решение Лондонского международного третейского суда по делу № 101721 от 11 ноября 2014 году.

4. Мне предложено прокомментировать обоснованность нижеследующих правовых выводов, сделанных на основании заключения г-жи Масленниковой, на которое имеется ссылка в нижеследующих объяснениях адвокатов г-на Смагина кипрскому суду:

Related Russian Proceedings

29. In relation to the facts that led to the LCIA proceedings (in other words the deprivation of the ownership of the interest in Europark), the applicant on 19/08/2010 proceeded with reporting to the general Attorney in Moscow against AE.

30. As a result of the above, on 6/11/2010 the criminal case number 201/355137-10 was filed.

31. On 12/11/2010 the applicant was recognized as a civil claimant in the aforementioned case number 201/355137-10, as a result of an investigation between 2006/2007 against AE which showed that illegally deprived the ownership of the applicant in Europark.

32. As a result of the criminal case AE:

    a. was placed on the Russian wanted list on 24/11/2010

    b. was accused in absentia on 27/12/2010

    c. was placed on the Interpol wanted list on 27/12/2010.

    d. was arrested in absentia on 31/01/2011

    e. The following assets were frozen:

        I. Europark on 26/11/2010

        II. three plots of land at Rublevskoye Highway on 16/12/2010

3

> III. Money and shares on 21/01/2011.

> 33. I attach as Exhibit 11 an opinion dated 27/10/2011 is LN Maslennikova who is a lecturer of Criminal Proceedings at the Moscow State Academy of Law. In this opinion the proceedings against AE are explained. In this opinion it is also explained that the freezing of Europark does not secure the applicant. This is because a civil action filed within criminal proceedings in Russian differs from an action filed within civil procedures. The applicant has no saying or control of these proceedings. Only when the criminal proceedings come to an end, the civil proceedings may be initiated. In our scenario even if AE is to be found guilty it is not definite that the applicant will receive any kind of damages. To the contrary if AE is not accused, due to any circumstances, then the applicant will not be in a position to initiate civil proceedings.

**III.   ЗАКЛЮЧЕНИЕ**

5. Во-первых, следует отметить, что заключение г-жи Масленниковой было сделано в 2011 в рамках другого процесса, а именно на ранних стадиях арбитражного разбирательства № 101721 в Лондонском международном третейском суде. В ходе указанного процесса мною был дан ответ на заключение г-жи Масленниковой и, хотя я не согласна с рядом ее утверждений, в основном они не касаются вопросов, поднятых адвокатами г-на Смагина в данном процессе. Поэтому вместо их повторения здесь, для сведения суда прилагаю копию своего же заключения, также сделанного в рамках арбитражного разбирательство № 101721.

6. Во-вторых хочу отметить, что утверждения адвокатов г-на Смагина, сделанные в параграфе 33 вышеуказанных объяснений, являются юридически несостоятельными и противоречат представленным материалам по следующим причинам.

*Об обеспеченности интересов г-на Смагина*

7. Вопреки утверждениям адвокатов г-на Смагина, в заключении г-жи Масленниковой не содержится вывод о том, что арест торгового центра «Европарк» не обеспечивает интересы г-на Смагина. Г-жа Масленникова лишь вскользь упоминает факт ареста имущества на странице 3.

8. Кроме того, утверждения адвокатов г-на Смагина о том, что что арест торгового центра «Европарк» якобы не обеспечивает интересы г-на Смагина, противоречит фактическим обстоятельствам по делу. Как усматривается из заявления г-на Смагина от 12 ноября 2010 года о наложении ареста на имущество в обеспечение гражданского иска и постановлений Басманного районного суда г. Москвы от 25 ноября 2010 года о наложении ареста на имущество Ашота Геворковича Егиазаряна («А.Г. Егиазарян»), арест был наложен именно по заявлению г-на Смагина и именно в обеспечение его гражданского иска. Поэтому решение об аресте обеспечивает именно интересы г-на Смагина вплоть до его отмены судом.

9. Следует также отметить, что адвокаты г-на Смагина занимали противоположную позицию при рассмотрении дела № 101721 в Лондонском международном третейском суде. При подготовке моего заключения от 13 декабря 2011 года, поданного в рамках указанного дела, мне были представлены объяснения адвокатов г-на Смагина от 28 октября 2011 с названием «Claimant's Response to the Second Respondent's Objection to Jurisdiction». В параграфе 111 данных объяснениях адвокатами г-на Смагина признали, что гражданский иск, заявленный г-ном Смагиным и рамках уголовного дела в России, было подан после иска в третейском суде именно с целью получения ареста на имущество для удовлетворения будущего решения третейского суда:

> 111. Furthermore, Mr. Smagin is legitimately concerned over future enforcement of an arbitral award in Russia (where, he believes, the majority of Mr. Yegiazaryan's assets are located). The Russian Criminal Claim has therefore been commenced to enable freezing orders to be obtained from the Russian court. These freezing orders protect assets that may satisfy an arbitral award. It is not inconsistent with the arbitration proceedings to have these freezing orders in place (cf *Dubai Islamic Bank*).

