1  Bruce H. Jackson, State Bar No. 98118
   bruce.jackson@bakermckenzie.com
2  Anne M. Kelts, State Bar No. 298710
   anne.kelts@bakermckenzie.com
3  **BAKER & McKENZIE LLP**
   Two Embarcadero Center, 11th Floor
4  San Francisco, CA  94111
   Telephone: +1 415 576 3000
5  Facsimile: +1 415 576 3099

6  Nicholas O. Kennedy, State Bar No. 280504
   nicholas.kennedy@bakermckenzie.com
7  **BAKER & McKENZIE LLP**
   2300 Trammell Crow Center
8  2001 Ross Avenue
   Dallas, TX  75201
9  Telephone: +1 214 978 3000
   Facsimile:  +1 214 978 3099
10

11 Attorneys for Petitioner
   VITALY IVANOVICH SMAGIN

12

13            UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15                 WESTERN DIVISION

16

17 VITALY IVANOVICH SMAGIN,          **Case No.  14-cv-09764-R (PLAx)**

18          Petitioner,             **PETITIONER'S OPPOSITION
                                     TO RESPONDENT'S MOTION
19     v.                           TO STAY ENFORCEMENT OF
                                     JUDGMENT**
20 ASHOT YEGIAZARYAN, a.k.a.
   ASHOT EGIAZARYAN
21                                  **Date:        June 6, 2016**
          Respondent.              **Time:        10:00 a.m.**
22                                  **Courtroom: 8, 2nd Floor**

23                                  **Before:  The Hon. Manuel L. Real**

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

6754091-v3\SFODMS

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

# **TABLE OF CONTENTS**

**Page No.**

I.   INTRODUCTION .......................................................................................... 1

II.  ARGUMENT.................................................................................................. 6

  A.   A Stay Is Not Justified by the New York Convention............................ 6

  B.   An Article VI Stay Requires that Mr. Yegiazaryan Post a Bond ............. 8

  C.   Article V(1)(e) of the New York Convention Does Not Authorize a
       Stay .................................................................................................... 10

  D.   Mr. Yegiazaryan Is Not Entitled to a Stay Under the Federal Rules...... 11

    1.   Mr. Yegiazaryan Will Not Succeed in Overturning
         Confirmation ................................................................................. 12

      a.   The Jurisdictional Defenses Were Properly Rejected
           by This Court .......................................................................... 12

      b.   The Public Policy Defense Fails As a Matter of Law........ 12

      c.   Mr. Yegiazaryan's Article V(1)(e) Defense Fails
           Because the London Award Has Not Been Set Aside
           or Suspended .......................................................................... 14

    2.   Mr. Yegiazaryan Has Not and Cannot Demonstrate
         Irreparable Harm............................................................................ 15

  E.   Mr. Smagin is Entitled to Real Security in Exchange for any Stay
       of His Right to Immediate Enforcement of his Judgment and He
       Will Suffer Irreparable Harm Without a Bond ....................................... 17

    1.   Security Means a "Guarantee" of Payment in the Event of an
         Unsuccessful Appeal...................................................................... 18

    2.   The Russian Freeze is No Guarantee That Mr. Smagin Can
         Collect and No Longer Even Applies to Mr. Smagin ................. 20

    3.   Mr. Yegiazaryan Has Not Even Attempted to Meet His
         Burden Of Showing an Adequate Alternative to Guarantee
         Collection in the Event that He Loses on Appeal......................... 21

    4.   The Court Should Not Accept Mr. Yegiazaryan's
         Unsupported Contention That He Is Unable to Obtain a
         Bond ............................................................................................... 22

III. CONCLUSION .............................................................................................. 24

i

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

1
2
## **TABLE OF AUTHORITIES**

3
**Page No(s).**

4
5
### **Cases**

6
*Aberdeen & RR Co. v. Students Challenging Regulatory Agency Procedures*,
7
   409 U.S. 1207 (1972) ............................................................................. 11

8
*Acacia Research Corp. v. Nat'l Union Fire Ins. Co.*,
9
   No. SA CV 05-501 PSG, 2008 U.S. Dist. LEXIS 109598 (C.D. Cal.
10
   Sep. 9, 2008) ...................................................................................... 23

11
*Alto Mar Girassol v. Lumbermens Mut. Cas. Co.*,
12
   2005 U.S. Dist. LEXIS 7479 (N.D. Ill. Apr. 12, 2005) ....................... 7, 8

13
*Bolt v. Merrimack Pharms., Inc.*,
   No. CIV. S-04-0893 WBS DAD, 2005 U.S. Dist. LEXIS 46591
14
   (E.D. Cal. Sept. 20, 2005) .................................................................. 21

15
*In re Broadcom Corp. Secs. Litig.*,
16
   No. SACV 01-275 ............................................................................... 23

17
*Brooktree Corp. v. Adv. Micro Devices, Inc.*,
18
   757 F. Supp. 1101 (S.D. Cal. 1990) .................................................... 21

19
*Caribbean Trading & Fidelity Corp. v. Nigerian Nat'l Petroleum Corp.*,
20
   1990 U.S. Dist. LEXIS 17198 (Dec. 18, 1990) ..................................... 9

21
*Century 21 Real Estate v. All Prof'l Realty*,
   889 F. Supp. 2d 1198 (E.D. Cal. 2012) ............................................... 21
22
23
*Chromalloy Aeroservices v. Arab Republic of Egypt*,
   939 F.Supp. 907 (D.D.C. 1996) .......................................................... 14

24
*Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*,
25
   259 F.3d 1186 (9th Cir. 2001) ............................................................ 11

26
*Consorcio Rive S.A. de C.V. v. Briggs of Cancun, Inc.*,
27
   2000 U.S. Dist. LEXIS 899 (E.D. La. Jan. 25, 2000) ........................... 8

28

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

ii

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

*Cotton v. City of Eureka,*
    860 F. Supp. 2d 999 (N.D. Cal. 2012) .................................................................. 19

*Europcar Italia, S.P.A. v. Maiellano Tours,*
    156 F.3d 310 (2d Cir. 1998) ........................................................................................ 9

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n,*
    636 F.2d 755 (D.C.Cir. 1980) .......................................................................... 11, 17, 21

*Flynt Distrib. Co. v. Harvey,*
    734 F.2d 1389 (9th Cir. 1984) .................................................................................. 16

*Golden Gate Rest. Ass'n v. City of San Francisco,*
    512 F.3d 112 (9th Cir. 2008) ..................................................................................... 12

*Ingaseosas Int'l Co. v. Aconcagua Investing, Ltd.,*
    479 Fed. App'x 955 (11th Cir. 2012) ........................................................................ 9

