1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10                    WESTERN DIVISION
11

12  VITALY IVANOVICH SMAGIN,          | Case No.  2:14-cv-09764-R
13              Petitioner,            | **ORDER GRANTING POST-**
                                       | **JUDGMENT INJUNCTION**
14        v.
15  ASHOT YEGIAZARYAN, a.k.a.
    ASHOT EGIAZARYAN,                  | **Before: The Hon. Manuel L. Real**
16                                     | **Courtroom:  8, 2nd Floor**
              Respondent.
17

18
19
20
21
22
23
24
25
26
27
28

1   Before the Court is Petitioner Vitaly Ivanovich Smagin's Application for a

2   Post-Judgment Injunction.  After reviewing the pleadings, evidence, and other

3   materials, holding a hearing on October 26, 2016 to hear arguments from counsel, and

4   being fully informed, the Court orders as follows.

5   On December 22, 2014, Petitioner Smagin filed this action seeking to confirm a

6   final international arbitration award pursuant to the Convention on the Recognition

7   and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330

8   U.N.T.S. 38.  At arbitration, Respondent Ashot Yegiazaryan, a.k.a. Ashot Egiazaryan,

9   and Kalken Holdings Limited, a company existing under the laws of Cyprus, were

10  found jointly and severally liable to Mr. Smagin in the amount of $84,290,064.20.

11  This Court confirmed the arbitration award on March 17, 2016 and entered

12  judgment in favor of Mr. Smagin on April 4, 2016 in the amount of $92,503,652.  Mr.

13  Yegiazaryan appealed and sought a stay of enforcement pending appeal without the

14  requirement of posting security for that stay.  That request was denied, Mr.

15  Yegiazaryan declined to post a bond and the Judgment is now final and enforceable.

16  Mr. Smagin recently sought a temporary restraining order and preliminary

17  injunction on the grounds Mr. Yegiazaryan was continuing an admitted practice of

18  concealing his beneficial ownership of assets that would inhibit or impair Mr.

19  Smagin's ability to enforce his judgment.  The Court granted the temporary restraining

20  order and issued an order to show cause why a preliminary injunction should not issue

21  and then set the matter for hearing.  The matter was fully briefed by the parties.  On

22  October 26, 2016, at 10:00 am, the parties appeared before the Court.  The Court

23  heard argument of counsel for both sides.  For the reasons set forth herein, as well as

24  those stated on the record during the hearing, the Court will grant the requested

25  preliminary injunction.

26  "The standard for a preliminary injunction is essentially the same as for a

27  permanent injunction with the exception that the plaintiff must show a likelihood of

28  success on the merits rather than actual success." *Winter v. Natural Res. Def. Council,*

1

1  *Inc.*, 555 U.S. 7, 32 (2008) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542

2  (1987)).

3  Accordingly, in order to issue this order, Mr. Smagin must establish that (1) he

4  has succeeded on the merits of his confirmation claim; (2) he is likely to suffer

5  irreparable harm absent an injunction; (3) the balance of the equities tips in favor of an

6  injunction; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def.*

7  *Council, Inc.*, 555 U.S. 7, 24 (2008); *see also, e.g., Republic of Philippines v. Marcos*,

8  862 F.2d 1355, 1362 (9th Cir. 1988); *Alliance for the Wild Rockies v. Cottrell*, 632

9  F.3d 1127, 1131 (9th Cir. 2011).

10  First of all, the Court concludes that it has authority to issue preliminary

11  injunctive relief in a post judgment setting, as long as the above criteria are satisfied.

12  While the Ninth Circuit Court of Appeals has not addressed the precise issue, courts in

13  the Third, Fifth, Sixth, and Eleventh Circuits have issued or affirmed similar asset

14  freezes "where waste, dissipation, or transfer of assets by [judgment debtor] has a

15  direct impact on appellee's potential ultimate recovery." *Meyers v. Moody*, 723 F.2d

16  388,389 (5th Cir. 1984); *see also*, *West Hills Farms, LLC v. ClassicStar, LLC*, 2013

17  WL 4515046, at *1 (E.D. Ky. Aug. 23, 2013) ("[T]he Court concludes that it has

18  authority to issue any necessary injunctive relief 'in aid of its jurisdiction' [over

