UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

- - -

HONORABLE MANUEL L. REAL
UNITED STATES DISTRICT JUDGE PRESIDING

- - -

VITALY IVANOVICH SMAGIN,          )
                                  )
              PLAINTIFF,          )      CERTIFIED COPY
                                  )
VS.                               )      CV 14-9764 R
                                  )
ASHOT YEGIAZARYAN, a.k.a.         )
ASHOT EGIAZARYAN,                 )
                                  )
              DEFENDANT.          )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS
WEDNESDAY, OCTOBER 26, 2016
A.M. SESSION
LOS ANGELES, CALIFORNIA

SHERI S. KLEEGER, CSR 10340
FEDERAL OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, ROOM 402
LOS ANGELES, CALIFORNIA 90012
PH:  (213)894-6604

1

2

APPEARANCES OF COUNSEL:

3

ON BEHALF OF PLAINTIFF:

4

BAKER and McKENZIE LLP
5      BY:  BRUCE HALLIDAY JACKSON, ESQUIRE
TWO EMBARCADERO CENTER
6      11TH FLOOR
SAN FRANCISCO, CA 94111

7

8  ON BEHALF OF DEFENDANT:
TANTALO & ADLER
9      BY:  MICHAEL S. ADLER, ESQUIRE
1901 AVENUE OF THE STARS
10      SUITE 1000
LOS ANGELES, CA 90067

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        LOS ANGELES, CALIFORNIA; WEDNESDAY, OCTOBER 26, 2016

 2                          A.M. SESSION

 3                          - - -

 4

 5

 6               THE CLERK:  Calling item No. 1,

 7   CV-14-9764-R:  Vitaly Ivanovich Smagin versus Ashot

 8   Yegiazaryan.

 9               Counsel, please state your appearances.

10               MR. JACKSON:  Good morning, Your Honor.

11               Bruce Jackson on behalf of Mr. Vitaly

12   Smagin.

13               MR. ADLER:  Good morning, Your Honor.

14               Michael Adler on behalf of Ashot

15   Yegiazaryan.

16               THE COURT:  All right.

17               Mr. Jackson.

18               MR. JACKSON:  Yes.

19               THE COURT:  Let's hear.

20               MR. JACKSON:  Your Honor, I would like to

21   start by pointing out that this Court has already found

22   on multiple occasions that Mr. Yegiazaryan has an

23   admitted practice of concealing beneficial ownership of

24   assets through the use of nominees and nominee

25   companies.  This is admitted in other legal proceedings.
```

1  It was found to be the case in the London High Court

2  case that basically rejected his challenge to the

3  arbitral award.  The Court in London found him in fact

4  to be untruthful in terms of his testimony to the Court

5  about his beneficial ownership of assets.

6         One prediction we made in earlier papers we

7  filed with this Court was that we had understood or had

8  reason to believe that there was a settlement, or soon

9  to be settlement, of a very large arbitral award in

10  Mr. Yegiazaryan's favor in a case that we referred to in

11  multiple papers here, the Kerimov award, and, as it

12  turns out, that prediction was accurate.  That Kerimov

13  award was settled for an amount in excess of $188

14  million.

15         We learned this by way of closely monitoring

16  a family law dispute in the Superior Court, where we

17  found that his wife in that matter was also alleging

18  concealment of assets.  And we learned that the -- that

19  apparently there was in process some sort of a private

20  settlement that made reference to this Kerimov

21  settlement as being a primary source of funds to be

22  divided among the parties.

23         At the recommendation of family law counsel,

24  we sought to intervene in that case, because this

25  appeared to be a principal asset against which

1    Mr. Smagin could enforce his $92 million dollar

2    judgment.

3              The Superior Court granted us the right to

4    intervene; also unsealed document documents that had

5    previously been filed under seal improperly, which

6    disclose the details of that settlement and where the

7    money was, and it was placed in a Lichenstein trust with

8    a Monaco bank account.  Undoubtedly, all of this was for

9    the purpose of hiding these assets from Mr. Smagin, and

10   perhaps other creditors.

11             That Superior Court, based on that

12   information, and also information that we previously

13   provided to this Court, in which this Court has found

14   that -- that Mr. Smagin could suffer irreparable injury

15   from this conduct the Court -- the Superior Court issued

16   a worldwide freezing order against Mr. Yegiazaryan and

17   his wife, and that order had remained in place for

18   sometime.

19             Mr. Yegiazaryan and his lawyers and his

20   wife's lawyers took immediate steps over the course of

21   time to try to dislodge all of that, and at some point

22   there was a hearing and the judge issued a tentative

23   ruling, and he took the matter under submission for many

24   weeks.  And we believe perhaps based on the oral

25   arguments that he was reconsidering his tentative which

1    was -- which ruling was that Mr. Smagin incredibly was

2    not a judgment creditor.  He was only a potential

3    judgment creditor.  And this was after Mr. Smagin had

4    made three efforts to obtain a stay without bond -- a

5    stay of execution without bond twice before this Court

6    and once before the Ninth Circuit.

7            The last ruling that came down from the

8    Ninth Circuit in that case right before the hearing

9    again confirmed that Smagin was a judgment creditor with

10    a right to execute.  There was no stay in place

11    preventing his execution on his judgment, and the

12    Superior Court refused to take judicial notice of that

13    because it was -- occurred right before the hearing.

14            We certainly believe that the Superior

15    Court's decision to not allow intervention on the

16    grounds that Mr. Smagin was not a judgment creditor was

17    clearly wrong, and so we immediately -- you know, our

18    intentions all along, if that was the ultimate ruling,

19    was to seek reconsideration.

20            Ultimately, I think it was the 4th of

21    October a ruling finally came down.  As I said, he kept

22    it under submission for a long time.  And it included,

23    as we had requested, a ten-day stay of effectiveness to

24    allow us to further challenge the ruling.  And

25    unfortunately, not withstanding the strong beliefs of

1    our family law counsel that the Court would extend that

2    stay pending a reconsideration, on an ex parte

3    application the Superior Court did not, and that as soon

4    as we learned that we came back to this Court for

5    further relief.

6             Our position is that this Court has brought

7    authority to freeze property when it has jurisdiction

8    over a party, has authority to freeze property wherever

9    it's located -- essentially not freezing the property,

10   but freezing the ability of the party before the Court

11   to take action to dissipate or conceal or transfer the

12   property.

13            We did not find any direct Ninth Circuit

14   Court of Appeals authority on the specific point of

15   whether a post-judgment application for a preliminary

16   injunction was within the authority of the District

17   Court.

18            We did find, however, cases in other

19   jurisdictions, a case in the Fifth Circuit Court of

20   Appeals, a case in the Third Circuit Court of Appeals, a

21   case in the Eastern District of Kentucky, a case in the

22   Middle District of Florida, and a case actually in this

23   very court, the Central District, all of which support

24   the proposition that a District Court, when it believes

25   that waste dissipation or transfer of assets by a

 1    judgment debtor will have a direct impact on a party's

 2    potential ultimate recovery of his judgment has

 3    authority to issue a post-judgment preliminary

 4    injunction freezing the assets.

 5             I think perhaps one of the most helpful

 6    analysis is in the Axiom case.  All of these cases, by

 7    the way, Your Honor, are cited on pages 9 through 10 of

 8    our opening memorandum and on pages 6 through 7 of our

 9    reply papers.

10             The Court in Axiom noted that, and as this

11    Court is well aware, has -- the District Court has

12    brought authority in a prejudgment setting to freeze

13    assets in order to maintain the status quo.  And the

14    Court, after looking at that, concluded -- and this is a

15    quote:  I see no basis to conclude that a District Court

16    has any less equitable power to order injunctive relief

17    in the postjudgment setting, including an asset freeze

18    so long as such satisfies procedural and substantive

19    rules for the same.

20             That, I thought, kind of presents a helpful

21    rationale that there shouldn't be any real difference.

22    As I said, these courts have concluded there is not an

23    affirmed District Court's issuing of an injunction in

24    postjudgment setting in those cases I have cited.

25             Now -- so I believe there's ample authority

1   for the Court to issue a preliminary injunction to

2   further prevent what is an obvious plan and pattern to

3   conceal -- further conceal assets.

4          It's very obvious, Mr. Yegiazaryan three

5   times tried to get a stay on execution without posting a

6   bond.  He seems, at least argues that he's going to win

7   on his appeal, and I would say, well, if he's so

8   certain, he should just post a bond and if he wins, no

9   harm no foul, but if he looses at least Mr. Smagin is

10  protected.  But, of course, he doesn't want to post a

11  bond because that will upset his carefully laid plans to

12  put assets out of reach.

13         There's no doubt in Mr. Smagin's mind that

14  without further relief from this Court that the money

15  now in Lichtenstein will end up, who knows where, in

16  some other nominee or trust status, which we will

17  ultimately have great difficulty finding, let alone,

18  executing on the judgment.

19         Now, in opposition to this, there is really

20  two -- two lines of authority.  Mr. Yegiazaryan argues

21  principally based on the decision of -- in U.S. Philips

22  Corp. versus KBC Bank, 590 F.3d 1091, a Ninth Circuit

23  Court of Appeals decision.  That decision simply

24  provides no authority whatsoever on the issue of whether

25  a court in a separate application can consider and award

1   postjudgment injunctive relief.

2          That case stands for the unremarkable

3   proposition that prejudgment preliminary injunction,

4   freezing assets during the pendency of the case,

5   dissolves at the time of entry of judgment.  And the

6   technical question that was addressed in that case was a

7   fairly straightforward one of the Court, after entering

8   default judgment, then went back and modified a

9   previously issued preliminary injunction.

10          The Ninth Circuit simply said:  Since the

11   preliminary injunction issued previously dissolves upon

12   the entry of judgment, there is nothing there to modify.

13   It's already gone.  So that the modification, attempt to

14   modify it was of no effect.

15          It did not rule at all on the separate issue

16   that's before this Court of whether, based on clear

17   evidence of an effort to hide and conceal assets, the

18   Court may exercise authority to issue a postjudgment

19   preliminary injunction that's raised in the postjudgment

20   time of the case.

21          The other line of cases have to do

22   specifically with instances where the Court was asked to

23   affirmatively do something:  Order a party on penalty of

24   contempt to pay money; order the state treasurer to

25   issue the command for payment, again, with the possible

1    penalty of contempt sanctions.  And that was viewed as

2    an interference of the process of enforcement and

3    execution which is governed by state law.

4                We're not asking the -- this Court to assist

5    in the enforcement or execution of -- on Mr. Smagin's

6    judgment.  We're asking the Court to exercise its broad

7    equitable powers to maintain the status quo so that at

8    some point hopefully Mr. Smagin will be able to execute

9    on his judgment using the procedures available under

10   California law or under whatever jurisdiction assets can

11   be found.

12               Mr. Yegiazaryan also continues refers to

13   Grupo, the Grupo Mexicano case as if that provided some

14   support for his position that the Court has no authority

15   to issue an injunction in these circumstances.  And

16   Grupo, again, doesn't really apply at all because Grupo

17   was dealing with a situation where there was a general

18   creditor without a judgment, in other words, someone at

19   the early stages of the case.  And Mr. Smagin is not

20   that person; Mr. Smagin is not a general creditor who

21   without a judgment.  He is a judgment creditor with a

22   $92 million judgment from this Court, which is a

23   confirmation of an arbitral award.  And -- and both this

24   Court and the Ninth Circuit Court of Appeals have said

25   Mr. Smagin is free to execute and is not granted a stay

1  of execution.  So it is -- it's not the same category as

2  Grupo.

3            But interestingly enough, Grupo, in addition

4  to not applying on that basis, provided an exception on

5  another basis, and that is that Grupo recognized an

6  exception that a Court can provide equitable relief in

7  support of what is essentially an equitable cause of

8  action.  And we have pointed out to this Court before

9  that the Ninth Circuit has specifically recognized that

10  the process of confirming an arbitral award is

11  tantamount to granting a request for specific

12  performance on a contract.  It is more than just a suit

13  for a money judgment.  It is an equitable action to

14  confirm.

15            There are numerous cases.  United States

16  versus Park Place Associates is one of them.  And these

17  cases are all cited at pages 9 through 10 of our reply

18  brief.  But that provides an additional basis here,

19  because we essentially have an equitable action.  It's

20  more than just a money judgment; it's an equitable

21  action to confirm an arbitral award.  And Grupo

22  recognized an exception for Courts to issue equitable

23  relief to support an equitable action.

24            And finally, the Ninth Circuit has also

25  recognized that in the context of arbitral awards or

