1   Bruce H. Jackson, State Bar No. 98118
      bruce.jackson@bakermckenzie.com
2   Anne M. Kelts, State Bar No. 298710
      anne.kelts@bakermckenzie.com
3   **BAKER & McKENZIE LLP**
    Two Embarcadero Center, 11th Floor
4   San Francisco, CA  94111
    Telephone: +1 415 576 3000
5   Facsimile: +1 415 576 3099

6   Nicholas O. Kennedy, State Bar No. 280504
      nicholas.kennedy@bakermckenzie.com
7   BAKER & McKENZIE LLP
    2300 Trammell Crow Center
8   2001 Ross Avenue
    Dallas, TX  75201
9   Telephone: +1 214 978 3000
    Facsimile:  +1 214 978 3099

10
    Attorneys for Petitioner
11  VITALY IVANOVICH SMAGIN

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                   WESTERN DIVISION

15

16  VITALY IVANOVICH SMAGIN,          | Case No.  14-cv-09764-R (PLAx)

17          Petitioner,               | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER**
18      v.

19  ASHOT YEGIAZARYAN, a.k.a.
    ASHOT EGIAZARYAN,                 | **Date:       September 18, 2017**
20                                     **Time:       10:00 a.m.**
           Respondent.                **Courtroom: 880, 8th Floor**
21
                                      **Before the Honorable Manuel L. Real**
22
                                      **Roybal Federal Building and**
23                                    **  U.S. Courthouse**
                                      **255 East Temple Street**
24                                    **Los Angeles, CA 90012**

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

# TABLE OF CONTENTS

Page No.

I.  INTRODUCTION AND FACTUAL BACKGROUND .................................. 1

II. ARGUMENT AND AUTHORITIES ........................................................ 5

    A.  The Turnover Order Is Authorized by Both California and Federal Law .......................................................................................... 5

        1.  California Law Expressly Authorizes Turnover Orders in Support of Judgment Enforcement ................................... 5

        2.  Federal Courts Have Recognized Their Jurisdiction Over the Debtor to Compel the Transfer of Funds Placed In Foreign Trusts for the Purpose of Sheltering Assets from Judgment Creditors ................................................................ 6

    B.  Mr. Yegiazaryan's actions and control over the alpha Trust necessitate a turnover order to allow Mr. Smagin to collect on his Judgment ................................................................................ 8

        1.  Mr. Yegiazaryan's Nonpayment Establishes A Need For The Turnover Order ....................................................... 8

        2.  The Alpha Trust Was Funded with Mr. Yegiazaryan's Personal Assets and He Retained Control Over The Trust .......... 9

III. CONCLUSION ..................................................................................... 14

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

i

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

1

# **TABLE OF AUTHORITIES**

2
                                                                    **Page No(s)**

3
                                    **Cases**

4

*Eulich v. United States*,
5
    2006 U.S. Dist. LEXIS 2227 (N.D. Tex. Jan. 23, 2006) ........................ 1, 7

6
*FTC v. Affordable Media, LLC*,
7
    179 F.3d 1228 (9th Cir. 1999) ................................................... 1, 7, 13

8
*Grewal v. Choudhury*,
    2009 U.S. Dist. LEXIS 19072 (N.D. Cal. Feb. 20, 2009) .................... 6, 13
9

10
*Hendricks & Lewis PLLC v. Clinton*,
    2014 U.S. Dist. LEXIS 169096 (C.D. Cal. Dec. 5, 2014) ................ 6, 8, 13
11

12
*Lawrence v. Goldberg (In re Lawrence)*,
    279 F.3d 1294 (11th Cir. 2002) ................................................. 1, 7, 8
13

14
*Loeb v. Record*,
    162 Cal. App. 4th 431 (2008) ..................................................... 5

15
*Palacio Del Mar Homeowners Ass'n, Inc. v. McMahon*,
16
    174 Cal. App. 4th 1386 (2009) ................................................ 5, 6

17
*SEC v. Bilzerian*,
18
    131 F. Supp. 2d 10 (D. D.C. 2001) .............................................. 1, 7

19
*Smaato, Inc. v. Mobilewalla, Inc.*,
20
    2017 U.S. Dist. LEXIS 56222 (N.D. Cal. 2017) ............................ 6, 13

21
*UMG Recordings, Inc. v. BCD Music Grp., Inc.*,
    2009 U.S. Dist. LEXIS 97017 (C.D. Cal. July 9, 2009) ............ 5, 6, 8, 13
22

23
*Wade v. Schrader*,
    168 Cal. App. 4th 1039 (2008) ................................................... 5

