1  Nicholas O. Kennedy (State Bar No. 280504)
   nicholas.kennedy@bakermckenzie.com
2  **BAKER & McKENZIE LLP**
   1900 North Pearl Street, Suite 1500
3  Dallas, TX 75201
   Telephone: 214 978 3000
4  Facsimile: 214 978 3099

5  David R. Callaway (State Bar No. 121782)
    david.callaway@bakermckenzie.com
6  **BAKER & McKENZIE LLP**
   660 Hansen Way
7  Palo Alto, CA 94304-1044
   Telephone: 650.856.2400
8  Facsimile: 650.856.9299

9  Anne M. Kelts (State Bar No. 298710)
    anne.kelts@bakermckenzie.com
10 **BAKER & McKENZIE LLP**
   Two Embarcadero Center, 11th Floor
11 San Francisco, CA 94111
   Telephone: 415 576 3000
12 Facsimile: 415 576 3099

13 Attorneys for Petitioner
   VITALY IVANOVICH SMAGIN

14

15

16                 UNITED STATES DISTRICT COURT

17                 CENTRAL DISTRICT OF CALIFORNIA

18                      WESTERN DIVISION

19 VITALY IVANOVICH SMAGIN,          | **Case No. 14-cv-09764-R (PLAx)**

20          Petitioner,              | **MEMORANDUM OF POINTS
                                       AND AUTHORITIES IN
21     v.                             SUPPORT OF PETITIONER'S
                                       MOTION FOR TURNOVER
22 ASHOT YEGIAZARYAN, a.k.a.          ORDER**
   ASHOT EGIAZARYAN,
23                                   | **Date:      April 1, 2019
          Respondent.                  Time:      10:00 a.m.
24                                     Courtroom: 880, 8th Floor**

25                                   | **Before the Honorable Manuel L. Real**

26                                   | **Roybal Federal Building and
                                        U.S. Courthouse
27                                      255 East Temple Street
                                        Los Angeles, CA 90012**

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................. 1

II. FACTUAL BACKGROUND .......................................................................... 2

A.   Mr. Yegiazaryan Has Long Defrauded Mr. Smagin and Defied the Court .......... 2

B.   Mr. Yegiazaryan Structured the Alpha Trust to Give Himself Control Over the Assets ................................................................................................................... 4

C.   Mr. Yegiazaryan Exercised Actual Control Over the Trust ................................ 5

D.   This Court Previously Recognized Mr. Yegiazaryan's Control Over the Trust Based On the Terms of The Trust Alone ............................................................. 7

E.   The Ninth Circuit Reversed the Turnover Order Because It Decided to Wait for an Order from the Liechtenstein Supreme Court ................................................. 7

F.   The Liechtenstein Supreme Court Issued its Ruling ........................................... 8

III. ARGUMENT AND AUTHORITIES ........................................................... 9

A.   The Change in Circumstances Makes the Rationale Underlying the Ninth Circuit's Order Inapplicable Here ........................................................................ 9

B.   California Law Allows This Court To Order the Turnover Of Assets Controlled by Mr. Yegiazaryan ........................................................................................... 10
   1.   Mr. Yegiazaryan Controls the Trust and Its Assets ................................. 10
      a.   Mr. Yegiazaryan Has Asserted Actual Control over the Trust Assets ......... 10
      b.   The Terms of The Trust Confirm that Mr. Yegiazaryan Controls the Trust 11

C.   This Court's Jurisdiction Over Mr. Yegiazaryan Allows It To Compel Him to Transfer the Funds in the Alpha Trust that are Under His Control ..................... 12
   1.   Jurisdiction Over Mr. Yegiazaryan Is Sufficient To Reach Assets He Controls ................................................................................................. 12
   2.   Mr. Yegiazaryan's Nonpayment Establishes A Need For The Turnover Order ....................................................................................................... 13
   3.   The Turnover Order Does Not Seek Mr. Yegiazaryan's Interest as a Beneficiary in the Trust, but Rather the Assets Themselves ..................... 14

IV. CONCLUSION ............................................................................................ 15

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### Cases

4

5
*Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*,
   138 S. Ct. 1865 (2018) ......................................................................... 12

6

7
*Eulich v. United States*,
   2006 U.S. Dist. LEXIS 2227 (N.D. Tex. Jan. 23, 2006) ........................ 14

8

9
*FTC v. Affordable Media, LLC*,
   179 F.3d 1228 (9th Cir. 1999) ........................................................ 13, 14

10

11
*G & G Prods. LLC v. Rusic*,
   902 F.3d 940 (9th Cir. 2018) ................................................................ 12

