Nicholas O. Kennedy (State Bar No. 280504)
nicholas.kennedy@bakermckenzie.com
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, TX  75201
Telephone:  214 978 3000
Facsimile:   214 978 3099

Barry J. Thompson (State Bar No. 150349)
barry.thompson@bakermckenzie.com
**BAKER & McKENZIE LLP**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067
Telephone:  310 201 4728
Facsimile:   310 201 4721

Attorneys for Judgment Creditor
VITALY IVANOVICH SMAGIN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VITALY IVANOVICH SMAGIN, | **Case No.  14-cv-09764-R (PLAx)** |
| Judgment Creditor, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JUDGMENT CREDITOR'S MOTION TO CLARIFY POST-JUDGMENT INJUNCTION** |
| v. | |
| ASHOT YEGIAZARYAN, a.k.a. ASHOT EGIAZARYAN, | |
| Judgment Debtor. | Date:       March 30, 2020 |
| | Time:       9:00 a.m. |
| | Courtroom: 850 - 8th Floor |
| | The Honorable R. Gary Klausner |
| | Roybal Federal Building and U.S. Courthouse |
| | 255 East Temple Street |
| | Los Angeles, CA 90012 |

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF JUDGMENT CREDITOR'S MOTION TO CLARIFY POST-JUDGMENT INJUNCTION

# TABLE OF CONTENTS

I. INTRODUCTION....................................................................................1

II. FACTUAL BACKGROUND ..................................................................3

    A. Judgment Debtor. Yegiazaryan Defrauds Judgment Creditor Smagin, Leading to An $84 Million Arbitration Award and A Criminal Conviction of Judgment Debtor Yegiazaryan..................................3

    B. Judgment Debtor Yegiazaryan's Assets Are Frozen, But He Diverts Money To Liechtenstein To Conceal It From Judgment Creditor Smagin..........................................................................................4

    C. Judgment Debtor Yegiazaryan Sets Up and Controls a Liechtenstein Trust Where He Hides the Balance of the Kerimov Payment ......................5

    D. Judgment Debtor Yegiazaryan Complicates His Asset Holding By Using A Nevis Company as Owner of the Monaco Bank Account..............7

    E. This Court Issues A Worldwide Injunction Precluding Efforts To Hinder Enforcement or Collection by Judgment Debtor Yegiazaryan or His Agents.........................................................................................8

    F. The Ninth Circuit Orders the Court to Wait On A Ruling In Liechtenstein Which Goes Against Judgment Debtor Yegiazaryan ......................9

    G. This Court Again Waits For a Liechtenstein Ruling that Is Eventually Entered In Judgment Creditor Smagin's Favor...........................10

    H. Judgment Debtor Yegiazaryan Opens A New Front Of Delay In Nevis In Response To The Loss In Liechtenstein ...................................11

    I. Suren Yegiazaryan Has Long Been Used To Conceal Judgment Debtor Yegiazaryan's Asset Ownership And Actions.............................13

III. ARGUMENT AND AUTHORITIES ..................................................17

    A. This Court May Clarify Or Modify The Post-Judgment Injunction ...........17

    B. Judgment Debtor Yegiazaryan Has Violated The Post-Judgment Injunction With The Actions In Nevis And Must Be Stopped ...................17

IV. CONCLUSION ...................................................................................20

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Coachella Music Festival, LLC v. Simms*,
 2017 U.S. Dist. LEXIS 222296 (C.D. Cal. 2017) ...................................................17

*Matter of Hendrix*,
 986 F.2d 195 (7th Cir. 1993) ...................................................17

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*,
 774 F.3d 935 (9th Cir. 2014) ...................................................18

*N.A. Sales Co. v. Chapman Industries Corp.*,
 736 F.2d 854 (2d Cir. 1984) ...................................................17

*Regal Knitwear Co. v. N.L.R.B.*,
 324 U.S. 9, 65 S. Ct. 478 (1945) ...................................................17, 18, 19

*Robinson v. Delicious Vinyl Records, Inc.*,
 2013 U.S. Dist. LEXIS 137940 (C.D. Cal. 2013) ...................................................17

*TMX Funding, Inc. v. Impero Techs., Inc.*,
 2010 U.S. Dist. LEXIS 57761 (N.D. Cal. May 21, 2010) ...................................................17

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
 768 F.2d 1001 (9th Cir. 1985) ...................................................17

**Statutes**

Cal. Code. Civ. Proc. § 337 ...................................................16

**Other Authorities**

Federal Rule of Civil Procedure 65(d) ...................................................18

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

ii

# I.   **INTRODUCTION**

It is fair for a litigant to vigorously defend a claim brought against him/her by forcing the opposing party to prove his/her case, and, if necessary, appealing a trial court's judgment to the highest court.  But once the litigant has lost, judgment has been entered, and all appeals have been exhausted, the litigant must accept his/her fate and pay up.  When litigants refuse to do this, the courts must use their powers to help the judgment creditor collect his/her judgment.  This last point is the reason for this motion.

Judgment Debtor Ashot Yegiazaryan was found liable by a three-arbitrator Tribunal of the London Court of International Arbitration for defrauding Judgment Creditor Vitaly Smagin by stealing Judgment Creditor Smagin's interest in a real estate investment called "EuroPark".  Judgment Debtor Yegiazaryan was also found guilty of fraud in the criminal Court of Russia and sentenced to seven years in prison.  Judgment Creditor Yegiazaryan's $84 million arbitration award ultimately became a $93 million judgment from this Court.  Judgment Debtor Yegiazaryan fought to prevent the award from being confirmed, but his challenges were rejected years ago in England, Lichtenstein and California.  Judgment Debtor Yegiazaryan still has not paid.

Judgment Debtor Yegiazaryan has the funds.  But, he will not accept his fate and pay up.  Instead, he has used his long history of hiding assets in offshore companies in other people's names with multiple levels of complexity to avoid collection efforts.  Convinced by this history, this Court previously issued a worldwide injunction preventing Judgment Debtor Yegiazaryan and his agents from further transferring or concealing assets or taking any other actions to hinder or delay Judgment Creditor Smagin's ability to enforce this Court's judgment.  But Judgment Debtor Yegiazaryan has disregarded this order by contrived actions recently began on the Caribbean Island of Nevis to further delay enforcement of this Court's nearly four year old judgment.

