# EXHIBIT 34

```
 1                UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3                       WESTERN DIVISION

 4

 5    VITALY IVANOVICH SMAGIN,

 6              Petitioner,

 7         vs.                   CASE NO. 14-cv-09764-R (PLAx)

 8    ASHOT YEGIAZARYAN, a.k.a.
      ASHOT EGIAZARYAN,
 9
                Respondent.
10
      ~~~~~~~~~~~~~~~~~~~~~~~~~~~~
11

12
              CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
13

14

15             DEBTOR'S EXAMINATION UNDER OATH

16                      ASHOT YEGIAZARYAN

17

18                       July 11, 2017

19                  10:38 a.m. - 4:29 p.m.

20

21                       255 East Temple
                            Room 780
22                   Los Angeles, California

23
                Marceline F. Noble, CSR No. 3024
24

25
```



```
 1                APPEARANCES OF COUNSEL

 2

 3    For Petitioner:

 4
      BAKER & McKENZIE LLP
 5    NICHOLAS O. KENNEDY, ESQ.
      DENIS V. SHAMO, ESQ.
 6    2300 Trammell Crow Center
      2001 Ross Avenue
 7    Dallas, Texas  75201
      214.978.3000
 8    214.978.3099 Fax
      nicholas.kennedy@bakermckenzie.com
 9    denis.shamo@bakermckenzie.com

10        - and -

11    BAKER & McKENZIE LLP
      BRUCE H. JACKSON, ESQ.
12    Two Embarcadero Center, Suite 1100
      San Francisco, California  94111
13    415.576.3000
      415.576.3099 Fax
14    bruce.jackson@bakermckenzie.com

15

16    For Respondent:

17    TANTALO & ADLER LLP
      MICHAEL S. ADLER, ESQ.
18    1801 Century Park East, Suite 2400
      Los Angeles, California  90067
19    310.734.8695
      310.734.8696 Fax
20    madler@ta-llp.com

21        - and -

22    LOEB & LOEB LLP
      BERNARD R. GIVEN, II, ESQ.
23    10100 Santa Monica Boulevard, Suite 2200
      Los Angeles, California  90067
24    310.282.2000
      310.734.1686 Fax
25    bgiven@loeb.com
```



```
 1   APPEARANCES (CONTINUED)
 2
 3   Also Present:
 4        NATASHA KHARIKOVA, Russian Interpreter
 5        OLEG FLAKSMAN, Private Investigator
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



ASHOT YEGIAZARYAN  Confidential Subject to Protective Order         July 11, 2017
Vitaly Ivanovich Smagin vs Ashot Yegiazaryan                                      6

```
 1                DEPOSITION OF ASHOT YEGIAZARYAN
 2                        July 11, 2017
 3
 4                NATASHA KHARIKOVA,
 5   was duly sworn to act as English/Russian interpreter.
 6
 7                ASHOT YEGIAZARYAN,
 8   having been previously duly sworn by Judge Deal,
 9   testifies as follows:
10
11           MR. KENNEDY:  The witness has already been
12   sworn in by the judge pursuant to the procedures for a
13   debtor examination.
14           The interpreter was just sworn in as well.
15           Mr. Adler, counsel for Mr. Yegiazaryan, and
16   I, counsel for Mr. Smagin, have talked about
17   confidentiality of this transcript and have agreed that
18   Mr. Adler will have the opportunity to designate
19   portions of the transcript confidential or Attorneys'
20   Eyes Only under the Protective Order within a reasonable
21   period of time after the conclusion of the deposition.
22           Until then, the parties will treat the
23   deposition transcript as confidential.
24           MR. ADLER:  Specifically we've agreed the
25   witness will have 30 days from receipt of the transcript
```



800.211.DEPO (3376)
EsquireSolutions.com

Case 2:14-cv-09764-RGK-PLA   Document 229-39   Filed 03/02/20   Page 6 of 17   Page ID #:6682

ASHOT YEGIAZARYAN  Confidential Subject to Protective Order                July 11, 2017
Vitaly Ivanovich Smagin vs Ashot Yegiazaryan                                          61

