# EXHIBIT "3"

Case Number :NEVHCV2020/0027

FILED
HIGH COURT
ST.CHRISTOPHER / NEVIS
(NEVIS CIRCUIT)

Submitted Date:03/04/2020 15:58

Filed Date:03/04/2020 15:58

Fees Paid:22.00

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
FEDERATION OF ST. CHRISTOPHER AND NEVIS
NEVIS CIRCUIT

A.D. 2020
(CIVIL)

CLAIM NO: NEVHCV2020/0027

BETWEEN

VITALY GOGOKHIA          Claimant/Applicant

-AND-

1. SAVANNAH ADVISORS INC
2. THOMAS WILHELM
3. NIKOLAUS T. WILHELM
4. CTX TREUHAND AKTIENGESELLSCHAFT [ALSO KNOWN AS CTX TREUHAND AG] AS TRUSTEE OF THE ALPHA TRUST
5. ALPENROSE WEALTH MANAGEMENT AG
6. ASHOT EGIAZARIAN

Defendants/Respondents

**AFFIDAVIT OF 6TH DEFENDANT**

(In response to Ex Parte Application (Worldwide Freezing Order and Asset Preservation Order and Permission etc dated 18th March, 2020
And In support of Application to set aside Ex Parte Order)

I, ASHOT EGIAZARIAN of 655 Endrino Place, California, USA 90210 affirm and say as follows: -

1. I am the Deponent and I am the 6th Defendant to these proceedings.

2. I have read the Application and Affidavit of Vitaly Gogokhia in relation to an Ex Parte Application for a worldwide freezing Order and Asset Preservation Order and Permission to serve Order out of the Jurisdiction or by Electronic Means.

3. I wish to respond to said application as well as apply to the Court to set aside the order dated the 18th March 2020; sent to me via email on the 19th March, 2020.

4. Where the facts stated herein are within my direct personal knowledge they are true and where not within my direct personal knowledge they are true to the best of my knowledge, information and belief.

1

6. I can neither admit nor deny paragraph 4 since the contents therein are not all within my knowledge.

7. Paragraphs 5 -7 are admitted.

8. Paragraph 8 is denied in so far as I failed to keep my word. Due to litigation against me in other jurisdictions I was no longer in a position to request payments to the Claimant. While I never denied owing the Claimant, due to ongoing litigation and diminution of any assets owned by me as well as several creditors pursuing debts, I was not able to pay as agreed.

9. Paragraphs 9, 10, 11 and 12 are agreed.

10. Paragraph 13 is agreed in that no further payments had been made. The Claimant however is fully aware of the particular circumstances making it impossible to make payments.

11. In relation to paragraph 14, I admit my indebtedness to the Claimant. However, the Claimant is well aware that I am a highly exposed political individual and due to my political connection in Russian, I have lost all assets and beneficial interests.

12. Paragraph 15 is admitted.

13. In relation to paragraph 16, I accept that I previously held a beneficial interest in Alpha Trust, to which the fourth Defendant was Trustee. In or about 2016, my rights to said trust were frozen and in 2019 all rights as settlor, protector and beneficiary of said trust were lost by an order of the Supreme Court of Liechtenstein after a claim was brought by Vitaly Ivanovich Smagin. I have had no control over Alpha Trust and any transfer of monies from said trust since. I have been precluded from receiving any information or giving any instructions regarding said trust and its operations. In fact, should I try to use any of the rights of said trust, this would constitute a criminal act in Liechtenstein.

14. In relation to paragraph 17 and 18, since I have lost all rights to Alpha Trust, which as stated holds Savannah Advisor Inc, I have therefore also been precluded from all information and operations of Savannah Advisor Inc. I have made numerous requests for copies of the corporate documents and records of Savannah Advisor Inc but to date I have not received any such documents. I have also instructed my solicitor to write to the current registered agent and request copies of all company documents, however I have not received any documents to date.