10. Наконец обращаю внимание на то, что в случае подачи заявления о снятии ареста другим участником уголовного дела, г-н Смагин, как гражданский истец в пользу которого арест был наложен, в соответствии с ст. 44 Уголовно-процессуального кодекса Российской Федерации имеет право знать об этом, подавать возражения на подобные заявления и участвовать в их судебном рассмотрении.

11. Таким образом, вывод о том, что наличие ареста в рамках уголовного дела не защищает интересы г-на Смагина, не основан на законе и противоречит представленным документам.

*Имеет ли г-на Смагин процессуальную возможность возбудить процесс взыскания по решению Лондонского международного третейского суда по делу № 101721 от 11 ноября 2014 году с имущества, арестованного в обеспечении его гражданского иска в России?*

12. Г-н Смагин, безусловно, имеет процессуальную возможность возбудить процесс взыскания по решению Лондонского международного третейского суда по делу № 101721 от 11 ноября 2014 году. Закон предоставляет ему значительные процессуальные полномочия для решения вопроса о получении возмещения убытков с имущества, арестованного в обеспечение его гражданского иска в России, вне зависимости от исхода неразрешенного уголовного дела.

13. В частности, наличие неразрешенного уголовного дела, в том числе и уголовного дела, в рамках которого наложен арест имущества в обеспечение гражданского иска г-на Смагина, ни в коей мере не препятствует ему обратиться в суд с отдельным заявлением о признании и приведении в исполнение решения иностранного третейского суда в порядке, предусмотренного главой 45 гражданским процессуальным

кодексом[1]. Разрешение гражданского делу по данному предмету никак не зависит от наличия или исхода уголовного дела.

14. Особенности рассмотрения гражданского иска, заявленного в рамках уголовного дела, на которые ссылается г-жа Масленникова в своем заключении (с чьими выводами я не полностью согласна по причинам, изложенным в своем ранее написанном заключении), не применимы к заявлениям о признании и приведении в исполнение решений иностранных третейских судов, которые рассматриваются по правилам гражданского судопроизводства.

15. Кроме того, если Смагин В.И., вопреки утверждениям, ранее сделанным его адвокатами, считает наличие его же неразрешенного гражданского иска, в обеспечение которого был наложен арест в рамках уголовного дела, препятствием к взысканию с арестованного имущества по решению третейского суда, то он вправе ходатайствовать о полном или частичном снятии ареста, наложенного в рамках уголовного дела или вообще отказаться от гражданского иска, о чем в соответствии с ч. 5 ст. 44 Уголовно-процессуального кодекса Российской Федерации может быть заявлено в любой момент производства по уголовному делу до удаления суда в совещательную комнату для постановления приговора.

*[подпись]* Г.А. Крылова

2 февраля 2016 года

---

[1] Текст главы 45 Гражданского процессуального кодекса Российской Федерации прилагается.

6

## Глава 45. ПРИЗНАНИЕ И ИСПОЛНЕНИЕ РЕШЕНИЙ ИНОСТРАННЫХ СУДОВ И ИНОСТРАННЫХ ТРЕТЕЙСКИХ СУДОВ (АРБИТРАЖЕЙ)

[…]

**Статья 411. Содержание ходатайства о принудительном исполнении решения иностранного суда**

1. Ходатайство о принудительном исполнении решения иностранного суда должно содержать:

1) наименование взыскателя, его представителя, если ходатайство подается представителем, указание их места жительства, а в случае, если взыскателем является организация, указание места ее нахождения;

2) наименование должника, указание его места жительства, а если должником является организация, указание места ее нахождения;

3) просьбу взыскателя о разрешении принудительного исполнения решения или об указании, с какого момента требуется его исполнение.

В ходатайстве могут быть указаны и иные сведения, в том числе номера телефонов, факсов, адреса электронной почты, если они необходимы для правильного и своевременного рассмотрения дела.

[…]

3. Ходатайство о принудительном исполнении решения иностранного суда рассматривается в открытом судебном заседании с извещением должника о времени и месте рассмотрения ходатайства. Неявка без уважительной причины должника, относительно которого суду известно, что повестка ему была вручена, не является препятствием к рассмотрению ходатайства. В случае, если должник обратился в суд с просьбой о переносе времени рассмотрения ходатайства и эта просьба признана судом уважительной, суд переносит время рассмотрения и извещает об этом должника.

4. Выслушав объяснения должника и рассмотрев представленные доказательства, суд выносит определение о принудительном исполнении решения иностранного суда или об отказе в этом.

5. На основании решения иностранного суда и вступившего в законную силу определения суда о принудительном исполнении этого решения выдается исполнительный лист, который направляется в суд по месту исполнения решения иностранного суда.

6. В случае, если у суда при решении вопроса о принудительном исполнении возникнут сомнения, он может запросить у лица, возбудившего ходатайство о принудительном исполнении решения иностранного суда, объяснение, а также опросить должника по существу ходатайства и в случае необходимости затребовать разъяснение иностранного суда, принявшего решение.