*Int'l Ins. Co. v. Caja Nacional De Ahorro y Seguro,*
    293 F.3d 392 (7th Cir. 2002) ........................................................................................ 9

*Interdigital Commc'ns, Inc. v. Huawei Inv. & Holding Co.,*
    2016 U.S. Dist. LEXIS 21848 (S.D.N.Y. Feb. 17, 2016) ................................. 8, 18

*International Telemeter Corp. v. Hamlin Int'l Corp.,*
    754 F.2d 1492 (9th Cir. 1985) .................................................................................. 18

*Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.,*
    2006 U.S. Dist. LEXIS 28948 (W.D. Pa. May 5, 2006) .......................................... 9

*Karaha Bodas Co. v. Negara,*
    335 F.3d 357 (5th Cir. 2003) ............................................................................... 7, 13

*Lopez v. Heckler,*
    713 F.2d 1432 (9th Cir. 1983) .................................................................................. 11

*Los Angeles Mem'l. Coliseum Comm'n. v. Nat'l Football League,*
    634 F.2d 1197 (9th Cir. 1980) .................................................................................. 16

*Moore v. Townsend,*
    577 F.2d 424 (7th Cir. 1978) .................................................................................... 18

*NLRB v. Westphal,*
    859 F.2d 818 (9th Cir. 1988) ............................................................................. 18, 23

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

iii

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de l'Industrie du Papier*,
508 F.2d 969 (2d Cir. 1974) ..................................................................... 12

*Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc.*,
600 F.2d 1189 (5th Cir. 1979) .............................................. 18, 19, 21, 22

*Robi v. Five Platters, Inc.*,
838 F.2d 318 (9th Cir. 1988) ..................................................................... 12

*Sampson v. Murray*,
415 U.S. 61 (1974).................................................................................... 15

*Tanfern Ltd. v. Cameron-McDonald and Anor*
[2000] 1 WLR 1311 (England & Wales Ct. App.), per Brooke LJ at [21] ............ 15

*United States v. Maris*,
2012 U.S. Dist. LEXIS 66064 (D. Nev. 2012)....................................... 19

*Wu v. Doucette*,
No. EDCV07-01584-VAP(OPx), 2010 U.S. Dist. LEXIS 93481
(C.D. Cal. Aug. 25, 2010)......................................................................... 23

## Other Authorities

Fed. R. Civ. P. 62, 62(a), 62(d).............................................................*passim*

U.S.D.C., E.D. Cal., Local Rule 151(d) .................................................. 23

N.Y. CONV., Art. V. ................................................................................. 13

N.Y. CONV., Art. V(1)(e) .......................................................................... 10

N.Y. CONV., Art. VI.................................................................................... 6

GARY BORN, INT'L COMM. ARB. § 26 (Kluwer 2d ed. 2014) ...............................*passim*

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

iv

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

# I.   <u>INTRODUCTION</u>

This Court should reject Ashot Yegiazaryan's request for the extraordinary relief of staying enforcement, without a bond, of this Court's $92 million judgment confirming under the New York Convention an arbitration award from the London Court of International Arbitration in favor of Petitioner Vitaly Ivanovich Smagin (the "London Award").  This is exactly the result the Ninth Circuit reached by remanding and declaring that a stay may be conditioned on a bond when Mr. Yegiazaryan sought to bypass this Court by improperly seeking his stay directly from the Ninth Circuit. To award Mr. Yegiazaryan the unsecured stay he seeks would frustrate the purpose of the New York Convention and contravene well-established law.  It would also allow Mr. Yegiazaryan to continue his well-established practice of concealing his assets from Mr. Smagin and other creditors to avoid paying his debts.

Mr. Yegiazaryan has now lost this case three times – once before the arbitral tribunal, once before the London High Court, and now before this Court.  Judgment has been entered by this Court confirming the London Award, and upon conclusion of the automatic stay, Mr. Smagin is entitled to take steps to enforce this Court's judgment, including taking discovery from Mr. Yegiazaryan in an effort to locate hidden assets that may be ultimately available to satisfy that judgment.  Mr. Yegiazaryan claims he has more than sufficient assets to pay this Court's judgment. But since Mr. Yegiazaryan still unreasonably claims he will ultimately prevail on his limited appeal to the English Court of Appeal, he claims he will suffer irreparable injury if Mr. Smagin is able to find assets and execute on his hard-fought judgment.

There is a simple solution to the "hardship" and "injury" Mr. Yegiazaryan claims to face.  Mr. Yegiazaryan is entitled to a stay *as a matter of right* under Rule 62, if he posts a supersedeas bond.  Then, if Mr. Yegiazaryan prevails on his appeal as he professes he will, he need not worry about recouping the judgment—the bond will be released.  Of course, if Mr. Yegiazaryan loses the English appeal—which he likely will—Mr. Smagin will be able to finally collect his judgment from the bond and years

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

of chasing Mr. Yegiazaryan around the globe will finally come to an end.

Rather than accept the irrefutable logic of this solution, Mr. Yegiazaryan inexplicably proposes that this Court treat him differently than nearly every other civil appellant by granting him a stay without a bond. Mr. Yegiazaryan's request should be denied on multiple independent grounds.

First, as referenced above, Mr. Yegiazaryan failed to invoke the most direct method for the relief he seeks—posting a bond and receiving an automatic stay as a matter of right under Rule 62. Furthermore, this is not Mr. Yegiazaryan's first chance to request a stay. Article VI of the New York Convention allowed Mr. Yegiazaryan to request a stay in favor of the English challenge at any time from this Court. He chose not to do so when the case was reactivated in September 2015 after the English trial court ruling. He again chose not to do so in February 2016 when Mr. Smagin moved for summary judgment. Mr. Yegiazaryan *still* failed to request a stay from this Court even *after entry of judgment*.

Mr. Yegiazaryan's failure to request a stay was no mere oversight. Like his decision not to invoke Rule 62 now, it was an attempt to evade the well-established rule that an Article VI stay is generally granted "only upon the condition that the award-debtor post security guaranteeing that the award may successfully be enforced [because] … in the international context, the possibility that funds will be dissipated or concealed is very serious." GARY BORN, INT'L COMM. ARB. § 26, p. 3724 (Kluwer 2d ed. 2014). Of course, posting a bond would defeat Mr. Yegiazaryan's ongoing efforts to conceal assets from possible future enforcement through the web of offshore nominees and shell companies he has used for years. This Court has twice recognized the harm Mr. Smagin would suffer as a result of Mr. Yegiazaryan's acknowledged asset concealment. If Mr. Yegiazaryan is granted an unsecured stay, that harm will continue and likely will be compounded.