19  defendants who may waste, dissipate, or secret assets.]"); *Gambone v. Lite Rock*

20  *Drywall*, 288 F. App'x 9, 12 (3rd Cir. 2009) (affirming post-judgment preliminary

21  injunction in proceedings supplementary, explaining "so long as the plaintiffs'

22  demand for injunctive relief qualifies as a post-judgment enforcement proceeding,

23  which is a proceeding that functions as a means for executing a judgment, the District

24  Court has subject matter jurisdiction."); *Axiom Worldwide, Inc. v. HTRD Grp. H.K.*

25  *Ltd.*, No. 8:11-cv-1468-T-33TBM, 2015 U.S. Dist. LEXIS 174042 (M.D. Fla. Dec. 8,

26  2015) (holding district courts do not have "any less equitable power to order

27  injunctive relief in the post-judgment setting, including an asset freeze, so long as

28  such satisfies procedural and substantive rules for [prejudgment injunctive relief]").

2

1    Similarly, in *Innovation Ventures, LLC v. N2G Distrib.*, No. SACV 12-717

2   ABC (Ex), 2014 U.S. Dist. LEXIS 184729 (C.D. Cal. July 9, 2014), the Central

3   District of California granted a post-judgment temporary restraining order prohibiting

4   judgment debtors from transferring assets, opening new bank accounts, forming new

5   business operations and engaging in the spoliation of evidence.

6    In his Response to the Court's Order to Show Cause why injunctive relief

7   should not issue, Mr. Yegiazaryan relies on *Grupo Mexicano de Desarrollo S.A. v.*

8   *Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999).  However, *Grupo* is not controlling

9   under these circumstances, as it only addresses a worldwide asset freeze in the context

10  of pre-judgment injunctive relief in a suit for money damages prior to judgment.  *See*

11  *id.* at 319-21, 333 (holding that worldwide asset freeze is not available to "a general

12  creditor (one *without a judgment*)") (emphasis added).  At this stage in the

13  proceedings, Mr. Smagin is not merely a potential judgment creditor—rather, the

14  Court has issued a final and enforceable judgment in his favor.

15    Additionally, the Court's judgment in this case is not simply a damages award.

16  Rather, Mr. Smagin filed this case to seek Court enforcement and confirmation of an

17  arbitration award – a situation the Ninth Circuit has recognized as "tantamount to

18  granting a request for specific performance of the [contract.]"  *See United States v.*

19  *Park Place Assocs.*, 563 F.3d 907, 931 (9th Cir. 2009).  Accordingly, even if *Grupo*

20  were otherwise applicable, which it is not, its holding would not preclude the

21  injunction granted by this Court herein.

22    The Court has reviewed in detail the additional authority cited in Mr.

23  Yegiazaryan's Response, and finds that it does not preclude an injunction in this case.

24  First, Mr. Yegiazaryan cites case law holding that a pre-judgment preliminary

25  injunction freezing assets generally dissolves upon entry of a final judgment.  *See U.S.*

26  *Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093-94 (9th Cir. 2010).  *Philips*

27  addressed an action by the court to modify a prejudgment injunction that had already

28  dissolved automatically upon entry of judgment.  The court there did not at all address

3

1   the circumstances of a judgment creditor seeking a post-judgment asset freeze to

2   secure a right to recovery, and that opinion is therefore not controlling or persuasive

3   under these circumstances. *See id.*

4          Next, Mr. Yegiazaryan cites several cases addressing the steps available to

5   enforce a judgment under state law.  However, at best, these cases provide that the

6   court may not issue affirmative or mandatory injunctive relief, such as holding parties

7   in contempt or ordering the deposit of funds, for purposes of post-judgment

8   enforcement of a money judgment. *See, e.g.*, *Hilao v. Estate of Marcos*, 95 F.3d 848

9   (9th Cir. 1996); *Spain v. Mountanos*, 690 F.2d 742, 744-45 (9th Cir. 1982); *Ecopetrol*

10  *S.A. v. Offshore Exploration & Prod. LLC*, No. 14-CV-529 (JGK), 2016 U.S. Dist.