```
  1    international arbitral awards that a District Court may
  2    issue injunctive relief where it's be necessary to
  3    preserve the status quo and the meaningfulness of the
  4    arbitration process.
  5            In other words, in the context of the
  6    New York Convention and the Federal Arbitration Act,
  7    Congress has specifically conferred a special status on
  8    arbitration and international arbitrations, and the
  9    intent is to give the Court wide latitude to take
 10    whatever steps are necessary to ensure not only -- you
 11    know, to confirm awards with a special procedure for
 12    that.  But not only to that, but to ensure the
 13    meaningfulness of the process.
 14            And here, the Mr. Smagin has won his case
 15    now three times.  Once at the arbitration panel, once
 16    before the High Court in London, once before this Court.
 17    He has a judgment.  The ability to ultimately enforce
 18    that judgment will be rendered meaningless if Mr. Smagin
 19    is allowed to continue -- I'm sorry.  Mr. Yegiazaryan is
 20    allowed to continue what is a documented practice of
 21    trying to put assets out of reach, conceal his
 22    beneficial ownership.
 23            Just add one thing with regard to the family
 24    law matter, this particular asset, this $188 million,
 25    it's particularly useful because Mr. Smagin admitted in
```

1    the documents filed in the family law court that this is

2    his asset.

3                A lot of his other assets you will find, and

4    we will find, that they are under nominees and he will

5    deny any beneficial ownership, and on the face of it he

6    doesn't not have any.

7                But he specifically admitted to the Superior

8    Court that, and stipulated with his wife, that this was

9    a -- this was his asset and it was going to be used to

10   satisfy obligations of creditors.  And so this

11   particular asset is -- is one that we've finally been

12   able to identify.  It's his and it's his money.  And we

13   just want to make sure that it doesn't disappear again,

14   which is the reason we've asked this Court for relief.

15               Thank you, Your Honor.

16               THE COURT:  All right.  Counsel.

17               MR. ADLER:  I have a lot to say on the law

18   that was cited and the way in which things were taken

19   out of context.  But before I get started, I was

20   wondering if Your Honor had any questions or any area

21   that you would like me particularly to address.

22               THE COURT:  It's your lawsuit.  It's his

23   lawsuit and your lawsuit, not mine.

24               MR. ADLER:  Okay.  Thank you, Your Honor.

25               First, in terms of the procedural history of

1    this, it is true that they intervened in the family

2    action.  It is true that there was an ex parte order

3    issued for a worldwide freeze.  At the time that was

4    done, old school ex parte, without any notice to

5    Mr. Yegiazaryan or his spouse.  So there was never an

6    opportunity for them to appear and create a complete

7    record.

8                And one of the important things on the

9    complete record is the fact that Mr. Smagin has secured

10   an asset freeze in Russia over assets that Mr. Smagin

11   and himself has valued at $300 million.  So that -- and

12   just to be clear, Mr. Yegiazaryan only owns half of

13   that.  So Mr. Yegiazaryan's interest would only be a 150

14   million.

15               But the assets are frozen in Russia, and

16   that would be more than sufficient.  The law permits

17   Mr. Smagin to proceed to try and collect against those

18   assets.  He has so far not done so.

19               The most recent filing on the subject in the

20   family law court, Mr. Smagin presented a letter from a

21   Russian official confirming that the asset freeze was in

22   place and that it would be lifted if Mr. Smagin

23   collected outside of Russia.  His own evidence

24   demonstrates that he's protected there.

25               And Mr. Yegiazaryan admits to owning that.

1   He's admitted to owning that in discovery responses and

2   part of judgment collection.  There's no question that

3   Mr. Yegiazaryan is the ultimate beneficial owner that

4   that is there and it could be collected upon.  So the

5   whole argument that this needs to be collected -- needs

6   to be in place in order to be collected upon is simply

7   not accurate.

8           Now, in terms of the law, there are a number

9   -- oh, let me step back and talk about the -- also the

10  procedure in the state court.

11          They indicated that they only came into this

12  Court after their hopes of reconsideration in the state

13  court were dashed, but in fact there was a hearing on

14  June 30th where the judge told them that he was staying

15  with his tentative.  He did not take it under

16  submission.  He said:  I am staying with my tentative.

17  And please submit a proposed order.

18          We submitted -- or Mr. Yegiazaryan and his

19  family law counsel submitted a proposed order reflecting

20  the fact that the continued preliminary injunction was

21  denied.  Mr. Smagin's own counsel, on August 11th, and

22  we've submitted that, submitted a proposed order also

23  reflecting the fact that it was denied.

24          So they've known for more than two months

25  before they came in for this emergency relief that they

1  were not going to get the relief that they had sought

2  and obtained truly ex parte in the family law court.

3            We've also submitted to Your Honor the four

4  separate -- excuse me, one, two, three -- four separate

5  decisions from the courts in Cypress that initially

6  responded to Mr. Smagin's ex parte filings, and then

7  dismissed his requests for emergency or extraordinary

8  relief because Mr. Smagin had not been truthful to him

9  about the Russian asset freeze.  Four separate times.

10  Those were fully contested, fully briefed in the courts

11  in Cypress, who deal with a lot of Russian law issues.

12            So, again, it comes back to this is:  Would

13  it be necessary?  And the answer is no.  It's not be

14  necessary.

15            There's been a lot said about Mr. Smagin's

16  alleged practice of hiding assets.  All of this, when

17  you trace it back to where is the evidence, as opposed

18  to everybody citing everybody else, comes from one

19  statement that Mr. Yegiazaryan made that said, yes, he

20  often holds things in nominees' hands.  That that's a

21  recognized practice, and a lot of people in Russia do

22  it.  And, yes, he does it.

23            There was never a finding that he held -- or

24  never any testimony that he held it to try and hide it

25  from creditors.  And he has disclosed it to the people

1  he was required to disclose it to.  So those are the

2  facts.

3          Now, in terms of the law, Your Honor, let's

4  start with Grupo Mexicano and the argument that

5  postjudgment relief is the same as prejudgment relief in

6  terms of Rule 65, which speaks to preliminary injunctive

7  relief.

8          Grupo Mexicano said that when you have an

9  action to collect a money judgment you can't use

10  equitable powers.  That was a prejudgment case but it

11  applies in this case, and that's why ultimately the

12  Ninth Circuit stayed the original worldwide asset freeze

13  in this case, because an action on an arbitration award

14  where the arbitration award seeks only money damages is

15  an action for legal relief.  And the Ninth Circuit has

16  actually expressly held that.  We cited that in our

17  opposition papers.  It was ignored entirely in the reply

18  papers.  But that's the Ministry of Defense in support

19  of the armed forces for Iran versus Cubic defense

20  systems.

21          The Ninth Circuit expressly held that an

22  arbitration award that awards money damages, a specific

23  amount, a sum certain, which is what they sought in this

24  Court and what they received in this Court, is a money

25  judgment within the meaning of the federal rules.

1             There's also plenty of authority that -- for

2   the obvious proposition that once you convert an

3   arbitration award into a money judgment it's a money

4   judgment.

5             They have cited two cases to argue that

6   somehow an arbitration award is inherently equitable.  I

7   think those cases miss -- are mis -- misapplied.

8             The first one is the Toyo case.

9             And before talking about the Toyo case in

10   specific, I want to make what I think is an obvious

11   point, which is that arbitrators have both legal and

12   equitable jurisdiction.

13             My mom's an arbitrator; this is personal to

14   me.  But when you submit a case to an arbitrator,

15   arbitrators can consider both legal and equitable

16   claims, just like this Court may consider both legal and

17   equitable claims.  And when an arbitrator makes a

18   ruling, the arbitrator's ruling, just like this Court's,

19   may at times include equitable claims.  Which was the

20   case was Toyo.

21             Toyo was a case where there were two parties

22   who had a joint venture.  The first party wanted to

23   dissolve the joint venture.  The second party sought an

24   order from the arbitrators, or ultimately a ruling from

25   the arbitrators to preserve the joint venture.  That was

1    not a claim for money damages.  And in the case, the

2    district court in Toyo said:  Look, I recognize you're

3    seeking an ultimate equitable remedy, but it's an

4    arbitration and I don't think even on equitable claims I

5    have the power to issue equitable relief if the

6    arbitrators have that power.  I think they supplant me.

7    And what the Ninth Circuit said was:  No, no, no.  If

8    the standards for equitable relief are otherwise met,

9    i.e., there is an equitable claim that can provide for

10   an equitable judgment and an injunctive relief in

11   support of that then of course a District Court has the

12   equitable power to preserve prejudgment the equitable

13   remedy.

14            Toyo did not say that arbitration was

15   somehow different.  To the contrary.  It treated

16   arbitration exactly the same as regular claims before

17   the Court.

18            And then the only other Ninth Circuit case

19   they cite for the idea that arbitration is somehow

20   inherently equitable is the United States versus Park

21   Place case.  And again, it's worth looking at the facts

22   of the case.

23            In United States versus Park Place, the

24   United States had taken over an insolvent bank, and the

25   opposing party brought an arbitration award -- I'm

1    sorry -- brought an arbitration and received an

2    arbitration award in the amount of I believe it was

3    $93 million.  So actually very similar to the ordinance

4    case.  And they moved to enforce that award against the

5    United States, because the United States was the

6    successor in interest to the bank.

7              The United States said:  Whoa, whoa, whoa.

8    Sought immunity.  You can't enforce an award for damages

9    against us.

10             The plaintiff in the United States versus

11   Park Place make essentially the same arguments that

12   they're making here.  They said it's an arbitration

13   award.  It's just an equitable remedy for the payment of

14   money.  So equity runs against the government, there

15   shouldn't be any sovereign immunity.  And although the

16   Ninth Circuit did say that you could consider an

17   arbitration confirmation as sort of a quasi equitable

18   proceeding.  And certainly that would be the case,

19   seeking specific performance of contract, which would be

20   the case whenever an arbitrator orders specific

21   performance.

22             The Ninth Circuit went on to say:  But

23   you're asking for money, and the payment of money is not

24   treated as an equitable judgment.

25             And that's in accord with the United States

 1    Supreme Court case that we also cited, and it was also

 2    ignored in the reply:  The Great-West Life & Annuity

 3    Insurance Co. versus Knudson, 534 U.S. 204.

 4              In that case, the Supreme Court said, look,

 5    we recognize that there are lots of ways to dress up a

 6    claim for money, and there are lots of equitable

 7    theories that you could present for payment of money.

 8    But when it is payment of money that is being ordered,

 9    that -- and it's just a generalized payment of money,

10    that is a claim for money damages.

11              And the Ninth Circuit, as I said in the

12    Cubic Systems case, specifically ruled in an

13    international arbitration award that calls for the

14    payment of a sum certain is a claim for money damages

15    and it's treated under the procedures that apply to a

16    money damages claim.

17              So what are those procedures?

18              Those procedures are provided for in Rule 69

19    of the Rules of Federal Procedure, which provide for the

20    application of state law.  And they make a couple of

21    arguments to get around Rule 69.

22              First, they say, well, you can do a

23    preliminary injunction because the Ninth Circuit case in

24    U.S. Phillips Corp. versus KBC Bank Corp. doesn't apply.

25              Again, it's we're looking at what the case

1    actually said.  That was a case where the District Court

2    had entered a preliminary injunction asset freeze.

3    Then judgment entered, as it did in this case, and then

4    postjudgment the District Court modified the asset

5    freeze.

6              And it is true the Ninth Circuit said you

7    can't have a modified asset freeze.  But the reason they

8    said you can't have a modified asset freeze postjudgment

9    is because the power to issue a preliminary injunction

10   ends at judgment unless you're using Rule 70 for

11   equitable judgments.  But under Rule 65, the power ends

12   at judgment.

13             If Mr. Smagin were correct, then the Ninth

14   Circuit would have said in the U.S. Philips Corp. case,

15   it would have said, well, we're treating this instead of

16   a modification of the prior judgment, the prior

17   preliminary injunction, we're simply treating this as a

18   new preliminary injunction on the same terms.  That the

19   Court wanted to issue a preliminary injunction to secure

20   a recovery.  It wanted to do so postjudgment.  If it had

21   that authority, rather than treat it as a modification

22   just would have treated it as a new injunction.

23             But the Ninth Circuit said you can't do

24   that, because the preliminary injunction ends -- the

25   power for preliminary injunction ends at judgment.  It's

1  a preliminary injunction to keep things in the status

2  quo until judgment enters.  And that brings us to the

3  cases that they also ignore dealing with Rule 69, Halal

4  and Scheffler.  Again, Ninth Circuit cases dealing

5  directly on point where the Ninth Circuit said that

6  Congress presented a procedure for enforcing judgments,

7  and the procedure is that you follow state law and state

8  procedure.  That you can't use the Court's generalized

9  equitable power.

10          And they purport to make a distinction

11  between prohibitory and mandatory injunctions.  And they

12  say, well, all the cases that are cited were essentially

13  mandatory injunctions and all we're asking for is a

14  prohibitory injunction.

15          But there is no authority that says that any

16  equitable power can be used to enforce a monetary

17  judgment.  They have the right to procedure to execute.

18  They are in fact attempting to procedure to execute in

19  Liechtenstein.  They are not attempting to proceed to

20  execute in Russia, even though they have assets frozen

21  there.  But they could.  And there is no need to --

22  neither the need nor the authority in this Court to

23  issue a preliminary injunction postjudgment.

24          THE COURT:  Well, Mr. Yegiazaryan has never

25  released any funds in Russia, has he?