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

ii

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Statutes**

Fed. R. Civ. P. 69(a)(1)............................................................................................5

CAL. CODE CIV PROC. § 699.040(b)....................................................................5, 13

CAL. CODE CIV. PROC. § 708.205(a)......................................................................5, 6

CAL. CODE CIV. PROC. § 1287.4 ................................................................................5

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

iii

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Petitioner and Judgment Creditor Vitaly Ivanovich Smagin seeks the Court's assistance in collecting this Court's judgment confirming an international arbitration award under the New York Convention for more than $93 million against Respondent Ashot Yegiazaryan (the "Award" and the "Judgment").  *See* ECF 59.  Specifically, Mr. Smagin requests entry of a turnover order compelling Mr. Yegiazaryan to turn over specifically identified assets held by Mr. Yegiazaryan in an offshore trust sufficient to satisfy the Judgment, pursuant to California law and the Writ of Execution for $93,291,934.90[1] issued on March 23, 2017.  *See* ECF 111.  Those assets have been repeatedly identified by Mr. Smagin to this Court as Mr. Yegiazaryan's only asset that is realistically available to satisfy the Judgment.  Indeed, the Court has specifically referenced theses assets in multiple freeze orders it has issued. Nevertheless, Mr. Yegiazaryan has kept the assets offshore and refuses to turn them over to Mr. Smagin to satisfy the Judgment.  As set forth more fully below, this turnover order is both necessary and supported by well-established California and federal law.

Mr. Yegiazaryan has refused to pay the Award (and now Judgment) for years. He has an admitted history of structuring his assets through offshore nominees, trustees, and shell companies in order to conceal his beneficial ownership and to protect his assets from judgment creditors.  In this regard, this Court and others have repeatedly acknowledged Mr. Yegiazaryan's duplicity.   Indeed, in granting Mr. Smagin's application for a post-judgment injunction, this Court noted:

> Mr. Yegiazaryan's record of concealing the true beneficial
> owner of assets through these types of nominee structures

---

[1] As of the date of this filing, August 21, 2017, the total due with interest is $93,291,934.90.  This includes the original face value of the Writ of $93,047,015.90 plus daily interest of $1,621.98 per day, as ordered by the Writ, for the 151 days since the Writ was issued for a total of $244,918.98.  *See* ECF 111.  An additional $1,621.98 will be added to this amount every day after August 21, 2017 until payment is made in full.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

makes it **likely that, given the opportunity, he will continue to hide the proceeds of this settlement in a way to avoid payment directly to himself in California where the proceeds would be subject to execution on the judgment**. This Court believes that given Mr. Yegiazaryan's past actions, it is highly likely that these assets will immediately be moved to another nominee structure in another jurisdiction unknown to Mr. Smagin and out of the immediate reach of Mr. Smagin and his judgment. The Court therefore concludes that without the injunction Mr. Smagin will suffer irreparable injury in that Mr. Yegiazaryan is highly likely to continue to move the assets yet again to force Mr. Smagin to start from scratch and even further delay (or destroy) his right to collect his enforceable judgment.

ECF 90 at 6 (emphasis added).  Mr. Yegiazaryan did exactly what this Court predicted he would do—he hid these same settlement proceeds referenced in the Court's order in Lichtenstein instead of accepting them in California where he resides.

These settlement proceeds diverted to Lichtenstein resulted from Mr. Yegiazaryan's pursuit of his own claims against another Russian businessman named Suleyman Kerimov that, while unrelated to this dispute in substance, ran in parallel to Mr. Smagin's arbitration against Mr. Yegiazaryan leading to the Award and Judgment.  Mr. Yegiazaryan's case against Mr. Kerimov resulted in a $250 million arbitral award (the "Kerimov Award") for Mr. Yegiazaryan just days apart from the Award to Mr. Smagin giving rise to the Judgment.

As indicated above, Mr. Smagin was aware of the Kerimov Award when he filed this action.  Indeed, Mr. Smagin told this Court at the time he believed the proceeds of the Kerimov Award might well be the most likely asset available for

2

1   satisfying his own Award against Mr. Yegiazaryan and expressed concern that Mr.

2   Yegiazaryan's beneficial interest in the proceeds of this award would be hidden in

3   some foreign nominee structure.  ECF 1-1.  Although limiting its reach to proceeds

4   that came to California, the Court granted Mr. Smagin's request to freeze those

5   proceeds in a TRO that was later converted to a preliminary injunction.  ECF 84, 90.