12

13
*Grewal v. Choudhury*,
   2009 U.S. Dist. LEXIS 19072 (N.D. Cal. Feb. 20, 2009) ............... 12, 13

14

15
*Lawrence v. Goldberg (In re Lawrence)*,
   279 F.3d 1294 (11th Cir. 2002) ............................................................ 13

16
*Palacio Del Mar Homeowners Ass'n, Inc. v. McMahon*,
   174 Cal. App. 4th 1386 (2009) ............................................................. 13

17

18
*SEC v. Bilzerian*,
   131 F. Supp. 2d 10 (D.D.C. 2001) ........................................................ 13

19

20
*UMG Recordings, Inc. v. BCD Music Grp., Inc.*,
   2009 U.S. Dist. LEXIS 97107 (C.D. Cal. July 9, 2009) ............. 10, 12, 13

21

### Statutes and Rules

22

California Code of Civil Procedure

23

24
   § 699.040(b) ......................................................................................... 10

25
   § 708.205(a) .............................................................................. 10, 12, 15

26
   § 709.010 .............................................................................................. 14

27
Fed. Rule. Civ. Proc. 44.1 ........................................................................ 12

28

ii

## I.   **INTRODUCTION**

More than four years after receiving an arbitration award for approximately $84 million plus interest, and nearly two years after receiving a $93 million judgment confirming that award in this Court, Petitioner Vitaly Ivanovich Smagin still has not recovered a dime from Respondent Ashot Yegiazaryan.   Mr. Yegiazaryan pleads poverty, yet has hundreds of millions of dollars hidden in a Liechtenstein trust that he controls, and that he has acknowledged should be used to pay creditors (the "Alpha Trust").   In fact, Mr. Yegiazaryan has *already paid* millions of dollars to other "creditors" out of the funds in the Alpha Trust during the pendency of these proceedings.

Yet Mr. Yegiazaryan refuses to do the same for Mr. Smagin.   This Court has already once ordered Mr. Yegiazaryan to do so based on its conclusion that the terms of the Trust Deed demonstrate that Mr. Yegiazaryan has the right to control the Alpha Trust.   Unfortunately, Mr. Yegiazaryan convinced the Ninth Circuit to reverse that Turnover Order because the Ninth Circuit deemed it prudent to wait for a forthcoming ruling from the Liechtenstein Supreme Court that the Ninth Circuit believed may resolve issues relating to interpretation of the terms of the Trust Deed and Mr. Yegiazaryan's rights thereunder.

That ruling from the Liechtenstein Supreme Court has now been issued.   As a result, the circumstances have changed and the reasoning behind the Ninth Circuit's decision to take a "wait and see" approach by reversing the prior Turnover Order no longer holds.   Moreover, the Liechtenstein Supreme Court Ruling supports this Court's prior interpretation of the Trust Deed concluding that Mr. Yegiazaryan controls the Alpha Trust.

But that is not all.   Mr. Smagin has also uncovered additional facts through discovery not available at the time of the original Turnover Order that establish Mr. Yegiazaryan's actual exercise of control over the Alpha Trust.   This evidence of actual control over the Alpha Trust does not require any interpretation of the Trust Deed.

1

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

And it provides an independent basis to issue the Turnover Order that was not before this Court or the Ninth Circuit previously.

This, in addition to the ruling from Liechtenstein, provides an additional justification for why the Ninth Circuit's reversal of the prior Turnover Order does not preclude the Court from issuing one now.

Mr. Yegiazaryan has made it clear that he has no intent to satisfy the Judgment this Court awarded. He has also demonstrated that he will not comply with the orders this Court enters to enforce that Judgment. In this circumstance, Mr. Smagin regrets having to again ask this Court to order Mr. Yegiazaryan to do what he should have done years ago. But Mr. Yegiazaryan's duplicity has left Mr. Smagin with no choice. Mr. Smagin therefore respectfully requests that the Court grant this Motion for Turnover Order, and Order Mr. Yegiazaryan to turn over to Mr. Smagin funds from the Alpha Trust sufficient to satisfy the Judgment of this Court.