Judgment Debtor Yegiazaryan has at least $180 million frozen in a trust he formed during this action to prevent Judgment Creditor Smagin from reaching it (the Alpha Trust).  The Alpha Trust exists entirely for Judgment Debtor Yegiazaryan's

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

benefit, and the funds are entirely within his control.  The Alpha Trust was formed in Lichtenstein; the funds reside in a bank in Monaco; and the bank account holder is a Nevis company called "Savannah Advisors" owned by the Alpha Trust.  The structure is extremely complicated – just like the complicated webs Judgment Debtor Yegiazaryan created to defraud Judgment Creditor Smagin in the criminal acts that led to the arbitration award in the first place.  But the common thread is that Judgment Debtor Yegiazaryan has control of the Alpha Trust and its funds at every level.

Aware that the Lichtenstein proceedings filed by Judgment Creditor Smagin to reach this trust ran their course in October 2019 with a win for Judgment Creditor Smagin on appeal, Judgment Debtor Yegiazaryan knows that the Alpha Trust funds may soon finally be reached by Judgment Creditor Smagin.  So, one week after the Lichtenstein ruling, Judgment Debtor Yegiazaryan hatched a plan with his cousin, Suren Yegiazaryan to try to raid the funds through a lawsuit he recently filed in Nevis, an action which he concealed from Judgment Creditor Smagin and this Court.

In the Nevis Court, Suren Yegiazaryan claims that his cousin, Judgment Debtor Yegiazaryan, owes him all of the funds in the Alpha Trust based on a "personal loan" allegedly documented in handwriting that, if believed, amounts to a fraction of the funds in the Alpha Trust.  As the Court will see from the evidence, Suren Yegiazaryan is a frequent "front" for companies and assets owned by Judgment Debtor Yegiazaryan.  In fact, the evidence is that Judgment Debtor Yegiazaryan has long funneled money to Suren Yegiazaryan so that Suren Yegiazaryan can hold it for his benefit and give it back to Judgment Debtor Yegiazaryan while concealing its true source.  Aware that he must keep up the charade, Judgment Debtor Yegiazaryan has filed a token defense in Nevis while making admissions along the way that could arguably pave the way for Suren Yegiazaryan to prevail in Nevis and seize the trust assets.  At a minimum, litigation in Nevis is highly likely to drag out this saga and delay collection another year or more.

What is clear though is that Suren Yegiazaryan's action in Nevis is a coordinated effort with Judgment Debtor Yegiazaryan to prevent or further delay Judgment Creditor

2

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF JUDGMENT CREDITOR'S MOTION TO CLARIFY POST-JUDGMENT INJUNCTION

Smagin's ability to enforce his judgment.  It is therefore an intentional violation this Court's prior restraining order compelling that Judgment Debtor Yegiazaryan and his nominees do nothing worldwide that interferes with Judgment Creditor Smagin's right to enforce this Court's judgment.

This Court and Judgment Creditor Smagin have patiently waited for the Liechtenstein courts for years.  Judgment Creditor Smagin should not be forced to now start a new fight in Nevis to collect his money.  Rather, this Court should, respectfully, use its power over Judgment Debtor Yegiazaryan—who lives but a few miles away in Beverly Hills—to enforce this Court's Judgment and stop the game of international whack-a-mole Judgment Debtor Yegiazaryan seeks to force Judgment Creditor Smagin to play.

Judgment Creditor Smagin thus requests that the Court clarify its prior post-judgment injunction to confirm that Judgment Debtor Yegiazaryan, Suren Yegiazaryan and any others acting on behalf of Judgment Debtor Yegiazaryan (Artem Yegiazaryan) shall cease any action in Nevis seeking access to the assets of the Alpha Trust.

## II. <u>FACTUAL BACKGROUND</u>

### A.   <u>Judgment Debtor. Yegiazaryan Defrauds Judgment Creditor Smagin, Leading to An $84 Million Arbitration Award and A Criminal Conviction of Judgment Debtor Yegiazaryan</u>

This saga began a decade ago when Judgment Debtor Yegiazaryan stole Judgment Creditor Smagin's shares in a joint investment through a series of fraudulent transactions using offshore companies.  Russian Appeal Determination, Declaration of Nicholas O. Kennedy in Support of Motion to Clarify Post Judgment Injunction ("Kennedy Decl."), Ex. 1.  More than five years ago, Judgment Creditor Smagin won an LCIA arbitration against Judgment Debtor Yegiazaryan and was awarded the $84 million value of the shares stolen from him.  London Award, Kennedy Decl., Ex. 4 at 1, 49-50.  Judgment Debtor Yegiazaryan refused to pay, so on December 22, 2014, Judgment Creditor Smagin filed this action to confirm and enforce the London Award.  Petition to Confirm Foreign Arbitral Award, Kennedy Decl., Ex. 5.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF JUDGMENT CREDITOR'S MOTION TO CLARIFY POST-JUDGMENT INJUNCTION

When Judgment Debtor Yegiazaryan was prosecuted in Russia for his crime, he fled to California rather than stand trial, but Judgment Debtor Yegiazaryan was convicted of fraud *in absentia* on May 31, 2018, and sentenced to seven years in prison. Russian Criminal Court Verdict, Kennedy Decl., Ex. 2. Since then, Judgment Debtor Yegiazaryan has lived in luxury in Beverly Hills, despite being a fugitive from Russian justice. Russian Ministry for the Interior Letter, Kennedy Decl., Ex. 3. Why? Because he has hidden assets worth at least $180 million.

**B.** **Judgment Debtor Yegiazaryan's Assets Are Frozen, But He Diverts Money To Liechtenstein To Conceal It From Judgment Creditor Smagin**

Judgment Debtor Yegiazaryan has a long history of using offshore asset transfers and nominee shareholders to hide his assets. For years, he has done this using his cousin, Suren Yegiazaryan, and his brother, Artem Yegiazaryan, as nominees. Judgment Creditor Smagin was aware of this practice, and he was particularly concerned that Judgment Debtor Yegiazaryan would hide a payment he was to receive in early 2015 from an unrelated arbitration (the "Kerimov Payment"). Judgment Creditor Smagin thus asked this Court for help to recover his arbitration award (and forthcoming judgment). The Court agreed, and issued an *Ex Parte* Temporary Restraining order on December 23, 2014. Order Granting in Part Plaintiff's Ex Parte Application for Right to Attach Order and Temporary Protective Order ("Temporary Protective Order"), ECF 9 at 3. The terms of that order were explicit:

> Respondent Ashot Yegiazaryan, his agents, and/or any person or entity acting under his direction and control shall not take any action to transfer, assign, conceal, diminish, or dissipate any property located in California--in an amount up to $84,290,064.20--that may be used to satisfy the foreign-arbitral award payable to Vitaly Smagin, including specifically and without limitation the amounts received or to be received by Respondent Yegiazaryan, his agents or any person or entity acting under his direction and control in payment or satisfaction of an arbitration award from Suleyman Kerimov, as well as any shares in Endrino Corporation or any other entity. Temporary Protective Order, ECF 9 at 3.