```
 1   if I don't have any information about anything
 2   happening?  Do you think that the trustee took it or
 3   something like that?
 4          Is that what you mean?
 5      Q.  It's just a question.  How do you know that the
 6   money is still there as you say it is?
 7      A.  Well, that's just what I think.  That's what I'm
 8   convinced of.  And you asked about my opinion and that's
 9   what I think.  And for that you don't have to worry
10   about.
11      Q.  Understood.  Thank you.
12          Do you have any cash in your wallet today?
13      A.  I do.
14      Q.  How much?
15              THE WITNESS:  Shall I show it to him?
16              MR. ADLER:  Yes.
17              THE WITNESS:  Can you give it to him?
18              MR. KENNEDY:  And we're about to break for
19   lunch.  We'll leave that here now.
20              So I'll count it for the record.
21              We have -- $785.  We'll leave that with you.
22   I'm going to seek an order from the judge to turn that
23   over.  I won't take it right away.
24      Q.  Where did you get that cash?
25      A.  What?
```



Case 2:14-cv-09764-RGK-PLA   Document 229-39   Filed 03/02/20   Page 7 of 17   Page ID #:6683

ASHOT YEGIAZARYAN  Confidential Subject to Protective Order    July 11, 2017
Vitaly Ivanovich Smagin vs Ashot Yegiazaryan                                62

```
 1    Q.  Where did you get that cash?
 2    A.  My brother gave it to me.
 3    Q.  Are you wearing a watch today?
 4    A.  I'm allergic.
 5    Q.  Do you own a watch?
 6    A.  There is some, absolutely, but I don't wear them.
 7  Some plastic ones scattered around.  Like how am I going
 8  to get back from here by cab if you're going to take
 9  this away from me?
10        Are you going to give me a ride home?
11    Q.  Maybe one of your attorneys -- maybe your brother
12  can help you out on that.
13        Do you have any other -- do you have any other
14  jewelry today?
15    A.  No.
16    Q.  Okay.  Do you own any nonplastic watches?
17    A.  No.  I don't wear a watch and I never wore
18  watches in Moscow either.
19    Q.  Do you have any credit cards?
20    A.  I don't have an account.
21    Q.  You pay for all of your expenses in cash?
22    A.  No.  Sometimes I take my brother's credit card.
23    Q.  Are there any credit cards in your wallet today?
24    A.  I do.  My brother's credit card.
25    Q.  Is your name on any of those credit cards?
```



Case 2:14-cv-09764-RGK-PLA   Document 229-39   Filed 03/02/20   Page 8 of 17   Page ID #:6684

ASHOT YEGIAZARYAN  Confidential Subject to Protective Order   July 11, 2017
Vitaly Ivanovich Smagin vs Ashot Yegiazaryan                                63