15. In relation to paragraph 19, I was appointed beneficiary, and protector of Alpha Trust. However, as previously stated, I have since lost all rights to said trust.

16. Paragraph 20 and 22 are admitted.

17. I deny paragraphs 21 and 23 for reasons already stated.

18. Paragraph 24, and 25 are admitted. Due to confidentiality agreements however, I am not at liberty to disclose the contents of any such settlement.

19. As it relates to paragraph 26 and 27, I admit that due my political affiliation I was not able to operate a Bank account. I also admit that I was appointed beneficiary and protector of Alpha Trust.

20. As it relates to paragraph 28, 29 and 30, as previously stated, I have lost all rights and control over Alpha Trust. As a consequence, therefore I have no control over Savanah Advisor Inc. I have made requests for copies of Corporate documents of Savanah Advisor Inc but to date I have not received any such documents.

2

21. Paragraph 31 is denied. Due to my political exposure and vulnerability, I have utilized corporate structures for protection. The Claimant by his own admission has received partial payments during the time when I maintained some control over said trust.

22. Paragraph 32-34 are denied for reasons already stated.

23. As it relates to paragraph 36, I deny that there is a real issue to be tried in this jurisdiction. Apart from claims in relation to a trust that I no longer have any access to, the Claimant has failed to show any assets or connection with the claim and this current jurisdiction.

24. I therefore believe that the current claim is improperly before this court and this jurisdiction.

25. After making numerous requests regarding the corporate documents of the 1st Defendant and the operations of Alpha Trust as directed by these proceedings, by Email dated the 2nd April, 2020 I was advised that CTX is no longer the trustee of Alpha Trust and that I should contact the new trustees. A copy of the email is exhibited herewith and marked "AE1".

26. Also, on the 2nd April 2020 I was informed of an Order of the United States District Court, Central District of California in Case No: 2:14-cv-09764-RGK-PLA in *Vitaly Ivanovich Smagin v Ashot Egiazaryan*. Said decision makes reference to the worldwide injunction dated the 14th November 2016 prohibiting me from dealing with any monies from the Kerimov Settlement funds in an amount up to $115,629,565 and seeks to clarify said injunction, having enjoined the current Nevis claim as well as another claim within this jurisdiction. By that Order the Court confirms the 2016 injunction in favour of Smagin remains in effect. For reasons stated therein, the Court Ordered that all actions in Nevis Cease. A copy of the court Order is exhibited herewith and marked "AE2".

27. Outside of the current claims in relation to Savanah Advisor Inc, I hold no assets within this jurisdiction or any other country in the world in my name. I held an interest in "EUROPARK" in Russia but said asset has since been frozen by the Russian Government.

28. I therefore asked that the current Order be set aside, and the matter be stayed.

I hereby make this affidavit to the best of my belief and knowledge.

SWORN by the said           )
ASHOT EGIAZARIAN            )        ………………………………
This        day of April 2020 )        ASHOT EGIAZARIAN

Before me: -

See attached

3

# JURAT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 3rd day of April, 20 20 by Ashot Egiazarian,

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____ (Seal)
Signature  E. Golriz



E. GOLRIZ
Commission No. 2264142
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires OCTOBER 25, 2022

## OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

Affidavit of 6th Deffendant
(Title or description of attached document)

The Eastern caribbean supreme court
(Title or description of attached document continued)

Number of Pages 3   Document Date 4/3/2020

Additional information

## INSTRUCTIONS

The wording of all Jurats completed in California after January 1, 2015 must be in the form as set forth within this Jurat. There are no exceptions. If a Jurat to be completed does not follow this form, the notary must correct the verbiage by using a jurat stamp containing the correct wording or attaching a separate jurat form such as this one with does contain the proper wording. In addition, the notary must require an oath or affirmation from the document signer regarding the truthfulness of the contents of the document. The document must be signed AFTER the oath or affirmation. If the document was previously signed, it must be re-signed in front of the notary public during the jurat process.