**Статья 412. Отказ в принудительном исполнении решения иностранного суда**

1. Отказ в принудительном исполнении решения иностранного суда допускается в случае, если:

[…]

5) исполнение решения может нанести ущерб суверенитету Российской Федерации или угрожает безопасности Российской Федерации либо противоречит публичному порядку Российской Федерации;

[…]

2. Копии определения суда, вынесенного в соответствии с частью четвертой статьи 411 настоящего Кодекса, направляются судом взыскателю и должнику в течение трех дней со дня вынесения определения суда. Это определение может быть обжаловано в вышестоящий суд в порядке и в сроки, которые установлены настоящим Кодексом.

**Статья 413. Признание решений иностранных судов**

1. Решения иностранных судов, которые не требуют принудительного исполнения, признаются без какого-либо дальнейшего производства, если со стороны заинтересованного лица не поступят возражения относительно этого.

2. Заинтересованное лицо по месту его жительства или месту нахождения в течение месяца после того, как ему стало известно о поступлении решения иностранного суда, может заявить в верховный суд республики, краевой, областной суд, суд города федерального значения, суд автономной области или суд автономного округа возражения относительно признания этого решения.

3. Возражения заинтересованного лица относительно признания решения иностранного суда рассматриваются в открытом судебном заседании с извещением этого лица о времени и месте рассмотрения возражений. Неявка без уважительной причины заинтересованного лица, относительно которого суду известно, что повестка ему была вручена, не является препятствием к рассмотрению возражений. В случае, если заинтересованное лицо обратится в суд с просьбой о переносе времени рассмотрения возражений и эта просьба будет признана судом уважительной, суд переносит время рассмотрения и извещает об этом заинтересованное лицо.

4. После рассмотрения судом возражений относительно признания решения иностранного суда выносится соответствующее определение.

5. Копия определения суда в течение трех дней со дня его вынесения направляется судом лицу, по заявлению которого было принято решение иностранного суда, его представителю, а также лицу, заявившему возражения относительно признания решения. Определение суда может быть обжаловано в вышестоящий суд в порядке и в сроки, которые установлены настоящим Кодексом.

[…]

**Статья 416. Признание и исполнение решений иностранных третейских судов (арбитражей)**

1. Правила статей 411 - 413 настоящего Кодекса, за исключением части второй статьи 411, пунктов 1 - 4 и 6 части первой статьи 412 настоящего Кодекса, применяются также к решениям иностранных третейских судов (арбитражей).

2. Сторона, ходатайствующая о признании или об исполнении решения иностранного третейского суда (арбитража), должна представить подлинное решение иностранного третейского суда (арбитража) или его должным образом заверенную копию, а также подлинное арбитражное соглашение или его должным образом заверенную копию. В случае, если арбитражное решение или арбитражное соглашение изложено на иностранном языке, сторона должна представить заверенный перевод этих документов на русский язык.

**Статья 417. Отказ в признании и исполнении решений иностранных третейских судов (арбитражей)**

1. В признании и исполнении решения иностранного третейского суда (арбитража) может быть отказано:

1) по просьбе стороны, против которой оно направлено, если эта сторона представит компетентному суду, в котором испрашиваются признание и исполнение, доказательство того, что:

одна из сторон арбитражного соглашения была в какой-либо мере недееспособна или это соглашение недействительно в соответствии с законом, которому стороны его подчинили, а при отсутствии такого доказательства - в соответствии с законом страны, в которой решение было принято;

сторона, против которой принято решение, не была должным образом уведомлена о назначении арбитра или об арбитражном разбирательстве либо по другим причинам не могла представить доказательства, либо решение принято по спору, не предусмотренному арбитражным соглашением или не подпадающему под его условия, либо содержит постановления по вопросам, выходящим за пределы арбитражного соглашения. В случае, если постановления по вопросам, охватываемым арбитражным соглашением, могут быть отделены от постановлений по вопросам, не охватываемым таким соглашением, часть решения суда, в которой содержатся постановления по вопросам, охватываемым арбитражным соглашением, может быть признана и исполнена;

состав третейского суда или арбитражное разбирательство не соответствовали арбитражному соглашению либо в отсутствие такового не соответствовали закону страны, в которой имел место иностранный третейский суд (арбитраж);

решение еще не стало обязательным для сторон, или было отменено, или его исполнение было приостановлено судом страны, в которой или в соответствии с законом которой оно было принято;

2) если суд установит, что спор не может быть предметом арбитражного разбирательства в соответствии с федеральным законом или признание и исполнение этого решения иностранного третейского суда (арбитража) противоречат публичному порядку Российской Федерации.

2. В случае, если в суде заявлено ходатайство об отмене или о приостановлении исполнения решения иностранного третейского суда (арбитража), суд, в котором испрашиваются признание и исполнение, может отложить принятие своего решения, если сочтет это надлежащим.