Second, Mr. Yegiazaryan's request should be denied because it has *already been denied* by the Ninth Circuit. Likely recognizing this Court would see through his

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

games and decline to issue the unsecured stay he sought, Mr. Yegiazaryan sidestepped this Court by seeking an unsecured stay directly from the Ninth Circuit in an emergency motion.  The Ninth Circuit was not fooled.  It instructed Mr. Yegiazaryan that he must make his request to this Court first, while briefly extending the automatic stay to allow Mr. Yegiazaryan to do so.  Tellingly, the Ninth Circuit declared: **"The district court may require appellant to post bond as a condition to granting a stay of its judgment."**[1]  Mr. Smagin respectfully submits that the Court should exercise its broad discretion to do just that.

Third, a stay without a bond is not justified by the New York Convention and would frustrate its purpose of ensuring the streamlined enforcement of foreign arbitration awards.  Mr. Yegiazaryan purposefully conflates Articles V and VI of the New York Convention in a further attempt to evade posting a bond.  In making this argument Mr. Yegiazaryan describes it as one of "first impression"[2] -- an apt characterization because this argument has never been made, much less accepted by any court.

Mr. Yegiazaryan's new argument – not raised in his opposition to summary judgment – that Article V(1)(e) prevents confirmation fares no better.  There is no order of the English courts setting aside or suspending enforcement of the London Award.  To the contrary, the English Court expressly *rejected* Mr. Yegiazaryan's effort to set aside the London Award and *allowed* Mr. Smagin to take enforcement actions outside of England and Wales.  Mr. Yegiazaryan's contrary representations border on intentional deceit.

The New York Convention's requirement of a bond in exchange for a stay is not unique.  In civil cases involving ordinary money judgments, it is similarly well-

---

[1] A true and correct copy of the U.S. Court of Appeals Order of April 14, 2016 is hereto attached as **Exh. 1** to the accompanying Request for Judicial Notice ("RJN").  As part of that emergency motion Mr. Yegiazaryan for the second time requested the Court of Appeal to reassign this case on remand, on the grounds that he cannot get a fair hearing in this Court.  The Appellate Court did not grant that request.
[2] Motion to Stay (ECF 71) at 16.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

established that a stay of enforcement of a judgment requires a bond, save in exceptional circumstances not applicable here. There is no reason to entertain anything less than a bond requirement in a case involving an arbitration award which, as a matter of treaty law, is entitled to greater pro-enforcement treatment.

Fourth, a stay without a bond is also unjustified because Mr. Yegiazaryan has not demonstrated that he will: a) succeed on the merits of his appeal; and b) suffer irreparable harm in the absence of an unsecured stay. Quite the contrary, Mr. Yegiazaryan's appeal is likely to *fail* and *Mr. Smagin* would suffer irreparable harm if an unsecured stay was granted. On the other hand, Mr. Yegiazaryan will suffer no irreparable harm: the law is clear that monetary injury is not irreparable harm.

Mr. Yegiazaryan's scattershot and re-hashed arguments that a Russian criminal freeze adequately secures Mr. Smagin's judgment is flatly mistaken. That freeze provides Mr. Smagin no security because: a) it does not apply to his judgment; and b) the frozen assets are not in Mr. Yegiazaryan's name. And in any event, even if the freeze did make assets theoretically available for Mr. Smagin, that is decidedly not the type of *guarantee of payment of the judgment* a court may accept to avoid the bond requirement.

Relatedly, regarding the assertions made by Mr. Yegiazaryan questioning the motives for the multiple criminal investigations underway in Russia, Mr. Smagin is not responsible for Mr. Yegiazaryan's problems in Russia. Aside from Mr. Yegiazaryan's unsupported and inflammatory claims, nothing links Mr. Smagin to any alleged wrongful acts of the Russian government. If Mr. Yegiazaryan were indeed a victim, which he is not, he certainly is no victim of Mr. Smagin's. All that Mr. Smagin seeks, and all that is relevant here, is payment of the London Award that has been confirmed as a $92 million judgment of this Court.

Fifth and finally, Mr. Yegiazaryan's unsupported contention via his attorney that he cannot obtain a bond should be rejected outright. Mr. Yegiazaryan fails to mention the unrefuted evidence that he has $188 million hidden away in a Monaco

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1 bank account with a Lichtenstein trustee as a result of his settlement of the Kerimov

2 Award.  If Mr. Yegiazaryan wanted a bond, he could obtain one.

3      This Court should once again reject Mr. Yegiazaryan's duplicity and exercise

4 its discretion to condition any stay on the posting of bond.  Mr. Smagin is entitled to

5 real security in exchange for any stay of his right to immediate enforcement of his

6 judgment and he will suffer irreparable harm without a bond.  If Mr. Yegiazaryan

7 truly believes he needs a stay and he will succeed with his appeal to the English Court

8 of Appeal, he must back that request, as does nearly every other civil appellant, with a

9 bond for the amount of the judgment.

10      Mr. Smagin decidedly *would* be harmed by an unsecured stay.  Mr.

11 Yegiazaryan has admitted that he has deliberately structured his holdings to conceal

12 his beneficial ownership.  This Court has already concluded that Mr. Yegiazaryan was

13 likely to continue his practice of hiding beneficial ownership of assets, specifically the

14 proceeds derived from a $242 million arbitral award in his favor (the "Kerimov

15 Award").  This Court's prediction was accurate.  In May 2015, Mr. Yegiazaryan

16 settled the Kerimov Award and placed $188 million of the proceeds in a Lichtenstein

17 trust holding a Monaco bank account.[3]  These actions have previously been disclosed

18 both to this Court and to the Ninth Circuit.  Mr. Yegiazaryan has yet to even deny

19 (much less refute) the settlement or the existence of these trust funds squirrelled away

20 with an offshore trustee.  This, the most recently discovered of Mr. Yegiazaryan's

21 diversion of assets, taken while this case was pending—further demonstrates why a

22 bond is required if there is to be any meaningful chance that Mr. Smagin will recover

23 his judgment.

24      Tellingly, in rejecting Mr. Yegiazaryan's efforts to set aside the award, the

25 London High Court concluded that he "did not tell the court the truth" in critical

26 testimony in which he sought to conceal the ownership of his assets.  This Court

27

28

[3] The settlement was reported under penalty of perjury to the Los Angeles Superior Court, Declaration of B. Jackson in Support of Motion for Summary Judgment (ECF 52-8), ¶ 3.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

5

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

should not trust Mr. Yegiazaryan either, and Mr. Smagin should not continue to have his "rights frustrated through [the continuation of Mr. Yegiazaryan's] stalling tactics, [and] deliberate diversion of assets…" that would result from a stay with no bond. BORN § 26 at 3724.