11  LEXIS 40417, at *15 (S.D.N.Y. March 28, 2016).  By contrast, Mr. Smagin does not

12  seek enforcement assistance but merely seeks a post-judgment injunction to preserve

13  the status quo so he is not precluded from enforcing his judgment through Mr.

14  Yegiazaryan's diversion of assets.

15         Moreover, this Court's injunctive authority may reach worldwide.  "Once

16  personal jurisdiction of a party is obtained, the District Court has authority to order it

17  to 'freeze' property under its control, whether the property be within or without the

18  United States." *Hilao v. Marcos (In re Estate of Marcos)*, 25 F.3d 1467, 1478 (9th

19  Circ. 1994) (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 384

20  (1965)).  Numerous courts have invoked this power to issue preliminary injunctions

21  freezing assets worldwide to secure funds for an expected judgment. *See, e.g., SEC v.*

22  *Int'l Swiss Inv. Corp.*, 895 F.2d 1272 (9th Cir. 1990); *Republic of Philippines v.*

23  *Marcos*, 862 F.2d 1355 (9th Cir. 1988); *Omnium Lyonnais D'Etancheit Et Revetement*

24  *Asphalte v. Dow Chem. Co.*, 441 F. Supp. 1385 (C.D. Cal. 1977).  This power is even

25  more justified here where Mr. Smagin already has a judgment.

26         Mr. Smagin has satisfied the criteria for the issuance of an injunction.  To

27  begin, he already prevailed on the merits.  His arbitral award has been confirmed and

28  he has a fully enforceable judgment.

1    In terms of irreparable injury, Mr. Yegiazaryan has fought long and hard to

2    prevent enforcement of Mr. Smagin's award and judgment.  This pattern of avoidance

3    and concealment is well established.  First, many of the findings of the London Award

4    rest upon Mr. Yegiazaryan's concealing and misappropriating assets from Mr. Smagin

5    through the use of entities in "offshore" jurisdictions, including Cyprus and the British

6    Virgin Islands.  Moreover, the arbitration tribunal made several findings

7    demonstrating Mr. Yegiazaryan's lack of trustworthiness, including its rejection of his

8    arguments that he had no interest in certain assets and that the operative agreement

9    was forged.  Those findings were echoed by the English High Court of Justice when

10    they found that Mr. Smagin did not tell the truth in testimony about the ownership of

11    his assets.  The Court has previously made findings regarding these issues on multiple

12    occasions and there is no reason that those findings should be any different now.

13    In February 2016,  Mr. Smagin was able to intervene in Mr. Yegiazaryan's state

14    court divorce proceedings and thereby gained access to documents (improperly filed

15    under seal) establishing that in May 2015, Mr. Yegiazaryan settled a large arbitration

16    award in his favor and placed at least $188 million of the proceeds in a trust managed

17    by a Lichtenstein trustee with a Monaco bank account.  The Los Angeles Superior

18    Court also granted a worldwide freezing order against the transfer of assets by Mr.

19    Yegiazaryan and his wife, and because Mr. Smagin was protected by this order until

20    recently, he did not seek additional injunctive relief from this Court.

21    Mr. Yegiazaryan later convinced the Superior Court that Mr. Smagin was only

22    a "potential judgment creditor" and therefore did not have a sufficiently direct interest

23    in the proceedings to intervene in the divorce proceedings and obtain the freezing

24    order that the Superior Court previously granted.

25    Mr. Smagin immediately filed a motion for reconsideration of this order and

26    requested that the order be stayed and the freeze remain in effect pending resolution of

27    this motion.  The family court summarily denied the request to stay.  Accordingly, the

28    asset freeze was set to terminate on October 14, 2016.  On October 13, 2016, Mr.