```
1              MR. ADLER:  When you say "released" --
2              THE COURT:  Has he ever released any funds?
3              MR. ADLER:  They're frozen by court order in
4    Russia, at Mr. Smagin's request.
5              THE COURT:  Has he released them?  They're
6    his funds.
7              MR. ADLER:  I don't believe he can, Your
8    Honor.
9              THE COURT:  Why can't he?  Because all he
10   can say is I release it to pay for the judgment that I
11   have against me by Mr. Smagin.
12             MR. ADLER:  Well, it's property, Your Honor.
13   He'd have to sell the property in order to -- in order
14   to raise the money.  And the freeze order is precluding
15   that.
16             THE COURT:  No.
17             Okay.  No.
18             MR. ADLER:  We -- I can get into settlement
19   discussions, if you'd like, Your Honor.
20             THE COURT:  Not settlement, it has nothing
21   to do with settlement.  He has the right to release
22   funds that are due him in Russia.  That's what we're
23   talking about.  That's what you've been talking about,
24   about his funds in Russia.
25             MR. ADLER:  His property interests, yes,
```

```
 1   Your Honor.
 2              THE COURT:  His property interest.
 3              MR. ADLER:  Yes, he has --
 4              THE COURT:  He can --
 5              MR. ADLER: -- property.
 6              THE COURT:  He can release that money or
 7   that -- that fund.
 8              MR. ADLER:  Well, my understanding --
 9              THE COURT:  Or that property.
10              MR. ADLER:  Yes.  My understanding from
11   Russian counsel is that actually he cannot under the --
12              THE COURT:  He what?
13              MR. ADLER:  My understanding from Russian
14   counsel -- and I don't purport to be a Russian legal
15   expert.  But my understanding is that he cannot under
16   the terms of the freeze that Mr. --
17              THE COURT:  Oh, but you're saying --
18              MR. ADLER: -- secured.
19              THE COURT:  What you're telling me is that
20   Mr. Smagin can go over there and get it.
21              MR. ADLER:  Yes, Your Honor.
22              THE COURT:  But now you're telling me that
23   it can't be released.
24              MR. ADLER:  Mr. --
25              THE COURT:  Come on, don't play games with
```

1   me.  Please, don't play games.  And don't keep talking

2   about things that don't belong.

3              MR. ADLER:  I apologize, Your Honor.

4              All right.  In terms of the cases that they

5   cite for the authority of the Court to issue a

6   preliminary injunction after judgment, the only case --

7   none of those cases address the question of whether Rule

8   69 bars the use of the Court's injunctive power after

9   judgment.

10             The Ninth Circuit, as I had mentioned, has

11   addressed this at least twice in the Scheffler and Halel

12   case.  The Fifth Circuit case they cite is a 1984,

13   2-page per curiam which does not consider this issue.

14             The majority of the other cases they cite --

15   well, I won't say majority.  But a number of the other

16   cases they cite, including the case that comes out this

17   district, Judge Collins' case, involves judgments that

18   provided for equitable relief as part of the judgment,

19   and, therefore, Rule 70 was appropriate.  This case

20   provides simply for the payment of money damages.

21             Finally, they make the argument that

22   Mr. Yegiazaryan should just post a bond, but they are

23   very well aware that Mr. Yegiazaryan does not have that

24   ability.  That the assets of Mr. Yegiazaryan have been

25   frozen.  That Mr. Yegiazaryan does not have a passport.

1    That he is simply incapable of posting a bond.

2              And while I recognize that this Court has

3    not chosen to exercise its discretion to allow the

4    appeal without bond, that's not the same as saying the

5    extraordinary relief of an asset freeze.

6              And notably this asset freeze, they're not

7    seeking simply to freeze 117 million of

8    Mr. Yegiazaryan's assets around the world because that

9    would cover the Russian assets.  They're seeking

10   specifically to freeze his interests in the Kerimov

11   award in order to achieve essentially a double freeze,

12   the freeze that they secured in Russia, plus the freeze

13   that they are seeking in this Court.

14              THE COURT:  All right.

15              MR. ADLER:  So unless the Court has any

16   further questions.

17              THE COURT:  No, I have none.

18              MR. JACKSON:  Just two quick points, Your

19   Honor.  The Russian freeze argument has been made over

20   and over again.  It was made in support of the motions

21   for stay without bond, presented to both this Court and

22   the Ninth Circuit Court of Appeals that this -- that

23   Mr. Smagin was fully protected by the so-called Russian

24   freeze and that their argument has been rejected at

25   least three times.

1              And the last point is that the last two

2     cases, I think they were Halal and Scheffler -- yes.

3     Counsel mentioned the Halal decision and the Scheffler

4     decision as being supportive of Mr. Yegiazaryan's

5     position.

6              Those cases, again, both involved the Court

7     being asked to get specifically involved in ordering

8     people to pay money under penalty of contempt and that

9     sort of thing.  We're not asking the Court to order

10    Mr. Yegiazaryan to pay the amount of money that he owes

11    subject to contempt or anything like that.  We're not

12    asking this Court to get involved in the enforcement

13    process.  We're simply asking the Court to exercise its

14    equitable authority to maintain the status quo.

15             This particular asset is the only asset that

16    we've been able to identify where Mr. Smagin has

17    specifically told the Superior Court it's his money as

18    opposed to all these other assets, which I'm sure he

19    would claim aren't his and belong to someone else,

20    including the Russian assets.

21             Thank you, Your Honor, for your time.

22             THE COURT:  All right.  All right.

23             MR. ADLER:  May I just very briefly, Your

24    Honor.

25             Again, on this question of the binding Ninth

```
 1   Circuit authority, Rule 69(a), that the specific terms
 2   of it say proceedings supplementary to and in aid of
 3   judgment or execution must -- that's my emphasis.  But
 4   the wording is must accord with the procedure of the
 5   state where the state is located.
 6            So, again, this argument that even though
 7   it's just a prohibitory injunction, it's not governed by
 8   the Ninth Circuit, that the Ninth Circuit says you have
 9   to follow Rule 69.
10            And in terms of the claim that this is the
11   only asset that Mr. Yegiazaryan has admitted owning,
12   that is simply not true.  There's no evidence in the
13   record of that.  And had there been, we would have
14   submitted Mr. Yegiazaryan's discovery responses on
15   postjudgment discovery, at least sufficient ones, to
16   indicate that that was not true.
17            THE COURT:  All right.  It is ordered that
18   Ashot Yegiazaryan, his agents, and or any person or
19   entity acting under his direction and control, shall not
20   take any action to transfer, assign, conceal, diminish,
21   encumber, hypothecate, dissipate, or in any way dispose
22   of any proceeds in an amount of up to and including
23   $150,629,565 derived by or held for the benefit of Ashot
24   Yegiazaryan, his agents, nominees, trustees, or any
25   person or entity acting under his direction and control,
```

```
 1    in payment, settlement, or satisfaction of any
 2    arbitration award obtained in his arbitration with
 3    Suleyman Kerimov, without the prior order of this Court
 4    permitting such a -- the Court permitting such a
 5    transfer, including specifically the Kerimov settlement
 6    funds, as identified in the stipulation,
 7    re advance distribution of funds executed by petitioner
 8    here and respondent on July 6, 2015, and filed with the
 9    Los Angeles Superior Court, and any proceeds of and
10    investments made with those funds, including
11    specifically, but not limited to, any funds held by CTX
12    Treuhand AG, Vaduz, Liechtenstein under Alpha Trust or
13    otherwise, or any other trustee with Savannah Advisors,
14    Inc., c/o Alpenrose Wealth Management, or any other
15    investment manager or -- and or in an account at
16    Compagnie Monegasque De Banque or any other bank or
17    financial institution.
18              MR. ADLER:  Your Honor, may I ask for
19    clarification on two points.
20              I think that we had objected to the amount,
21    since the judgment was 92 million, and postjudgment
22    interest accrues under the federal funds rate at about
23    600,000 a year.
24              THE COURT:  Well, that's all they can
25    collect.  But it can cover it all.
```