6       While Mr. Smagin was pursuing enforcement of the Award in this Court, in

7   May 2015, Mr. Yegiazaryan settled the Kerimov Award for $195 million (the

8   "Kerimov Settlement").  Declaration of Nicholas O. Kennedy ("Kennedy Decl.") ¶ 5

9   & Exh. 2.  Mr. Yegiazaryan was paid $188 million in proceeds from the settlement.

10  *Id.*  Unfortunately, this Court's order did not stop Mr. Yegiazaryan from concealing

11  the Kerimov Settlement.  No doubt cognizant of the California injunction, Mr.

12  Yegiazaryan did not accept payment of the Kerimov Settlement in California.  Instead,

13  as predicted by Mr. Smagin *and this Court* in the excerpt above, Mr. Yegiazaryan

14  funneled the $188 million he received through his attorneys in London into a hastily

15  formed Lichtenstein trust over which he retained near complete control (the "Alpha

16  Trust").  Kennedy Decl. ¶¶ 4, 6-7 & Exhs. 1, 3, 4.  Mr. Yegiazaryan did not tell this

17  Court or Mr. Smagin about the receipt of these funds or the establishment of the

18  Alpha Trust.   Mr. Smagin learned about this only through intervening in Mr.

19  Yegiazaryan's divorce case.[2]

20      Mr. Yegiazaryan still refuses to pay.  He pleads poverty while holding more

21  than $180 million in liquid assets in Lichtenstein in the Alpha Trust.  There is no

22  doubt that Mr. Yegiazaryan formed the Alpha Trust, retains control over it, and

23  funded it with his own personal assets—the very Kerimov Award and Kerimov

24  Settlement repeatedly identified by this Court.  This Court should not enable

---

[2]   Mr. Smagin learned about this duplicity only by closely monitoring
25  Mr. Yegiazaryan's California divorce proceeding and intervening in and unsealing
26  documents there.  *See*  Kennedy Decl.¶ 4.  This included a joint stipulation,
    improperly filed under seal (the "Family Law Stipulation"), in which Mr. Yegiazaryan
27  and his wife confirmed that the $188 million Kerimov Settlement had been placed in a
    Liechtenstein trust.  *Id.* ¶ 4 & Exh. 1.  They also confirmed it was community
28  property.  *Id.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Mr. Yegiazaryan's attempt to prevent Mr. Smagin from executing on his Award and Judgment by keeping these assets offshore in the Alpha Trust he formed to receive and shield his personal assets *during this enforcement proceeding*.

The Award and Judgment are immediately enforceable because Mr. Yegiazaryan refused to post a bond pending his appeal. And in any event, Mr. Yegiazaryan has exhausted his efforts to contest and undermine the arbitration Award. While he opposed summary judgment in this Court on the basis of pending challenges to the Award in London, all available appeals have now been exhausted and decided against him in London, the site of the Award. As a result, Mr. Yegiazaryan has also abandoned the substantive appeal of this Court's confirmation and Judgment that he originally filed with the Ninth Circuit. All that remains at issue on appeal is Mr. Yegiazaryan's attack on the attorney's fees awarded by this Court for Mr. Yegiazaryan's bad-faith opposition to confirmation of the Award along with Mr. Yegiazaryan's attempt again to remove this case from this Court and have it reassigned to another judge.[3]

Clearly Mr. Yegiazaryan's plan was and still is to prevent Mr. Smagin from ever executing on his Award by keeping assets offshore and concealing his beneficial ownership of those assets. There can be no doubt that Mr. Yegiazaryan purposefully created the Alpha Trust in an effort to hide assets and put them out of reach of Mr. Smagin. Yet the assets remain within Mr. Yegiazaryan's reach. He is the protector/settlor of the Alpha Trust, a beneficiary, and the trust was funded with Mr. Yegiazaryan's personal settlement of the Kerimov Award. Indeed, he has retained control over the trust and may *appoint and dismiss trustees at will*. He may even appoint *himself* as the trustee.

---

[3] Because this Court has ruled against him several times, Mr. Yegiazaryan argues that this Court exceeded its authority and manifestly disregarded his rights. Mr. Yegiazaryan apparently believes he will fare better before a new judge who is not aware of his deceptive and deceitful conduct.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

4

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

The assets in the Alpha Trust should therefore be made available to satisfy the Judgment. This Court has the authority to do just that. Mr. Smagin therefore respectfully requests that the Court issue an order directing Mr. Yegiazaryan to immediately take all steps and issue all instructions necessary to effectuate the turnover and transfer of Alpha Trust assets sufficient to satisfy Mr. Smagin's Judgment, up to and including dismissing the trustees should they fail to comply.