## II. FACTUAL BACKGROUND

### A.   Mr. Yegiazaryan Has Long Defrauded Mr. Smagin and Defied the Court

This saga began a decade ago, when Mr. Yegiazaryan defrauded Mr. Smagin out of his interest in a company related to a joint investment—an offense for which Mr. Yegiazaryan has now been convicted in the Russian Criminal Courts.[1] *See* Declaration of Nicholas O. Kennedy ("Kennedy Decl.") ¶ 7, Ex. 8. In 2014, Mr. Smagin won an $84 million arbitration award to compensate him for this fraud. ECF 186-10. But Mr. Yegiazaryan refused to pay, requiring Mr. Smagin to file a confirmation action in this Court to recover what he was owed. This Court entered a judgment ("Judgment") for roughly $92 million in favor of Mr. Smagin in March of 2016. Mr. Yegiazaryan still refused to pay. There is no doubt that Mr. Yegiazaryan had and has the assets to satisfy the Judgment. He simply refuses to do so, and has

---

[1] Like in the US, Mr. Yegiazaryan's criminal conviction in Russia does not preclude him from being held civilly liable for damages. As such, the conviction does not prevent Mr. Smagin from recovering the damages awarded in the London Arbitration and confirmed by the Judgment.

2

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

structured his holdings to hinder Mr. Smagin's path to recovery and retain the ill-gotten gains of his criminal fraud.

When filing this action, Mr. Smagin feared that Mr. Yegiazaryan would hide his assets, and in particular the proceeds of a large settlement Mr. Yegiazaryan received (the "Kerimov Settlement"), in a foreign jurisdiction.  ECF 1-1.  The Court agreed then and many times throughout this case.  As the Court has explained, "Mr. Yegiazaryan's record of concealing the true beneficial owner of assets … makes it **likely that, given the opportunity, he will continue to hide the proceeds of this settlement in a way to avoid payment directly to himself in California where the proceeds would be subject to execution on the judgment**."  ECF 90 at 6 (emphasis added).  The Court further concluded that "it is highly likely that [Mr. Yegiazaryan's] assets will immediately be moved to another nominee structure in another jurisdiction unknown to Mr. Smagin and out of the immediate reach of Mr. Smagin and his judgment."  *Id.*  This, the Court recognized, would "force Mr. Smagin to start from scratch and even further delay (or destroy) his right to collect his enforceable judgment."  *Id.*  Mr. Yegiazaryan did exactly what this Court predicted he would do—he hid the proceeds of the Kerimov Settlement in the Alpha Trust in Liechtenstein instead of accepting them in California where he resides.[2]

That sleight of hand is at the center of this Motion.  While Mr. Yegiazaryan on paper put the $188 million proceeds of the Kerimov Settlement into the Alpha Trust, in actuality that money is and at all times has been squarely within his control.  The Kerimov Settlement proceeds were paid to Mr. Yegiazaryan directly into a client trust account at Gibson Dunn.  At Mr. Yegiazaryan's instruction, Gibson Dunn kept $3

---

[2] Of course, Mr. Yegiazaryan did not tell this Court or Mr. Smagin about the receipt of these funds or the establishment of the Alpha Trust.  Mr. Smagin learned about this only through intervening in Mr. Yegiazaryan's divorce case and unsealing a document improperly filed under seal that confirmed the funding of the Alpha Trust with community property. *See*  Kennedy Decl. ¶¶ 4, 14 and Exs. 1, 7, 15.

3

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

million to pay for Mr. Yegiazaryan's past and future legal expenses, and sent the rest to Liechtenstein.  More than $180 million remains there today.

Through discovery, Mr. Smagin has obtained new evidence from Mr. Yegiazaryan, including numerous records not previously available to him.  These records establish that Mr. Yegiazaryan has *actual* control over the Alpha Trust and confirm the Court's suspicion that the Trust was nothing more than a vehicle for Mr. Yegiazaryan to conceal the Kerimov Settlement funds and avoid paying his debts.

**B.**     **Mr. Yegiazaryan Structured the Alpha Trust to Give Himself Control Over the Assets**

On or about May 27, 2015, less than a week after executing the Kerimov Settlement deed, Mr. Yegiazaryan created the Alpha Trust in Liechtenstein.  Factual Stipulation in Support of Petitioner's Motion for Turnover Order ("Factual Stipulation") ¶ 1; EFC 186-10 at ¶ 1.   In forming the trust, Mr. Yegiazaryan named CTX Treuhand ("CTX") as Trustees, and himself as the grantor, sole beneficiary, and "Protector" of the Trust.  Factual Stipulation ¶ 5, at 10.7.  By appointing himself as "Protector" of the Trust, Mr. Yegiazaryan granted himself the unrestricted authority to remove any Trustee "at any time and without giving any reason," as well as the unrestricted authority to name new Trustees.  *Id.*

Further fortifying Mr. Yegiazaryan's control over the Trust, on June 3, 2015—just a week after being appointed Trustees to the Alpha Trust—the directors of CTX appointed Mr. Yegiazaryan to be their "Investment Advisor." *See*  Kennedy Decl. ¶ 4, Ex. 5; ECF 186-7.  In this role, Mr. Yegiazaryan directed the Trustees on how the Alpha Trust assets were to be managed and invested. *See e.g.*  Kennedy Decl. ¶¶ 8-10, Exs. 9-11.