On February 3, 2015, by agreement of the parties, the TRO was converted to a preliminary injunction on the same terms. Stipulation and Motion for Stay of

4

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

Proceedings and Preliminary Injunction Preventing Transfer or Dissipation of Assets ("Preliminary Injunction"), ECF 23.

In spite of the Preliminary Injunction, on May 26, 2015 Judgment Debtor Yegiazaryan received and hid the $198 million Kerimov Payment.  Pre-Trial Order, Kennedy Decl., Ex. 6 at ¶ 5(i); Kerimov Settlement Agreement, Kennedy Decl., Ex. 7. He did not use the funds to pay Judgment Creditor Smagin, and he did not accept the Payment in California, where he lived and where the Court's enforcement powers could easily reach it.  Instead, he concealed the money precisely as Judgment Creditor Smagin told this Court he would—and precisely as this Court ordered him not to do.  The $198 million Kerimov Payment was paid to Judgment Debtor Yegiazaryan's lawyers, Gibson Dunn, and held in its client Trust Account.  Kennedy Decl., Ex. 6 at ¶ 5(i).  Gibson Dunn was fully aware of Judgment Creditor Smagin's arbitration award and this Court's asset freeze, through its representation of Judgment Debtor Yegiazaryan.  Kennedy Decl., Ex. 4,¶ I.3.   Nevertheless, on June 5, 2015, $188 million of the proceeds from the Kerimov Settlement were transferred from Gibson Dunn's client trust account to a bank account at CMB Bank in Monaco.  June 2015 Email to C. Benson, Kennedy Decl., Ex. 8; June 2015 Emails re Alpha Trust, Kennedy Decl., Ex. 9.   At Judgment Debtor Yegiazaryan's instruction, $3 million was kept by Gibson Dunn to cover legal fees.  Kennedy Decl., Ex. 8.  No payment was made to Judgment Creditor Smagin.

## C. <u>Judgment Debtor Yegiazaryan Sets Up and Controls a Liechtenstein Trust Where He Hides the Balance of the Kerimov Payment</u>

Not content to simply "bank" his money in Monaco, Judgment Debtor Yegiazaryan reverted to his past pattern of creating complex offshore entities and nominee owners to conceal his true ownership and to make the funds difficult to track and hard to attach.  The first level of this deception was a Liechtenstein trust he had formed on May 27, 2015, the "Alpha Trust."  Stipulation Regarding Facts for Turnover Order, Kennedy Decl., Ex. 10 at 1; *See also* Alpha Trust, Kennedy Decl., Ex. 11.  The Kerimov Payment was the sole source of funds to settle the Alpha Trust.  CMB Account

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Statements, Kennedy Decl., Ex. 12 at 585-659.  Judgment Debtor Yegiazaryan was the trust's settlor, beneficiary, investment advisor, and "Protector."  Kennedy Decl., Ex. 10; Alpha Trust Minutes, Kennedy Decl., Ex. 13.  As the Protector, he had unfettered power to dismiss the trustee for any reason at any time and to appoint a new trustee—including even himself.  Kennedy Decl., Ex. 10 at p. 1 at ¶ 2 and p. 16 at ¶ 10.7.  Judgment Debtor Yegiazaryan also had to approve all distributions and other material actions of the Trustee, Liechtenstein company CTX Treuhand.  Trust Amendment, Kennedy Decl., Ex. 14.  On July 1, 2015, the trustees told Judgment Debtor Yegiazaryan "[y]ou are the first beneficiary of the trust.  That means you have access to the trust funds during your lifetime.  If you have a creditor and you want to pay you can ask as (sic) for a distribution to you to pay the creditor.  There is no need to mention them in the letter of wishes."  July 2015 Trustee Email, Kennedy Decl., Ex. 15.

While Judgment Debtor Yegiazaryan arguably had not violated the precise language of this Court's injunction by hiding the Kerimov Payment, he had most certainly disregarded its intent. The Alpha Trust was fully within his control, as demonstrated by the fact that  Judgment Debtor Yegiazaryan instructed the trustees to pay more than $20 million to his creditors—but not a cent to Judgment Creditor Smagin. Savannah Advisors Transaction Report, Kennedy Decl., Ex. 16 at 661.

These payments included:

- $3 million and €3 million to his attorneys in Cyprus Haviaras and Philippou LLC (Kennedy Decl., Ex. 10 at ¶ 8; Haviaras and Philippou Transfer, Kennedy Decl., Ex. 18 at 687);

- $1 million to Liechtenstein lawyers William & Buchel (Kennedy Decl., Ex. 10 at ¶ 18; William & Buchel Transfer, Kennedy Decl., Ex. 14 at 737);

- $5 million to Vitaly Gogokhia, who was found by the Russian criminal court to be an accomplice of Judgment Debtor Yegiazaryan in misappropriating Judgment Creditor Smagin's assets and sentenced to four years in prison  (Gogokhia Transfers, Kennedy Decl., Ex. 19 at 713 & Ex.

6

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF JUDGMENT CREDITOR'S MOTION TO CLARIFY POST-JUDGMENT INJUNCTION

20 at 719; Kennedy Decl., Ex. 2 p. 86; 2nd Witness Statement, Kennedy Decl., Ex. 21 at ¶¶ 2.5.3, 2.6, 3.1; June 2015 Trustee Email, Kennedy Decl., Ex. 15; & July 2015 Transfer Email, Kennedy Decl., Ex. 22);

- $2.5 million to Dmitry Fitisov who was a long-standing nominee for Judgment Debtor Yegiazaryan (Fitisov Transfer, Kennedy Decl., Ex. 23 at 707; Kennedy Decl., Ex. 12 at 585; First Witness Statement, Kennedy Decl., Ex. 24 at ¶¶ 1, 3.28, 4.60-4.64.1, 5.8, 5.14); and

- $5.675 million to another one of Judgment Debtor Yegiazaryan's attorneys Drew Holiner (Kennedy Decl., Ex. 12 at 585; Holiner Transfer, Kennedy Decl., Ex. 25 at 669; and, Kennedy Decl., Ex. 4 at p.1, ¶ I.3).