```
 1    A.   No.
 2    Q.   Can you see them?
 3    A.   I can.
 4    Q.   A very small wallet.
 5    A.   There's no money.
 6    Q.   Okay.  Thank you.
 7         And just for the record, that reflects Suren
 8  Egiazaryan.  Is Suren your brother?
 9    A.   Uh-huh.
10    Q.   How often do you use that credit card?
11    A.   Not very often.
12    Q.   What do you use it for?
13    A.   Well, if there's something just in case.
14    Q.   Do you have a cell phone?
15    A.   No.  Not on me.  I -- I lost it somewhere
16  yesterday.  I misplaced it.  I've got to find it today.
17         I just didn't have time.  I was late getting
18  here.
19    Q.   Good luck finding your phone.
20         If this is a good time, it's a good time for me.
21  I know we're getting a little late.  We can break for
22  lunch.
23              (Lunch recess.)
24         MR. ADLER:  All right.
25         MR. KENNEDY:  I'm ready.
```



Case 2:14-cv-09764-RGK-PLA   Document 229-39   Filed 03/02/20   Page 9 of 17   Page ID #:6685

ASHOT YEGIAZARYAN  Confidential Subject to Protective Order    July 11, 2017
Vitaly Ivanovich Smagin vs Ashot Yegiazaryan                              64

1  Q.  Okay.  Welcome back, Mr. Yegiazaryan.  Before we
2  begin, I believe the interpreter has something she'd
3  like to clarify from earlier, so I'll let her do that.
4       THE INTERPRETER:  In the -- this is the
5  interpreter speaking.  In the Russian language, the word
6  "brother" is often used to describe both a brother and
7  also a cousin.  So the interpreter talked to the witness
8  and when referring to Suren as a brother, the witness
9  actually meant his cousin Suren.
10      MR. KENNEDY:  I understand that the
11 courtroom is available until 4:30.  So we can discuss
12 off the record the best way to address that.
13  Q.  For now, let's continue.
14      Mr. Yegiazaryan, you understand you're still
15 under oath, correct?
16  A.  Yes.
17  Q.  Okay.  Are you married?
18  A.  Yes.
19  Q.  How long have you been married?
20  A.  Since '86 or '87.
21  Q.  Are you currently living with your wife?
22  A.  Yes.  But at this point she's not here.
23  Q.  Where is she?
24  A.  She is in Italy.
25  Q.  How long has she been in Italy?



Case 2:14-cv-09764-RGK-PLA   Document 229-39   Filed 03/02/20   Page 10 of 17
Page ID #:6686

ASHOT YEGIAZARYAN  Confidential Subject to Protective Order      July 11, 2017
Vitaly Ivanovich Smagin vs Ashot Yegiazaryan                              65

```
 1     A.   She came here about two, three months ago.  And
 2   how long she's been there, I don't know.
 3     Q.   When do you --
 4     A.   Maybe France.  She was in France, too.  But when
 5   and on what day, last time I saw her, about two, three
 6   months ago.
 7     Q.   When do you expect her to return to the U.S.?
 8     A.   She can come back any second when she decides to.
 9   There was no agreement.  She can come back tomorrow or
10   in a month or in two months.
11     Q.   Do you have an expectation as to when she will
12   come back?
13     A.   I got to call and ask her.  If you need to, I can
14   call and ask.
15     Q.   That's okay.
16          Where is she staying in Italy?
17     A.   Sometimes in Milan.  She likes Milan.
18     Q.   Is she staying --
19     A.   Sometimes in Verona.
20     Q.   Do you or your wife own any properties in Italy?
21     A.   She had an apartment in Italy.  But what about
22   now, I don't know.
23     Q.   Do you know where your wife is staying -- is she
24   staying at a hotel, an apartment or a condo?
25     A.   Well, it depends on where she is.  If she's in
```



Case 2:14-cv-09764-RGK-PLA   Document 229-39   Filed 03/02/20   Page 11 of 17
Page ID #:6687

ASHOT YEGIAZARYAN  Confidential Subject to Protective Order          July 11, 2017
Vitaly Ivanovich Smagin vs Ashot Yegiazaryan                                    66

1  Paris or Milan, I think she's staying at a hotel.  I
2  think so.
3     Q.  Do you currently own any properties in Italy?
4     A.  I don't.  I never have.
5     Q.  Does your wife currently own any properties in
6  Italy?
7     A.  I don't know.  I know that she used to, that's
8  for sure.
9     Q.  Do you own any properties in France?
10    A.  No.  Never have.
11    Q.  Does your wife own any properties in France?
12    A.  I don't know about that.  I don't think so.
13    Q.  Do you know if your wife has ever owned any
14 properties in France?
15    A.  As far as I know, no.
16    Q.  Okay.  Let's take a step back.
17        Do you own any property anywhere in the world
18 outside of the properties in Russia -- other than the
19 properties in Russia we discussed earlier?
20        Do you personally own any property in the world?
21            MR. ADLER:  We're talking about real
22 property?
23            MR. KENNEDY:  Real property; correct.
24            THE WITNESS:  No.
25 ///



Case 2:14-cv-09764-RGK-PLA   Document 229-39   Filed 03/02/20   Page 12 of 17
Page ID #:6688

ASHOT YEGIAZARYAN  Confidential Subject to Protective Order                July 11, 2017
Vitaly Ivanovich Smagin vs Ashot Yegiazaryan
                                                                            70