- State and county information must be the state and county where the document signer(s) personally appeared before the notary public.
- Date of notarization must be the date the signer(s) personally appeared which must also be the same date the jurat process is completed.
- Print the name(s) of the document signer(s) who personally appear at the time of notarization.
- Signature of the notary public must match the signature on file with the office of the county clerk.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different jurat form.
  - ❖ Additional information is not required but could help to ensure this jurat is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
- Securely attach this document to the signed document with a staple.

www.NotaryClasses.com 800-873-9865

4

**From:** Moritz Blasy <moritz.blasy@walchschurti.net>
**Date:** Thursday, April 2, 2020 at 10:43 AM
**Cc:** 'Drew Holiner' <dholiner@monckton.com>, 'ashot ashot' <forashot1@gmail.com>
**Subject:** WG: Alpha Trust-Anfragen Ashot Egiazarian

In the email below Mr Büchel confirms that CTX is not any longer the trustee of Alpha Trust and that we should contact the new trustees known by us.
Best,
Moritz

---

Von: Christoph Buechel [mailto:CBuechel@wbr.li]
Gesendet: Donnerstag, 2. April 2020 11:09
An: Moritz Blasy
Betreff: Alpha Trust-Anfragen Ashot Egiazarian [signed INVALID]

Sehr geehrter Herr Kollege,
lieber Moritz

Auftrags CTX Treuhand AG und Nikolaus Wilhelm ersuche ich höflich darum, deinem Mandanten mitzuteilen, er möge sich mit seinen Anfragen (erging jeweils cc: an dich) an die ihm bekannten neuen Trustees des Alpha Trust wenden. Die CTX Treuhand AG ist bekanntlich nicht mehr Treuhänderin des Alpha Trusts.

Besten Dank.

Mit freundlichen kollegialen Grüssen

Christoph Büchel
Rechtsanwalt / Attorney-at-law



**Wilhelm & Büchel Rechtsanwälte / Attorneys-at-law**
Lova-Center, P.O. Box 1150, LI-9490 Vaduz
Tel:  +423 399 48 50
cbuechel@wbr.li
www.wbr.li

**5**

Diese E-Mail-Nachricht ist nur für den genannten Empfänger bestimmt. Die in dieser E-Mail-Nachricht und deren Anlagen enthaltenen Informationen sind vertraulich und unterliegen dem Berufsgeheimnis. Sofern der Leser nicht der Adressat sein sollte, ist jede Verwendung, Offenlegung, Vervielfältigung oder Weiterverbreitung strengstens verboten. Sollten Sie diese E-Mail-Nachricht irrtümlich erhalten, bitten wir Sie, dem Absender zu antworten und die E-Mail und jede Kopie dann endgültig zu löschen und allfällige Ausdrucke zu zerstören.

This email message is intended only for use by the named recipient(s) herein. Information contained in this email message and its attachments are privileged, confidential and protected from disclosure. Any dissemination, distribution or copying of this communication by anyone other than the intended recipient is strictly prohibited. If you are not the intended recipient, please notify the sender by replying to this message and then permanently delete the original copy and any copy and printout thereof.

**"AE 2"**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09764-RGK-PLA | Date | 04-01-02020 |
|---|---|---|---|
| Title | *Vitaly Ivanovich Smagin v. Ashot Yegiazaryan* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Plaintiff's Motion to Clarify Post-Judgment Injunction [DE 229]

## I. INTRODUCTION

On November 11, 2014, Vitaly Ivanovich Smagin ("Plaintiff") obtained an arbitral award from the London Court of International Arbitration against Ashot Yegiazaryan ("Defendant") in a dispute over dealings related to the financing of a Moscow shopping center. The award ordered Defendant to pay Plaintiff $84,290,064.40 and post-award interest of 8% at an annual quarterly compounded rate.