## II.   ARGUMENT

### A.   A Stay Is Not Justified by the New York Convention

This is not an ordinary civil claim.  It is an action for enforcement of a foreign arbitral award under the New York Convention—which evidences a strong public policy in favor of streamlined enforcement.  As the Born treatise counsels:

> It is particularly important to be circumspect in suspending recognition proceedings given the underlying purposes of the arbitral process – being to resolve disputes efficiently, without the jurisdictional and other complexities attending the international litigation process.  Delaying recognition and enforcement of an award directly frustrates this objective.

BORN § 26 at 3723.  Mr. Yegiazaryan has succeeded in frustrating the arbitral process by delaying enforcement for 18 months since issuance of the London Award with a series of challenges that have repeatedly been rejected by several courts.  He should not be permitted to do so yet again through a stay of enforcement of this judgment.  Put simply, if Mr. Yegiazaryan wants to continue to delay the process, he must pay for that privilege by posting a bond.

Article VI of N.Y. Convention sets forth the sole basis for a stay of enforcement proceedings.  Specifically, it provides:

> If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V 1 (e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

N.Y. CONV., Art. VI.  A district court's decision to grant or deny a stay is

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

discretionary. "By allowing concurrent enforcement and annulment actions, as well as simultaneous enforcement actions in third countries, the Convention necessarily envisions multiple proceedings that address the same substantive challenges to an arbitral award." *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 367 (5th Cir. 2003). Indeed, "under the New York Convention, a court maintains the discretion to enforce an arbitral award even if nullification proceedings are occurring in the country where the award was rendered." *Alto Mar Girassol v. Lumbermens Mut. Cas. Co.*, 2005 U.S. Dist. LEXIS 7479, at *10 (N.D. Ill. Apr. 12, 2005).

The discretion afforded the district court is justified by the judge's knowledge of the proceedings and ability to determine whether a stay furthers or frustrates the purpose of the New York Convention. The New York Convention's intent to provide streamlined proceedings extends not just to confirmation, but to enforcement of confirmed arbitration awards. As Born again explains:

> It is particularly important to be circumspect in suspending recognition proceedings given the underlying purposes of the arbitral process – being to resolve disputes efficiently, without the jurisdictional and other complexities attending the international litigation process. Delaying recognition and enforcement of an award directly frustrates this objective. … as one lower court also correctly reasoned, **a stay of recognition should not be lightly granted lest it encourage abusive tactics by the party that lost in arbitration**.

BORN § at 3723 (emphasis added).

A stay would frustrate the New York Convention by allowing Mr. Yegiazaryan to continue his well-documented history of concealing assets. It would also prevent Mr. Smagin from finally taking discovery from Mr. Yegiazaryan in an effort to disclose concealed assets. This would defeat the goal of streamlining recovery and ensuring that arbitration is a meaningful process. This Court has already recognized Mr. Yegiazaryan's harmful actions in granting the expedited discovery that Mr. Yegiazaryan had stayed by an emergency motion to the Ninth Circuit. It should not

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

7

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

allow Mr. Yegiazaryan to continue to avoid his obligations—and postpone the same discovery that this Court found appropriate more than seven months ago—by awarding Mr. Yegiazaryan an unsecured stay.

### B. An Article VI Stay Requires that Mr. Yegiazaryan Post a Bond

If a district court stays proceedings under Article VI of the New York Convention , a bond is required.  Mr. Yegiazaryan appears to concede this.  *See* Mot. at 11 n.4 ("<u>Unlike Article VI</u>, Article V(1)(e) does not provide for any possible bond as a condition to delay or refuse enforcement.") (emphasis added).  Again, Born explains:

> If a court is to suspend recognition proceedings, then **it should ordinarily do so only upon the condition that the award-debtor post security guaranteeing that the award may successfully be enforced**.  … the single most serious obstacle to enforcement of an international arbitral award is identifying assets which can satisfy the award: in the international context, the possibility that funds will be dissipated or concealed is very serious. It is unacceptable that a party, which complies with the contractual dispute resolution process and then obtains an award of damages, should have its rights frustrated through stalling tactics, deliberate diversion of assets, or insolvency of the award-debtor. **If national courts delay the process of recognizing an award, by suspending recognition proceedings, then they should take special care to ensure that the award-creditor is safeguarded against such eventualities.**

BORN § 26 at 3724 (emphasis added).

District courts granting stays under Article VI uniformly apply this rule and require a bond in an amount in excess of the full arbitral award in order to protect the plaintiff's "significant interest in the prompt enforcement of the Award." *Interdigital Commc'ns, Inc. v. Huawei Inv. & Holding Co.*, 2016 U.S. Dist. LEXIS 21848, at *21-*22 (S.D.N.Y. Feb. 17, 2016).[4]  These results have been blessed by numerous federal

---

[4] *See also Alto Mar Girassol*, 2005 U.S. Dist. LEXIS 7479, at *1; *Consorcio Rive S.A.*

8

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

courts of appeal.  *See Int'l Ins. Co. v. Caja Nacional De Ahorro y Seguro*, 293 F.3d 392, 399-401 (7th Cir. 2002) (affirming district court's imposition of security for stay under Article VI); *Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310, 318 (2d Cir. 1998) (noting that balance of possible hardships in granting stay requires security for enforcing party).  Indeed, in denying Mr. Yegiazaryan's emergency motion for a stay, the Ninth Circuit expressly recognized this Court's authority to make any stay contingent upon the posting of a bond.

If the respondent "declines to post bond, the secondary-jurisdiction court clearly has authority to proceed uninterrupted with its enforcement proceedings".  *Ingaseosas Int'l Co. v. Aconcagua Investing, Ltd.*, 479 Fed. App'x 955, 961 (11th Cir. 2012).  In other words, the consequence for failing to post the required bond is invalidation of the stay and, if no defenses are established, confirmation of the award.  *See Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.*, 2006 U.S. Dist. LEXIS 28948, at *2 (W.D. Pa. May 5, 2006).

These cases recognize that delaying the enforcement process absent assurance that an award creditor may successfully collect on a judgment would upend the New York Convention.  This case provides an astute example of this principle. Mr. Yegiazaryan has forced Mr. Smagin to defend numerous challenges to the London Award since it was issued in 2014 while consistently hindering Mr. Smagin's right to recover.  Now that Mr. Smagin has a judgment, his right to a bond is even stronger. Mr. Yegiazaryan should not receive an unsecured stay.

---

*de C.V. v. Briggs of Cancun, Inc.*, , 2000 U.S. Dist. LEXIS 899, at *11 (E.D. La. Jan. 25, 2000); *Caribbean Trading & Fidelity Corp. v. Nigerian Nat'l Petroleum Corp.*, 1990 U.S. Dist. LEXIS 17198, at *21-*22 (Dec. 18, 1990).