1  Smagin filed with this Court his application for emergency injunctive relief.  (ECF
2  No. 84).
3          Without relief from this Court, Mr. Smagin would be left without protection
4  from Mr. Yegiazaryan's duplicity.  Mr. Yegiazaryan's record of concealing the true
5  beneficial owner of assets through these types of nominee structures makes it likely
6  that, given the opportunity, he will continue to hide the proceeds of this settlement in a
7  way to avoid payment directly to himself in California where the proceeds would be
8  subject to execution on the judgment.  This Court believes that given Mr.
9  Yegiazaryan's past actions, it is highly likely that these assets will immediately be
10  moved to another nominee structure in another jurisdiction unknown to Mr. Smagin
11  and out of the immediate reach of Mr. Smagin and his judgment.  The Court therefore
12  concludes that without the injunction Mr. Smagin will suffer irreparable injury in that
13  Mr. Yegiazaryan is highly likely to continue to move the assets yet again to force Mr.
14  Smagin to start from scratch and even further delay (or destroy) his right to collect his
15  enforceable judgment.
16          Mr. Yegiazaryan's argument that Mr. Smagin will suffer no injury because he is
17  fully protected by the so-called "Russian freeze" is unpersuasive.  Both this Court and
18  the Ninth Circuit Court of Appeals have heard and rejected this argument before on
19  more than one occasion.  There is no reason for this Court now to revisit this issue.
20          The Court further finds that the balance of equities and public interest weigh in
21  favor of an injunction because the injunction operates only to ensure that Mr.
22  Yegiazaryan lives up to his obligations under the arbitration award.
23          This Court finds it appropriate to issue an injunction in these circumstances.
24  Personal jurisdiction is undisputed.  The Court therefore may unquestionably enjoin
25  Mr. Yegiazaryan and all those acting under his direction and control from taking
26  actions to transfer, conceal or dissipate the proceeds of the arbitration settlement.  Mr.
27  Yegiazaryan, like the defendants in *Marcos*, has used a variety of financial structures
28  and nominees to conceal his assets.  *See, e.g.*, English Judgment, ¶ 6; Mr.

6

1   Yegiazaryan's Second Kerimov Statement ¶¶ 2.5-2.7 (Mr. Yegiazaryan cataloguing
2   nominees and offshore companies holding assets on his behalf and at his direction).
3        Accordingly, this Court will issue the requested worldwide injunction to "keep
4   [Mr. Yegiazaryan's] assets from disappearing" and preserve Mr. Smagin's ability to
5   recover the judgment in his favor.  *See, e.g., Philippines v. Marcos*, 862 F.2d at 1364.
6   The Court further finds that Mr. Smagin's previous deposit of $10,000 in security with
7   the Clerk of Court will constitute adequate security for the injunction granted herein.
8        **IT IS HEREBY ORDERED** that the application for post-judgment injunctive
9   relief is **GRANTED**;
10       **IT IS FURTHER ORDERED THAT**
11       Ashot Yegiazaryan, his agents, and/or any person or entity acting under his
12  direction and control shall not take any action to transfer, assign, conceal, diminish,
13  encumber, hypothecate, dissipate or in any way dispose of any proceeds, in an amount
14  up to and including $115,629,565, derived by or held for the benefit of Ashot
15  Yegiazaryan, his agents, nominees, trustees or any person or entity acting under his
16  direction and control, in payment, settlement or satisfaction of an arbitration award
17  obtained in his arbitration with Suleyman Kerimov, without prior order of the Court
18  permitting such a transfer, including specifically the "Kerimov settlement funds" as
19  identified in the Stipulation Re Advance Distribution of Funds executed by Petitioner
20  and Respondent on July 6, 2015 and filed with the Los Angeles Superior Court and
21  any proceeds of or investments made with those funds, including specifically (but not
22  limited to) any funds held by CTX Treuhand AG, Vaduz, Lichtenstein (under Alpha
23  Trust or otherwise, or any other trustee), with Savannah Advisors Inc., c/o Alpenrose
24  ///
25  ///
26  ///
27  ///
28  ///

7

1   Wealth Management (or any other investment manager) and/or in an account at
2   Compagnie Monegasque De Banque or in any other bank or financial institution.

3

4        This injunction shall remain in effect until Mr. Smagin's judgment is satisfied in
5   full or until otherwise dissolved by the Court.

6

7        **IT IS SO ORDERED.**

8

9   Dated:   ___November 14___, 2016.

10

11

12                                          _____
                                            MANUEL L. REAL
13                                          UNITED STATES DISTRICT JUDGE

14   CC: FISCAL

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8