```
 1              MR. ADLER:  Well --
 2              THE COURT:  It's further ordered that
 3   petitioner previous deposit of $10,000 as security with
 4   the clerk of this Court shall constitute adequate
 5   security for the temporary restraining -- for the
 6   injunction and pursuant to Federal Rule of Civil
 7   Procedure 65(c).
 8              Give me that judgment and we'll sign it.
 9   All right.
10              MR. JACKSON:  Thank you, Your Honor.
11              MR. ADLER:  Thank You, Your Honor.
12              THE COURT:  We'll be in recess.
13              THE CLERK:  All rise.
14              (PROCEEDINGS CONCLUDED.)
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2
 3
 4                    CERTIFICATE OF REPORTER
 5
 6   COUNTY OF LOS ANGELES      )
 7                              )  SS.
 8   STATE OF CALIFORNIA        )
 9
10   I, SHERI S. KLEEGER, OFFICIAL COURT REPORTER, IN AND FOR
11   THE UNITED STATES DISTRICT COURT FOR THE CENTRAL
12   DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT
13   TO SECTION 753, TITLE 28, UNITED STATES CODE, THE
14   FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE
15   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE
16   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE
17   FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE
18   JUDICIAL CONFERENCE OF THE UNITED STATES.
19
20
21   DATE:  OCTOBER 28, 2016
22
23   /S/_____
24   SHERI S. KLEEGER, CSR
25   FEDERAL OFFICIAL COURT REPORTER
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**$**

**$10,000** [1] - 32:3
**$150,629,565** [1] - 30:23
**$188** [2] - 4:13, 13:24
**$300** [1] - 15:11
**$92** [2] - 5:1, 11:22
**$93** [1] - 21:3

**/**

**/S** [1] - 33:23

**1**

**1** [1] - 3:6
**10** [2] - 8:7, 12:17
**1000** [1] - 2:10
**10340** [1] - 1:21
**1091** [1] - 9:22
**117** [1] - 28:7
**11th** [1] - 16:21
**11TH** [1] - 2:6
**14-9764** [1] - 1:8
**150** [1] - 15:13
**1901** [1] - 2:9
**1984** [1] - 27:12

**2**

**2-page** [1] - 27:13
**2015** [1] - 31:8
**2016** [3] - 1:15, 3:1, 33:21
**204** [1] - 22:3
**213)894-6604** [1] - 1:23
**26** [2] - 1:15, 3:1
**28** [2] - 33:13, 33:21

**3**

**30th** [1] - 16:14
**312** [1] - 1:22

**4**

**402** [1] - 1:22
**4th** [1] - 6:20

**5**

**534** [1] - 22:3
**590** [1] - 9:22

**6**

**6** [2] - 8:8, 31:8
**600,000** [1] - 31:23
**65** [2] - 18:6, 23:11
**65(c)** [1] - 32:7
**69** [5] - 22:18, 22:21, 24:3, 27:8, 30:9
**69(a** [1] - 30:1

**7**

**7** [1] - 8:8
**70** [2] - 23:10, 27:19
**753** [1] - 33:13

**9**

**9** [2] - 8:7, 12:17
**90012** [1] - 1:22
**90067** [1] - 2:10
**92** [1] - 31:21
**94111** [1] - 2:6

**A**

**a.k.a** [1] - 1:9
**A.M** [2] - 1:16, 3:2
**ability** [3] - 7:10, 13:17, 27:24
**able** [3] - 11:8, 14:12, 29:16
**ABOVE** [1] - 33:16
**ABOVE-ENTITLED** [1] - 33:16
**accord** [2] - 21:25, 30:4
**account** [2] - 5:8, 31:15
**accrues** [1] - 31:22
**accurate** [2] - 4:12, 16:7
**achieve** [1] - 28:11
**Act** [1] - 13:6
**acting** [2] - 30:19, 30:25
**action** [11] - 7:11, 12:8, 12:13, 12:19, 12:21, 12:23, 15:2, 18:9, 18:13, 18:15, 30:20
**add** [1] - 13:23
**addition** [1] - 12:3
**additional** [1] - 12:18
**address** [2] - 14:21, 27:7
**addressed** [2] - 10:6,
27:11
**adequate** [1] - 32:4
**ADLER** [25] - 2:8, 2:9, 3:13, 14:17, 14:24, 25:1, 25:3, 25:7, 25:12, 25:18, 25:25, 26:3, 26:5, 26:8, 26:10, 26:13, 26:18, 26:21, 26:24, 27:3, 28:15, 29:23, 31:18, 32:1, 32:11
**Adler** [1] - 3:14
**admits** [1] - 15:25
**admitted** [6] - 3:23, 3:25, 13:25, 14:7, 16:1, 30:11
**advance** [1] - 31:7
**Advisors** [1] - 31:13
**affirmatively** [1] - 10:23
**affirmed** [1] - 8:23
**AG** [1] - 31:12
**agents** [2] - 30:18, 30:24
**aid** [1] - 30:2
**alleged** [1] - 17:16
**alleging** [1] - 4:17
**allow** [3] - 6:15, 6:24, 28:3
**allowed** [2] - 13:19, 13:20
**alone** [1] - 9:17
**Alpenrose** [1] - 31:14
**Alpha** [1] - 31:12
**AMERICA** [1] - 1:1
**amount** [6] - 4:13, 18:23, 21:2, 29:10, 30:22, 31:20
**ample** [1] - 8:25
**analysis** [1] - 8:6
**AND** [3] - 33:10, 33:14, 33:16
**ANGELES** [5] - 1:16, 1:22, 2:10, 3:1, 33:6
**Angeles** [1] - 31:9
**Annuity** [1] - 22:2
**answer** [1] - 17:13
**apologize** [1] - 27:3
**appeal** [2] - 9:7, 28:4
**Appeals** [6] - 7:14, 7:20, 9:23, 11:24, 28:22
**appear** [1] - 15:6
**appearances** [1] - 3:9
**APPEARANCES** [1] - 2:2
**appeared** [1] - 4:25
**application** [4] - 7:3,

7:15, 9:25, 22:20
**applies** [1] - 18:11
**apply** [3] - 11:16, 22:15, 22:24
**applying** [1] - 12:4
**appropriate** [1] - 27:19
**arbitral** [7] - 4:3, 4:9, 11:23, 12:10, 12:21, 12:25, 13:1
**arbitration** [20] - 13:4, 13:8, 13:15, 18:13, 18:14, 18:22, 19:3, 19:6, 20:4, 20:14, 20:16, 20:19, 20:25, 21:1, 21:2, 21:12, 21:17, 22:13, 31:2
**Arbitration** [1] - 13:6
**arbitrations** [1] - 13:8
**arbitrator** [4] - 19:13, 19:14, 19:17, 21:20
**arbitrator's** [1] - 19:18
**arbitrators** [5] - 19:11, 19:15, 19:24, 19:25, 20:6
**area** [1] - 14:20
**argue** [1] - 19:5
**argues** [2] - 9:6, 9:20
**argument** [6] - 16:5, 18:4, 27:21, 28:19, 28:24, 30:6
**arguments** [3] - 5:25, 21:11, 22:21
**armed** [1] - 18:19
**Ashot** [4] - 3:7, 3:14, 30:18, 30:23
**ASHOT** [2] - 1:9, 1:10
**asset** [19] - 4:25, 8:17, 13:24, 14:2, 14:9, 14:11, 15:10, 15:21, 17:9, 18:12, 23:2, 23:4, 23:7, 23:8, 28:5, 28:6, 29:15, 30:11
**assets** [24] - 3:24, 4:5, 4:18, 5:9, 7:25, 8:4, 8:13, 9:3, 9:12, 10:4, 10:17, 11:10, 13:21, 14:3, 15:10, 15:15, 15:18, 17:16, 24:20, 27:24, 28:8, 28:9, 29:18, 29:20
**assign** [1] - 30:20
**assist** [1] - 11:4
**Associates** [1] - 12:16

**attempt** [1] - 10:13
**attempting** [2] - 24:18, 24:19
**August** [1] - 16:21
**authority** [18] - 7:7, 7:8, 7:14, 7:16, 8:3, 8:12, 8:25, 9:20, 9:24, 10:18, 11:14, 19:1, 23:21, 24:15, 24:22, 27:5, 29:14, 30:1
**available** [1] - 11:9
**AVENUE** [1] - 2:9
**award** [21] - 4:3, 4:9, 4:11, 4:13, 9:25, 11:23, 12:10, 12:21, 18:13, 18:14, 18:22, 19:3, 19:6, 20:25, 21:2, 21:4, 21:8, 21:13, 22:13, 28:11, 31:2
**awards** [4] - 12:25, 13:1, 13:11, 18:22
**aware** [2] - 8:11, 27:23
**Axiom** [2] - 8:6, 8:10

**B**

**BAKER** [1] - 2:4
**Bank** [2] - 9:22, 22:24
**bank** [4] - 5:8, 20:24, 21:6, 31:16
**Banque** [1] - 31:16
**bars** [1] - 27:8
**based** [4] - 5:11, 5:24, 9:21, 10:16
**basis** [4] - 8:15, 12:4, 12:5, 12:18
**BEHALF** [2] - 2:3, 2:8
**behalf** [2] - 3:11, 3:14
**beliefs** [1] - 6:25
**believes** [1] - 7:24
**belong** [2] - 27:2, 29:19
**beneficial** [5] - 3:23, 4:5, 13:22, 14:5, 16:3
**benefit** [1] - 30:23
**between** [1] - 24:11
**binding** [1] - 29:25
**bond** [9] - 6:4, 6:5, 9:6, 9:8, 9:11, 27:22, 28:1, 28:4, 28:21
**brief** [1] - 12:18
**briefed** [1] - 17:10
**briefly** [1] - 29:23
**brings** [1] - 24:2

**broad** [1] - 11:6
**brought** [4] - 7:6, 8:12, 20:25, 21:1
**BRUCE** [1] - 2:5
**Bruce** [1] - 3:11
**BY** [2] - 2:5, 2:9

## C

**c/o** [1] - 31:14
**CA** [2] - 2:6, 2:10
**California** [1] - 11:10
**CALIFORNIA** [6] - 1:2, 1:16, 1:22, 3:1, 33:8, 33:12
**cannot** [2] - 26:11, 26:15
**carefully** [1] - 9:11
**case** [47] - 4:1, 4:2, 4:10, 4:24, 6:8, 7:19, 7:20, 7:21, 7:22, 8:6, 10:2, 10:4, 10:6, 10:20, 11:13, 11:19, 13:14, 18:10, 18:11, 18:13, 19:8, 19:9, 19:14, 19:20, 19:21, 20:1, 20:18, 20:21, 20:22, 21:4, 21:18, 21:20, 22:1, 22:4, 22:12, 22:23, 22:25, 23:1, 23:3, 23:14, 27:6, 27:12, 27:16, 27:17, 27:19
**cases** [17] - 7:18, 8:6, 8:24, 10:21, 12:15, 12:17, 19:5, 19:7, 24:3, 24:4, 24:12, 27:4, 27:7, 27:14, 27:16, 29:2, 29:6
**category** [1] - 12:1
**CENTER** [1] - 2:5
**CENTRAL** [2] - 1:2, 33:11
**Central** [1] - 7:23
**certain** [3] - 9:8, 18:23, 22:14
**certainly** [2] - 6:14, 21:18
**CERTIFICATE** [1] - 33:4
**CERTIFIED** [1] - 1:7
**CERTIFY** [1] - 33:12
**challenge** [2] - 4:2, 6:24
**chosen** [1] - 28:3
**Circuit** [30] - 6:6, 6:8, 7:13, 7:19, 7:20, 9:22, 10:10, 11:24, 12:9,