## II. ARGUMENT AND AUTHORITIES

### A. The Turnover Order Is Authorized by Both California and Federal Law

#### 1. California Law Expressly Authorizes Turnover Orders in Support of Judgment Enforcement

A judgment confirming an arbitration award is enforceable under the California Enforcement of Judgments Law. *See* CAL. CODE CIV. PRO. § 1287.4; *Wade v. Schrader*, 168 Cal. App. 4th 1039, 1045-46 (2008); *Loeb v. Record*, 162 Cal. App. 4th 431, 450 (2008). That law permits a judgment creditor to obtain a turnover order requiring the judgment debtor to turn over property to either the levying officer or the judgment creditor directly at the conclusion of a debtor exam. *See* CAL. CODE CIV. PROC. § 708.205(a); *Palacio Del Mar Homeowners Ass'n, Inc. v. McMahon*, 174 Cal. App. 4th 1386, 1390 (2009). Because this Court may exercise all powers of a California state court to enforce a judgment, this Court may similarly issue a turnover order. *See* Fed. R. Civ. P. 69(a)(1).

A turnover order shall be issued upon "a showing of need for the order." CAL. CODE CIV PROC. § 699.040(b). The need for a turnover order is established by a refusal to pay a judgment. *UMG Recordings, Inc. v. BCD Music Grp., Inc.*, 2009 U.S. Dist. LEXIS 97017, at *10 (C.D. Cal. July 9, 2009). This order may cover all of "the debtor's interest in the property in the possession or under the control of the judgment debtor or a third person," without limitation as to property type. CAL. CODE. CIV. PROC. § 708.205(a).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

A turnover order may also reach property outside California because it arises from the court's jurisdiction over the judgment debtor, not over the property itself. *See UMG Recordings*, 2009 U.S. Dist. LEXIS 97017, at *11 (granting turnover order based on writ of execution and noting that the order permissibly covered out-of-state property based on personal jurisdiction over the judgment debtor); *Grewal v. Choudhury*, 2009 U.S. Dist. LEXIS 19072 (N.D. Cal. Feb. 20, 2009) (rejecting challenge to turnover order issued after debtor exam that applied to, *inter alia*, money held in escrow accounts by law firms representing defendant - including funds held in Chicago - and all settlement proceeds of a pending dispute). This is especially true after a debtor exam when property is ordered transferred directly to the creditor and not to the levying officer. *See* Cal. Code Civ. Proc. § 708.205(a); *Palacio Del Mar Homeowners Ass'n, Inc. v. McMahon*, 174 Cal. App. 4th 1386, 1390 (2009).

For example, the court in *UMG Recordings* found "a turnover order appropriate to help curtail [the debtor]'s dilatory tactics." 2009 U.S. Dist. LEXIS 97017, at *10. In so doing, the court concluded that the debtor's "behavior in refusing to pay any portion of the settlement amount or judgment suffices to demonstrate the need for such a [turnover] order." *Id.*; *see also Smaato, Inc. v. Mobilewalla, Inc.*, 2017 U.S. Dist. LEXIS 56222, at *7 (N.D. Cal. 2017) (finding turnover order "necessary to help curtail [judgment debtor's] dilatory tactics"); *Hendricks & Lewis PLLC v. Clinton*, 2014 U.S. Dist. LEXIS 169096, at *11 (C.D. Cal. Dec. 5, 2014) (noting that a judgment debtor's "failure to comply with his legal obligation to satisfy the judgment against him weighs heavily in favor of an assignment, retraining, and document turnover order" where $1.3 million remained due on a judgment "more than four years after it was entered and registered in this District").

### 2. Federal Courts Have Recognized Their Jurisdiction Over the Debtor to Compel the Transfer of Funds Placed In Foreign Trusts for the Purpose of Sheltering Assets from Judgment Creditors

Mr. Yegiazaryan purposefully placed his settlement in the Alpha Trust to hide it from Mr. Smagin and to shield it from the Judgment. District Courts have regularly

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

1   ordered judgment debtors to transfer money purposefully placed in foreign trusts in an

2   effort to avoid payment of judgments and have used their contempt powers to enforce

3   such orders.  *See, e.g.*, *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1243-44 (9th

4   Cir. 1999) (affirming civil contempt order based on failure to repatriate assets from

5   foreign trust); *Lawrence v. Goldberg (In re Lawrence)*, 279 F.3d 1294 (11th Cir.