On June 4, 2015, after assuming the roles of grantor, sole beneficiary, "Protector," and "Investment Advisor" to the Alpha Trust, Mr. Yegiazaryan directed his attorney, Cyrus Benson of Gibson Dunn, to transfer the Kerimov Settlement funds

4

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

(minus $3 million legal fees) into the Alpha Trust.  *See* Kennedy Decl. ¶ 4(d), Ex. 4. As instructed, Gibson Dunn transferred over $188 million to Liechtenstein, while keeping $3 million on retainer to pay past and future fees incurred in Mr. Yegiazaryan's efforts to avoid paying Mr. Smagin.  *See* Kennedy Decl. ¶ 4(c), Ex. 3; ECF 186-5.

On July 3, 2015, after creating the Trust, Mr. Yegiazaryan executed a Letter of Wishes, instructing the Trustees to "refer to [him] when making any decisions in relation to the trust property and the performance of [their] duties relating thereto." *See* Kennedy Decl. ¶ 11, Ex. 12.   The Trustees were also directed to refer to Mr. Yegiazaryan "when considering making any person or class of persons a beneficiary of the Trust and appointment of any assets out of the Trust Fund."  *Id.*

Mr. Yegiazaryan's role as the "Protector" effectively authorized him to terminate any Trustee who failed to submit to his wishes.  Not surprisingly, the CTX Trustees complied, assuring Mr. Yegiazaryan: "As it is written now you are the first beneficiary of the trust. That means you have access to the trust funds during your lifetime.  If you have a creditor and you want to pay you can ask as (sic) for a distribution to you to pay the creditor.  There is no need to mention them in the letter of wishes."  *See* Kennedy Decl. ¶ 11, Ex. 12.

## C.    **Mr. Yegiazaryan Exercised Actual Control Over the Trust**

Documents produced in discovery show that from the outset Mr. Yegiazaryan controlled the Trustees, the Trust assets, and all distributions.   Just weeks after creating the Alpha Trust, the Trustees implemented a resolution that required all transfers from the Trust to be approved and signed by Mr. Yegiazaryan.  *See* Kennedy Decl. ¶ 13, Ex. 14.  Mr. Yegiazaryan's records further show that he exerted his control over the Trustees, and directed numerous transfers out of the Alpha Trust for millions of dollars.   Those were purportedly to pay creditors—but not Mr. Smagin.  For example:

5

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

- On June 19, 2015, Mr. Yegiazaryan directed one of the Trustees to transfer $3 million and €3 million of Trust assets to attorneys in Cyprus representing interests of Mr. Yegiazaryan, others in his family, or companies associated with them.  Factual Stipulation ¶ 8.

- On June 29, 2015, as part of settlement discussions in his divorce proceedings, Mr. Yegiazaryan committed tens of millions of dollars of the Trust assets to pay his creditors.  Notably, Mr. Yegiazaryan's attorney even conceded that "depending on the outcome of the Smagin challenge, any unfavorable financial award will have to be paid out of the Kerimov Settlement funds as well."  Factual Stipulation ¶ 13.

- On July 28, 2015, Mr. Yegiazaryan executed instructions to the Trustee to transfer $3 million to his wife, Natalia Tsagolova, and directed that "[n]o further disbursements are to be made except on the joint written instruction of [Mr. Yegiazaryan] and [his wife]."  *See* Kennedy Decl. ¶ 14, Ex. 15 at p. 15.

- On July 29, 2015, Mr. Yegiazaryan instructed an additional wire transfer, and is told it "will be better if the two wire instructions for Vitaly are coming from the directors of Savannah."  *See* Kennedy Decl. ¶ 15, Ex. 16.

- On August 17, 2015, Mr. Yegiazaryan instructed Mr. Wilhelm "to do everything and anything possible to transfer the sum of USD $3,000,000 to [his] wife Natalia Tsagalova."  *See* Kennedy Decl. ¶ 14, Ex. 15 at p. 13.

- On August 11, 2016, at Mr. Yegiazaryan's behest, the Trustees transferred $1 million to the Liechtenstein law firm of William & Buchel for "reserves for legal action."  Factual Stipulation ¶ 22.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

6

These transfer of Trust assets, and numerous others, were directed and approved by Mr. Yegiazaryan.  *See, e.g.,* Factual Stipulation ¶¶ 7-22.  They were specifically used to pay his creditors, and they leave no doubt that he exercised actual control of the Alpha Trust.  This alone is enough to grant a turnover order.