## D.   Judgment Debtor Yegiazaryan Complicates His Asset Holding By Using A Nevis Company as Owner of the Monaco Bank Account

In addition to forming the Alpha Trust and stashing the $180 million in a Monaco bank, Judgment Debtor Yegiazaryan set up a Nevis-registered company called Savannah Advisors to hold the Monaco bank account into which the Kerimov Payment was transferred.  Kennedy Decl., Ex. 12 at 585.  Savannah Advisors is wholly owned by the Alpha Trust (and thus beneficially owned by Judgment Debtor Yegiazaryan). Savannah Tax Declaration, Kennedy Decl., Ex. 26 at 385-387.  Savannah's directors are the trustees of the Alpha Trust, plus a Panamanian company the trustees control. Savannah Certificate and Minutes, Kennedy Decl., Ex. 27 at 469-471.  Savannah has no assets or operations other than holding the funds from the Kerimov Payment. Kennedy Decl., Ex. 12 at 585-659.  Judgment Debtor Yegiazaryan even has signature authority over the Monaco bank account (in Savannah's name) (Shareholder Resolution, Kennedy Decl., Ex. 28 at 467; Signature Authorization, Kennedy Decl., Ex. 29 at 245), and has paid tens of millions of dollars to his creditors from this bank account (e.g., his lawyers in Lichtenstein and Cyprus, and his accomplice in the fraud against Judgment Creditor Smagin, Vitaly Gogokhia).  Kennedy Decl., Exs. 12, 16-20, 23, 25. The only purpose of Savannah thus appears to be creating another layer Judgment

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Creditor Smagin must pierce to recover his judgment.  As will be discussed below, that is exactly what Judgment Debtor Yegiazaryan is using Savannah for right now -- and why Judgment Creditor Smagin seeks the Court's assistance to stop it.

Judgment Debtor Yegiazaryan never disclosed his receipt of the Kerimov Payment and its transfer to the Alpha Trust and Savannah in Monaco, despite outstanding discovery requests calling for this information.  Interrogatories, Kennedy Decl., Ex. 30 at Nos. 1, 2, 4, 10, 11, 12; Requests for Production, Kennedy Decl., Ex. 31 at Nos. 1, 2, 4, 6, 8, 10, 12, 14, 16, 18.  Rather, Judgment Creditor Smagin learned of these disturbing facts from intervening in Judgment Debtor Yegiazaryan's California divorce case and unsealing an illegally sealed file referencing the Alpha Trust and the asset transfers thereto.  Divorce Stipulation, Kennedy Decl., Ex. 32.  As soon as Judgment Debtor Yegiazaryan's asset concealment was unveiled, the family court froze the Alpha Trust so that Judgment Creditor Smagin's claim could be satisfied from its assets.  February 9, 2016 Intervention Order, Kennedy Decl., Ex. 33.  But, Judgment Debtor Yegiazaryan and his wife then dismissed their divorce case to divest the family court of jurisdiction and dissolve its orders.   Judgment Debtor Yegiazaryan and his wife remain separated.  July Debtor Examination, Kennedy Decl., Ex. 34 at pp. 65-66.

The dissolution of the family law freeze forced Judgment Creditor Smagin to return to this Court to seek urgent relief.  On September 18, 2015, this Court expanded its preliminary injunction from California to worldwide.  Order Granting Plaintiff's Motion for Expanded Preliminary Injunction and Expedited Discovery, ECF 31.  Judgment Creditor Smagin also initiated enforcement proceedings in Liechtenstein; those proceedings are ongoing.

**E.    This Court Issues A Worldwide Injunction Precluding Efforts To Hinder Enforcement or Collection by Judgment Debtor Yegiazaryan or His Agents**

On March 31, 2016, this Court confirmed the London Award and entered a $92,503,652 judgment in favor of Judgment Creditor Smagin.  Judgment, ECF 59.  The Court later granted a Post-Judgment Injunction on the same terms as before:

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Ashot Yegiazaryan, his agents, and/or any person or entity acting under his direction and control shall not take any action to transfer, assign, conceal, diminish, encumber, hypothecate, dissipate or in any way dispose of any proceeds, in an amount up to and including $115,629,565, derived by or held for the benefit of Ashot Yegiazaryan, his agents, nominees, trustees or any person or entity acting under his direction and control, in payment, settlement or satisfaction of an arbitration award obtained in his arbitration with Suleyman Kerimov, without prior order of the Court permitting such a transfer, including specifically the "Kerimov settlement funds" as identified in the Stipulation Re Advance Distribution of Funds executed by Petitioner and Respondent on July 6, 2015 and filed with the Los Angeles Superior Court and any proceeds of or investments made with those funds, including specifically (but not limited to) any funds held by CTX Treuhand AG, Vaduz, Lichtenstein (under Alpha Trust or otherwise, or any other trustee), with Savannah Advisors Inc., c/o Alpenrose Wealth Management (or any other investment manager) and/or in an account at Compagnie Monegasque De Banque or in any other bank or financial institution.[1]  Post-Judgment Injunction, ECF 90 at pp. 7-8.

In the Post-Judgment Injunction, the Court made several striking findings:

> Mr. Yegiazaryan's record of concealing the true beneficial owner of assets … makes it likely that, given the opportunity, he will continue to hide the proceeds of this settlement in a way to avoid payment directly to himself in California where the proceeds would be subject to execution on the judgment…

> [It] is highly likely that [Mr. Yegiazaryan's] assets will immediately be moved to another nominee structure in another jurisdiction unknown to Mr. Smagin and out of the immediate reach of Mr. Smagin and his judgment…

> [This would] force Mr. Smagin to start from scratch and even further delay (or destroy) his right to collect his enforceable judgment.  Post Judgment Injunction, ECF 90 at p. 6.

## F.   The Ninth Circuit Orders the Court to Wait On A Ruling In Liechtenstein Which Goes Against Judgment Debtor Yegiazaryan

On September 20, 2017, Judgment Creditor Smagin obtained a Turnover Order from this Court requiring that Judgment Debtor Yegiazaryan turn over to Judgment Creditor Smagin the assets in the Alpha Trust that are under his control.  Order Granting Petitioners' Motion for Turnover of Respondent's Assets, ECF 193.  In entering the Turnover Order, the Court found:

---

[1] Judgment Debtor Yegiazaryan challenged the Judgment and the Post-Judgment Injunction on appeal.  The Ninth Circuit affirmed both.  *See* Amended Memorandum, Kennedy Decl., Ex. 35.