```
 1   Commerce as well, she was trying to get involved with,
 2   but I'm not trying to -- I don't try to get involved
 3   with her personal business.  She doesn't -- doesn't get
 4   to me and that's good for me.
 5       Q.  When is the last time you gave money to your
 6   wife?
 7       A.  Somewhere probably over a year ago.  Maybe two.
 8       Q.  Okay.  How much money did you give your wife?
 9       A.  Well, I don't remember.  There were some attorney
10   bills that had to be paid and I don't remember how much
11   exactly, but for that she asked for money.  And that's
12   it.
13       Q.  Was it more than $100,000?
14       A.  Yes.
15       Q.  Was it more than $500,000?
16       A.  Can't tell you.
17       Q.  Was it more than a million dollars?
18       A.  Well, no.  Definitely.  This was just some
19   measurable sums --
20       Q.  Was it --
21       A.  -- for attorneys.
22       Q.  Was it more than $250,000?
23       A.  I can't say more or less, but something within
24   those limits, in this area.
25       Q.  What was the source of the money you gave to your
```



Case 2:14-cv-09764-RGK-PLA   Document 229-39   Filed 03/02/20   Page 13 of 17
Page ID #:6689

ASHOT YEGIAZARYAN  Confidential Subject to Protective Order     July 11, 2017
Vitaly Ivanovich Smagin vs Ashot Yegiazaryan                                71

1    wife?
2      A.   A loan or -- I just remember one thing, that she
3    had to pay attorneys services and she asked for the
4    money for the attorneys.  But I can't tell you the exact
5    amount.  It was about two years ago.
6      Q.   I think we may -- you may have misunderstood my
7    question.  I apologize.
8           My question is the money that you gave to your
9    wife, where did it come from?
10     A.   I had money that I borrowed, so maybe from this
11   money.  But I just don't remember exactly.
12     Q.   Who did you borrow the money from?
13     A.   Well, from who I was borrowing before from my
14   cousin.  I didn't borrow it from any other places.
15     Q.   Does anyone owe you money right now?
16     A.   Just some court cases that I'm involved with.
17   And if somebody owes me in those cases, then yes.  It
18   depends what you mean by owe.
19     Q.   Other than the court cases where you may end up
20   winning and end recovering or settling, does anyone else
21   owe you money currently?
22     A.   Other than the courts, most probably not.  I
23   can't remember.
24     Q.   Tell me about the court cases in which someone
25   owes you money.



Case 2:14-cv-09764-RGK-PLA   Document 229-39   Filed 03/02/20   Page 14 of 17
Page ID #:6690

ASHOT YEGIAZARYAN  Confidential Subject to Protective Order      July 11, 2017
Vitaly Ivanovich Smagin vs Ashot Yegiazaryan
74

```
 1  there any other cases in which you're seeking recovery?
 2      A.  Probably not.  There's been so many of them.  But
 3  probably -- I can't remember any more.  I need to check
 4  on that.
 5      Q.  How would you check on that?
 6      A.  Well, how would I check?  In the same way that
 7  you would.  I would go to the court's website or make a
 8  call or contact the attorneys.
 9      Q.  There are lots of -- well, we can follow up with
10  some interrogatories may be a better way to do that.
11          Do you have -- have you made any loans to anyone
12  that are currently outstanding?
13      A.  No.
14      Q.  And are you aware of any other entities or
15  individuals which owe you money besides the RTR Signal
16  case we discussed?
17      A.  I don't think I remember.  I don't remember
18  anyone else.
19      Q.  How much money have you borrowed from your cousin
20  who loaned you money?
21      A.  There are papers.  I don't remember.  So I need
22  to look at the papers.  But quite a lot.
23      Q.  More than $10 million?
24      A.  Yes.
25              MR. ADLER:  Vague and ambiguous as to time.
```