On December 22, 2014, Plaintiff filed a petition in this Court to confirm that award, and on March 17, 2016, this Court entered a judgment in Plaintiff's favor for $92,503,652. That judgment remains uncollected.

On November 14, 2016, the Court issued a worldwide injunction prohibiting Defendant or any person acting in concert with him from transferring, concealing, or otherwise dispersing the proceeds of a settlement Defendant obtained in a separate arbitration, known as the "Kerimov settlement funds," in an amount up to $115,629,565.

On September 20, 2017, this Court issued an Order directing Defendant to turn over the Kerimov Settlement Funds, now contained in a Liechtenstein trust. On July 31, 2018, the Court of Appeals for the Ninth Circuit vacated that Order as premature, as the issue of whether Defendant had actual control of the trust remained pending before the Princely Supreme Court of Lichtenstein. On October 29, 2019, the

**7**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:14-cv-09764-RGK-PLA | Date | |
|---|---|---|---|
| Title | *Vitaly Ivanovich Smagin v. Ashot Yegiazaryan* | | |

Liechtenstein Constitutional Court rejected Defendant's final appeal and held that he did in fact exercise control over the trust.

Presently before the Court is Plaintiff's Motion to Clarify the Court's November 2016 injunction. For the following reasons, the Court **GRANTS** Plaintiff's motion.

## II. FACTUAL BACKGROUND

### A. The Parties and the Trust

Plaintiff Vitaly Ivanovich Smagin is a Russian citizen and businessman residing in Moscow. Defendant Ashot Yegiazaryan is a Russian national currently residing in Beverly Hills, California. Third party Suren Yegiazaryan[1] ("Suren") is the Defendant's cousin, also a Russian national residing in Beverly Hills. Third party Vitaly Gogokhia ("Gogokhia") is Defendant's former business associate, currently residing in London, England. Third party Artem Yegiazaryan ("Artem") is Defendant's brother. Both Gogokhia and Artem were convicted in Russia alongside Defendant for working to fraudulently misappropriate Plaintiff's assets.

In May of 2015, Defendant received an arbitral award of $198 million dollars in an arbitration with Suleyman Kerimov. The funds were deposited in an account at Compagnie Monegasque de Banque ("CMB") in Monaco. In June of that year, Defendant placed $188 million of those funds into a trust formed in Liechtenstein ("the Alpha trust"). As found by the Liechtenstein Court, Defendant is settlor, protector and beneficiary of the Alpha trust, and has the authority to remove trustees at will. The present trustee is CTX Treuhand AG, a Liechtenstein corporation that provides trust services. The holder of the Monaco account is a company called Savannah Advisers on the island of Nevis in the Caribbean. Savannah Advisors is wholly owned by the Alpha trust.

### B. The Court's Injunction

On November 14, 2016, this Court issued a worldwide post-judgment injunction prohibiting transfer of the Alpha trust assets. The Court's rationale for issuing that injunction is quoted, in part, as follows:

> Without relief from this Court, Mr. Smagin would be left without protection from Mr. Yegiazaryan's duplicity. Mr. Yegiazaryan's record of concealing the true beneficial owner of assets through these types of nominee structures makes it likely that, given the opportunity, he will continue to hide the proceeds of this settlement in a way to avoid payment directly to himself in California where the proceeds would be subject to execution on the judgment. This Court believes that given Mr. Yegiazaryan's past

---

[1] As there are multiple individuals named Yegiazaryan, the Court will refer to them by their first names in the interest of clarity.

Case 2:14-cv-09764-RGK-PLA   Document 245   Filed 04/01/20   Page 3 of 8   Page ID #:11070

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09764-RGK-PLA | Date | |
|---|---|---|---|
| Title | ***Vitaly Ivanovich Smagin v. Ashot Yegiazaryan*** | | |

actions, it is highly likely that these assets will immediately be moved to another nominee structure in another jurisdiction unknown to Mr. Smagin and out of the immediate reach of Mr. Smagin and his judgment.