9

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

### C. Article V(1)(e) of the New York Convention Does Not Authorize a Stay

Mr. Yegiazaryan's attempt to invoke Article V of the New York Convention in requesting a stay is wholly unsupported. Article V does not address or authorize stays in any context. Instead, it sets forth the limited defenses that a party seeking to defeat confirmation can assert against a presumptively valid international arbitration award. The subsection on which Mr. Yegiazaryan relies provides:

> **Recognition and enforcement of the award may be refused**, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

> (e) **the award** has not yet become binding on the parties, or **has been set aside or suspended** by a competent authority of the country in which, or under the law of which that award was made.

N.Y. CONV., Art. V(1)(e) (emphasis added). In order to avoid the ironclad bond requirement of Article VI, Mr. Yegiazaryan now seeks to conflate the requirements of this Article V affirmative defense to enforcement with Article VI's provision for a discretionary stay of enforcement proceedings.

To further this muddling, Mr. Yegiazaryan mischaracterizes his argument to this Court as one of "first impression," and seeks to import the factors for consideration of a proper Article VI stay request into his tortured Article V analysis. Mot. at 16. This issue is one of "first impression" for a reason: it is based on a fundamental misconstruction of the New York Convention. The plain language makes clear that Article V in no way offers a basis for a stay. Like the Ninth Circuit, this Court should reject Mr. Yegiazaryan's attempt to extend that language beyond its

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

intent to achieve a result inconsistent with the well-established goals of the New York Convention.

### D.    Mr. Yegiazaryan Is Not Entitled to a Stay Under the Federal Rules

Under Rule 62(a), a judgment becomes final and enforceable fourteen days after judgment is entered. Fed. R. Civ. P. 62(a).  "At that time, a prevailing plaintiff is entitled to execute upon a judgment." *Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1197 (9th Cir. 2001).  "Because the stay operates for the appellant's benefit and deprives the appellee of the immediate benefits of his judgment, a full supersedeas bond should be the requirement in normal circumstances." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C.Cir. 1980).  Indeed, a bond is so fundamental that Mr. Yegiazaryan may obtain a stay *as a matter of right* by posting a supersedeas bond acceptable to the court.  *See* Fed. R. Civ. P. 62(d).  Although Mr. Yegiazaryan claims to desperately need a stay, he has not exercised this right.  Of course, this is because posting a bond will defeat his carefully laid plans to put his assets out of reach.  This gamesmanship should be rejected.

In any event, Mr. Yegiazaryan cannot meet the criteria for a stay.  "The criteria for granting a stay of the judgment of … a district court are stringent." *Aberdeen & RR Co. v. Students Challenging Regulatory Agency Procedures*, 409 U.S. 1207, 1218 (1972).   To satisfy these stringent criteria, Mr. Yegiazaryan must prove:  1) he is likely to overturn confirmation; 2) he will be irreparably harmed absent a stay; and 3) the balance of hardships and public interest favor a stay.  *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

### 1.   Mr. Yegiazaryan Will Not Succeed in Overturning Confirmation

Mr. Yegiazaryan is unlikely to prevail in reversing this Court's grant of summary judgment and overturning confirmation of the London Award.  To receive a stay, Mr. Yegiazaryan must first make "a strong showing that he is likely to succeed on the merits."  *Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 112, 1115 (9th Cir. 2008) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  In other words, Mr. Yegiazaryan must establish that the Court improperly confirmed the London Award.  This Court did not so err.  Each of Mr. Yegiazaryan's affirmative defenses fails as a matter of law.

### a.   The Jurisdictional Defenses Were Properly Rejected by This Court

The Court properly rejected Mr. Yegiazaryan's jurisdictional defenses by applying collateral estoppel.  Mr. Yegiazaryan has offered no basis for challenging this ruling.  Instead, he devoted only a single footnote limited to the conclusory assertion that the argument is "misplaced".  Mot. at 15 n.3.  He fails even to explain why he believes this is so.  The Court properly applied collateral estoppel to preclude Mr. Yegiazaryan from re-litigating the jurisdictional issues already decided by the London High Court.[5]  *See* ECF 47-1 at 11-14.

### b.   The Public Policy Defense Fails As a Matter of Law

This Court also properly concluded that Mr. Yegiazaryan's strained "public policy" defense fails as a matter of law.  Mr. Yegiazaryan has not established that recognition of the London Award in this case "would violate the forum state's most basic notions of morality and justice," as required by the New York Convention.  *See*

---

[5] In his summary judgment opposition, Mr. Yegiazaryan argued only that collateral estoppel did not apply because his appeal of the English High Court's ruling was not final.  The law is clear that a judgment is final for purposes of collateral estoppel notwithstanding a pending appeal.  *Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de l'Industrie du Papier*, 508 F.2d 969, 973-74 (2d Cir. 1974).  Instead, Mr. Yegiazaryan spouts irrelevant and unsubstantiated conspiracy theories about the Russian government and claims that Mr. Smagin seeks a double recovery.

Mr. Smagin does not seek a double recovery.  He has expressly acknowledged that he cannot (and does not intend to) recover twice.  *See* Smagin Witness Statement from English Challenge (attached as **Ex. 2** to the RJN at ¶¶ 88-89).  In any event such double recovery arguments are premature—Article V defenses relate solely to confirmation, not to collection of or recovery on an already confirmed award.  *See* N.Y. CONV., Art. V.  Multi-jurisdictional enforcement efforts are envisioned and endorsed by the N.Y. Convention.  *See, e.g.*, *Karaha Bodas*, 335 F.3d at 367.  Given Mr. Yegiazaryan's asset concealment, Mr. Smagin will be lucky to recover at all— much less twice.  Moreover, as discussed below, the Russian asset freezes provide no security to Mr. Smagin (if they ever did) because they have been removed from Mr. Smagin's case and do not freeze assets held in Mr. Yegiazaryan's name.

Furthermore, if Mr. Smagin were to be able to locate assets here, or elsewhere, against which to execute in full on his judgment, he would not thereafter be able to pursue a civil claim for that same amount in Russia or obtain any recovery against the frozen Europark assets (*See* accompanying Declaration of Vladislav Valeryevich Grib ("Grib Decl.") ¶¶ 9, 31, 38, 41.  In other words, Russian law (as with all other jurisdictions) would prevent the double recovery that Mr. Yegiazaryan claims to fear.  Mr. Yegiazaryan's double-recovery argument was properly rejected.

13

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

c. **Mr. Yegiazaryan's Article V(1)(e) Defense Fails Because the London Award Has Not Been Set Aside or Suspended**

The London Award has not been set aside or suspended as is required to invoke Article V(1)(e). "It will generally be obvious whether a judgment of a court sets aside or annuls an award ….[t]he touchstone for analysis is whether the national court judgment purports to invalidate the award or to deny it legal effect. If so, then Article V(1)(e) is potentially applicable." BORN § 26 at 3621. The English Courts have not invalidated the London Award. Quite the contrary, the English trial court already *rejected* Mr. Yegiazaryan's attempt to invalidate the award, subject only to his limited appeal. ECF No. 52-1 ¶ 7.