12:24, 18:12, 18:15, 18:21, 20:7, 20:18, 21:16, 21:22, 22:11, 22:23, 23:6, 23:14, 23:23, 24:4, 24:5, 27:10, 27:12, 28:22, 30:1, 30:8
**circumstances** [1] - 11:15
**cite** [5] - 20:19, 27:5, 27:12, 27:14, 27:16
**cited** [8] - 8:7, 8:24, 12:17, 14:18, 18:16, 19:5, 22:1, 24:12
**citing** [1] - 17:18
**Civil** [1] - 32:6
**claim** [8] - 20:1, 20:9, 22:6, 22:10, 22:14, 22:16, 29:19, 30:10
**claims** [5] - 19:16, 19:17, 19:19, 20:4, 20:16
**clarification** [1] - 31:19
**clear** [2] - 10:16, 15:12
**clearly** [1] - 6:17
**CLERK** [2] - 3:6, 32:13
**clerk** [1] - 32:4
**closely** [1] - 4:15
**Co** [1] - 22:3
**CODE** [1] - 33:13
**collect** [3] - 15:17, 18:9, 31:25
**collected** [4] - 15:23, 16:4, 16:5, 16:6
**collection** [1] - 16:2
**Collins'** [1] - 27:17
**command** [1] - 10:25
**Compagnie** [1] - 31:16
**companies** [1] - 3:25
**complete** [2] - 15:6, 15:9
**conceal** [6] - 7:11, 9:3, 10:17, 13:21, 30:20
**concealing** [1] - 3:23
**concealment** [1] - 4:18
**conclude** [1] - 8:15
**CONCLUDED** [1] - 32:14
**concluded** [2] - 8:14, 8:22
**conduct** [1] - 5:15
**CONFERENCE** [1] - 33:18
**conferred** [1] - 13:7

**confirm** [3] - 12:14, 12:21, 13:11
**confirmation** [2] - 11:23, 21:17
**confirmed** [1] - 6:9
**confirming** [2] - 12:10, 15:21
**CONFORMANCE** [1] - 33:17
**Congress** [2] - 13:7, 24:6
**consider** [5] - 9:25, 19:15, 19:16, 21:16, 27:13
**constitute** [1] - 32:4
**contempt** [4] - 10:24, 11:1, 29:8, 29:11
**contested** [1] - 17:10
**context** [3] - 12:25, 13:5, 14:19
**continue** [2] - 13:19, 13:20
**continued** [1] - 16:20
**continues** [1] - 11:12
**contract** [2] - 12:12, 21:19
**contrary** [1] - 20:15
**control** [2] - 30:19, 30:25
**Convention** [1] - 13:6
**convert** [1] - 19:2
**COPY** [1] - 1:7
**Corp** [4] - 9:22, 22:24, 23:14
**correct** [1] - 23:13
**CORRECT** [1] - 33:14
**Counsel** [1] - 3:9
**COUNSEL** [1] - 2:2
**counsel** [8] - 4:23, 7:1, 14:16, 16:19, 16:21, 26:11, 26:14, 29:3
**COUNTY** [1] - 33:6
**couple** [1] - 22:20
**course** [3] - 5:20, 9:10, 20:11
**Court** [77] - 3:21, 4:1, 4:3, 4:4, 4:7, 4:16, 5:3, 5:11, 5:13, 5:15, 6:5, 6:12, 7:1, 7:3, 7:4, 7:6, 7:10, 7:14, 7:17, 7:19, 7:20, 7:24, 8:10, 8:11, 8:14, 8:15, 9:1, 9:14, 9:23, 10:7, 10:16, 10:18, 10:22, 11:4, 11:6, 11:14, 11:22, 11:24, 12:6, 12:8, 13:1, 13:9,

13:16, 14:8, 14:14, 16:12, 18:24, 19:16, 20:11, 20:17, 22:1, 22:4, 23:1, 23:4, 23:19, 24:22, 27:5, 28:2, 28:13, 28:15, 28:21, 28:22, 29:6, 29:9, 29:12, 29:13, 29:17, 31:3, 31:4, 31:9, 32:4
**COURT** [31] - 1:1, 1:21, 3:16, 3:19, 14:16, 14:22, 24:24, 25:2, 25:5, 25:9, 25:16, 25:20, 26:2, 26:4, 26:6, 26:9, 26:12, 26:17, 26:19, 26:22, 26:25, 28:14, 28:17, 29:22, 30:17, 31:24, 32:2, 32:12, 33:10, 33:11, 33:25
**court** [9] - 7:23, 9:25, 14:1, 15:20, 16:10, 16:13, 17:2, 20:2, 25:3
**Court's** [5] - 6:15, 8:23, 19:18, 24:8, 27:8
**Courts** [1] - 12:22
**courts** [2] - 8:22, 17:5, 17:10
**cover** [2] - 28:9, 31:25
**create** [1] - 15:6
**creditor** [7] - 6:2, 6:3, 6:9, 6:16, 11:18, 11:20, 11:21
**creditors** [3] - 5:10, 14:10, 17:25
**CSR** [2] - 1:21, 33:24
**CTX** [1] - 31:11
**Cubic** [2] - 18:19, 22:12
**curiam** [1] - 27:13
**CV** [1] - 1:8
**CV-14-9764-R** [1] - 3:7
**Cypress** [2] - 17:5, 17:11

## D

**damages** [8] - 18:14, 18:22, 20:1, 21:8, 22:10, 22:14, 22:16, 27:20
**dashed** [1] - 16:13
**DATE** [1] - 33:21
**De** [1] - 31:16

**deal** [1] - 17:11
**dealing** [3] - 11:17, 24:3, 24:4
**debtor** [1] - 8:1
**decision** [6] - 6:15, 9:21, 9:23, 29:3, 29:4
**decisions** [1] - 17:5
**default** [1] - 10:8
**DEFENDANT** [2] - 1:11, 2:8
**Defense** [1] - 18:18
**defense** [1] - 18:19
**demonstrates** [1] - 15:24
**denied** [2] - 16:21, 16:23
**deny** [1] - 14:5
**deposit** [1] - 32:3
**derived** [1] - 30:23
**details** [1] - 5:6
**difference** [1] - 8:21
**different** [1] - 20:15
**difficulty** [1] - 9:17
**diminish** [1] - 30:20
**direct** [2] - 7:13, 8:1
**direction** [2] - 30:19, 30:25
**directly** [1] - 24:5
**disappear** [1] - 14:13
**disclose** [2] - 5:6, 18:1
**disclosed** [1] - 17:25
**discovery** [3] - 16:1, 30:14, 30:15
**discretion** [1] - 28:3
**discussions** [1] - 25:19
**dislodge** [1] - 5:21
**dismissed** [1] - 17:7
**dispose** [1] - 30:21
**dispute** [1] - 4:16
**dissipate** [2] - 7:11, 30:21
**dissipation** [1] - 7:25
**dissolve** [1] - 19:23
**dissolves** [2] - 10:5, 10:11
**distinction** [1] - 24:10
**distribution** [1] - 31:7
**District** [12] - 7:16, 7:21, 7:22, 7:23, 7:24, 8:11, 8:15, 8:23, 13:1, 20:11, 23:1, 23:4
**district** [2] - 20:2, 27:17
**DISTRICT** [5] - 1:1, 1:2, 1:4, 33:11, 33:12

**divided** [1] - 4:22
**DIVISION** [1] - 1:2
**DO** [1] - 33:12
**document** [1] - 5:4
**documented** [1] - 13:20
**documents** [2] - 5:4, 14:1
**dollar** [1] - 5:1
**done** [2] - 15:4, 15:18
**double** [1] - 28:11
**doubt** [1] - 9:13
**down** [2] - 6:7, 6:21
**dress** [1] - 22:5
**due** [1] - 25:22
**during** [1] - 10:4

**E**

**early** [1] - 11:19
**Eastern** [1] - 7:21
**effect** [1] - 10:14
**effectiveness** [1] - 6:23
**effort** [1] - 10:17
**efforts** [1] - 6:4
**EGIAZARYAN** [1] - 1:10
**EMBARCADERO** [1] - 2:5
**emergency** [2] - 16:25, 17:7
**emphasis** [1] - 30:3
**encumber** [1] - 30:21
**end** [1] - 9:15
**ends** [4] - 23:10, 23:11, 23:24, 23:25
**enforce** [5] - 5:1, 13:17, 21:4, 21:8, 24:16
**enforcement** [3] - 11:2, 11:5, 29:12
**enforcing** [1] - 24:6
**ensure** [2] - 13:10, 13:12
**entered** [2] - 23:2, 23:3
**entering** [1] - 10:7
**enters** [1] - 24:2
**entirely** [1] - 18:17
**ENTITLED** [1] - 33:16
**entity** [2] - 30:19, 30:25
**entry** [2] - 10:5, 10:12
**equitable** [33] - 8:16, 11:7, 12:6, 12:7,

12:13, 12:19, 12:20, 12:22, 12:23, 18:10, 19:6, 19:12, 19:15, 19:17, 19:19, 20:3, 20:4, 20:5, 20:8, 20:9, 20:10, 20:12, 20:20, 21:13, 21:17, 21:24, 22:6, 23:11, 24:9, 24:16, 27:18, 29:14
**equity** [1] - 21:14
**ESQUIRE** [2] - 2:5, 2:9
**essentially** [6] - 7:9, 12:7, 12:19, 21:11, 24:12, 28:11
**evidence** [4] - 10:17, 15:23, 17:17, 30:12
**ex** [5] - 7:2, 15:2, 15:4, 17:2, 17:6
**exactly** [1] - 20:16
**exception** [3] - 12:4, 12:6, 12:22
**excess** [1] - 4:13
**excuse** [1] - 17:4
**execute** [6] - 6:10, 11:8, 11:25, 24:17, 24:18, 24:20
**executed** [1] - 31:7
**executing** [1] - 9:18
**execution** [7] - 6:5, 6:11, 9:5, 11:3, 11:5, 12:1, 30:3
**exercise** [4] - 10:18, 11:6, 28:3, 29:13
**expert** [1] - 26:15
**expressly** [2] - 18:16, 18:21
**extend** [1] - 7:1
**extraordinary** [2] - 17:7, 28:5

**F**

**F.3d** [1] - 9:22
**face** [1] - 14:5
**fact** [6] - 4:3, 15:9, 16:13, 16:20, 16:23, 24:18
**facts** [2] - 18:2, 20:21
**fairly** [1] - 10:7
**family** [9] - 4:16, 4:23, 7:1, 13:23, 14:1, 15:1, 15:20, 16:19, 17:2
**far** [1] - 15:18
**favor** [1] - 4:10
**FEDERAL** [2] - 1:21, 33:25