6   2002) (affirming contempt ruling based on inability to repatriate funds from foreign

7   trust because debtor "created this Trust in an obvious attempt to shelter his funds from

8   an expected adverse arbitration award"); *SEC v. Bilzerian*, 131 F. Supp. 2d 10 (D.

9   D.C. 2001) (rejecting impossibility defense and affirming contempt order based on

10   failure to produce financial documents related to foreign trust); *Eulich v. United

11   States*, 2006 U.S. Dist. LEXIS 2227 (N.D. Tex. Jan. 23, 2006)  (same).

12       Indeed, the Ninth Circuit has soundly criticized the use of foreign trusts to

13   deceive creditors as Mr. Yegiazaryan has done here and concluded that the

14   appropriate recourse is an order requiring the debtor to repatriate the assets.   In

15   *Affordable Media,* the court explained that these "[s]o-called asset protection trusts are

16   designed to shield wealth by moving it to a foreign jurisdiction that does not recognize

17   U.S. judgments or other legal processes, such as asset freezes."   *Federal Trade

18   Commission v. Affordable Media, LLC*, 179 F.3d 1228, 1240 (9th Cir. 1999) (citing

19   Debra Baker, *Island Castaway,* ABA JOURNAL, October 1998, at 55).   The court

20   further explained that "[b]ecause these asset protection trusts move the trust assets

21   beyond the jurisdiction of domestic courts, often times all that remains within the

22   jurisdiction is the physical person of the defendant.  Because the physical person of

23   the defendant remains subject to domestic courts' jurisdiction, courts could normally

24   utilize their contempt powers to force a defendant to return the assets to their

25   jurisdictions."   *Id.* at 1240.   This is precisely the situation here.  The Court should

26   exercise its power over Mr. Yegiazaryan to order him to turn over the assets of the

27   Alpha Trust he controls to satisfy the judgment.

28

7

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

**B.    Mr. Yegiazaryan's actions and control over the alpha Trust necessitate a turnover order to allow Mr. Smagin to collect on his Judgment**

**1.    Mr. Yegiazaryan's Nonpayment Establishes A Need For The Turnover Order**

There is no dispute that this Court has jurisdiction over Mr. Yegiazaryan.  Nor is there any dispute that Mr. Yegiazaryan has refused to pay the Judgment and has purposefully concealed his assets outside of California in order to avoid enforcement here.  This duplicity has been repeatedly brought to the Court's attention since this action was filed, yet Mr. Yegiazaryan has steadfastly fought Mr. Smagin's efforts to prevent dissipation of assets and to enforce the Judgment at every turn.  The Award was issued nearly three years ago, and the Judgment is over a year old.  This charade must end.

Because Mr. Yegiazaryan placed the proceeds of the Kerimov Settlement in the Alpha Trust in an effort to prevent enforcement of Mr. Smagin's Judgment, a turnover order is appropriate.  Like the judgment debtor in *UMG Recordings*, Mr. Yegiazaryan has engaged in dilatory tactics to circumvent enforcement of the Judgment by shielding his assets in the Alpha Trust.  Indeed, the Alpha Trust was funded with the very same assets—the proceeds of the Kerimov Settlement—that that this Court repeatedly recognized provided the most likely avenue for recovery of the Judgment and over which this Court issued a freeze on multiple occasions.  Kennedy Decl. ¶¶ 4, 6-7 & Exhs. 1, 3, 4; *see* ECF 9, 26, 31, 84, 90 (orders from this Court freezing proceeds of Kerimov Award).

As in *UMG*, Mr. Yegiazaryan's "behavior in refusing to pay any portion of the settlement amount or judgment suffices to demonstrate the need for such a [turnover] order."  *UMG Recordings*, 2009 U.S. Dist. LEXIS 97017, at *10; *see also Hendricks*, 2014 U.S. Dist. LEXIS 169096, at *11.   And as in *Goldberg*, Mr. Yegiazaryan stablished the Alpha Trust in Liechtenstein "in an obvious attempt to shelter his funds from an adverse arbitration award."  279 F.3d at 1300.  Because Mr. Yegiazaryan has

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1  no other significant United States assets, Mr. Smagin has established a need for the

2  order.[4]

3      **2.    The Alpha Trust Was Funded with Mr. Yegiazaryan's Personal**
       **Assets and He Retained Control Over The Trust**