**D.     This Court Previously Recognized Mr. Yegiazaryan's Control Over the Trust Based On the Terms of The Trust Alone**

On September 20, 2017, this Court issued a turnover order based on the reasonable and—as now confirmed by the evidence—correct conclusion that Mr. Yegiazaryan created the Alpha Trust to hide his assets, and made certain he retained control over those assets.  *See* ECF 193 ("Prior Turnover Order") at p. 1.  The Court unambiguously held that "[t]he assets of the Alpha Trust remain within Mr. Yegiazaryan's reach.  Mr. Yegiazaryan has retained control over the trust and may appoint and dismiss trustees at will and even appoint himself as a trustee." *Id*. at 1. Essentially, because the Alpha Trust may be disregarded and liquidated by a stroke of Mr. Yegiazaryan's pen, its assets are squarely within Mr. Yegiazaryan's control. *Id*. The Court exercised its authority and personal jurisdiction over Mr. Yegiazaryan to order Mr. Yegiazaryan to "immediately take all steps necessary to effectuate the turnover and transfer of assets from the Alpha Trust" to Mr. Smagin as a judgment creditor. *Id*. at 3.

**E.     The Ninth Circuit Reversed the Turnover Order Because It Decided to Wait for an Order from the Liechtenstein Supreme Court**

Mr. Yegiazaryan appealed the turnover order, and on May 18, 2018[3], the Ninth Circuit vacated the turnover order as "premature" based on principles of international comity.  *See* Kennedy Decl. ¶ 17, Ex. 18, Amended Memorandum of the Ninth Circuit

---

[3] On July 31, 2018, the Ninth Circuit issued an Amended Memorandum to correct certain clerical mistakes in the prior opinion.  The substance of the opinion was unchanged.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

Court of Appeal ("Am. Memo.") at p. 9[4]; *see also* ECF 211. The appeals court acknowledged that Mr. Yegiazaryan is subject to this Court's personal jurisdiction, and that he performs multiple functions "distinct from his interest as Beneficiary" that suggest his control over the Trust. Am. Memo. at 10. However, because the issue of control was also pending before the Supreme Court of Liechtenstein, the Ninth Circuit concluded that international and adjudicatory comity favored allowing the Liechtenstein court to rule first on the issue of whether Mr. Yegiazaryan had control. Thus, "[o]ut of respect for the Liechtenstein Court of Justice's jurisdiction over the Alpha Trust in this case, and in consideration of the principles of legal pragmatism and efficiency embodied in international comity," the Ninth Circuit vacated the turnover order, while affirming the post-judgment asset freeze previously entered by this Court. Am. Memo. at 11.

## F.   The Liechtenstein Supreme Court Issued its Ruling

On September 7, 2018, the Liechtenstein Supreme Court rendered a decision, reinstating the lower court's holding that Mr. Yegiazaryan in fact controls the Alpha Trust. Kennedy Decl. ¶ 16, Ex. 17, Judgment of the Liechtenstein Supreme Court. Specifically, Mr. Yegiazaryan through his combined rights as grantor, beneficiary, and "Protector" allowed him the to control the Trustee's actions, giving him unrestricted access to the trust assets:

> [Mr. Smagin] has presented and substantiated that [Mr. Yegiazaryan] directly determines the trustee of the ALPHA TRUST via the position of protector and, can even act as trustee himself, and **with this direct control over the trustee and his requirement for consent to all essential actions of the trustee, [Mr. Yegiazaryan] (at least) has indirect unrestricted access to the administration and use of the trust assets**. In this way,

---

[4] The Ninth Circuit issued its Memorandum of Disposition on May 18, 2018, but subsequently amended the memorandum on July 31, 2018. *See* Kennedy Decl. ¶ 17, Ex. 18. However, it appears that on August 8, 2018, this Court entered the Ninth Circuit's original Memorandum as mandate of the court rather than the July 31, 2018 Amended Memorandum. *See* ECF 211, 205. Notwithstanding, the difference between the original and amended versions of the disposition do not impact the analysis in this Motion for Turnover Order.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

according to his discretion, he can appoint the beneficiaries, change the provisions of the trust at any time and terminate the trust at any time and thus dispose of his rights as protector (indirectly) via the trust and his assets as via a bank account.

*Id.*, Judgment of the Liechtenstein Supreme Court at ¶ 4.8 (emphasis added).   The Liechtenstein Supreme Court's order is final, and only subject to limited appeal for constitutional issues from the Constitutional Court.