9

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF JUDGMENT CREDITOR'S MOTION TO CLARIFY POST-JUDGMENT INJUNCTION

There is no dispute that this Court has jurisdiction over Mr. Yegiazaryan. Nor is there any dispute that Mr. Yegiazaryan has not paid the Judgment. The Award was issued nearly three years ago, and the Judgment is over a year old. The assets of the Alpha Trust remain within Mr. Yegiazaryan's reach. Mr. Yegiazaryan has retained control over the trust and may appoint and dismiss trustees at will and even appoint himself as a trustee.

Accordingly, the Court orders that Mr. Yegiazaryan, and his agents and other persons acting under his direction and control, shall immediately take all steps necessary to effectuate the turnover and transfer of assets from the Alpha Trust, in the amount of $93,337,350.30 to the judgment creditor Vitaly Smagin. *Id.* at 1, 3.

Instead of complying, Judgment Debtor Yegiazaryan appealed and the Ninth Circuit held that the Turnover Order was premature, because the District Court should have waited for a forthcoming ruling of the Liechtenstein Supreme Court. *See* Amended Memorandum, Kennedy Decl., Ex. 35 at p. 9.

Judgment Debtor Yegiazaryan's delay tactics worked, but only for a short time. On September 7, 2018, the Liechtenstein Supreme Court ruled in Judgment Creditor Smagin's favor on September 7, 2018. 2018 Liechtenstein Judgment, Kennedy Decl., Ex. 36. Specifically, the Liechtenstein Supreme Court held that Judgment Debtor Yegiazaryan had unrestricted control and access to the assets held by the Alpha Trust:

[Mr. Smagin] has presented and substantiated that [Mr. Yegiazaryan] directly determines the trustee of the ALPHA TRUST via the position of protector and, can even act as trustee himself, and **with this direct control over the trustee and his requirement for consent to all essential actions of the trustee, [Mr. Yegiazaryan] (at least) has indirect unrestricted access to the administration and use of the trust assets**. In this way, according to his discretion, he can appoint the beneficiaries, change the provisions of the trust at any time and terminate the trust at any time and thus dispose of his rights as protector (indirectly) via the trust and his assets as via a bank account. *Id.* at p. 27.

## G. This Court Again Waits For a Liechtenstein Ruling that Is Eventually Entered In Judgment Creditor Smagin's Favor

Judgment Debtor Yegiazaryan again refused to pay Judgment Creditor Smagin. On March 4, 2019, Judgment Creditor Smagin asked a second time for a turnover order directing Judgment Debtor Yegiazaryan to turn over the assets he had hidden in

10

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF JUDGMENT CREDITOR'S MOTION TO CLARIFY POST-JUDGMENT INJUNCTION

Liechtenstein.  Petitioner's Motion for Turnover Order, Kennedy Decl., Ex. 37.  The Court accepted Judgment Debtor Yegiazaryan's claim that it must wait for another appeal in Liechtenstein—a limited appeal to the Constitutional Court.  Order Denying Without Prejudice Petitioner's Motion for Turnover Assets, ECF 224.

On October 29, 2019, the Liechtenstein Constitutional Court rejected Judgment Debtor Yegiazaryan's appeal.  That order, like the one before it, concluded Judgment Debtor Yegiazaryan controlled the assets in the Alpha Trust:

> The Plaintiff's position as a protector of the Alpha Trust included partial rights, such as that the Plaintiff had transferable rights under the trust deed, such as the right to consent as a protector to various rights and actions of the trustee: Termination of the trust by the trustee, to determine the beneficiaries, to delegate all rights of the trustee including its (alleged) discretionary power and to change the provisions of the trust deed. In addition, the Plaintiff had the sole right to appoint or remove the trustees of the Alpha Trust. In addition, the Plaintiff even let the trusts of the Alpha Trust (which he controls) act as asset managers of the trust. However, the Respondent had made sufficient claims that the Plaintiff's total rights could be seized. The individual rights of the universal right would not have to be asserted and certified, if it does happen (as here, for example, "in particular"), it does not harm the Respondent, even if in this case are listed as examples that cannot be used by the Respondent. This execution request clearly states the overall rights to be seized, namely those of the Plaintiff as trustor, protector and beneficiary of the Alpha Trust vis-à-vis the party involved.
>
> [. . .]
>
> [B]ecause of all of these considerations, the Plaintiff has been unsuccessful with any of its complaints regarding fundamental rights, so that, according to the assertion, the individual complaint cannot be accepted.

2019 Liechtenstein Ruling, Kennedy Decl., Ex. 38 at ¶ 5.4.

Judgment Debtor Yegiazaryan's legal maneuvering in Lichtenstein has thus failed.  Undaunted, he is now trying a new tactic in the Caribbean Island of Nevis.

## H.  Judgment Debtor Yegiazaryan Opens A New Front Of Delay In Nevis In Response To The Loss In Liechtenstein

Judgment Debtor Yegiazaryan's losses in Liechtenstein, the most recent of which was in October 2019, mean that his ability to further delay paying the judgment in that jurisdiction will soon come to an end.  Not to be deterred, within a week of the Lichtenstein Constitutional Court decision, Judgment Debtor Yegiazaryan started his

11

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF JUDGMENT CREDITOR'S MOTION TO CLARIFY POST-JUDGMENT INJUNCTION

latest obstructionist tactic, this time in concert with his cousin, Suren Yegiazaryan.  On November 5, 2019, Suren Yegiazaryan initiated an action in the Eastern Caribbean Supreme Court (St. Christopher and Nevis) seeking Judgment Debtor Yegiazaryan's assets directly from Savannah Advisors.  In his Statement of Claim, Suren Yegiazaryan claims that he is entitled to $180 million arising out of a 2011 handwritten agreement with Judgment Debtor Yegiazaryan.  Nevis Claim, Kennedy Decl., Ex. 39, Statement of Claim at ¶ 12 and p. 7.  Suren Yegiazaryan alleges that he agreed to finance Judgment Debtor Yegiazaryan's legal defense, his efforts to evade prosecution by the Russian government, and efforts to reclaim Judgment Debtor Yegiazaryan's assets.  *Id.*  In exchange, Judgment Debtor Yegiazaryan allegedly granted Suren Yegiazaryan a one-third interest in the Moskva Hotel, if reclaimed, and "assumed the obligation to compensate [Suren Yegiazaryan] for his losses in the Northern Oil Project".  *Id.* at ¶ 13. Suren Yegiazaryan provides no basis for these claims.[2]  Nevertheless, he asserts he is owed $180 million—the same amount hidden in the Alpha Trust.  *Id.* at ¶¶ 21, 22.