```
 1   BY MR. KENNEDY:
 2      Q.   More than $20 million?
 3      A.   I need to -- I think so, but I need to see.
 4      Q.   How do you intend to pay this loan?
 5      A.   Well, the debt could be partially or wholly paid
 6   because he is a beneficiary of the trust.
 7      Q.   The money -- is it the Alpha Trust you're talking
 8   about?
 9      A.   Yes.
10      Q.   The money in the Alpha Trust is your money,
11   right?
12           MR. ADLER:  Calls for a legal conclusion.
13   Vague and ambiguous.
14           THE WITNESS:  The question?
15   BY MR. KENNEDY:
16      Q.   The money in the Alpha Trust is your money;
17   correct?
18           MR. ADLER:  Same objections.
19           THE WITNESS:  The money in the trust.
20   BY MR. KENNEDY:
21      Q.   Sorry, that wasn't a -- I don't think that
22   exactly answered it.  I think you were intending to.
23   Let me ask it again for the record.
24           The money in the Alpha Trust is your money;
25   correct?
```



Case 2:14-cv-09764-RGK-PLA   Document 229-39   Filed 03/02/20   Page 16 of 17
Page ID #:6692

ASHOT YEGIAZARYAN  Confidential Subject to Protective Order           July 11, 2017
Vitaly Ivanovich Smagin vs Ashot Yegiazaryan                                    78

```
 1   As far as I remember.  But maybe I just need to look at
 2   the dates.  I don't remember all of the dates.
 3       Q.  Okay.  So if the documents have different dates,
 4   you wouldn't have any reason to disagree with what the
 5   document says; correct?
 6       A.  Well, whatever's written there, that's what's
 7   written.  They were participants in the Hotel Moskva
 8   process before that since 2010, '11 approximately from
 9   the very beginning when all the court cases started.
10       Q.  You made these people part beneficiaries of the
11   trust; correct?
12           MR. ADLER:  Vague and ambiguous.
13           THE WITNESS:  Yes.  This was within the
14   agreements.
15   BY MR. KENNEDY:
16       Q.  Why did you make them beneficiaries of the trust?
17       A.  Because they gave money.
18       Q.  You can remove them --
19       A.  And I had to pay the money back to them somehow
20   under this specific project or for participating in that
21   particular project.  And we agreed within that that they
22   were going to be the beneficiaries.
23       Q.  Have any payments been made to any of the
24   beneficiaries from the trust at any time?
25       A.  Huh-uh.  No.
```



*800.211.DEPO (3376)*
*EsquireSolutions.com*

Case 2:14-cv-09764-RGK-PLA   Document 229-39   Filed 03/02/20   Page 17 of 17
Page ID #:6693

ASHOT YEGIAZARYAN  Confidential Subject to Protective Order                July 11, 2017
Vitaly Ivanovich Smagin vs Ashot Yegiazaryan                                     140

REPORTER'S CERTIFICATION

I, MARCELINE F. NOBLE, a Certified Shorthand Reporter in and for the State of California, do hereby certify:

The witness has requested a review pursuant to Rule 30(e)(1);

That the foregoing witness was by me duly sworn; that the deposition was then taken before me at the time and place herein set forth; that the testimony and proceedings were reported stenographically by me and later transcribed into typewriting under my direction; that the foregoing is a true record of the testimony and proceedings taken at that time.

IN WITNESS WHEREOF, I have subscribed my name this 14th day of July, 2017.


_____

MARCELINE F. NOBLE, CSR No. 3024