(Order Granting Post-Judgment Injunction, ECF No. 90). The text of the injunction is quoted here in part as follows:

> IT IS FURTHER ORDERED THAT Ashot Yegiazaryan, his agents, and/or any person or entity acting under his direction and control shall not take any action to transfer, assign, conceal, diminish, encumber, hypothecate, dissipate or in any way dispose of any proceeds, in an amount up to and including $115,629,565, derived by or held for the benefit of Ashot Yegiazaryan, his agents, nominees, trustees or any person or entity acting under his direction and control, in payment, settlement or satisfaction of an arbitration award obtained in his arbitration with Suleyman Kerimov, without prior order of the Court permitting such a transfer, including specifically the "Kerimov settlement funds."

(*Id.*) That injunction remains in effect.

Following the issuance of the above injunction, the Court also issued an order directing Defendant to turn over the assets in the Alpha Trust to Plaintiff. The Ninth Circuit vacated that Order as premature on the grounds that the issue of whether Defendant actually controlled the Alpha trust was on appeal to the Princely Supreme Court of Liechtenstein. On September 7, 2018, that court ruled in Plaintiff's favor, and on October 29, 2019, the Liechtenstein Constitutional Court rejected Defendant's final appeal and likewise ruled that he controlled the assets in the Alpha trust.

### C.   Suren Yegiazaryan's Lawsuit

Approximately one week later, on November 5, 2019, Defendant's Cousin Suren Yegiazaryan initiated an action in the Eastern Caribbean Supreme Court (St. Christopher and Nevis) seeking the Alpha trust's assets directly from Savannah Advisors ("the Nevis Action"). The basis of Suren's claim is a handwritten agreement from 2011 between himself, his brother Artem Yegiazaryan ("Artem"), and Defendant.

The substance of the agreement is that Suren and Artem each agreed to pay up to $20 million dollars of Defendant's living expenses and legal fees in exchange for a one-third share of the Kerimov Settlement Funds. The agreement also states that Defendant assumed an obligation to compensate Artem

**9**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:14-cv-09764-RGK-PLA | Date | |
|---|---|---|---|
| Title | *Vitaly Ivanovich Smagin v. Ashot Yegiazaryan* | | |

for losses in the project "Sofiyskaya Embankment" and Suren for losses in "the Northern Oil Project," both in unspecified amounts.

In Defendant's response to Suren's statement of claim in the Nevis Action, dated February 14, 2020, Defendant admitted to indebtedness, including one third of the Kerimov award, but asserted that he had no control over the Alpha Trust and could not make payments.

On March 9, 2020, the Court held a hearing on Suren's motion for default, at which only Suren's attorney appeared. On March 10, 2020, the Nevis Court entered an order granting Suren's request for default judgment in the amount of $180 million against Defendant and entitling him to recover that sum from the Kerimov Settlement funds in the Alpha Trust. Despite the fact that Plaintiff had already filed the instant request for clarification, neither Defendant nor Suren disclosed the fact of this default judgment to the Court or opposing counsel.

On March 13, 2020, Defendant filed an application to set aside default. In the attached affidavit, he claims that he no longer has control over the Trust due to the rulings in his case against Plaintiff in Liechtenstein.

### D. Vitaly Gogokhia's Lawsuit

On May 17, 2019, Defendant's former business partner Vitaly Gogokhia commenced a lawsuit against him in England claiming that Defendant had failed to repay him for his investments in certain business ventures. On October 30, 2019, Defendant consented to a judgment against himself of £149 million (approximately $180 million).

Gogokhia now likewise seeks to have his judgment enforced against Defendant in Nevis. On March 12, 2020, Gogokhia applied for a worldwide freeze of the Alpha Trust assets, and on March 18, the Nevis court granted it. A hearing is scheduled on that freeze order for April 15.