Mr. Yegiazaryan's Article V arguments are premised on his mischaracterization of two English orders that he claims establish either a) the London Award has been invalidated; or b) the London Award will likely be invalidated in the future as the result of his appeal. At best these arguments are just plain wrong. At worst, they intentionally seek to deceive the Court.[6]

The London Award has never been suspended in England. Indeed, the London High Court expressly rejected Mr. Yegiazaryan's efforts to have the award suspended. The first English order on which Mr. Yegiazaryan relies did nothing more than stay Mr. Smagin's ability to simultaneously undertake enforcement efforts in England and Wales while Mr. Yegiazaryan's annulment proceedings—which would necessarily cover the same issues as an enforcement action—continue in those jurisdictions. It

---

[6] Even if the London Award were annulled in England, the Court *still* would have the discretion to confirm it. *See Chromalloy Aeroservices v. Arab Republic of Egypt*, 939 F.Supp. 907 (D.D.C. 1996).

14

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

made no comment on the validity of the award.  Crucially, the order unmistakably provided that Mr. Smagin "shall have permission to take steps in jurisdictions other than England and Wales … for the purposes of enforcing the [London Award]…." ECF 52-1 ¶ 10 & Ex. 4.

The second English order on which Mr. Yegiazaryan mistakenly relies is the order granting him permission for a narrow appeal of the English High Court's *rejection* of his attempt to annul the London Award.  Remarkably, Mr. Yegiazaryan claims that the mere fact that he was permitted to appeal by the very judge who soundly rejected his challenge suggests he is likely to prevail on his appeal.

This is nonsense.  In authorizing an appeal on arguments he had just soundly rejected, Mr. Justice Teare merely observed that he could not "say there is *no real prospect of success*" (ECF 47-9 at 13).  Under English law, this means nothing more than that the appeal is not "fanciful".  *Tanfern Ltd. v. Cameron-McDonald and Anor* [2000] 1 WLR 1311 (England & Wales Ct. App.), per Brooke LJ at [21] (a true and correct copy of the case is attached as **Ex. 3** to the RJN).

While Mr. Yegiazaryan's arguments may not be conclusively "fanciful" as a matter of law, they have been rejected by both the English Court and this Court.  Mr. Yegiazaryan's arguments that this creates a likelihood of success are disingenuous and must be rejected.

## 2.    Mr. Yegiazaryan Has Not and Cannot Demonstrate Irreparable Harm

Mr. Yegiazaryan has not established irreparable harm.  "Mere injuries, however substantial, in terms of money, time and energy… in the absence of a stay, are not enough.  The possibility that adequate compensatory … relief will be available at a

15

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

later date … weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Mr. Yegiazaryan bases his irreparable harm argument on his claim that if the judgment is not stayed, he will be required to make payment and then seek return of that payment if the judgment were subsequently reversed. Mot. at 20-21. Without providing a scintilla of evidence of his own financial condition, he claims: "$93 million is an extraordinary sum of money for an individual to pay." Mot. at 20. Extraordinary or not, this is the amount that Mr. Yegiazaryan owes pursuant to this Court's judgment. And given Mr. Yegiazaryan's documented wealth—including the $188 million he has hidden in Monaco—this judgment can and should be paid. Of course, Mr. Yegiazaryan wants to force Mr. Smagin to continue to chase him around the world looking for his hidden assets. He has succeeded in doing that for several years. This Court should not enable this charade and abuse of process to continue.

In any event, the law is clear that monetary injury is not irreparable harm. *E.g., Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394-95 (9th Cir. 1984). Instead, to show irreparable injury, Mr. Yegiazaryan must demonstrate that legal remedies are inadequate. *Los Angeles Mem'l. Coliseum Comm'n. v. Nat'l Football League*, 634 F.2d 1197, 1201-02 (9th Cir. 1980). Mr. Yegiazaryan has not made this showing. To the contrary, he expressly *describes* the available legal remedy (i.e. an action to recoup payment) that would make him whole if the judgment were to be reversed. Mot. at 20.

Mr. Yegiazaryan further argues without supporting evidence or law that he will be irreparably harmed if Mr. Smagin is allowed to take the post judgment discovery to which he is entitled in an effort to try to locate Mr. Yegiazaryan's hidden assets. Notably, this is the same discovery this Court already held was appropriate on an

16

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

expedited basis in September 2015 only to have its ruling stayed based on Mr. Yegiazaryan's "emergency" motion to the Ninth Circuit.  As this Court well knows, these remedies and protections are particularly relevant and important in a case like this where the judgment debtor has admitted to a pattern and practice of hiding his beneficial ownership in assets and has even gone so far as to lie to the London High Court in order to conceal that beneficial ownership.  Mr. Smagin's exercise of the protections afforded to him by law cannot possibly constitute irreparable harm.

### E.   Mr. Smagin is Entitled to Real Security in Exchange for any Stay of His Right to Immediate Enforcement of his Judgment and He Will Suffer Irreparable Harm Without a Bond

Under Federal Rule of Civil Procedure 62(d), Mr. Yegiazaryan may obtain a stay *as a matter of right* by posting a supersedeas bond acceptable to the court.  While Mr. Yegiazaryan desperately wants a stay on enforcement, practically to prevent Mr. Smagin from taking discovery in an effort to locate these hidden assets, Mr. Yegiazaryan does not want to exercise his right under Rule 62(d), because posting a bond will defeat his carefully laid plans to put assets out of reach.  He has not demonstrated any grounds sufficient for the district court to waive the bond requirement.  "Because the stay operates for the appellant's benefit and deprives the appellee of the immediate benefits of his judgment, a full supersedeas bond should be the requirement in normal circumstances." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C.Cir. 1980).

Mr. Yegiazaryan's argument that Mr. Smagin already has all the security that he needs must be rejected.  The Russian freeze provides Mr. Smagin no security because it a) no longer applies to his claims and b) does not cover assets owned by Mr. Yegiazaryan.

Moreover, even if Mr. Yegiazaryan were right on the facts of the Russian freeze (he is not), he is decidedly wrong on the law.  The law is clear that a mere asset freeze

17

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

is not the type of security contemplated by the applicable law on stays.  Moreover, Mr. Yegiazaryan has not demonstrated any adequate alternative to posting a bond. Finally, Mr. Yegiazaryan has not demonstrated that he cannot obtain a bond—only that he does not want to do so.