**federal** [2] - 18:25, 31:22
**Federal** [3] - 13:6, 22:19, 32:6
**Fifth** [2] - 7:19, 27:12
**filed** [4] - 4:7, 5:5, 14:1, 31:8
**filing** [1] - 15:19
**filings** [1] - 17:6
**finally** [4] - 6:21, 12:24, 14:11, 27:21
**financial** [1] - 31:17
**first** [4] - 14:25, 19:8, 19:22, 22:22
**FLOOR** [1] - 2:6
**Florida** [1] - 7:22
**follow** [2] - 24:7, 30:9
**FOR** [2] - 33:10, 33:11
**forces** [1] - 18:19
**FOREGOING** [1] - 33:14
**FORMAT** [1] - 33:17
**foul** [1] - 9:9
**four** [3] - 17:3, 17:4, 17:9
**FRANCISCO** [1] - 2:6
**free** [1] - 11:25
**freeze** [24] - 7:7, 7:8, 8:12, 8:17, 15:3, 15:10, 15:21, 17:9, 18:12, 23:2, 23:5, 23:7, 23:8, 25:14, 26:16, 28:5, 28:6, 28:7, 28:10, 28:11, 28:12, 28:19, 28:24
**freezing** [5] - 5:16, 7:9, 7:10, 8:4, 10:4
**frozen** [4] - 15:15, 24:20, 25:3, 27:25
**fully** [3] - 17:10, 28:23
**fund** [1] - 26:7
**funds** [8] - 4:21, 24:25, 25:2, 25:6, 25:22, 25:24, 31:6, 31:7, 31:10, 31:11, 31:22

**G**

**games** [2] - 26:25, 27:1
**general** [2] - 11:17, 11:20
**generalized** [2] - 22:9, 24:8

**governed** [2] - 11:3, 30:7
**government** [1] - 21:14
**granted** [2] - 5:3, 11:25
**granting** [1] - 12:11
**great** [1] - 9:17
**Great** [1] - 22:2
**Great-West** [1] - 22:2
**grounds** [1] - 6:16
**Grupo** [11] - 11:13, 11:16, 12:2, 12:3, 12:5, 12:21, 18:4, 18:8

**H**

**Halal** [3] - 24:3, 29:2, 29:3
**Halel** [1] - 27:11
**half** [1] - 15:12
**HALLIDAY** [1] - 2:5
**hands** [1] - 17:20
**harm** [1] - 9:9
**hear** [1] - 3:19
**hearing** [4] - 5:22, 6:8, 6:13, 16:13
**held** [6] - 17:23, 17:24, 18:16, 18:21, 30:23, 31:11
**HELD** [1] - 33:15
**helpful** [2] - 8:5, 8:20
**HEREBY** [1] - 33:12
**hide** [2] - 10:17, 17:24
**hiding** [2] - 5:9, 17:16
**High** [4] - 4:1, 13:16
**himself** [1] - 15:11
**history** [1] - 14:25
**holds** [1] - 17:20
**Honor** [2] - 3:10, 3:13, 3:20, 8:7, 14:15, 14:20, 14:24, 17:3, 18:3, 25:8, 25:12, 25:19, 26:1, 26:21, 27:3, 28:19, 29:21, 29:24, 31:18, 32:10, 32:11
**HONORABLE** [1] - 1:4
**hopefully** [1] - 11:8
**hopes** [1] - 16:12
**hypothecate** [1] - 30:21

**I**

**i.e** [1] - 20:9
**idea** [1] - 20:19
**identified** [1] - 31:6
**identify** [2] - 14:12, 29:16
**ignore** [1] - 24:3
**ignored** [2] - 18:17, 22:2
**immediate** [1] - 5:20
**immediately** [1] - 6:17
**immunity** [2] - 21:8, 21:15
**impact** [1] - 8:1
**important** [1] - 15:8
**improperly** [1] - 5:5
**IN** [3] - 33:10, 33:15, 33:17
**Inc** [1] - 31:14
**incapable** [1] - 28:1
**include** [1] - 19:19
**included** [1] - 6:22
**including** [6] - 8:17, 27:16, 29:20, 30:22, 31:5, 31:10
**incredibly** [1] - 6:1
**indicate** [1] - 30:16
**indicated** [1] - 16:11
**information** [1] - 5:12
**inherently** [1] - 19:6, 20:20
**injunction** [25] - 7:16, 8:4, 8:23, 9:1, 10:3, 10:9, 10:11, 10:19, 11:15, 16:20, 22:23, 23:2, 23:9, 23:17, 23:18, 23:19, 23:22, 23:24, 23:25, 24:1, 24:14, 24:23, 27:6, 30:7, 32:6
**injunctions** [2] - 24:11, 24:13
**injunctive** [6] - 8:16, 10:1, 13:2, 18:6, 20:10, 27:8
**injury** [1] - 5:14
**insolvent** [1] - 20:24
**instances** [1] - 10:22
**instead** [1] - 23:15
**institution** [1] - 31:17
**Insurance** [1] - 22:3
**intent** [1] - 13:9
**intentions** [1] - 6:18
**interest** [4] - 15:13, 21:6, 26:2, 31:22

**interestingly** [1] - 12:3
**interests** [2] - 25:25, 28:10
**interference** [1] - 11:2
**international** [3] - 13:1, 13:8, 22:13
**intervene** [2] - 4:24, 5:4
**intervened** [1] - 15:1
**intervention** [1] - 6:15
**investment** [1] - 31:15
**investments** [1] - 31:10
**involved** [3] - 29:6, 29:7, 29:12
**involves** [1] - 27:17
**Iran** [1] - 18:19
**irreparable** [1] - 5:14
**IS** [2] - 33:14, 33:17
**issue** [15] - 8:3, 9:1, 9:24, 10:15, 10:18, 10:25, 11:15, 12:22, 13:2, 20:5, 23:9, 23:19, 24:23, 27:5, 27:13
**issued** [5] - 5:15, 5:22, 10:9, 10:11, 15:3
**issues** [1] - 17:11
**issuing** [1] - 8:23
**item** [1] - 3:6
**IVANOVICH** [1] - 1:6
**Ivanovich** [1] - 3:7

## J

**JACKSON** [6] - 2:5, 3:10, 3:18, 3:20, 28:18, 32:10
**Jackson** [2] - 3:11, 3:17
**joint** [3] - 19:22, 19:23, 19:25
**Judge** [1] - 27:17
**judge** [2] - 5:22, 16:14
**JUDGE** [1] - 1:4
**judgment** [45] - 5:2, 6:2, 6:3, 6:9, 6:11, 6:16, 7:15, 8:1, 8:2, 8:3, 9:18, 10:5, 10:8, 10:12, 11:6, 11:9, 11:18, 11:21, 11:22, 12:13, 12:20, 13:17, 13:18, 16:2, 18:9,

18:25, 19:3, 19:4, 20:10, 21:24, 23:3, 23:10, 23:12, 23:16, 23:25, 24:2, 24:17, 25:10, 27:6, 27:9, 27:18, 30:3, 31:21, 32:8
**judgments** [3] - 23:11, 24:6, 27:17
**JUDICIAL** [1] - 33:18
**judicial** [1] - 6:12
**July** [1] - 31:8
**June** [1] - 16:14
**jurisdiction** [3] - 7:7, 11:10, 19:12
**jurisdictions** [1] - 7:19

## K

**KBC** [2] - 9:22, 22:24
**keep** [2] - 24:1, 27:1
**Kentucky** [1] - 7:21
**kept** [1] - 6:21
**Kerimov** [6] - 4:11, 4:12, 4:20, 28:10, 31:3, 31:5
**kind** [1] - 8:20
**KLEEGER** [3] - 1:21, 33:10, 33:24
**known** [1] - 16:24
**knows** [1] - 9:15
**Knudson** [1] - 22:3

## L

**laid** [1] - 9:11
**large** [1] - 4:9
**last** [3] - 6:7, 29:1
**latitude** [1] - 13:9
**law** [17] - 4:16, 4:23, 7:1, 11:3, 11:10, 13:24, 14:1, 14:17, 15:16, 15:20, 16:8, 16:19, 17:2, 17:11, 18:3, 22:20, 24:7
**lawsuit** [3] - 14:22, 14:23
**lawyers** [2] - 5:19, 5:20
**learned** [3] - 4:15, 4:18, 7:4
**least** [5] - 9:6, 9:9, 27:11, 28:25, 30:15
**legal** [6] - 3:25, 18:15, 19:11, 19:15, 19:16, 26:14
**less** [1] - 8:16

**letter** [1] - 15:20
**Lichenstein** [1] - 5:7
**Lichtenstein** [1] - 9:15
**Liechtenstein** [2] - 24:19, 31:12
**Life** [1] - 22:2
**lifted** [1] - 15:22
**limited** [1] - 31:11
**line** [1] - 10:21
**lines** [1] - 9:20
**LLP** [1] - 2:4
**located** [2] - 7:9, 30:5
**London** [3] - 4:1, 4:3, 13:16
**look** [2] - 20:2, 22:4
**looking** [3] - 8:14, 20:21, 22:25
**looses** [1] - 9:9
**Los** [1] - 31:9
**LOS** [5] - 1:16, 1:22, 2:10, 3:1, 33:6

## M

**maintain** [3] - 8:13, 11:7, 29:14
**majority** [2] - 27:14, 27:15
**Management** [1] - 31:14
**manager** [1] - 31:15
**mandatory** [2] - 24:11, 24:13
**MANUEL** [1] - 1:4
**matter** [3] - 4:17, 5:23, 13:24
**MATTER** [1] - 33:16
**McKENZIE** [1] - 2:4
**meaning** [1] - 18:25
**meaningfulness** [2] - 13:3, 13:13
**meaningless** [1] - 13:18
**memorandum** [1] - 8:8
**mentioned** [2] - 27:10, 29:3
**met** [1] - 20:8
**Mexicano** [3] - 11:13, 18:4, 18:8
**MICHAEL** [1] - 2:9
**Michael** [1] - 3:14
**Middle** [1] - 7:22
**million** [9] - 4:14, 5:1, 11:12, 13:24, 15:11, 15:14, 21:3, 28:7, 31:21

**mind** [1] - 9:13
**mine** [1] - 14:23
**Ministry** [1] - 18:18
**mis** [1] - 19:7
**misapplied** [1] - 19:7
**miss** [1] - 19:7
**modification** [3] - 10:13, 23:16, 23:21
**modified** [4] - 10:8, 23:4, 23:7, 23:8
**modify** [2] - 10:12, 10:14
**mom's** [1] - 19:13
**Monaco** [1] - 5:8
**Monegasque** [1] - 31:16
**monetary** [1] - 24:16
**money** [29] - 5:7, 9:14, 10:24, 12:13, 12:20, 14:12, 18:9, 18:14, 18:22, 18:24, 19:3, 20:1, 21:14, 21:23, 22:6, 22:7, 22:8, 22:9, 22:10, 22:14, 22:16, 25:14, 26:6, 27:20, 29:8, 29:10, 29:17
**monitoring** [1] - 4:15
**months** [1] - 16:24
**morning** [2] - 3:10, 3:13
**most** [2] - 8:5, 15:19
**motions** [1] - 28:20
**moved** [1] - 21:4
**MR** [28] - 3:10, 3:13, 3:18, 3:20, 14:17, 14:24, 25:1, 25:3, 25:7, 25:12, 25:18, 25:25, 26:3, 26:5, 26:8, 26:10, 26:13, 26:18, 26:21, 26:24, 27:3, 28:15, 28:18, 29:23, 31:18, 32:1, 32:10, 32:11
**multiple** [3] - 3:22, 4:11
**must** [2] - 30:3, 30:4