4

5      There is no doubt that the assets from which the Alpha Trust was funded are

6  Mr. Yegiazaryan's personal assets.  The Trust was formed on May 27, 2015.  Factual

7  Stipulation in Support of Petitioner's Motion for Turnover Order[5] ("Factual

8  Stipulation") ¶ 1.  It was funded just over a week later, after the trustees travelled to

9  California to meet with Mr. Yegiazaryan.  Kennedy Decl. ¶¶ 5, 9 & Exhs. 2, 6

10 (excerpts of Debtor Exam) at 48:24-49:25; 52:18-53:9.    On June 5, 2015,

11 Mr. Yegiazaryan's attorneys at Gibson Dunn transferred $188,146,102.08 into a bank

12 account held by the Alpha Trust at Mr. Yegiazaryan's request, retaining $3 million to

13 cover legal fees owed by Mr. Yegiazaryan.  *Id.*; *see also* Kennedy Decl. ¶ 7 & Exh. 4.

14 This was the proceeds of the Kerimov Settlement, after a payment to Gibson Dunn for

15 its representation of Mr. Yegiazaryan.  Kennedy Decl. ¶ 7 & Exh. 4.  Notably, the

16

17 ———————————————

[4] Mr. Yegiazaryan may claim that assets allegedly frozen in Russia are sufficient to
18 satisfy the Judgment and this precludes a turnover order.  That is both mistaken and
irrelevant.  First, the majority of "frozen" Russian assets are not in Mr. Yegiazaryan's
19 name, and he admitted that the limited assets in his name (undeveloped land and an
apartment) are insufficient to satisfy the Judgment.  Kennedy Decl. ¶ 9 & Ex. 6
20 (Excerpts of Debtor Exam taken July 11, 2017) at   16:4-12; 18:17-18, 20:11-21:4;
23:15-24:6.  Second, any potential recovery from these assets by Mr. Smagin would
21 take years and would require, at a minimum, a new and duplicative enforcement
action in Russia to confirm the award as a Russian judgment, filing a compensation
22 claim in the criminal proceedings against Mr. Yegiazaryan that will not be completed
for a significant period of time, and, ultimately, unwinding the maze of nominee and
23 offshore companies holding these Russian assets to, if possible, re-characterize them
into Mr. Yegiazaryan's name.  This remote and distant possibility of recovery does
24 not preclude Mr. Smagin's recovery of his Judgment against the Alpha Trust assets he
has fought long and hard to discover.
[5] The Trust document was designated by Mr. Yegiazaryan as "Confidential-Outside
25 Attorney's Eyes Only" under the Protective Order in this case.  While Mr. Smagin
does not agree with this designation, the parties have reached a compromise that
26 prevents the need to file under seal by Mr. Yegiazaryan stipulating that the Trust
contains certain provisions relevant here.  The provisions relevant to this Motion are
27 quoted in full in the Factual Stipulation and Mr. Yegiazaryan has stipulated that the
Trust contains those provisions in full as quoted in the Factual Stipulation.  Thus, all
28 citations to the terms of the Trust document are cited by way of reference to their
reproduction in the Factual Stipulation.

9

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

1  Kerimov Settlement was paid to Mr. Yegiazaryan personally—in other words it is his

2  own *personal* asset.  Kennedy Decl. ¶ 5 & Exh. 2, 6 (excerpts of Debtor Exam) at

3  79:6-9.

4         This is confirmed by two other documents filed in Mr. Yegiazaryan's California

5  divorce proceedings.   In June 2015, Mr. Yegiazaryan's attorneys in the divorce

6  proceeding retained the services of B. Marie Ebersbacher, a certified public

7  accountant, to provide a declaration *on behalf of Mr. Yegiazaryan* regarding a

8  financial analysis she conducted regarding identification, evaluation and tracing of

9  community and separate assets.  Kennedy Decl. ¶ 10 & Exh. 7.  In paragraph 11 of

10 that declaration, Ms. Ebersbacher commented on litigation in foreign jurisdictions,

11 which she described as:

12              including **the parties' largest asset**, a $242.5 million

13              judgment award in the London Court of International

14              Arbitration ("LCIA")[the Kerimov Award], which was

15              subject to challenge.  This challenge was recently resolved

16              by way of a negotiated settlement [the Kerimov Settlement].

17              The terms of the settlement are subject to strict

18              confidentiality agreement but the parties are in the process

19              of executing the necessary confidentiality agreement to

20              protect the settlement terms, but enable Respondent to

21              provide Petitioner with the necessary information.  Once

22              received, these funds could be conservatively invested such

23              that Petitioner, Respondent, and their minor children may be

24              able to live off of the interest earned.