### III. ARGUMENT AND AUTHORITIES

#### A.   The Change in Circumstances Makes the Rationale Underlying the Ninth Circuit's Order Inapplicable Here

Now that the Liechtenstein Supreme Court has issued its final decision and Mr. Smagin has evidence of actual control over the Trust, there is no question that a turnover order from this Court is both appropriate and necessary.   Indeed, the only reason the Ninth Circuit vacated the Prior Turnover Order last year was on the basis that it was premature—a decision that was made out of deference to the Liechtenstein Supreme Court.   Now that the Liechtenstein court has delivered its final ruling on this issue, the principles of international and adjudicatory comity that rendered the Prior Turnover Order premature are no longer an issue.   And, just as the Ninth Circuit predicted, the Liechtenstein court's ruling resolved a key issue in this case: that is, the court determined that Mr. Yegiazaryan controls the Alpha Trust.   Thus, not only is a turnover order from this Court now appropriate, but the Liechtenstein court's findings foreclose any further argument by Mr. Yegiazaryan that he lacks control over the Alpha Trust.[5]

In addition to this change in the procedural posture of the Liechtenstein case, new evidence proves that Mr. Yegiazaryan controls the Alpha Trust.   Indeed, Mr. Yegiazaryan's own documents confirm that time and again he has directed the Trustees to distribute assets for his personal use, including to pay his creditors, his

---

[5] Additionally, the Russian criminal courts have now convicted Mr. Yegiazaryan of criminally defrauding Mr. Smagin—a fact that was not before the Ninth Circuit when it rendered its decision.  *See* Kennedy Decl. ¶ 7, Ex. 8.

9

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

attorneys, and his relatives.  *See* Factual Stipulation ¶¶ 7-22.  The Trustees have repeatedly complied and paid several million dollars from Trust funds to satisfy Mr. Yegiazaryan's (actual or imagined) debts.

## B.  California Law Allows This Court To Order the Turnover Of Assets Controlled by Mr. Yegiazaryan

California law unambiguously gives courts the power to order the turnover of assets within a judgment debtor's control.  CAL. CODE CIV. PRO. §§ 708.205(a) ("[T]he court may order the judgment debtor's interest in the property in the possession *or under the control* of the judgment debtor… to be applied toward the satisfaction of the money judgment…." Emphasis added.).  A judgment creditor seeking such a turnover order need only show that the judgment debtor is within the court's jurisdiction and that there is a need for the order.  *See* CAL. CODE CIV. PRO. §§ 708.205(a), § 699.040(b); *UMG Recordings, Inc. v. BCD Music Grp., Inc.*, 2009 U.S. Dist. LEXIS 97107, at *10 (C.D. Cal. July 9, 2009).

### 1.  Mr. Yegiazaryan Controls the Trust and Its Assets

#### a.  Mr. Yegiazaryan Has Asserted Actual Control over the Trust Assets

At the time of the Prior Turnover Order, this Court did not have the benefit of Mr. Yegiazaryan's internal records relating to the administration of the Trust.  Now, through discovery in this litigation, Mr. Smagin has been able to obtain documents that conclusively prove Mr. Yegiazaryan's actual control over the Trust assets.

These documents show that Mr. Yegiazaryan never relinquished control of the Kerimov Settlement funds when he moved the funds into the Alpha Trust.  After appointing himself "Protector" of the Trust, Mr. Yegiazaryan retained the power to (and did in fact) access as much of the Trust assets as he wanted, whenever he wanted—until Mr. Smagin had them frozen.  Indeed, less than one month after creating the Alpha Trust and funding it with the Kerimov Settlement, Mr. Yegiazaryan

10

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

1    was already ordering the Trustees to distribute millions of dollars to pay his personal

2    obligations.  Factual Stipulation ¶ 8.  The Trustees complied.  Those actions continued

3    over the next several month.   They stopped only when Mr. Yegiazaryan obtained

4    freezes over the Trust from this Court and the court in Liechtenstein.

5           Mr. Yegiazaryan even acknowledged his full control over the Trust assets

6    during his settlement negotiations in his divorce proceedings.    During those

7    negotiations, Mr. Yegiazaryan offered to pay tens of millions of dollars of community

8    debt (i.e., debt to be paid from community property) using the assets of the Alpha

9    Trust.  Factual Stipulation ¶ 13.  Indeed, he even earmarked funds from the Trust for

10   Mr. Smagin in the event he is finally required to pay the Judgment.  *Id.*

11          Furthermore, the documents show that Mr. Yegiazaryan has been actively

12   engaged in directing how the Trust assets have been invested.  Documents show that

13   Trustees frequently consult Mr. Yegiazaryan on investment strategy for the Trust

14   assets.    Kennedy Decl. ¶¶ 8-10, Exs. 9-11.    While the Trustees make

15   recommendations, ultimately Mr. Yegiazaryan decides how the Alpha Trust assets are

16   to be managed and invested.