In his response to Suren Yegiazaryan's Statement of Claim, Judgment Debtor Yegiazaryan admits his "indebtedness to [Suren Yegiazaryan]," but "denies that the (*sic*) [Suren Yegiazaryan] has suffered loss and damage in the sums stated."  Nevis Defence, Kennedy Decl., Ex. 40 at ¶ 14.  Judgment Debtor Yegiazaryan further admits that Suren Yegiazaryan is owed 33.3% of the Kerimov Award.  *Id.***,** ¶¶ 2, 6.  Curiously, Judgment Debtor Yegiazaryan claims that he "has no control over the fund held in the [Alpha Trust]…and unable [*sic*] to make payments to [Suren Yegiazaryan]."  *Id.*, ¶ 14. All of these "facts" are questionable, and the last two are demonstrably false.

---

[2] Although Suren Yegiazaryan does not attach the agreement at issue to his Statement of Claim, Judgment Creditor Smagin is aware of purported written agreement dated February 20, 2011 between Judgment Debtor Yegiazaryan, Artem Yegiazaryan, and Suren Yegiazaryan, in which Suren Yegiazaryan allegedly agreed "to fund current living expenses of [Mr. Yegiazaryan] in the USA, and, if necessary, to fund legal expenses. However, total commitment of [Suren Yegiazaryan] is limited to a sum equivalent to 20 million USD," in exchange for 33.3% of the Kerimov award and an unspecified "compensation for losses in "project 'Northern Oil.'"  Yegiazaryan Agreement, Kennedy Decl., Ex. 43.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

## I.   Suren Yegiazaryan Has Long Been Used To Conceal Judgment Debtor Yegiazaryan's Asset Ownership And Actions

Judgment Debtor Yegiazaryan has long-maintained that his cousin Suren Yegiazaryan is supporting him by paying his legal and living expenses—but he has never taken any action to repay him.  A. Yegiazaryan Declaration, Kennedy Decl., Ex. 41 at  ¶ 37; Kennedy Decl., Ex. 34 at pp. 61-64, 70-71, 74-75; December Debtor Examination, Kennedy Decl., Ex. 42 at p. 169.

But this is a ruse, designed to hide Judgment Debtor Yegiazaryan's assets and wealth.  As confirmed by Judgment Debtor Yegiazaryan's long-time financial advisor (Andrey Gloriozov), the "support" from Suren Yegiazaryan to Judgment Debtor Yegiazaryan was given to Suren Yegiazaryan by Judgment Debtor Yegiazaryan in the first place before being "loaned" back to Judgment Debtor Yegiazaryan.  In fact, Mr. Gloriozov testified under oath that Suren Yegiazaryan is a professional musician who is not financially independent and relies on Judgment Debtor Yegiazaryan.  Gloriozov Decl., Kennedy Decl., Ex. 44 at ¶ 7.  When asked under oath, Judgment Debtor Yegiazaryan refused to disclose how Suren Yegiazaryan makes a living.   December Depo. at p. 169 (Q: "[W]hat does Suren do for a living?" A: "Well it's really not appropriate for me to comment.  All I know is that . . . he holds a Ph.D. in economics.").

For decades, Judgment Debtor Yegiazaryan has used his cousin, Suren Yegiazaryan, as a nominee to act on his behalf and hold his assets to conceal them from others.  Gloriozov Decl., Kennedy Decl., Ex. 44 at ¶ 6 (Mr. Gloriozov  "set up trust ownership structures" involving Judgment Debtor Yegiazaryan and Suren Yegiazaryan.  "[Suren Yegiazaryan"] always acted under instruction of [Judgment Debtor Yegiazaryan] and held assets on his behalf in trust for his benefit."); *See also* Midas Cross-Complaint, Kennedy Decl., Ex. 45 at ¶  16.  For example, Judgment Debtor Yegiazaryan named Suren Yegiazaryan as the beneficial owner in Clearvoice Incorporated, a Nevada limited partnership actually owned by Judgment Debtor Yegiazaryan.  Judgment Debtor Yegiazaryan transferred $20 million to Clearvoice in

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

1998.  Kennedy Decl., Ex. 44 at ¶¶ 9-10.  It was Mr. Glorizov's understanding that this entity was used to pay for Judgment Debtor Yegiazaryan's living expenses in Beverly Hills, California.  *Id.* at ¶ 10.  Further, according to Mr. Gloriozov, Judgment Debtor Yegiazaryan instructed him to separately transfer $20 million of Judgment Debtor Yegiazaryan's funds to Suren Yegiazaryan.  *Id.* at  ¶ 20.  It is no coincidence that this $20 million transfer matches the $20 million allegedly "loaned" to Judgment Debtor Yegiazaryan by Suren Yegiazaryan.

This is not the first time that Judgment Debtor Yegiazaryan has claimed a family member is an owner of one of his companies when he was not.  Indeed, the English High Court of Justice recognized and rejected Judgment Debtor Yegiazaryan's dishonest practice of claiming his relatives are owners of his companies.  English Court Ruling, Kennedy Decl., Ex. 46 at ¶¶ 6, 15.    The Court, denying Judgment Debtor Yegiazaryan's challenge to the London Award years ago, concluded that Judgment Debtor Yegiazaryan "did not tell the truth" about his ownership of a company and repudiated his claim that his brother Artem was  the owner.  *Id.*  Furthermore, Judgment Debtor Yegiazaryan's wife, Natalia Tsagolova, confirms that Judgment Debtor Yegiazaryan routinely uses his cousin and his brother to conceal his true ownership and actions.[3]  Tsagolova Decl., Kennedy Decl., Ex. 48 at ¶ 6 (Judgment Debtor Yegiazaryan and Suren Yegiazaryan "have engaged in a complicated and involved ploy to appear as if Respondent has no assets outside of Russia."), ¶ 9.  She also explains that the purported "loans" for living expenses Suren Yegiazaryan made to Judgment Debtor Yegiazaryan were paid by a company owned by Judgment Debtor Yegiazaryan.  *Id.*, ¶ 12, 13, 27.

---

[3] Other associates of Judgment Debtor Yegiazaryan and Suren Yegiazaryan confirm the same.  *See* Nimmo-Smith Record, Kennedy Decl., Ex. 45 at p. 5, at p. 8 ("As for FAMULATUS LIMITED and SKENDLEBY INVESTMENTS LIMITED - these companies were incorporated by me at Ashot Yegiazaryan's request . . . Initially I was the beneficiary of these companies and in December 2010, as instructed by Ashot Yegiazaryan, I gave these companies in trust to Suren Yegiazaryan.")