### III. JUDICIAL STANDARD

An order imposing an injunction must state its terms specifically and describe in detail the act or acts restrained or required. Fed. R. Civ. P. 65(d)(1). Accordingly, a court "may not grant an enforcement order or injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 13 (1945). An injunction, however, binds not only the parties, but also their attorneys, agents, employees and other persons who are in active concert with the aforementioned. Fed. R. Civ. P. 65(d)(2). This gives effect to the common-law doctrine that "defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Regal Knitwear,* 324 U.S. at 14.

A district court has discretion to clarify the scope of an injunction. *Robinson v. Delicious Vinyl Records Inc.*, No. 13-CV-4111-CAS-PLAX, 2013 WL 12119735, at *1 (C.D. Cal. Sept. 24, 2013). By

**10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:14-cv-09764-RGK-PLA | Date | |
|---|---|---|---|
| Title | *Vitaly Ivanovich Smagin v. Ashot Yegiazaryan* | | |

clarifying the scope of a previously issued injunction, a court "add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous." *See N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984). Such clarification may be obtained on motion by a party or made on the court's own motion.

## IV. DISCUSSION

Plaintiff seeks an order clarifying that the Court's injunction enjoins the Nevis lawsuits described above, as well as any related activity. The Court finds that such a broad exercise of Judicial power is justified by the unusual circumstances of this case.

The category of conduct that Plaintiff seeks to prevent is already foreclosed by the ongoing effect of this Court's 2016 injunction. The only question, therefore, is whether Plaintiff has satisfactorily demonstrated that Suren and Gogokhia are acting in concert with the Defendant such that their conduct as third-parties falls within its scope. The Court finds that he has done so.

Suren, in his opposition, contends that in order for the Court to apply the terms of the injunction to third parties, it must require a "clear showing" that both (1) a party violated the injunction, and (2) the non-party assisted them in doing so. Suren bases this standard on an application of the "clear showing" requirement for an injunction before trial to the requirements for finding a third party in contempt. *See Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 953 (9th Cir. 2014). Assuming for the sake of argument that this standard is correct, the Court finds that Plaintiff has met it, as the evidence before the Court makes a clear showing that both Suren and Gorokhia are acting in concert with Defendant to evade the injunction's requirements.

### A. Suren Yegiazaryan

Suren asserts that he is not acting in concert with Defendant but rather pursuing the Nevis action for independent reasons and for the purpose of adjudicating his own rights. Plaintiff, in turn, argues that the purported loan agreement was never genuine, that Suren has a long history of serving as Defendant's nominee to act on his behalf and conceal his assets, and that Suren's assertions regarding the sources of his own funds are both lacking in documentation and internally contradictory. The Court agrees with Plaintiff.

First, the February 2011 agreement purports to allocate two-thirds of the Kerimov Settlement—over one-hundred and twenty-six million dollars—in return for payment of legal fees and living expenses (no more than twenty million each from Suren and Artem) on the basis of a half-page, handwritten agreement among close family members. Furthermore, the agreement obligates Defendant to pay Suren and Artem a wholly unspecified amount for their losses in separate undertakings described as "Sofiyskaya Embankment" and "Northern Oil." (*See* Kennedy Decl. Ex 43, ECF No. 229-48.) Defendant has fought tooth and claw these last six years to avoid paying Plaintiff a sum of money that Plaintiff had already been awarded in arbitration, and which was originally markedly less than that

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09764-RGK-PLA | Date | |
|---|---|---|---|
| Title | ***Vitaly Ivanovich Smagin v. Ashot Yegiazaryan*** | | |

purportedly allocated by the above agreement. Further, the very financial entities at issue in this case are a testament to Defendant's sophistication. The idea that Defendant ever intended to sign away such a vast sum of money on the basis of a half-page deal with his cousin and brother is belied by his prior conduct throughout this litigation.