**1.    Security Means a "Guarantee" of Payment in the Event of an Unsuccessful Appeal**

Both the New York Convention and the Federal Rules require real security in exchange for a stay.  As Gary Born explains in his treatise:

> If a court is to suspend recognition proceedings, then it should ordinarily do so only upon the condition that the award-debtor **post security *guaranteeing* that the award may successfully be enforced**.

BORN § 26 at 3724 (emphasis added).   The federal cases (cited *supra*) uniformly confirm this requirement.  *See, e.g. Interdigital Commc'ns, Inc. v. Huawei Inv. & Holding Co.*, 2016 U.S. Dist. LEXIS 21848, at *21-*22 (S.D.N.Y. Feb. 17, 2016). The Russian asset freeze does not secure Mr. Yegiazaryan's assets in favor of Mr. Smagin.  It would not meet this standard even if it did.

Cases under Federal Rule of Civil Procedure 62 are to the same effect.  "For the appellee, Rule 62(d) effectively deprives him of his right to enforce a valid judgment immediately.  Consequently, the appellant is required to post the bond to provide both insurance and compensation to the appellee.  The supersedeas bond protects the non-appealing party "from the risk of a later uncollectible judgment" and also "provides compensation for those injuries which can be said to be the natural and proximate result of the stay." *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988); *Moore v. Townsend*, 577 F.2d 424, 427 (7th Cir. 1978) (*citing Weiner v. 222 East Chestnut Corp.*, 303 F.2d 630, 634 (7th Cir. 1962)).  Rule 62(d) therefore establishes not only the appellant's right to a stay, but also the appellee's right to have a bond posted. Because of Rule 62(d)'s dual protective role, a full supersedeas bond should almost always be required.  *Poplar Grove*, 600 F.2d 1189, 1190 (5th Cir. 1979)."

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Mr. Yegiazaryan concedes that "a supersedeas bond provides protection for the prevailing party **as a guarantee that this party can collect**." Mot. at 14.  Even the primary case cited by Mr. Yegiazaryan establishes the necessity of that security must *guarantee* payment of the judgment, not merely make it more likely.  *See International Telemeter Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492 (9th Cir. 1985) ("although Federal Rule of Civil Procedure 62 provides that a supersedeas bond may be used to stay execution of a judgment pending appeal, the court has discretion to allow other forms of **judgment guarantee.**") (emphasis added).  The Fifth Circuit in *Poplar Grove* reiterated this rule, explaining:  "if a judgment debtor objectively demonstrates a present financial ability to facilely respond to a money judgment and presents to the court a financially secure plan for maintaining that same degree of solvency during the period of an appeal, the court may then exercise a discretion to substitute **some form of guaranty of judgment** responsibility for the usual supersedeas bond."  *Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189, 1191 (5th Cir. 1979) (emphasis added).

This rule has been widely applied within the Ninth Circuit.  For example, in *Cotton* the Northern District of California required "absolute certainty" that a third-party guarantor, like an insurer, had "agreed unconditionally to pay the judgment in this case" before departing from the bond requirement.  *See Cotton v. City of Eureka*, 860 F. Supp. 2d 999, 1028 (N.D. Cal. 2012).  The District of Nevada in *Maris* rejected an argument that liens on real property provided adequate assurance, explaining that because the liens did not "guarantee the money large money judgment," they did not allow the judgment debtor to avoid posting a bond.  *See United States v. Maris*, 2012 U.S. Dist. LEXIS 66064, *4-5 (D. Nev. 2012).  Mr. Yegiazaryan has presented no unconditional agreement of anyone to pay his money judgment.  And the Russian freeze is decidedly weaker than the lien on U.S. based real property that was *still* found to be insufficient security in *Maris*.  A bond must be required.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

## 2.     The Russian Freeze is No Guarantee That Mr. Smagin Can Collect and No Longer Even Applies to Mr. Smagin

The Russian freeze no longer protects Mr. Smagin (if it ever did).  And in any event, it falls far short of the standard for "security" in lieu of a bond established by the cases discussed above.  Mr. Yegiazaryan's claims about the Russian asset freeze he argues provides the security required by a stay are irrelevant and unfounded.

Although Mr. Yegiazaryan is correct that certain Russian assets are frozen in a criminal investigation, he mischaracterizes the scope and effect of that freeze.  Mr. Smagin is one of at least three victims in those proceedings.  Mr. Smagin has no control over the freeze or the criminal proceedings, and the decision whether to prosecute rest solely within the discretion of the prosecutor.  Grib Decl. ¶ 19.

Crucially, the criminal prosecution in which Mr. Smagin is a victim was recently split off into a new case.  The freeze was not moved with it, but remains in the original case for the potential benefit of other victims. *Id.* ¶ 26.  The frozen assets are thus no longer available for potential payment of Mr. Smagin's claims (if they ever were).  In any event, any potential future recovery from the criminal case is speculative because the case is five years old and Mr. Yegiazaryan has not even been indicted, much less convicted. *See* Smagin Wit. St. (RJN, **Ex. 2** at ¶ 89).  Moreover, even if there were assets in Russia that could potentially be made available to creditors, such assets are not in Mr. Yegiazaryan's name and Mr. Yegiazaryan is not in Russia.  Mr. Yegiazaryan cannot be excused from posting a bond through his mischaracterization of the facts in Russia.[7]

---

[7] For the same reasons, Mr. Yegiazaryan's arguments (or potential arguments) about proceedings in 1) the State Court divorce proceedings; and 2) Cyprus do not obviate the necessity for a stay here because neither provide the ***guarantee*** of payment required as a bond substitute.  The divorce case freeze is, like the Russian freeze, a freeze of assets held in a foreign jurisdiction not in Mr. Yegiazaryan's name.  It is not in any way a guarantee of payment.  And in any event, Mr. Yegiazaryan is actively seeking to have that freeze set aside.  Similarly, the proceedings in Cyprus have no effect on Mr. Smagin's right to payment here—the Cyprus court orders focused on a request for a *pre-judgment* freeze, not security for an already entered judgment.  A bond here would serve a different purpose than the pre-judgment asset freeze sough in

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO STAY

1       In short, the Russian asset freeze does not even provide any assurance that if

2   Mr. Yegiazaryan loses his appeal any assets purportedly frozen may ever be located,

3   unraveled from Mr. Yegiazaryan's web of nominee ownership, or used to satisfy a

4   judgment—much less a **guarantee** that Mr. Smagin will obtain immediate payment.

5   At best, it may provide some assurances that assets would remain in their current

6   ownership structure if Mr. Yegiazaryan were right that it applies to Mr. Smagin's

7   claims (he is not)—and if he complied with the terms of the freeze.