## N

**necessary** [4] - 13:2, 13:10, 17:13, 17:14
**need** [2] - 24:21, 24:22
**needs** [2] - 16:5
**never** [4] - 15:5, 17:23, 17:24, 24:24
**New** [1] - 13:6
**new** [2] - 23:18,

23:22
**Ninth** [27] - 6:6, 6:8, 7:13, 9:22, 10:10, 11:24, 12:9, 12:24, 18:12, 18:15, 18:21, 20:7, 20:18, 21:16, 21:22, 22:11, 22:23, 23:6, 23:13, 23:23, 24:4, 24:5, 27:10, 28:22, 29:25, 30:8
**nominee** [2] - 3:24, 9:16
**nominees** [3] - 3:24, 14:4, 30:24
**nominees'** [1] - 17:20
**none** [2] - 27:7, 28:17
**NORTH** [1] - 1:22
**notably** [1] - 28:6
**noted** [1] - 8:10
**nothing** [2] - 10:12, 25:20
**notice** [2] - 6:12, 15:4
**number** [2] - 16:8, 27:15
**numerous** [1] - 12:15

## O

**objected** [1] - 31:20
**obligations** [1] - 14:10
**obtain** [1] - 6:4
**obtained** [2] - 17:2, 31:2
**obvious** [4] - 9:2, 9:4, 19:2, 19:10
**occasions** [1] - 3:22
**occurred** [1] - 6:13
**OCTOBER** [3] - 1:15, 3:1, 33:21
**October** [1] - 6:21
**OF** [14] - 1:1, 1:2, 1:15, 2:2, 2:3, 2:8, 2:9, 33:4, 33:6, 33:8, 33:12, 33:14, 33:17, 33:18
**official** [1] - 15:21
**OFFICIAL** [3] - 1:21, 33:10, 33:25
**often** [1] - 17:20
**old** [1] - 15:4
**ON** [2] - 2:3, 2:8
**once** [5] - 6:6, 13:15, 13:16, 19:2
**one** [10] - 4:6, 8:5,

10:7, 12:16, 13:23,
14:11, 15:8, 17:4,
17:18, 19:8
  **ones** [1] - 30:15
  **opening** [1] - 8:8
  **opportunity** [1] -
15:6
  **opposed** [2] - 17:17,
29:18
  **opposing** [1] - 20:25
  **opposition** [2] -
9:19, 18:17
  **oral** [1] - 5:24
  **order** [19] - 5:16,
5:17, 8:13, 8:16,
10:23, 10:24, 15:2,
16:6, 16:17, 16:19,
16:22, 19:24, 25:3,
25:13, 25:14, 28:11,
29:9, 31:3
  **ordered** [3] - 22:8,
30:17, 32:2
  **ordering** [1] - 29:7
  **orders** [1] - 21:20
  **ordinance** [1] - 21:3
  **original** [1] - 18:12
  **otherwise** [2] - 20:8,
31:13
  **outside** [1] - 15:23
  **owes** [1] - 29:10
  **own** [2] - 15:23,
16:21
  **owner** [1] - 16:3
  **ownership** [4] - 3:23,
4:5, 13:22, 14:5
  **owning** [3] - 15:25,
16:1, 30:11
  **owns** [1] - 15:12

**P**

  **PAGE** [1] - 33:16
  **pages** [3] - 8:7, 8:8,
12:17
  **panel** [1] - 13:15
  **papers** [5] - 4:6,
4:11, 8:9, 18:17,
18:18
  **Park** [4] - 12:16,
20:20, 20:23, 21:11
  **part** [2] - 16:2, 27:18
  **parte** [5] - 7:2, 15:2,
15:4, 17:2, 17:6
  **particular** [3] -
13:24, 14:11, 29:15
  **particularly** [2] -
13:25, 14:21
  **parties** [2] - 4:22,
19:21

  **party** [6] - 7:8, 7:10,
10:23, 19:22, 19:23,
20:25
  **party's** [1] - 8:1
  **passport** [1] - 27:25
  **pattern** [1] - 9:2
  **pay** [4] - 10:24,
25:10, 29:8, 29:10
  **payment** [9] - 10:25,
21:13, 21:23, 22:7,
22:8, 22:9, 22:14,
27:20, 31:1
  **penalty** [3] - 10:23,
11:1, 29:8
  **pendency** [1] - 10:4
  **pending** [1] - 7:2
  **people** [3] - 17:21,
17:25, 29:8
  **per** [1] - 27:13
  **performance** [3] -
12:12, 21:19, 21:21
  **perhaps** [3] - 5:10,
5:24, 8:5
  **permits** [1] - 15:16
  **permitting** [2] - 31:4
  **person** [3] - 11:20,
30:18, 30:25
  **personal** [1] - 19:13
  **petitioner** [2] - 31:7,
32:3
  **PH** [1] - 1:23
  **Philips** [2] - 9:21,
23:14
  **Phillips** [1] - 22:24
  **place** [4] - 5:17, 6:10,
15:22, 16:6
  **Place** [2] - 12:16,
20:21, 20:23, 21:11
  **placed** [1] - 5:7
  **PLAINTIFF** [2] - 1:7,
2:1
  **plaintiff** [1] - 21:10
  **plan** [1] - 9:2
  **plans** [1] - 9:11
  **play** [2] - 26:25, 27:1
  **plenty** [1] - 19:1
  **plus** [1] - 28:12
  **point** [6] - 5:21, 7:14,
11:8, 19:11, 24:5,
29:1
  **pointed** [1] - 12:8
  **pointing** [1] - 3:21
  **points** [2] - 28:18,
31:19
  **position** [3] - 7:6,
11:14, 29:5
  **possible** [1] - 10:25
  **post** [5] - 7:15, 8:3,
9:8, 9:10, 27:22
  **post-judgment** [2] -

7:15, 8:3
  **posting** [2] - 9:5,
28:1
  **postjudgment** [12] -
8:17, 8:24, 10:1,
10:18, 10:19, 18:5,
23:4, 23:8, 23:20,
24:23, 30:15, 31:21
  **potential** [2] - 6:2,
8:2
  **power** [10] - 8:16,
20:5, 20:6, 20:12,
23:9, 23:11, 23:25,
24:9, 24:16, 27:8
  **powers** [2] - 11:7,
18:10
  **practice** [4] - 3:23,
13:20, 17:16, 17:21
  **precluding** [1] -
25:14
  **prediction** [2] - 4:6,
4:12
  **prejudgment** [5] -
8:12, 10:3, 18:5,
18:10, 20:12
  **preliminary** [20] -
7:15, 8:3, 9:1, 10:3,
10:9, 10:11, 10:19,
16:20, 18:6, 22:23,
23:2, 23:9, 23:17,
23:18, 23:19, 23:24,
23:25, 24:1, 24:23,
27:6
  **present** [1] - 22:7
  **presented** [3] -
15:20, 24:6, 28:21
  **presents** [1] - 8:20
  **preserve** [3] - 13:3,
19:25, 20:12
  **PRESIDING** [1] - 1:4
  **prevent** [1] - 9:2
  **preventing** [1] - 6:11
  **previous** [1] - 32:3
  **previously** [4] - 5:5,
5:12, 10:9, 10:11
  **primary** [1] - 4:21
  **principal** [1] - 4:25
  **principally** [1] - 9:21
  **private** [1] - 4:19
  **procedural** [2] -
8:18, 14:25
  **procedure** [8] -
13:11, 16:10, 24:6,
24:7, 24:8, 24:17,
24:18, 30:4
  **Procedure** [2] -
22:19, 32:7
  **procedures** [4] -
11:9, 22:15, 22:17,
22:18

  **proceed** [2] - 15:17,
24:19
  **proceeding** [1] -
21:18
  **proceedings** [2] -
3:25, 30:2
  **PROCEEDINGS** [3] -
1:15, 32:14, 33:15
  **proceeds** [2] - 30:22,
31:9
  **process** [6] - 4:19,
11:2, 12:10, 13:4,
13:13, 29:13
  **prohibitory** [3] -
24:11, 24:14, 30:7
  **property** [10] - 7:7,
7:8, 7:9, 7:12, 25:12,
25:13, 25:25, 26:2,
26:5, 26:9
  **proposed** [3] -
16:17, 16:19, 16:22
  **proposition** [1] -
7:24, 10:3, 19:2
  **protected** [3] - 9:10,
15:24, 28:23
  **provide** [3] - 12:6,
20:9, 22:19
  **provided** [5] - 5:13,
11:13, 12:4, 22:18,
27:18
  **provides** [3] - 9:24,
12:18, 27:20
  **purport** [2] - 24:10,
26:14
  **purpose** [1] - 5:9
  **pursuant** [1] - 32:6
  **PURSUANT** [1] -
33:12
  **put** [2] - 9:12, 13:21

**Q**

  **quasi** [1] - 21:17
  **questions** [2] -
14:20, 28:16
  **quick** [1] - 28:18
  **quo** [5] - 8:13, 11:7,
13:3, 24:2, 29:14
  **quote** [1] - 8:15

**R**

  **raise** [1] - 25:14
  **raised** [1] - 10:19
  **rate** [1] - 31:22
  **rather** [1] - 23:21
  **rationale** [1] - 8:21
  **re** [1] - 31:7

  **reach** [2] - 9:12,
13:21
  **real** [1] - 8:21
  **REAL'S** [1] - 1:4
  **really** [2] - 9:19,
11:16
  **reason** [3] - 4:8,
14:14, 23:7
  **received** [2] - 18:24,
21:1
  **recent** [1] - 15:19
  **recess** [1] - 32:12
  **recognize** [3] - 20:2,
22:5, 28:2
  **recognized** [5] -
12:5, 12:9, 12:22,
12:25, 17:21
  **recommendation** [1]
- 4:23
  **reconsideration** [3] -
6:19, 7:2, 16:12
  **reconsidering** [1] -
5:25
  **record** [3] - 15:7,
15:9, 30:13
  **recovery** [2] - 8:2,
23:20
  **reference** [1] - 4:20
  **referred** [1] - 4:10
  **refers** [1] - 11:12
  **reflecting** [2] - 16:19,
16:23
  **refused** [1] - 6:12
  **regard** [1] - 13:23
  **regular** [1] - 20:16
  **REGULATIONS** [1] -
33:17
  **rejected** [2] - 4:2,
28:24
  **release** [3] - 25:10,
25:21, 26:6
  **released** [8] - 24:25,
25:1, 25:2, 25:5,
26:23
  **relief** [20] - 7:5, 8:16,
9:14, 10:1, 12:6,
12:23, 13:2, 14:14,
16:25, 17:1, 17:8,
18:5, 18:7, 18:15,
20:5, 20:8, 20:10,
27:18, 28:5
  **remained** [1] - 5:17
  **remedy** [3] - 20:3,
20:13, 21:13
  **rendered** [1] - 13:18
  **reply** [4] - 8:9, 12:17,
18:17, 22:2
  **REPORTED** [1] -
33:15
  **REPORTER** [4] -