25 Kennedy Decl. Exh. 7 at ¶ 11 (emphasis added).

26        Moreover, in July 2015, Mr. Yegiazaryan and his wife filed the Family Law

27 Stipulation with the Los Angeles Superior Court, in which they stated that "the

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

Kerimov Litigation ("Kerimov") has been resolved and funds distributed and received and an account established by Respondent [i.e. Mr. Yegiazaryan]." Kennedy Decl. ¶ 4 & Exh. 1 at 2 [Stipulation, fourth Whereas clause]. They made clear that the proceeds were their own *personal* asset, telling the court "[t]hat the parties' **community estate has an interest in the Kerimov settlement funds** and other various awards in the LCIA and other jurisdictions." *Id.* at 3 [Stipulation ¶ 1] (emphasis added). Indeed, Mr. Yegiazaryan and his wife expressly told the LA Superior Court that "the Kerimov settlement funds **shall be used to satisfy community creditors and claimants**… ." *Id.* (emphasis added).

Based on the parties agreement and unequivocal representations that the Kerimov Settlement was (a) within the control of the parties and (b) would be used to pay community debts, the court ordered the parties to do exactly what Mr. Smagin seeks here—take steps to repatriate these funds to satisfy community debts:

> Each of the parties hereto is ordered to execute promptly all documents now or hereafter reasonably necessary with respect to the joint written instructions to the trust attorney overseeing the trust holding the Kerimov settlement funds … and at any time and from time to time **shall execute all other documents which may be necessary or proper to effect the purpose and intent of this Stipulation and Order**.

*Id.* at 3-4 [Stipulation ¶¶ 5] (emphasis added).

When it served his interest in his divorce proceeding, Mr. Yegiazaryan and experts retained on his behalf freely identified the Kerimov Settlement as a community asset to be used to pay off community creditor. Mr. Yegiazaryan told the Superior Court that payment of those creditors would be subject to its oversight and that they would execute such instructions as the court required in order to satisfy those

11

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

1  obligations.  Mr. Yegiazaryan and his wife even consented to entry of the above order

2  by the LA Superior Court requiring them to take steps to repatriate the foreign funds

3  to satisfy those creditors.  Mr. Smagin is such a creditor.  But when Mr. Smagin

4  intervened in the divorce proceeding and stated his community claim, Mr.

5  Yegiazaryan fought that intervention and the parties ultimately dismissed their divorce

6  case to avoid satisfying Mr. Smagin's claim.

7       Analysis of the settlement, related correspondence and trust documents show

8  that Mr. Yegiazaryan wanted to hide his assets, but at the same time maintain control

9  over them.  In addition to being a beneficiary, Mr. Yegiazaryan is the protector,

10  settlor, and investment advisor of the Alpha Trust.  Factual Stipulation ¶ 6 [Trust ¶

11  14.2] ("The first Protector shall be Ashot Yegiazaryan"); Kennedy Decl. ¶ 8 & Exh. 5

12  (minutes of meeting appointing Mr. Yegiazaryan as Investment Advisor); Kennedy

13  Decl. Exh. 6 (Debtor Exam Excerpts) at 76:17-22, 79:6-9.  Mr. Yegiazaryan must

14  consent to distributions, consent to beneficiaries, and even controls the investments

15  made by the Alpha Trust.  Factual Stipulation ¶ 2 (June 2, 2015 Amendment to Alpha

16  Trust requiring consent of Protector for long list of enumerated powers), ¶ 3d [Trust ¶

17  5], ¶ 3e [Trust ¶ 8], ¶ 4 [Trust Schedule One].  Most strikingly, Mr. Yegiazaryan

18  retained the authority to *dismiss and appoint trustees at will* and without any cause

19  whatsoever.  Factual Stipulation ¶ 2 (June 2, 2015 Amendment to Alpha Trust: "The

20  Protector shall have the power to dismiss and appoint the Trustees by written

21  instructions.").   In other words, if the trustees do not do Mr. Yegiazaryan's bidding,

22  he can immediately dismiss them and replace them with someone who will (including

23  himself).  *Id.*.  Regardless of what Mr. Yegiazaryan might claim regarding the powers

24  purportedly reserved to the trustees, this gives Mr. Yegiazaryan absolute and

25  unfettered control over the assets of the Alpha Trust.[6]

26  ───────────────
27  [6]  Mr. Smagin acknowledges that he has ongoing enforcement actions against Mr. Yegiazaryan and the trustees in Lichtenstein.  He further acknowledges that the Lichtenstein court of appeals recently issued a ruling partially calling into question