17          Now that Mr. Smagin has documentary evidence that Mr. Yegiazaryan has

18   actual control over the Alpha Trust, there is no need for this Court to infer control

19   based on an interpretation of the Trust documents.  There can be no doubt that Mr.

20   Yegiazaryan controls the Trust assets, and thus a turnover order is appropriate.

21          **b.    The Terms of The Trust Confirm that Mr. Yegiazaryan
               Controls the Trust**

22

23          Yet there is more.  The Trust documents standing alone make clear that Mr.

24   Yegiazaryan had unbridled control over and unfettered access to the Trust and its

25   assets.  This provides an independent basis for a turnover order.  As this Court, the

26   Liechtenstein trial court, and the Liechtenstein Supreme Court have all observed, the

27   Trust documents grant Mr. Yegiazaryan the sole right to appoint or dismiss the

28

11

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

1  Trustees of the Alpha Trust.  This effectively gives him coercive power over the

2  Trustee's administration of the Trust and its assets.  Factual Stipulation ¶ 2;  Kennedy

3  Decl. ¶ 16, Ex. 17, Judgment of the Liechtenstein Supreme Court at ¶ 7.4.

4  While the Liechtenstein courts have already determined the Trust documents

5  grant Mr. Yegiazaryan control over the Trust, this Court also has the authority to reach

6  that same conclusion independent of the rulings of those courts in Liechtenstein.  The

7  Supreme Court recently explained that district courts have broad discretion determine

8  questions of foreign law just as they would domestic law, and that their

9  determinations are to be treated as rulings on questions of law.  *See Animal Sci. Prods.*

10  *v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1869-70 (2018), *interpreting* Fed.

11  Rule. Civ. Proc. 44.1.  Indeed, district courts have authority to consider **any** relevant

12  materials and resources, or to conduct their own independent research in conducting

13  independent analyses of foreign law.  *Id.*; *see also*, *G & G Prods. LLC v. Rusic*, 902

14  F.3d 940, 948 (9th Cir. 2018) (holding district court was permitted to determine

15  accrual under Italian law).  As such, this Court is well within its discretion to

16  determine—as it previously did—that "[t]he record establishes that Mr. Yegiazaryan

17  retains control over the assets in the Alpha Trust through his ability to dismiss the

18  trustees and replace them with a new trustee, including himself."  *See* Prior Turnover

19  Order, p. 1.

20  **C.**   **This Court's Jurisdiction Over Mr. Yegiazaryan Allows It To Compel Him to Transfer the Funds in the Alpha Trust that are Under His Control**

21

22   **1.**   **Jurisdiction Over Mr. Yegiazaryan Is Sufficient To Reach Assets He Controls**

23  Turnover orders arise from the court's jurisdiction over the judgment debtor,

24  not over the property itself, and can therefore reach a judgment debtor's property even

25  if it is located outside of California.  *See UMG Recordings*, 2009 U.S. Dist. LEXIS

26  97017, at *11 (granting turnover order based on writ of execution and noting that the

27  order permissibly covered out-of-state property based on personal jurisdiction over the

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

judgment debtor); *Grewal v. Choudhury*, 2009 U.S. Dist. LEXIS 19072 (N.D. Cal. Feb. 20, 2009) (rejecting challenge to turnover order issued after debtor exam that applied to, inter alia, money held in escrow accounts by law firms representing defendant—including funds held in Chicago—and all settlement proceeds of a pending dispute).   This is especially true after a debtor exam when property is ordered transferred to the creditor, not to the levying officer. *See* CAL. CIV. PROC. CODE § 708.205(a); *Palacio Del Mar Homeowners Ass'n, Inc. v. McMahon*, 174 Cal. App. 4th 1386, 1390 (2009).

    Here, there is no dispute that Mr. Yegiazaryan resides in Beverly Hills and is subject to this Court's jurisdiction.   As such, this Court has the jurisdictional authority to issue a turnover order for the Alpha Trust assets in Mr. Yegiazaryan's control.

### 2.    Mr. Yegiazaryan's Nonpayment Establishes A Need For The Turnover Order

    To demonstrate need for a turnover order, a judgment debtor need only establish a judgment debtor's refusal to pay a judgment.  *UMG Recordings*, 2009 U.S. Dist. LEXIS 97107, at *10.   As this Court previously observed, Mr. Yegiazaryan has not paid the Judgment.  ECF 193 at p. 3.   Indeed, he fought hard to retain his criminal gains by persistently and staunchly refused to pay for over four years, deliberately concealed assets overseas, and engaged in delay tactics to prevent Mr. Smagin from obtaining his due Judgment.

    District Courts have regularly ordered judgment debtors to transfer money purposefully placed in foreign trusts in an effort to avoid payment of judgments and have used their contempt powers to enforce such orders. *See, e.g., FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1243-44 (9th Cir. 1999) (affirming civil contempt order based on failure to repatriate assets from foreign trust); *Lawrence v. Goldberg (In re Lawrence)*, 279 F.3d 1294 (11th Cir. 2002) (affirming contempt ruling based on inability to repatriate funds from foreign trust because debtor "created this Trust in an

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

obvious attempt to shelter his funds from an expected adverse arbitration award"); *SEC v. Bilzerian*, 131 F. Supp. 2d 10 (D.D.C. 2001) (rejecting impossibility defense and affirming contempt order based on failure to produce financial documents related to foreign trust); *Eulich v. United States*, 2006 U.S. Dist. LEXIS 2227 (N.D. Tex. Jan. 23, 2006) (same).

Indeed, the Ninth Circuit has soundly criticized the use of foreign trusts to deceive creditors as Mr. Yegiazaryan has done here and concluded that the appropriate recourse is an order requiring the debtor to repatriate the assets.  In *Affordable Media,* the court explained that these "[s]o-called asset protection trusts are designed to shield wealth by moving it to a foreign jurisdiction that does not recognize U.S. judgments or other legal processes, such as asset freezes." *Federal Trade Commission v. Affordable Media, LLC*, 179 F.3d 1228, 1240 (9th Cir. 1999) (citing Debra Baker, *Island Castaway,* ABA JOURNAL, October 1998, at 55). The court further explained that "[b]ecause these asset protection trusts move the trust assets beyond the jurisdiction of domestic courts, often times all that remains within the jurisdiction is the physical person of the defendant.  Because the physical person of the defendant remains subject to domestic courts' jurisdiction, courts could normally utilize their contempt powers to force a defendant to return the assets to their jurisdictions." *Id*. at 1240.  This is precisely the situation here.  The Court should exercise its power over Mr. Yegiazaryan to order him to turn over the assets of the Alpha Trust, which he controls, to satisfy the Judgment.

### 3.    The Turnover Order Does Not Seek Mr. Yegiazaryan's Interest as a Beneficiary in the Trust, but Rather the Assets Themselves

In attempt to confuse the issues on appeal, Mr. Yegiazaryan argued—and will likely argue here again—that the Alpha Trust is shielded from a turnover order because beneficial interests in a trust must be pursued under a separate mechanism (*i.e.*, California Code of Civil Procedure § 709.010) to reach a judgment debtor's

14

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

beneficial interest in a trust.  This argument is inapposite because Mr. Smagin is not seeking Mr. Yegiazaryan's intangible interest as a beneficiary; he is seeking the tangible assets of the Alpha Trust, which are held by the Trustees whom Mr. Yegiazaryan controls.

In vacating the Prior Turnover Order as premature, the Ninth Circuit Court of Appeals observed that whether Mr. Yegiazaryan controlled the Alpha Trust—as opposed to being a mere beneficiary—was central to determining whether a turnover order was appropriate.  Am. Memo. at 8.  The Court of Appeals deferred this question of control to the Liechtenstein Supreme Court, which has now confirmed that while Mr. Yegiazaryan wears several separate and distinct hats  with regard to the Alpha Trust (i.e., grantor, beneficiary, "Protector," and "Investment Advisor"), he has unrestricted control over the Trustee and the Trust assets "via the position of protector."  Kennedy Decl. ¶ 16, Ex. 17, Judgment of the Liechtenstein Supreme Court at ¶ 4.8.

Thus, a turnover order is authorized under black letter law.  CAL. CODE CIV. PRO. § 708.205(a) ("[T]he court may order the judgment debtor's interest in the property in the possession or under the control of the judgment debtor … to be applied toward the satisfaction of the money judgment if the property is not exempt from enforcement of a money judgment.").

## IV.   CONCLUSION

For the foregoing reasons, Mr. Smagin respectfully requests that the Court grant this Motion and enter an order directing Mr. Yegiazaryan to turn over assets from the Alpha Trust sufficient to satisfy the Judgment and to take any and all actions necessary to do so, including but not limited to instructions to or dismissal and replacement of the trustees.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

15

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF PETITIONER'S MOTION FOR TURNOVER ORDER

1

Dated: March 4, 2019

**BAKER & McKENZIE LLP**
Nicholas O. Kennedy
David R. Callaway
Anne M. Kelts


By: /s/ Nicholas O. Kennedy
        Nicholas O. Kennedy
Attorneys for Petitioner
VITALY IVANOVICH SMAGIN

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000