14

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF JUDGMENT CREDITOR'S MOTION TO CLARIFY POST-JUDGMENT INJUNCTION

Even if one ignored the source of the funds purportedly given to Judgment Debtor Yegiazaryan by Suren Yegiazaryan, this does not explain why Judgment Debtor Yegiazaryan did not simply pay Suren Yegiazaryan the money he claims to be owed prior to putting it in the Alpha Trust -- or after the Alpha Trust was formed when he paid millions to other creditors.  As set forth above, Judgment Debtor Yegiazaryan paid Gibson Dunn before the Alpha Trust was formed and paid other creditors from the Alpha Trust itself.  Suren Yegiazaryan was aware of the Trust by at least 2015. Kennedy Decl., Ex. 42 at pp. 60-61, 64-65 (Alpha Trust was amended in June 2015 to give Judgment Debtor Yegiazaryan additional powers in the presence of Suren Yegiazaryan), pp. 68-69, 177-180 (Suren Yegiazaryan met with trustee, regarding the Alpha Trust in 2015).

In fact, contrary to their sworn representations in the Nevis Court, both Judgment Debtor Yegiazaryan and Suren Yegiazaryan admit that this beneficiary status was given to Suren Yegiazaryan in satisfaction of any amount owed under the Kerimov Settlement.  Specifically, Suren Yegiazaryan claimed that "[w]hen Ashot [Yegiazaryan] received the Kerimov Settlement funds, we agreed that I would accept beneficiary status under the Alpha Trust in lieu of any specific payment on behalf of my interest in the Kerimov Settlement."  Suren Yegiazaryan Decl., Kennedy Decl., Ex. 49 at ¶ 11. Judgment Debtor Yegiazaryan has also made clear that he believes that Suren Yegiazaryan has been repaid through his participation in the Alpha Trust:

> Q: "Why did you make them beneficiaries of the trust?"
>
> A: "Because they gave money…And I had to pay the money back to them somehow under this specific project.  And we agreed within that that they were going to be the beneficiaries."

Kennedy Decl., Ex. 34, p. 78:16-22.

> A: "The agreement was that he would be a participant in the trust."
>
> Q: "No.  The agreement was that he would get 33.3 percent of the Kerimov settlement."
>
> A: "It was satisfied through his participation in the trust."

15

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)

Kennedy Decl., Ex. 42, p. 98:18-23.

> Q: "Did Suren want the money in cash?"
>
> A: "Of course."
>
> Q: "So why didn't the money -- why didn't Suren's share go into his bank account?"
>
> A: "Because we were partners prior to that.  We are relatives and that is why we came to an agreement to keep this money in one place, in the trust . . . in order to grow it.."

*Id.*, pp. 101:19-25 - 102:1-3.

There is only one conclusion that can be drawn from the above facts: the "debt" to Suren Yegiazaryan is a sham and his claim to enforce it in Nevis is spurious.  This is why Judgment Debtor Yegiazaryan did not pay Suren Yegiazaryan when he received the Kerimov Settlement, and this why Suren Yegiazaryan never raised these claims before, in this Court, in Liechtenstein, or anywhere else until more than four years after the payment was allegedly due[4] and long after he was aware that the funds were transferred to the Alpha Trust.  The purpose of this action is clear.  Judgment Debtor Yegiazaryan's actions in Nevis seek to divert to Suren Yegiazaryan, or at a minimum lock up in protracted litigation, the Alpha trust assets Judgment Creditor Smagin is so close to reaching.  This must be stopped.

There is no basis for the action in Nevis, other than to further delay or make impossible Judgment Creditor Smagin's efforts to collect the judgment.  This hindrance is precisely what the Post-Judgment Injunction was intended to prevent.  Judgment Creditor Smagin thus seeks this Court's assistance and respectfully requests an order, consistent with the Post-Judgment Injunction, directing Judgment Debtor Yegiazaryan, his cousin Suren Yegiazaryan, his brother Artem Yegiazaryan, and all others acting on Judgment Debtor Yegiazaryan's behalf to immediately cease all proceedings in Nevis

---

[4] Because repayment under the Agreement was due "within one month of the return of funds for the Asset," which in this case was June 5, 2015, the statute of limitations for Judgment Debtor Yegiazaryan to bring of breach of contract action in California has run.  Cal. Code. Civ. Proc. § 337 (4 year statute of limitations for written contracts).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

and take no further actions to hinder or delay collection of the judgment.

## III. ARGUMENT AND AUTHORITIES

### A.    This Court May Clarify Or Modify The Post-Judgment Injunction

The Court has broad discretion to clarify an injunction. *See Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 15, 65 S. Ct. 478 (1945) (an order should be clarified when there is "a concrete situation that [leaves] parties or 'successors and assign' in the dark as to their duty toward the court."). This power includes declaring that specific at issue conduct is enjoined. *See N.A. Sales Co. v. Chapman Industries Corp.*, 736 F.2d 854, 857-58 (2d Cir. 1984); *Coachella Music Festival, LLC v. Simms*, 2017 U.S. Dist. LEXIS 222296, *22-24 (finding that "Filmchilla" is within the scope of the injunction) (C.D. Cal. 2017). Clarifying the scope of an injunction "add[s] certainty to an implicated party's efforts to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous." *Robinson v. Delicious Vinyl Records, Inc.*, 2013 U.S. Dist. LEXIS 137940, *5-7 (C.D. Cal. 2013) (minute order properly defined the scope of the injunction, but, "in the interest of avoiding uncertainty", the court added "clarifying text" to the order) (quoting *N.A. Sales,* 736 F.2d at 858). Further, to the extent a motion for clarification "looks like a request for an 'advisory opinion,' it is one [a district court may] grant." *Matter of Hendrix*, 986 F.2d 195, 200 (7th Cir. 1993).

Courts may also grant modifications to "effectuate [an injunction's] purpose." *See TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 U.S. Dist. LEXIS 57761, *19 (N.D. Cal. May 21, 2010) (citing *Natural Res. Def. Council v. Southwest Marine, Inc.,* 242 F.3d 1163, 1167 (9th Cir. 2001)). In other words, district courts have the intrinsic power to modify an injunction "to meet the needs of a new day." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1029-1030 (9th Cir. 1985).

### B.    Judgment Debtor Yegiazaryan Has Violated The Post-Judgment Injunction With The Actions In Nevis And Must Be Stopped

The Nevis action is designed to obstruct Judgment Creditor Smagin's enforcement efforts and encumber the Alpha Trust, violating both the letter and the

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
Tel: 415 576 3000

spirit of the Post-Judgment Injunction and the Lichtenstein rulings.  Because Judgment Debtor Yegiazaryan and Suren Yegiazaryan's actions demonstrate that they do not respect the Post-Judgment Injunction's force and effect, Judgment Creditor Smagin respectfully requests that this Court issue an order clarifying the scope of the Post-Judgment Injunction and its application to the offending conduct in Nevis.

On its face, the Post-Judgment Injunction bars Judgment Debtor Yegiazaryan and "his agents, and/or any person or entity acting under his direction and control" from taking "any action to transfer, assign, conceal, diminish, encumber, hypothecate, dissipate or in any way dispose of" the funds secured by Judgment Creditor Smagin's judgment.  Post-Judgment Injunction, ECF 90.  Accordingly, any actions taken to encumber or divest the assets in the Alpha Trust by Judgment Debtor Yegiazaryan or anyone acting under his direction or control violate this order.

Even absent the language in the Post-Judgment Injunction, under Federal Rule of Civil Procedure 65(d), third parties "in active concert or participation with" a defendant are also bound by the injunction (provided they have actual notice thereof).   Fed. R. Civ. P. 65(d).  Rule 65(d) "is derived from the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Regal Knitwear Co.*, 324 U.S. at 14; *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949-50 (9th Cir. 2014) (defendant violated an injunction when it gave "others it knew were highly likely to violate the injunction the means to do so").

Despite the explicit directives in the Post-Judgment Injunction and the Federal Rules, Judgment Debtor Yegiazaryan is doing exactly what the law prohibits: using third parties to violate the injunction and impede Judgment Creditor Smagin's judgment enforcement.  The on-paper adversarial posture of the parties in Nevis notwithstanding, the Nevis action is an attempt by Judgment Debtor Yegiazaryan and Suren Yegiazaryan to thwart any recovery by Judgment Creditor Smagin from the Alpha Trust.  Suren Yegiazaryan claims to be owed millions, but has identified no legitimate basis for that

18

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF JUDGMENT CREDITOR'S MOTION TO CLARIFY POST-JUDGMENT INJUNCTION

claim.   Both Judgment Debtor Yegiazaryan and Suren Yegiazaryan admit that his interest in the Kerimov Settlement was satisfied by his nomination as beneficiary to the Trust.   Tellingly, Judgment Debtor Yegiazaryan made no payments to Suren when he placed the money into the Alpha Trust, despite the fact that he paid millions to other creditors.  Moreover, Suren Yegiazaryan has not reduced that claim to a judgment.  And instead of mitigating his damages, Suren Yegiazaryan continues to pay for Judgment Debtor Yegiazaryan's living expenses.  Suren Yegiazaryan's Nevis claims are a sham.

The timing of the Nevis action supports this conclusion.   The settlement agreement at issue in Nevis action was allegedly executed in 2011.   Yet Suren Yegiazaryan took no action to enforce that agreement, and waited more than eight years to bring an action for its enforcement in Nevis.   Conveniently, Suren Yegiazaryan brought the Nevis action exactly one week after the Lichtenstein Constitutional Court entered its ruling allowing Judgment Creditor Smagin's enforcement against the Alpha Trust in Lichtenstein to proceed.  This is no coincidence.

Moreover, it is noteworthy that the only individuals who can authenticate the agreement underlying the Nevis Action are Judgment Debtor Yegiazaryan and his family members, Suren Yegiazaryan and Artem Yegiazaryan.  It is also very noteworthy that the sum Suren Yegiazaryan seeks - $180 million for an allegedly $20 million loan to his cousin - is nearly the exact amount hidden in the Alpha Trust.

As this Court has recognized, Judgment Debtor Yegiazaryan has a long history of hiding assets and evading judgments.  Suren Yegiazaryan, too, has a history of working with Judgment Debtor Yegiazaryan to conceal his ownership of assets.  These actions must stop.  The hindrance of Judgment Creditor Smagin's efforts to collect the judgment is exactly what the Post-Judgment Injunction was intended to prevent. Judgment Debtor Yegiazaryan "may not nullify a decree by carrying out prohibited acts through" through Suren Yegiazaryan or any other nonparties. *See Regal Knitwear Co*, 324 U.S. at 14.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Judgment Creditor Smagin therefore respectfully requests that this Court issue an order clarifying that its previously issued Post-Judgment Injunction bars the action in Nevis and ordering Judgment Debtor Yegiazaryan, and all others acting on his behalf, including Suren Yegiazaryan, to immediately cease those proceedings and any other efforts to hinder or delay enforcement and collection of the judgment.

## IV.   **CONCLUSION**

Judgment Creditor Smagin has been owed nearly $100 million for half a decade. Judgment Debtor Yegiazaryan has made no effort to pay.  Instead, he has repeatedly demonstrated he will do everything in his power to avoid doing so.  At some point, this must end.  Judgment Debtor Yegiazaryan cannot be allowed to shift the playing field to Nevis to avoid his losses in Liechtenstein or to use trumped up "agreements" with family and friends to try to carry on his fight with Judgment Creditor Smagin. Accordingly, Judgment Creditor Smagin respectfully requests that the Court grant this Motion and enter an order clarifying that, pursuant to the Post-Judgment Injunction, Judgment Debtor Yegiazaryan, his cousin Suren Yegiazaryan, his brother Artem Yegiazaryan, the trustees of the Alpha Trust, CTX Treuhand AG, and any others acting on behalf of Judgment Debtor Yegiazaryan, directly or indirectly, must immediately cease all actions in Nevis or any other jurisdiction that would interfere with Judgment Creditor Smagin's ability to collect on the assets of the Alpha Trust pursuant to the forthcoming orders of the Liechtenstein court.


Dated: March 2, 2020

**BAKER & McKENZIE LLP**
Nicholas O. Kennedy
Barry J. Thompson


By: /s/ Nicholas O. Kennedy
     Nicholas O. Kennedy
Attorneys for Judgment Creditor
VITALY IVANOVICH SMAGIN

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
Tel: 415 576 3000

Case No. 14-cv-09764-R (PLAx)
MEMO IN SUPPORT OF JUDGMENT CREDITOR'S MOTION TO CLARIFY POST-JUDGMENT INJUNCTION