This conclusion is reinforced by Defendant's payments to his other creditors. At the time the settlement funds were initially distributed, Defendant made millions of dollars in payments to other creditors—including five million to Vitaly Gogokhia. (See CMB transfer statements, Decl. of Nicholas Kennedy ISO Mot. to Clarify ("Kennedy Decl.") Ex. 19-20, ECF No. 229-24, 25.) Defendant made no payments to Suren or Artem, however, despite the fact that each was purportedly entitled to over one-third of the settlement funds.

Next, the timing of Suren's Nevis suit, filed less than a week after the final Liechtenstein ruling, is suspect. Suren asserts that, although the Kerimov settlement funds were distributed years ago, he only initiated his suit following the Liechtenstein ruling because he did not feel that he needed to protect his interest in the trust until Plaintiff prevailed in that litigation. Litigation involving these trust assets has been ongoing in courts around the world for approximately five years, including here, in Los Angeles, where both Suren and the Defendant reside. The fact, therefore, that Suren decided only now, these many years later, that he suddenly needed to protect his rights to a vast amount of money guaranteed by a half-page long, ten-year-old note with his cousin, by filing a lawsuit in the Caribbean, strains credulity.

Furthermore, Suren has a history of working as a nominee in Defendant's transactions. As one example, Plaintiff presents an affidavit from Defendant's longtime Financial Advisor Andrey Gloriozov, originally submitted on Defendant's behalf in a separate proceeding, which states that Suren was only ever the nominal holder of any shares in the Northern Oil project, whereas Defendant was their true beneficial owner. (*See* Aff. Of Andrey Gloriozov, Kennedy Reply Decl. Ex. A, ECF No. 235-2.) Naturally, this also somewhat complicates the idea that Defendant owes Suren compensation for any "losses" Suren incurred arising from that project, as Suren did not actually have a beneficial interest in the shares.

The evidence described above is enough. The Court need not delve in detail into Plaintiff's other arguments regarding Suren's lack of financial independence from Defendant, his contradictory statements regarding how he purportedly financed Defendant's years of litigation, or other instances in which he operated as a front for Defendant's transactions. The evidence above, particularly when combined with Defendant's conduct in the Nevis proceedings, is more than sufficient to make a "clear showing" that Suren is working in concert with Defendant to keep the Kerimov Settlement funds "in the family" through his Nevis lawsuit.

### B. Vitaly Gogokhia

The Court likewise finds that Plaintiff has met his burden to demonstrate that Vitaly Gogokhia is working in concert with Defendant to circumvent the Court's prior injunction through his lawsuit in

**12**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09764-RGK-PLA | Date | |
|---|---|---|---|
| Title | ***Vitaly Ivanovich Smagin v. Ashot Yegiazaryan*** | | |

Nevis. Gogokhia is Defendant's former business partner, and was convicted alongside Defendant in Russia of conspiracy to commit fraud for his role in Defendant's misappropriation of Plaintiff's assets. (Kennedy Decl., Ex. 2 p. 86, ECF No. 229-7.)

Like Suren, Gogokhia claims he is a beneficiary of the Alpha trust, and filed suit seeking the trust assets in the United Kingdom on May 17, 2019. This is in spite of the fact that, as described above, Defendant had already paid Gogohkia $5 Million from the Kerimov settlement proceeds when they were first dispersed, and Gogohkia has evidently taken no other action to collect any larger amount in the several years since that time.

On October 30, 2019, the day after the Liechtenstein Constitutional Court issued its ruling, Defendant consented to a judgment against himself in the UK of £149 million pounds (approximately the amount of the trust assets). *See* Aff. of Vitaly Gogohkia, Sur-Reply Decl. Ex. 5 ¶ 12, ECF No. 242-7.) On December 9, 2019, Gogokhia then brought an action to confirm the UK judgment in Nevis. Gogokhia has since obtained an order in Nevis freezing the Alpha trust assets, the text of which states that Defendant has consented to registration of the UK Judgment there. *See* Asset Freeze Order, Sur-Reply Decl. Ex. 6 ¶ 19.3, ECF No. 242-8.)

As Plaintiff evidently only learned of Gogokhia's litigation in Nevis after the present motion had already been filed, his arguments regarding Gogohkia naturally do not include the same level of detail. Nevertheless, the Court finds that Plaintiff has made a clear showing that Gogokhia is working in concert with Defendant to circumvent this Court's injunction. This finding is based on Plaintiff's evidence regarding (1) Defendant and Gogokhia's shared criminal history as pertains to Plaintiff and the judgment at issue, (2) the fact that Defendant paid Gogokhia $5 million out of the trust assets several years ago and Gogokhia has never brought any claim against Defendant or the trust until now, and (3) Defendant's role in not only failing to oppose, but seemingly even assisting Gogokhia in the progress of his litigation. Of particular note is the fact that Defendant consented to judgment in the UK the very day after his appeal was finally rejected in Liechtenstein.

For the reasons described above, the Court likewise finds that Defendant's conduct violates the injunction. Although Defendant argues that he has recently filed an application to set aside Suren's

13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09764-RGK-PLA | Date | |
|---|---|---|---|
| Title | *Vitaly Ivanovich Smagin v. Ashot Yegiazaryan* | | |

default judgment, the Court is unpersuaded that this manifests evidence of anything like a sincere attempt to defend that case.

As a preventative measure based on Defendant's continued pattern of behavior, the Court will likewise clarify that the scope of this injunction extends to foreclose any actions to acquire the trust proceeds by Defendant's brother Artem as well as Suren.

**V.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion.

**IT IS FURTHER ORDERED THAT**

Mr. Yegiazaryan, his cousin Suren Yegiazaryan, his brother Artem Yegiazaryan, Vitaly Gogokhia, the trustees of the Alpha Trust and any others acting on behalf of Mr. Yegiazaryan, directly or indirectly, including but not limited to attorneys or nominees for each of these parties must immediately cease all actions in Nevis or any other jurisdiction that would prevent, hinder, or delay Mr. Smagin's ability to collect on the assets of the Alpha Trust pursuant to the current and forthcoming orders of the Liechtenstein Court or this Court.

To the extent any such enforcement actions have already begun, they must be immediately stopped and any funds held by or on behalf of Suren Yegiazaryan or Judgment Debtor Yegiazaryan must be immediately returned to the Monaco Bank Account of Savannah Advisors, or any other location, from which they came.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | vpc |

14

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
FEDERATION OF ST. CHRISTOPHER AND NEVIS
NEVIS CIRCUIT
                       A.D.  2020
                       (CIVIL)

**CLAIM NO: NEVHCV2020/0027**

**BETWEEN**

        **VITALY GOGOKHIA**                      Claimant/Applicant

                       **-AND-**

1. **SAVANNAH ADVISORS INC**
2. **THOMAS WILHELM**
3. **NIKOLAUS T. WILHELM**
4. **CTX TREUHAND AKTIENGESELLSCHAFT [ALSO KNOWN AS CTX TREUHAND AG] AS TRUSTEE OF THE ALPHA TRUST**
5. **ALPENROSE WEALTH MANAGEMENT AG**
6. **ASHOT EGIAZARIAN**

                                                         Defendants/Respondents

### FIRST AFFIDAVIT OF 6TH DEFENDANT

**(**In response to Ex Parte Application (Worldwide Freezing Order and Asset Preservation Order and Permission etc dated 18th March 2020
And In support of Application to set aside Ex Parte Order**)**

### MERCHANT LEGAL CHAMBERS
Barristers-at-Law & Solicitors for the 6th Defendant
Upper Prince Williams Street, Charlestown Nevis
Tel: 469-6652 Fax 469-1969
Email: merchant@merchantlc.com

15