8           **3.**    **Mr. Yegiazaryan Has Not Even Attempted to Meet His Burden**

9                  **Of Showing an Adequate Alternative to Guarantee Collection**
               **in the Event that He Loses on Appeal**

10       An unsecured stay is reserved for unusual circumstances. *Fed. Prescription*

11   *Servs., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760-61 (D.C. Cir. 1980); *Century 21*

12   *Real Estate v. All Prof'l Realty*, 889 F. Supp. 2d 1198, 1242 (E.D. Cal. 2012) (citing

13   *Fed. Prescription Servs.*). Specifically, courts addressing a motion for a stay without

14   bond will generally only grant such a request if one of two factors is met: (1)

15   "defendant's ability to pay is so plain that the cost of the bond would be a waste of

16   money," or (2) "the requirement would put the defendant's other creditors in undue

17   jeopardy . . . ." *See Bolt v. Merrimack Pharms., Inc.*, No. CIV. S-04-0893 WBS

18   DAD, 2005 U.S. Dist. LEXIS 46591, at *9-*13 (E.D. Cal. Sept. 20, 2005) (quoting

19   *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir. 1986))

20   (requiring bond in full amount of judgment, noting that stay without bond was not

21   warranted where appellant made only conclusory statements in support of meeting

22   either factor); *Brooktree Corp. v. Adv. Micro Devices, Inc.*, 757 F. Supp. 1101, 1104

23   (S.D. Cal. 1990) (applying same factors and requiring defendant to "provide real

24   property security in an appropriate amount to protect [the plaintiff's] interest"). Mr.

25   Yegiazaryan has not attempted to establish either of these factors.

26       The burden is on the judgment creditor to show an adequate alternative to

27

28   ────────────────────
Cyprus and would not be duplicative, even were the Russian freeze applicable to Mr.
Smagin's claims.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

1  guarantee collection in the event that the debtor loses on appeal.  "If a court chooses to

2  depart from the usual requirement of a full security supersedeas bond to suspend the

3  operation of an unconditional money judgment, it should place the burden on the

4  moving party to objectively demonstrate the reasons for such a departure.  It is not the

5  burden of the judgment creditor to initiate contrary proof.  Such a supersedeas bond is

6  a privilege extended the judgment debtor as a price of interdicting the validity of an

7  order to pay money."  *Poplar Grove*, 600 F.2d 1189, 1191.

8      While Mr. Yegiazaryan states in conclusory fashion that he has sufficient assets

9  to pay the judgment (and by necessary implication to obtain a bond), he has presented

10  no admissible evidence as to his present financial ability to pay the judgment, much

11  less a "financially secure plan" for maintaining that ability.  *See, e.g., Poplar Grove*,

12  600 F.2d at 1191 (substitute security permissible where debtors present **financially**

13  **secure plan**).  Mr. Yegiazaryan's argument amounts to a plea that Mr. Smagin and

14  this Court "take his word" that he will pay up if he ultimately loses.  Of course, the

15  facts have repeatedly demonstrated that Mr. Smagin and this Court should do no such

16  thing.  Mr. Yegiazaryan has engaged in a relentless pattern of deception and asset

17  concealment in judicial forums around the world.  There is nothing to suggest that he

18  would make good on this promise after repeatedly repudiating so many others.

19      **4.    The Court Should Not Accept Mr. Yegiazaryan's Unsupported
20            Contention That He Is Unable to Obtain a Bond**

21      Mr. Yegiazaryan contends, through hearsay testimony of his counsel, that he

22  cannot obtain a bond.  Without providing any admissible evidence on the subject, he

23  appears to suggest that the asset freeze in Russia is the cause of his problems.  Of

24  course, he fails to provide any financial information on his other assets outside of

25  Russia, which dwarf the amount required for a bond.  Nor, does he mention the $188

26  million he has hidden away in a Monaco bank account with a Lichtenstein trustee as a

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

result of his settlement of the Kerimov Award.[8]  If Mr. Yegiazaryan wanted a bond, he could obtain one.  And if he truly cannot, this means that even a company *in the business of taking risk*, is not confident that Mr. Yegiazaryan will pay up if he loses.  Mr. Smagin should not be forced to take the same risk of nonpayment that, if Mr. Yegiazaryan is to be believed, no bond company will take even in exchange for a payment of several million dollars.  A bond should be required as a condition of any stay.

//

//

//

//

---

[8] This was only recently discovered after Mr. Smagin was able to persuade the Los Angeles Superior Court presiding over Mr. Yegiazaryan's divorce proceedings to release information that Mr. Yegiazaryan and his wife had attempted to hide by improperly filing with the court under seal.  *See* Declaration of Bruce H. Jackson in Support of Reply Brief in Support of Motion for Summary Judgment at ¶ 2 (ECF 52-8).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1

### III.   CONCLUSION

2     For the foregoing reasons, Mr. Smagin respectfully requests that the Court deny

3   Respondent's motion to stay but approve a Rule 62(d) stay contingent upon posting a

4   supersedeas bond in an amount of equal to $115,629,565 (125% of the judgment of

5   $92,503,652).[9]

6

7   Dated:    May 16, 2016              Respectfully submitted,

8                                       **BAKER & McKENZIE LLP**
                                        Bruce H. Jackson
9                                       Nicholas O. Kennedy

10

11                                      By:/s/ Bruce H. Jackson
                                            Bruce H. Jackson
12                                      Attorneys for Petitioner
                                        VITALY IVANOVICH SMAGIN

13

14

15

16

17

18

19

20   [9] The purpose of a supersedeas bond is to "protect[] the prevailing plaintiff from the
21   risk of a later uncollectible judgment and compensates him for delay in the entry of
     the final Judgment." *N.L.R.B. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988).  To
22   achieve this goal, district courts in California have ordered bonds that cover not only
     the full judgment, but also prejudgment interest and costs of appeal.  *See, e.g.*, *Wu v.*
     *Doucette*, No. EDCV07-01584-VAP(OPx), 2010 U.S. Dist. LEXIS 93481 (C.D. Cal.
23   Aug. 25, 2010) (court ordered bond in the amount of the full judgment, post judgment
     interest, and cost of appeal); *Acacia Research Corp. v. Nat'l Union Fire Ins. Co.*, No.
24   SA CV 05-501 PSG (MLGx), 2008 U.S. Dist. LEXIS 109598 (C.D. Cal. Sep. 9, 2008)
     (court ordered bond for 110% of the judgment); *In re Broadcom Corp. Secs. Litig.*,
25   No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 45656 (C.D. Cal. Dec. 5,
     2005) (court ordered bond include double the anticipated costs and attorney's fees in
26   order to cover potential sanctions for filing an unfounded appeal in a class action
     case).  Indeed, the Eastern District of California has adopted the general rule that a
27   supersedeas bond be 125% of the full judgment to reasonably protect the plaintiff's
     ability to recover.  E.D. Cal. R. 151(d).
28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000