1:21, 33:4, 33:10,
33:25
**REPORTER'S** [1] -
1:15
**request** [2] - 12:11,
25:4
**requested** [1] - 6:23
**requests** [1] - 17:7
**required** [1] - 18:1
**responded** [1] - 17:6
**respondent** [1] -
31:8
**responses** [2] - 16:1,
30:14
**restraining** [1] - 32:5
**rise** [1] - 32:13
**ROOM** [1] - 1:22
**rule** [1] - 10:15
**Rule** [11] - 18:6,
22:18, 22:21, 23:10,
23:11, 24:3, 27:7,
27:19, 30:1, 30:9,
32:6
**ruled** [1] - 22:12
**rules** [2] - 8:19,
18:25
**Rules** [1] - 22:19
**ruling** [9] - 5:23, 6:1,
6:7, 6:18, 6:21, 6:24,
19:18, 19:24
**runs** [1] - 21:14
**Russia** [10] - 15:10,
15:15, 15:23, 17:21,
24:20, 24:25, 25:4,
25:22, 25:24, 28:12
**Russian** [10] - 15:21,
17:9, 17:11, 26:11,
26:13, 26:14, 28:9,
28:19, 28:23, 29:20

## S

**SAN** [1] - 2:6
**sanctions** [1] - 11:1
**satisfaction** [1] -
31:1
**satisfies** [1] - 8:18
**satisfy** [1] - 14:10
**Savannah** [1] - 31:13
**Scheffler** [4] - 24:4,
27:11, 29:2, 29:3
**school** [1] - 15:4
**seal** [1] - 5:5
**second** [1] - 19:23
**SECTION** [1] - 33:13
**secure** [1] - 23:19
**secured** [3] - 15:9,
26:18, 28:12
**security** [2] - 32:3,

32:5
**see** [1] - 8:15
**seek** [1] - 6:19
**seeking** [5] - 20:3,
21:19, 28:7, 28:9,
28:13
**seeks** [1] - 18:14
**sell** [1] - 25:13
**separate** [4] - 9:25,
10:15, 17:4, 17:9
**SESSION** [2] - 1:16,
3:2
**setting** [1] - 8:12,
8:17, 8:24
**settled** [1] - 4:13
**settlement** [10] - 4:8,
4:9, 4:20, 4:21, 5:6,
25:18, 25:20, 25:21,
31:1, 31:5
**shall** [2] - 30:19, 32:4
**SHERI** [3] - 1:21,
33:10, 33:24
**sign** [1] - 32:8
**similar** [1] - 21:3
**simply** [9] - 9:23,
10:10, 16:6, 23:17,
27:20, 28:1, 28:7,
29:13, 30:12
**situation** [1] - 11:17
**Smagin** [28] - 3:7,
3:12, 5:1, 5:9, 5:14,
6:1, 6:3, 6:9, 6:16,
9:9, 11:8, 11:19,
11:20, 11:25, 13:14,
13:18, 13:25, 15:9,
15:10, 15:17, 15:20,
15:22, 17:8, 23:13,
25:11, 26:20, 28:23,
29:16
**SMAGIN** [1] - 1:6
**Smagin's** [6] - 9:13,
11:5, 16:21, 17:6,
17:15, 25:4
**so-called** [1] - 28:23
**someone** [2] - 11:18,
29:19
**sometime** [1] - 5:18
**soon** [2] - 4:8, 7:3
**sorry** [2] - 13:19,
21:1
**sort** [3] - 4:19, 21:17,
29:9
**sought** [5] - 4:24,
17:1, 18:23, 19:23,
21:8
**source** [1] - 4:21
**sovereign** [1] - 21:15
**speaks** [1] - 18:6
**special** [2] - 13:7,
13:11

**specific** [7] - 7:14,
12:11, 18:22, 19:10,
21:19, 21:20, 30:1
**specifically** [10] -
10:22, 12:9, 13:7,
14:7, 22:12, 28:10,
29:7, 29:17, 31:5,
31:11
**spouse** [1] - 15:5
**SPRING** [1] - 1:22
**SS** [1] - 33:7
**stages** [1] - 11:19
**standards** [1] - 20:8
**stands** [1] - 10:2
**STARS** [1] - 2:9
**start** [2] - 3:21, 18:4
**started** [1] - 14:19
**STATE** [1] - 33:8
**state** [9] - 3:9,
10:24, 11:3, 16:10,
16:12, 22:20, 24:7,
30:5
**statement** [1] - 17:19
**States** [9] - 12:15,
20:20, 20:23, 20:24,
21:5, 21:7, 21:10,
21:25
**STATES** [6] - 1:1,
1:1, 1:4, 33:11, 33:13,
33:18
**status** [7] - 8:13,
9:16, 11:7, 13:3, 13:7,
24:1, 29:14
**stay** [8] - 6:4, 6:5,
6:10, 6:23, 7:2, 9:5,
11:25, 28:21
**stayed** [1] - 18:12
**staying** [2] - 16:14,
16:16
**STENOGRAPHICA
LLY** [1] - 33:15
**step** [1] - 16:9
**steps** [2] - 5:20,
13:10
**stipulated** [1] - 14:8
**stipulation** [1] - 31:6
**straightforward** [1] -
10:7
**STREET** [1] - 1:22
**strong** [1] - 6:25
**subject** [2] - 15:19,
29:11
**submission** [3] -
5:23, 6:22, 16:16
**submit** [2] - 16:17,
19:14
**submitted** [6] -
16:18, 16:19, 16:22,
17:3, 30:14
**substantive** [1] -

8:18
**successor** [1] - 21:6
**suffer** [1] - 5:14
**sufficient** [2] - 15:16,
30:15
**suit** [1] - 12:12
**SUITE** [1] - 2:10
**Suleyman** [1] - 31:3
**sum** [2] - 18:23,
22:14
**Superior** [4] - 4:16,
5:3, 5:11, 5:15, 6:12,
6:14, 7:3, 14:7, 29:17,
31:9
**supplant** [1] - 20:6
**supplementary** [1] -
30:2
**support** [7] - 7:23,
11:14, 12:7, 12:23,
18:18, 20:11, 28:20
**supportive** [1] - 29:4
**Supreme** [2] - 22:1,
22:4
**Systems** [1] - 22:12
**systems** [1] - 18:20

## T

**TANTALO** [1] - 2:8
**tantamount** [1] -
12:11
**technical** [1] - 10:6
**temporary** [1] - 32:5
**ten** [1] - 6:23
**ten-day** [1] - 6:23
**tentative** [4] - 5:22,
5:25, 16:15, 16:16
**terms** [10] - 4:4,
14:25, 16:8, 18:3,
18:6, 23:18, 26:16,
27:4, 30:1, 30:10
**testimony** [2] - 4:4,
17:24
**THAT** [2] - 33:12,
33:16
**THE** [38] - 2:9, 3:6,
3:16, 3:19, 14:16,
14:22, 24:24, 25:2,
25:5, 25:9, 25:16,
25:20, 26:2, 26:4,
26:6, 26:9, 26:12,
26:17, 26:19, 26:22,
26:25, 28:14, 28:17,
29:22, 30:17, 31:24,
32:2, 32:12, 32:13,
33:11, 33:13, 33:14,
33:15, 33:16, 33:17,
33:18
**theories** [1] - 22:7

**therefore** [1] - 27:19
**they've** [1] - 16:24
**Third** [1] - 7:20
**three** [5] - 6:4, 9:4,
13:15, 17:4, 28:25
**TITLE** [1] - 33:13
**TO** [1] - 33:13
**took** [2] - 5:20, 5:23
**Toyo** [6] - 19:8, 19:9,
19:20, 19:21, 20:2,
20:14
**trace** [1] - 17:17
**TRANSCRIPT** [3] -
1:15, 33:14, 33:16
**transfer** [4] - 7:11,
7:25, 30:20, 31:5
**treasurer** [1] - 10:24
**treat** [1] - 23:21
**treated** [4] - 20:15,
21:24, 22:15, 23:22
**treating** [2] - 23:15,
23:17
**Treuhand** [1] - 31:12
**tried** [1] - 9:5
**TRUE** [1] - 33:14
**true** [5] - 15:1, 15:2,
23:6, 30:12, 30:16
**truly** [1] - 17:2
**trust** [2] - 5:7, 9:16
**Trust** [1] - 31:12
**trustee** [1] - 31:13
**trustees** [1] - 30:24
**truthful** [1] - 17:8
**try** [3] - 5:21, 15:17,
17:24
**trying** [1] - 13:21
**turns** [1] - 4:12
**twice** [2] - 6:5, 27:11
**TWO** [1] - 2:5
**two** [9] - 9:20, 16:24,
17:4, 19:5, 19:21,
28:18, 29:1, 31:19

## U

**U.S** [4] - 9:21, 22:3,
22:24, 23:14
**ultimate** [4] - 6:18,
8:2, 16:3, 20:3
**ultimately** [5] - 6:20,
9:17, 13:17, 18:11,
19:24
**under** [16] - 5:5,
5:23, 6:22, 11:9,
11:10, 14:4, 16:15,
22:15, 23:11, 26:11,
26:15, 29:8, 30:19,
30:25, 31:12, 31:22
**understood** [1] - 4:7

**undoubtedly** [1] - 5:8
**unfortunately** [1] - 6:25
**UNITED** [6] - 1:1, 1:1, 1:4, 33:11, 33:13, 33:18
**United** [9] - 12:15, 20:20, 20:23, 20:24, 21:5, 21:7, 21:10, 21:25
**unless** [2] - 23:10, 28:15
**unremarkable** [1] - 10:2
**unsealed** [1] - 5:4
**untruthful** [1] - 4:4
**up** [3] - 9:15, 22:5, 30:22
**upset** [1] - 9:11
**useful** [1] - 13:25

## V

**Vaduz** [1] - 31:12
**valued** [1] - 15:11
**venture** [3] - 19:22, 19:23, 19:25
**versus** [9] - 3:7, 9:22, 12:16, 18:19, 20:20, 20:23, 21:10, 22:3, 22:24
**viewed** [1] - 11:1
**VITALY** [1] - 1:6
**Vitaly** [2] - 3:7, 3:11
**VS** [1] - 1:8

## W

**waste** [1] - 7:25
**ways** [1] - 22:5
**Wealth** [1] - 31:14
**WEDNESDAY** [1] - 3:1
**wEDNESDAY** [1] - 1:15
**weeks** [1] - 5:24
**West** [1] - 22:2
**WESTERN** [1] - 1:2
**whatsoever** [1] - 9:24
**whoa** [3] - 21:7
**whole** [1] - 16:5
**wide** [1] - 13:9
**wife** [3] - 4:17, 5:17, 14:8
**wife's** [1] - 5:20
**win** [1] - 9:6

**wins** [1] - 9:8
**WITH** [1] - 33:17
**withstanding** [1] - 6:25
**won** [1] - 13:14
**wondering** [1] - 14:20
**wording** [1] - 30:4
**words** [2] - 11:18, 13:5
**world** [1] - 28:8
**worldwide** [3] - 5:16, 15:3, 18:12
**worth** [1] - 20:21

## Y

**year** [1] - 31:23
**YEGIAZARYAN** [1] - 1:9
**Yegiazaryan** [24] - 3:8, 3:15, 3:22, 5:16, 5:19, 9:4, 9:20, 11:12, 13:19, 15:5, 15:12, 15:25, 16:3, 16:18, 17:19, 24:24, 27:22, 27:23, 27:24, 27:25, 29:10, 30:11, 30:18, 30:24
**Yegiazaryan's** [5] - 4:10, 15:13, 28:8, 29:4, 30:14
**York** [1] - 13:6