28  Mr. Smagin's legal authority to attach certain of Mr. Yegiazaryan's rights under Lichtenstein law.  That decision, however, has no bearing on this turnover motion

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1    The assets in the Alpha Trust belong to Mr. Yegiazaryan and he has the power
2    to effectuate their turnover to Mr. Smagin to satisfy the Judgment.  Given the fact that
3    Mr. Yegiazaryan is subject to this Court's personal jurisdiction, that the Court has
4    been well-aware of these assets since the outset of this case, that Mr. Yegiazaryan
5    refuses to pay the Judgment, and that there are no other assets from which Mr. Smagin
6    can recover, a turnover order is appropriate.  This action is authorized by California
7    law.  *See* CAL. CODE CIV PROC. § 699.040(b); *UMG Recordings*,  2009 U.S. Dist.
8    LEXIS 97017, at *10; *Smaato*, 2017 U.S. Dist. LEXIS 56222, at *7; *Clinton*, 2014
9    U.S. Dist. LEXIS 169096, at *11; *Grewal*, 2009 U.S. Dist. LEXIS 19072.

10    Issuing a turnover order here also falls squarely within the Ninth Circuit's
11    guidance in *Affordable Media*:

12    [g]iven the nature of the [judgment debtor's] so-called 'asset
13    protection' trust, which was designed to frustrate the power
14    of United States' courts to enforce judgments, there may be
15    little else that a district court judge can do besides exercise
16    its contempt powers to coerce people like [judgment
17    debtors] into removing the obstacles they placed in the way
18    of a court.  **Given that [judgment debtors'] trust is**
19    **operating precisely as they intended, we are not overly**
20    **sympathetic to their claims and would be hesitant to**
21    **overly-restrict the district court's discretion**, and thus
22    legitimize what the Andersons have done.

23    179 F.3d 1228, 1243-44 (9th Cir. 1999) (emphasis added).

24    Mr. Yegiazaryan is not the first debtor to use a foreign trust to put his assets out
25    of reach of a creditor.  He should fare no better than those before him and this Court

26

27

28    because Mr. Yegiazaryan's actions and the terms of the Trust speak for themselves
and there is no bar to seeking enforcement in multiple jurisdictions.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

should grant a turnover order requiring Mr. Yegiazaryan to turn over his assets in the Alpha Trust sufficient to satisfy Mr. Smagin's Judgment.[7]

### III.   CONCLUSION

For the foregoing reasons, Mr. Smagin respectfully requests that the Court grant this Motion and enter an order directing Mr. Yegiazaryan to turn over assets from the Alpha Trust sufficient to satisfy the Judgment and to take any and all actions necessary to do so, including but not limited to instructions to or dismissal and replacement of the trustees.

Dated:   August 21, 2017

**BAKER & MCKENZIE LLP**
Bruce H. Jackson
Anne M. Kelts
Nicholas O. Kennedy


By: /s/ Bruce H. Jackson
    Bruce H. Jackson
Attorneys for Petitioner
VITALY IVANOVICH SMAGIN

---

[7] Mr. Yegiazaryan may not hide behind an "impossibility" defense based on the court orders in Lichtenstein or the terms of the trust.  First, impossibility is a defense to a finding of contempt for failing to comply with a court order, not a justification for a refusal to grant the order in the first place.  Second, the terms of the Lichtenstein orders *do not* prevent Mr. Yegiazaryan or the trustees from taking actions that benefit Mr. Smagin, for whom the freeze was issued.  To the extent necessary, Mr. Smagin will seek clarification or modification of the orders from the Lichtenstein courts to allow compliance with an order of this Court.  Finally, many courts have rejected similar impossibility defenses based on foreign trusts when, as here, that impossibility was self-created by the judgment debtor who formed the offshore trust.  *See, e.g., Lawrence*, 279 F.3d at 1300 ("the 'asset protection Trust' was designed to frustrate the power of the courts to enforce judgments, and … there [is] little else that a district court judge can do besides exercise its contempt powers to coerce people like [Mr. Yegiazaryan] into removing the obstacles they placed in the way of a court [,particularly] where the person charged with contempt is responsible for the inability to comply."); *Affordable Media*, 179 F.3d 1228 (affirming civil contempt order based on failure to repatriate assets from foreign trust); *Bilzerian*, 131 F. Supp. 2d 10 (rejecting impossibility defense and affirming contempt order based on failure to produce financial documents related to foreign trust); *Eulich*, 2006 U.S. Dist. LEXIS 2227 (rejecting impossibility defense and affirming contempt order for failure to produce documents related to foreign trust).

14

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER