# EXHIBIT A

[stamp: ] PRINCELY REGIONAL COURT VADUZ
E 24.03.2020 08: 08
Post notification: 23 March 2020
[signature]

To the                                                                                   08 EX.2016.5802

[stamp: ] RECEIVED                                                                        [hw:] *M7*

30 March 2020          Princely High Court by way of the Princely

Regional Court

and to the

Regional Court

9490 Vaduz


Creditor and respondent:

                Vitaly Ivanovich Smagin
                Krasnoproletarskaya st., h. 9
                127006 Moscow
                Russia

                represented by:

                Law Practice Seeger, Frick & Partner AG
                Landstrasse 81
                9494 Schaan


Obligor and appellant:

                Ashot Yegiazaryan
                655 Endrino Place
                Beverly Hills
                90210 California
                United States of America

                represented by:

                [signature]
                [logo:] Walch & Neuti
                ATTORNEYS AT LAW LTD
                LAWYERS AG

                Zollstrasse 2, FL-9490 Vaduz
                Tel.: +41 44 244 20 00, Fax: + 41 44 244 21 00

                (Appeal to power of attorney according to Art. 8 para. 2 RAG
                and Art. 51 EO (Exekutionsordnung [Enforcement Order])  in

connection with § 28 para. 2 ZPO (Zivilprozessordnung [Code of Civil Procedure]))

<u>Third-party debtor:</u>

CTX TREUHAND AG
c/o Dr iur. Thomas Wilhelm
Lova Centre
9490 Vaduz

<u>in its capacity as trustee of the company registered under</u>

ALPHA TRUST
(FL-0002.510.771-1)

known trusteeship

<u>represented by:</u>

Wilhelm & Büchel Lawyers
Lova Centre
9490 Vaduz

<u>concerning:</u>

Enforcement (CHF 91,605,445.97)

<u>against:</u>

Decision of the Princely
Regional Court of 02 March 2020, ON (Ordnungsnummer [Status Number]) 109

# Appeal including application for inhibitory effect

<u>fourfold</u>

<u>insert according to directory</u>

In the case described below, the former legal representatives of the obligor and current appellant (as defined by the "**obligor**") were served with the decision of the Princely Regional Court of 02 March 2020, ON 109, on 09 March 2020. In the meantime, the obligor has entrusted and appropriately authorised the signed legal representative with his legal representative. The signed legal representative refers to the power of attorney in accordance with Art. 8 para. 2 RAG and Art. 51 EO in conjunction with § 28 para. 2 ZPO.

The obligor hereby challenges the decision, ON 109, within an open period

# Appeal

to the Princely High Court.

The decision, ON 109, is challenged in its entirety. The grounds of appeal are incorrect legal assessment, defectiveness of the proceedings and invalidity. The following is explained in detail:

## A.   Appeal statements

*1.*      In the order contested in the present case, the Princely Regional Court granted the exploitation of the :universal rights" to which the obligor, in his capacity as settlor, protector and beneficiary of ALPHA TRUST, was to be entitled vis-à-vis CTX TREUHAND AG as trustee of ALPHA TRUST (ON 109, Point 1.1). Previously, these "universal rights" had already been seized under the enforcement permit, ON 3.

*2.*      Point 1.1 of the contested order further specifies the "total rights" concerned. Accordingly, the recovery authorisation should cover in particular

      a.   the right to receive payments and benefits of all kinds from the Trust Property;

      b.   the right to appoint and dismiss the trustees of ALPHA TRUST;

      c.   the right of the trustee (sic!) to terminate the ALPHA TRUST;

d.   the right of the trustee (sic!) to appoint the beneficiaries of ALPHA TRUST;

e.   the right of the trustee (sic!) to amend the trust deeds of ALPHA TRUST;

f.   the right of the trustee (sic!) to delegate all the trustee's rights, including his discretionary powers; and

g.   the right of trustee (sic!) to exercise all rights of the *first schedule* of the *Declaration of Trust*.

3.   Subsequently, the contested decision authorises the creditor in particular to replace the obligor:

a.   to recall the current trustee of ALPHA TRUST with immediate effect and to appoint a new trustee for ALPHA TRUST at his own discretion; and

b.   by the trustee so appointed a distribution to the obligor in the amount of the claim subject to the proceedings, alternatively the appointment of the creditor as beneficiary, and then a distribution to itself "*to demand and wish*" and to agree to such a distribution in exercise of the protector rights of the obligor.

4.   In so far as the contested order covers rights of third parties, namely the trustee, the contested order is unlawful on that ground alone. Following Rz.(Randziffer [marginal number]) 8 et seq.

5.   In so far as the rights covered by the contested decision are vested in the obligor, they are not exploitable. They do not represent a realisable asset. Following Rz. 13 et seq.

6.   Furthermore, the contested order also proves to be unlawful because, as a result, in the context of enforcement proceedings, a third party not involved in the proceedings was held liable without that third party ever having had the opportunity to defend itself in ordinary civil proceedings. This is inadmissible. Following Rz. 31 et seq.

7.   Apart from that, the contested order is in any event grossly excessive and thus disproportionate. As a result of the contested decision, the creditor is placed in a

position to control ALPHA TRUST completely and to proceed with it as he pleases. This is not the case. Following Rz. 38 et seq.

1.      <u>Rights of third parties not enforcement object in the sense of Art. 241 et seq. EO</u>

8.    Excision object in the sense of Art. 241 et seq. EO can in any case only be property rights **of the obligor**.[1] In contrast, property rights of third parties cannot be the object of enforcement.

9.    Point 1.1 names as object of enforcement the "universal rights" to which the obligor in his capacity as settlor, protector and beneficiary of the ALPHA TRUST is entitled vis-à-vis CTX TREUHAND AG as trustee of the ALPHA TRUST. In the following, however, in order to further specify these "total rights", various rights will be mentioned which are not due to the obligor but to the trustee of ALPHA TRUST. These are the Trustee's right to terminate the ALPHA TRUST, the Trustee's right to appoint the beneficiaries of the ALPHA TRUST, the Trustee's right to amend the trust instruments of the ALPHA TRUST, the Trustee's right to delegate all the Trustee's rights, including his discretionary powers, and the Trustee's right to exercise all the rights set out in the *First Schedule* of *Declaration of Trust*.

10.    If the listing of the aforementioned rights in the ruling of the contested order is of independent legal significance (which the Court of First Instance itself does not seem to assume; cf. ON 109, Erw. (Erweiterung [Extension]). 9.1), the contested order infringes the provisions of Art. 241 et seq. EO, according to which, as mentioned at the beginning, only property rights **of the obligor** can be the object of enforcement.

11.    If, on the other hand, the opinion of the Court of First Instance had been that the trustee's aforementioned rights should be covered by the enforcement order in the event that the obligor appoints himself as trustee, the contested order would be contradictory in itself. Point 1.1 of the contested decision refers only to the

---

[1] *Oberhammer* in *Angst/Oberhammer*, EO[3] § 331 EO (Status 01/07/2015, rdb.at) Rz. 3.

"universal rights" of the obligor **in his capacity as settlor, protector and beneficiary** of ALPHA TRUST, not in its capacity as a potential trustee.

12.   In any event, the naming of the trustee's rights in the judgment under appeal is therefore unlawful.

## 2.   Lack of usability

13.   In so far as the contested decision concerns rights of the obligor (and not rights of third parties) at all, those rights lack enforceability.

14.   The object of execution is the "universal rights" of the obligor **in his capacity as settlor, protector and beneficiary** of ALPHA TRUST. In the order under appeal, the Court of First Instance omits to state in detail to what extent the rights to which the obligor is to be entitled in these properties are to be suitable for realising realisable assets or for enabling access to realisable assets. Rather, the Court of First Instance leaves it at the general assertion that the rights in question are all "*at least indirectly relevant*", in terms of property law, they are all "*realisable and asset*", because they are "*all suitable for realising usable assets and enabling access to usable assets*" (ON 109, Erw. 9.3). However, the Court of First Instance does not explain why this should be so.

15.   In fact, on closer inspection it becomes clear that, in fact and in truth, none of the rights to which the obligor **in his capacity as settlor, protector and beneficiary** only indirectly allows access to usable assets:

    a.   If the contested decision "total rights" of the obligor in his capacity <u>as settlor,</u> is not clear from the beginning, which rights could be meant by this. The settlor has no powers under the Trust Instrument. Furthermore, Art. 918 para. 1 PGR (Personen- und Gesellschaftsrecht [Law of persons and company law]) already prohibits the drawing up of provisions which bind the trustee to continuous instructions of the settlor.

    b.   In so far as the contested decision covers "total rights" of the obligor in his capacity <u>as protector</u>, it should be noted that the protector - apart from the power to change the trustee - has only approval powers. In contrast, the

protector does not have the right to dispose of the trust property independently.

With respect to the right to replace the trustee, it should be noted that the right of the protector to appoint and remove the trustee is not subject to any conditions under the relevant instruments. However, Art. 918 para. 1 PGR, as mentioned above, stipulates that the settlor cannot draw up provisions which bind the trustee to continuous instructions from the settlor. In constellations in which, as in the present case, the settlor has a right of recall vis-à-vis the trustee (e.g. due to his position as protector), this can only mean that the settlor cannot constantly threaten the trustee to have the Sword of Damocles of recall if the trustee does not implement the settlor's wishes. Rather, a right to dismissal (at least in such constellations) may only serve to "*control and enforce the obligations of the trustee*" (see also ON 36, Erw. 6.6.8).[2]

Thus, even if the trust instrument grants the protector an unlimited right of dismissal, this right can only exist within the limits of Art. 918 para. 1 PGR. Since it is not clear to what extent CTX TREUHAND AG as trustee of ALPHA TRUST should have violated its duties (and this was not determined by the Court of First Instance), the liable party in its capacity as protector does not currently have a right of dismissal against the trustee. Accordingly, the creditor cannot be authorised to exercise such a (non-existent) right instead of the obligor. As the Court of First Instance correctly stated in the contested order, "*the rights of the authorised operating creditor are equivalent to those of the obligor*" (ON 109, Erw. 9.1).

However, even if one were to affirm at this point in time a right of recall of the obligor vis-à-vis the trustee, this would in any event not allow access to realisable assets. This is because the power to dispose of the Trust Property

---

[2]As well as öOGH (österreichischer Oberster Gerichtshof [Austrian Supreme Court]) of 14 July 2011, 3 Ob 177/10s, where the ÖOGH also stated an enforcement-friendly argument could be countered by "*the counter-prognosis*" that "*an advisory board appointed by the authorised creditor under dismissal of the foundation's purpose and make excessive contributions to the beneficiary*[i.e. the creditor]". It is therefore quite obvious that "*Founder's rights to recall and appoint members of the board of directors are deemed to be non-executable*".

remains in any event with the Trustee, who manages the Trust Property at his sole discretion and also decides on distributions at his sole discretion. It is already in the nature of a Settlement under Liechtenstein law that the power of disposition over the trust property always remains with the trustee.

In the contested order, the Court of First Instance argues in this context that the obligor could also appoint himself as trustee and thus gain access to the trust property by subsequently deciding on a distribution to himself. In this case, however, it would not be rights of the obligor in his capacity as settlor, protector or beneficiary that would enable him to access the trust property, but rights of the obligor in his capacity as trustee. However, such rights are not covered by the contested decision (it explicitly refers only to the "comprehensive rights" of the obligor in his capacity as settlor, protector and beneficiary), and the creditor did not apply for such rights in his application for enforcement, ON 34.

c.  In so far as the contested decision ultimately covers "total rights" of the obligor in his capacity <u>as beneficiary</u>, it must again be pointed out that ALPHA TRUST is a purely discretionary trusteeship without beneficiaries. The trustee has sole discretion to make distributions to the beneficiaries.

Contrary to the view of the Court of First Instance, the *Letter of Wishes* of 27 May 2015 does not change this. This was drawn up at the same time as the Trust was established. Its legal significance is limited to concretising the ideas of the settlor, in the same way as a founder can do this on the occasion of the establishment of the foundation in a foundation charter, without thereby changing the character of the foundation as a discretionary foundation, if it is structured as a discretionary foundation according to the articles. In addition, the *Letter of Wishes* expressly stated that it was not binding on the trustee.

Insofar as in point 1.1 c) of the contested decision of a "*actual existing right of instruction*" of the obligor to the trustee of the ALPHA TRUST, there is a **<u>lack of reasoning</u>**. There are no findings or legal considerations in the contested order concerning such an alleged right of instruction.

16.     If viewed correctly, it was obviously also clear to the Court of First Instance that only the "total rights" of the obligor in his capacity as settlor, protector and beneficiary would not allow the creditor to access the trust property of ALPHA TRUST. For this very reason, the creditor had to be authorised in the contested order to remove the current trustee of ALPHA TRUST and to replace her at her own discretion by a new (compliant) trustee. It is precisely this, however, that makes it clear that the "comprehensive rights" of the obligor in his capacity as settlor, protector and beneficiary are not asset rights: In order to be "asset-rich", it is precisely these rights (i.e. the rights of the obligor as settlor, protector and beneficiary) which should enable the creditor to access the trust property without first having to replace the trustee with a trustee who is well-disposed towards the creditor. In other words, the rights concerned would only be an "asset" if these very rights (i.e. the rights of the obligor as settlor, protector and beneficiary) enabled the creditor to access the Trust Property even if the trustee was not well disposed towards him. However, this is not the case. For this reason, the creditor would like to use CTX TREUHAND AG with lawyers Raphael Näscher and Rudolf Schächle, who are sympathetic towards him. [3]

17.     The possibility of appointing a trustee sympathetic to him may **in fact** give the creditor access to the Trust Property. This does not change the position. The fact that a particular Trustee may be more sympathetic to a particular Discretionary Beneficiary than another Trustee does not create a **right** of the Discretionary Beneficiary, nor does it make a Discretionary Trust with Beneficiaries. **Only the right position (and not the factual circumstances) is decisive for the question of whether assets <u>rights</u> can be said to exist.**

18.     The Court of First Instance disregarded all of this when it stated in the order under appeal that the "*exercise of the individual rights*" mentioned above was capable of realising usable assets, in that the creditor "*firstly in place of the*

---

[3]Mr Näscher is the husband of Ms  Christine Reiff-Näscher, who in turn is an employee of Advocatur Seeger, Frick & Partner AG, i.e. the creditor's legal representative, which the liable party had already pointed out in its statements ON 88 and 97 on the application for exploitation ON 97, but which the court of first instance did not mention at all in the contested order, which is why there is also a **lack of reasoning**.

*obligor vis-à-vis the Alpha Trust, requested the removal of the previous trustee of the Alpha Trust (CTX) and the appointment of a person designated by the prosecuting party as trustee of the Alpha Trust, secondly, then request a distribution - that of the amount owed - from the trustee of the Alpha Trust (designated by the prosecuting party) to the liable party to a paying agent to be designated by the prosecuting party, and thirdly, in place of the liable party (in its position as protector and beneficiary), agree to this distribution and its enforcement.*" (ON 109, Erw. 9.3).

19. **What the Court of First Instance forgets is the fact that in any case, in addition to the above steps, a corresponding distribution resolution by the trustee is required.   And this is precisely what the liable party - and consequently also the creditor - has no legal claim to. It is precisely for this reason that the current   trustee must first be replaced by a compliant trustee.**

20. According to what has been said, it is also incomprehensible if the Court of First Instance considers that "*even the exercise of the rights from the Letter of Wishes (appointment of the debtor party as beneficiary, request and approval of the distribution to the latter) is exploitable)*" and "*enables the creditor party to access exploitable assets*" (ON 109, Erw. 9.3). If this were the case, the detour via the prior reappointment of the trustee would not be necessary. It would then be sufficient to authorise the creditor to exercise the (alleged) rights of the obligor under the *Letter of Wishes*. However, both the court of origin and the creditor seem to assume that this is just not enough.

21. In its decision, ON 72, the Princely Supreme Court considered that the founder's total rights vis-à-vis a private foundation would be subject to execution if he had reserved the right of revocation and was the ultimate beneficiary or had reserved a right of modification (ON 72, Erw. 7.5.1). The Austrian Supreme Court also considered that the "*total rights[...] to which the founder of a private foundation is entitled are subject to enforcement under §§ 331 et seq. EO notwithstanding the provision of § 3 para. PSG (Privatstiftungsgesetz [Private Foundation*

*Act])", if he reserved the right of revocation and is at least partially the ultimate beneficiary under the declaration of foundation or under § 36 para. 4 PSG, and/or reserved the right to amend ".*[4]

22.   Conversely, this means that the total rights of the founder are not subject to execution if he has not reserved the right of revocation or amendment. There is no apparent reason why this should not also apply to trusts. The obligor has not reserved any right of revocation or amendment. Consequently, according to the Austrian Supreme Court, his "total rights" are also not exploitable.

23.   In summary, it must therefore be stated that the execution object in question, namely the "universal rights" of the obligor in his capacity as settlor, protector and beneficiary of ALPHA TRUST vis-à-vis CTX TREUHAND AG as trustee of ALPHA TRUST, lacks exploitability. They do not provide access to realisable assets because the right to decide whether to distribute to the obligor (or creditor) ultimately remains with the trustee, however you twist and turn it. And their rights cannot be the subject of the contested order.

24.   The obligor already mentioned all this in its comments, ON 88 and 97, on the application for recovery, ON 34. The Court of First Instance did not deal with this argument in the contested order because it considered that the "*objections of the party under an obligation and the garnishee [...] repeated to a large extent the arguments put forward in the appeals in the 'attachment proceedings'", which is no longer relevant in the present recovery proceedings*". In addition, the Supreme Court and the State Court had " *already explained a great deal and conclusively and had made a final decision.* " (ON 109, Erw. 9.4).

25.   In fact, however, the Princely Supreme Court held in its decision ON 72 in the attachment proceedings that the question of usability for the purposes of the attachment proceedings could ultimately be left open, since this was "*reserved for an all due realisation of the total rights of the obligor*" (ON 72, Erw. 7.4.3.). Specifically, the Princely Supreme Court considered that " *the attachment of the founder's entire rights does not automatically mean that the realisation of the*

---

[4] RS0120752.

*founder's rights by authorising the enforcing creditor to exercise all the founder's individual rights* ", (ON 72, Erw. 7.6.2.). " *The fact that an execution can be carried out on universal rights in accordance with §§ 242 EO does not therefore say anything about whether the seized universal rights have an asset*", in the concrete case to be judged", the Princely Supreme Court continued (ON 72, Erw. 7.6.2.). The case law judges "*the assertion that the right to be seized may contain assets at the attachment stage is "generous*", therefore, " *if it should turn out that the right cannot be used at the exploitation stage, the individual application for exploitation - but not the application for attachment with regard to the total right - should be rejected*-" (ON 72, Erw. 7.6.2.). In the opinion of the Princely Supreme Court, the question of the enforceability of the rights to be executed should only arise at the exploitation stage, and not already at the attachment stage.[5]

26.   If, in the order under appeal, the Court of First Instance now refuses to deal with the arguments in question on the ground that those arguments had already been dealt with in the attachment proceedings with final effect, this not only infringes the obligated party's right to be heard, but amounts in effect to a denial of justice. In this way, the Court of First Instance prevents the obligated party from having the question of whether the "total rights" in question constitute an asset and usable right clarified in court at all: First, clarification of the question is refused in the attachment procedure because it does not yet arise there, and then it is not answered in the recovery procedure because it was allegedly already clarified in the attachment procedure.

27.   Consequently, the first instance proceedings are also vitiated by a **procedural defect** which is hereby alleged. For the relevance of this procedural defect, reference can be made to the above comments. Had the Court of First Instance dealt with the submissions of the obligor, it would have recognised that the "total rights" of the obligor in his capacity as settlor, protector and beneficiary of

---

[5]As well as *Oberhammer* in *Angst/Oberhammer*, EO[3] § 42 EO (status 01/07/2015, rdb.at) Rz. 10 with reference to 3 Ob 225/07: "*No 'binding effect' of the attachment of an a priori unseizable right for the decision on the request for recovery* ".

the ALPHA TRUST lacked substance or usability, and it would have had to dismiss the application for realisation, ON 34.

28.     Properly considered, however, there is not only a procedural defect, but even **invalidity** of the entire proceedings in question due to a lack of domestic jurisdiction:

29.     The Liechtenstein courts could only derive their jurisdiction for the present proceedings from § 50 JN (Jurisdiktionsnorm [Jurisdiction standard]). No other responsibilities are apparent. According to the above-mentioned provision, legal action may be brought against persons who are not domiciled in Liechtenstein for pecuniary claims in Liechtenstein if the assets of these persons or the object claimed with the action are themselves located in Liechtenstein. In the case of claims, the domicile of the third-party debtor is deemed to be the place where the assets are located.

30.     Only the (alleged) "total rights" of the obligor vis-à-vis ALPHA TRUST can be considered in this case as such assets constituting a property jurisdiction. However, these "total rights" are precisely not suitable for a property court . For "assets" within the meaning of § 50 JN are only assets that can be used in an executive capacity.[6] As shown in detail, however, the "total rights" in question lack the ability to be exploited by the executive.

3.      Inadmissible liability penetration

31.     Apart from that, the contested order is unlawful because, as a result, in the context of execution proceedings, almost *en passant*, a third party (the ALPHA TRUST) was summarily held liable without that third party ever having had the opportunity to defend itself against the enforcement in ordinary civil proceedings, without, therefore, a court with full knowledge ever having assessed, in adversarial proceedings, the complex questions arising in that connection.

32.     In the order under appeal, the Court of First Instance states:

---

[6] *Simotta* in *Fasching/Konecny*[3] § 99 JN (status 30/11/2013, rdb.at) Rz. 20 et seq., in particular Rz. 26.

"*As the Supreme Court has already stated, even an actual discretionary advantage would not prevent the exploitation of the seized rights (ON 72, Erw 7.4.3., see also Erw. 7.6.4.). The prosecuting party is also right to point out **that, even if the administration were formally to be discretionary, this would not alter the fact that the trust property would have to be used to satisfy the prosecuting party's enforceable claim.***" (ON 109, Erw. 9.4; emphasis added)

33. The opinion of: The ALPHA TRUST should be liable for the debts of the obligor. The Court of First Instance does not say why this should be so. However, it is clear that, according to Liechtenstein diction, this is nothing more than a liability enforcement action.

34. In a ruling of 03 July 2017, the State Court considered that a breakthrough can always "*only the material result of a form procedure carried out in compliance with the form*".[7] Referring to earlier rulings of the Supreme Court of Justice of the Principality of Liechtenstein, the State Court had already previously stated that the enforcement of liability is an *ultima ratio* which may only be used with great restraint, whereby the abuse may only be established as a precondition for enforcement in court proceedings in which the legal person concerned is a party.[8]

35. This is not the case here. On the contrary, the contested decision resulted in a decision to seek recourse against ALPHA TRUST, without the preconditions for recourse ever having been examined in court proceedings in which ALPHA TRUST was a party. The third party affected by the enforcement of liability, namely ALPHA TRUST, never had the opportunity to defend itself against the enforcement in ordinary civil proceedings. He was simply presented with a fait accompli. This is inadmissible in the light of the case law of the State Court and the Princely Supreme Court just cited.

36. If the creditor wants to make ALPHA TRUST liable for the debts of the obligor, the creditor cannot avoid first suing ALPHA TRUST after what has been said. If

---

[7]StGH (Staatsgerichtshof [State Court of Justice]) dated 03 July 2017, StGH 2017/48, LES 2018, 2, Erw. 2.3.
[8]StGH dated 18 September 2007, GE 2009, 306, Erw. 5.1, with reference to OGH dated 12 January 2006, LES 2006, 388, Erw. 9.2.

the result of these proceedings is that ALPHA TRUST is liable for the debts of the obligor (e.g. due to an enforcement of liability or as a result of a creditor's challenge in accordance with RSO), the creditor can then execute execution against ALPHA TRUST on the basis of this judgment and thus make himself paid from the trust property of ALPHA TRUST.

37. Both the enforcement of liability and the challenge of creditors are linked in Liechtenstein law to strict conditions, which can only be examined in ordinary civil proceedings. An enforcement trial is not the right setting for this. It is not acceptable to simply brush aside the statutory provisions on the enforcement of liability and the creditor's challenge without further ado by means of execution proceedings, which are not even conducted against the party affected by the enforcement or the challenge.

## 4.    Disproportionality

38. As with any state action, the constitutional principle of proportionality also applies to interventions in the legal position of the debtor in the context of execution proceedings. This requires that measures such as execution be taken against the rights of private individuals while protecting the rights and freedoms of those individuals as far as possible. The state measures must therefore be appropriate to achieve the objective pursued in the public interest (appropriateness). The restriction of freedom may not go further than required by the public interest (necessity). Furthermore, the intended purpose must be in reasonable proportion to the burdens imposed on private parties (reasonableness).

39. The contested decision authorised the creditor to exercise all the rights to which the obligor was entitled as settlor, protector and beneficiary of ALPHA TRUST. In particular, the creditor has been authorised to replace the current trustee with a trustee or even to use himself as trustee of the ALPHA TRUST and also itself as a beneficiary of the ALPHA TRUST and also to use itself as beneficiary.

40. As a result, the creditor was put in a position to fully control ALPHA TRUST and proceed with it as he pleases. The creditor could theoretically distribute to

himself the entire trust property (and not just the amount of his claim) and would not be liable to prosecution or liability even if he had previously appointed himself (or had the trustees appointed by him) as the beneficiary. It was then simply a distribution to a discretionary beneficiary.

41.   This was admitted even by the creditor in their application for recovery, ON 34, when they stated:

> "*[A]fter full satisfaction of the prosecuting party, the previously acting persons can act accordingly again anyway, and they could-* **if the prosecuting party, despite full satisfaction, would not give up their rights transferred by way of executive authorisation** *– immediately recall the prosecuting party in this case anyway.*" (ON 34, p. 9; emphasis added)

42.   However, the argument that the "*persons acting so far*" could "*immediately recall*" the creditor after the work was done is not very convincing. For the previously acting trustee, i.e. CTX TREUHAND AG, this does not apply in any case if it is now recalled by the creditor. They do not automatically become a trustee again simply because the creditor receives payment of his claim. Rather, it depends solely on the creditor's goodwill whether he reappoints CTX TREUHAND AG as trustee after the work is done or not. In the meantime, the creditor could also restructure the ALPHA TRUST according to his ideas. In particular, he could make further distributions, exchange beneficiaries, amend the trust deed, etc.

43.   It is obvious that this is completely untenable and unreasonable for ALPHA TRUST or the trust participants. The Austrian Supreme Court stated in its decision of 14 July 2011, already cited, that an execution-friendly argument could be countered by the "*counter-prognosis*" that " *an advisory board appointed by the authorised operating creditor would act in disregard of the foundation's purpose and make excessive contributions to the beneficiary* [i.e. the creditor]". It is therefore quite obvious that "*founder's rights to recall and appoint members of the board of directors are not executable*".[9]

---

[9] öOGH dated 14 July 2011, 3 Ob 177/10s, p. 14.

44.   In fact, only a retention of the current trustee would ensure that only the distribution requested by the creditor would be made and that otherwise the continued existence and nature of ALPHA TRUST would not be affected.

45.   Of course, the creditor will argue that retaining the current trustee would not guarantee that he will receive the payment he is seeking. However, if viewed correctly, this only shows once again that the "total rights" of the obligor in his capacity as settlor, protector and beneficiary of ALPHA TRUST are not property rights, as they do not provide access to realisable assets. This is where the circle closes, so to speak.

## B.   Requests

For the purposes of the above, the appellant therefore submits the following

# Requests:

The Princely Court of Appeal intends to follow the present appeal against the decision of the Princely Regional Court of 02 March 2020, ON 109, and to grant the appeal:

1.   set aside the contested decision, ON 109, on the ground that it is void in the absence of domestic jurisdiction and annul the entire procedure in the absence of domestic jurisdiction;

*in eventu:*

2.   amend the contested decision, ON 109, to the effect that the respondent's motion of 24 July 2017, ON 34, is dismissed in its entirety;

*in subeventu:*

3.   set aside the contested order, ON 109, and refer the case back to the Princely Court of Appeal for reconsideration and judgment, subject to the legal opinion of the Princely High Court

as well as:

4.   order the respondent to reimburse the costs of the present appeal proceedings listed below within four weeks for the attention of the designated legal representative of the appellant in the event of any other execution.

Furthermore, the applicant shall provide a

# request for inhibiting effect

and explains in detail what follows:

46.   Admittedly, Article 24 lit. g EO provides that in the event of an appeal against the order authorising the execution, the execution may be postponed (suspended) and, due to the purely subsidiary application of the provisions of ZPO in the execution proceedings, such an appeal cannot therefore be granted the suspensive effect provided for in Article 51 EO in conjunction with § 492 para. 2 ZPO if the conditions for a deferment pursuant to Art. 24 lit. g EO are not met.[10] However, Art. 24 lit. g EO only applies to appeals against the order of enforcement, i.e. the order by which the enforcement is initiated, and not to other orders issued in the enforcement proceedings.[11] Since the Enforcement Order thus contains no corresponding provision for appeals against such other decisions, there is nothing to prevent a subsidiary application of § 492.2 ZPO in the execution proceedings to appeals other than those against the grant of an execution permit.[12]

47.   According to Art. 51 EO in conjunction with § 492 para. 2 ZPO the court against whose decision an appeal has been lodged must, on application, order the temporary suspension of enforceability if the other party does not suffer any disproportionate disadvantage from the suspension and if the purpose of the appeal would be frustrated without such suspension. § 492 para. 2 ZPO requires a weighing of interests, i.e. a comparison of the reasonableness of the

---

[10] *Jakusch* in *Angst/Oberhammer*, EO[3] § 42 EO (status 01/07/2015, rdb.at) Rz. 3.

[11] *Jakusch* in *Angst/Oberhammer*, EO[3] § 42 EO (status 01/07/2015, rdb.at) Rz. 52.

[12] *Jakusch* in *Angst/Oberhammer*, EO[3] § 42 EO (status 01/07/2015, rdb.at) Rz. 3.

suspension and the associated disadvantages for the other party on the one hand and the prospects of success of the appeal and the objective disadvantages arising from the execution of the resolution on the other.[13]

48. With the present appeal, the appellant is defending themselves against an order of the Princely Regional Court, by which the exploitation of the "total rights" to which the appellant is entitled in his capacity as settlor, protector and beneficiary of ALPHA TRUST against CTX TREUHAND AG as trustee of ALPHA TRUST was approved. At the same time, the respondent was authorised by the contested order to exercise these "total rights" instead of the appellant and in particular to replace the current trustee by a trustee acceptable to the respondent or even to appoint himself as a trustee and, in addition, to appoint himself (or have himself appointed) as a beneficiary of ALPHATRUST.

49. The contested order thus grants the respondent far more than just the possibility of making the payment requested by him available. It allows the respondent to take over complete control of ALPHA TRUST and to change it at his own discretion, whereby the respondent may also make such changes which cannot be easily reversed afterwards. In fact, the contested order allows the respondent to appoint himself both as trustee and beneficiary of the ALPHA TRUST and subsequently pay off the entire trust property (and not only trust property in the amount of the claim in question), whereby the respondent would not even make himself responsible or liable to prosecution because he would then be the beneficiary. In fact, CTX TREUHAND AG had already been contacted by Mr Näscher and Mr Schächle, attorneys at law, and requested to hand over all assets of ALPHA TRUST because they had been appointed as new trustees of ALPHA TRUST by the respondent. The respondent is therefore already in the process of making changes. Such reorganisations could no longer be reversed if the contested order were subsequently set aside by the appellate bodies. It is thus evident that without the inhibitory effect, the purpose of the present appeal would be thwarted.

---

[13] *Kodek* in *Rechberger*, Code of Civil Procedure [4], Art. 524 Rz. 2.

Proof:          -    Letter from the law firm Wohlwend Näscher Schächle to Wilhelm & Büchel Lawyers dated 10 March 2020 (copy)

50.       However, even if the respondent were to leave it at that, an amount equal to the claim in question would be paid out of the trust property, there would be an irreparable disadvantage. According to his own statements, the respondent is resident in Moscow. It can be assumed that he would transfer the money to Russia or otherwise abroad, so that it can be assumed that the legal action to recover the disbursed money in the event that the appealed decision is overturned by the appellate bodies would involve considerable difficulties.[14]

51.       In its decision, ON 15, regarding the petition of the current appellant to postpone the enforcement for the duration of the appeal proceedings against the enforcement permit, ON 3, the Princely Regional Court stated that this petition was to be dismissed because the current appellant did not face the risk of an irreplaceable or difficult to compensate property disadvantage. It stated:

> *"As the prosecuting party rightly points out, the enforcement of rights under Art. 242 et seq. EO, there is a risk of an irreplaceable or difficult to compensate property disadvantage at the earliest when the exploitation of the seized rights (by sale) has been approved or when a decision on the application for exploitation is imminent.  In the present case, the exploitation of the seized rights has not yet been approved, and the prosecuting party has not even submitted a concrete application for exploitation.  The danger feared by the liable party is therefore not (yet) imminent.  Contrary to the fears of the liable party, the prosecuting party is currently not allowed to exercise any rights at all.  At present, these rights are only attached and therefore - contrary to the further submissions of the liable party - currently cannot transfer any assets to the prosecuting party and abroad."*

52.       That situation has now been fundamentally altered by the contested decision. In the meantime, there is not only an exploitation application, but even a decision on exploitation. The pecuniary disadvantage which is threatened by the (possibly unlawful, because in the event of the revocation of the liquidation order unfounded) exercise of the "total rights" by the respondent or trustees to be appointed by the respondent and who are under their control is obvious.

---

[14] *Jakusch* in *Angst/Oberhammer*, EO[3] § 44 EO (status 01/07/2015, rdb.at) Rz.  6.

53.      It is thus evident that without the inhibitory effect, the purpose of the present appeal would be thwarted.

54.      With regard to the prospects of success of the present appeal, reference can be made to the above remarks on appeals. The prospects of success can be described as quite intact. The contested order is unlawful for a number of reasons. In fact, the entire procedure is null and void for lack of domestic jurisdiction.

55.      The last condition for the granting of an inhibitory effect set out in § 492 Para. 2 ZPO is also fulfilled in the present case. It is not evident to what extent the other party, i.e. the respondent, could suffer a disproportionate disadvantage as a result of the granting of the inhibitory effect. Finally, the "total rights" in question remain seized even if the inhibitory effect is granted. The respondent would only have to accept a certain time delay, whereby his claim would be secured by a lien at an interest rate of 5% p.a. with priority over any creditor joining later. On the other hand, the appellant and ALPHA TRUST would suffer a disproportionate disadvantage if the inhibitory effect were not granted.

Accordingly, the appellant makes the

# application,

the Princely Regional Court wanted to grant the temporary suspension of the appeal against the decision of the Princely Regional Court of 02 March 2020, ON 109.

Vaduz, 23 March 2020

MBL/NBI

Costs are recorded:
(Disputed value: CHF 91,605,445.97)

| | | | | | | | |
|---|---|---|---|---|---|---|---:|
| Appeal, TP 3B, 40% ES, 10% StGZ (Streitgenossenzuschlag [Disputes surcharge]) | | | | | | CHF | 83,160.00 |
| Input fee | | | | | | CHF | 170.00 |
| Decision fee | | | | | | CHF | 8,500.00 |

| | |
|---|---|
| **CHF** | **91,830.00** |

<u>Attachment:</u>

- Letter from the law firm Wohlwend Näscher Schächle to Wilhelm & Büchel Lawyers dated 10 March 2020 (copy)

An das

Fürstliche Obergericht
im Wege des Fürstlichen Landgerichts

und an das

Fürstliche Landgericht

9490 Vaduz

08 EX.2016.5802

E 24.03.2020 0 0 :0 8

Postaufgabe:

EINGEGANGEN

3 0. März 2020,

2 3. März 2020

Gläubiger und
Rekursgegner:

Vitaly Ivanovich Smagin
Krasnoproletarskaya st., h. 9
127006 Moskau
Russland

vertreten durch:

Advocatur Seeger, Frick & Partner AG
Landstrasse 81
9494 Schaan

Verpflichteter und
Rekurswerber:

Ashot Yegiazaryan
655 Endrino Place
Beverly Hills
90210 California
Vereinigte Staaten von Amerika

vertreten durch:

WALCH & SCHURTI
ATTORNEYS AT LAW LTD
RECHTSANWÄLTE AG

Zollstrasse 2, FL-9490 Vaduz
Tel.: +41 44 244 20 00, Fax: + 41 44 244 21 00

(Berufung auf Vollmacht gemäss Art. 8
Abs. 2 RAG und Art. 51 EO i.V.m. § 28
Abs. 2 ZPO)

Drittschuldnerin:                     CTX TREUHAND AG
                                      c/o Dr. iur. Thomas Wilhelm
                                      Lova-Center
                                      9490 Vaduz

                                      in ihrer Eigenschaft als Treuhände-
                                      rin der unter dem Namen

                                      ALPHA TRUST
                                      (FL-0002.510.771-1)

                                      bekannten Treuhänderschaft

                                      vertreten durch:

                                      Wilhelm & Büchel Rechtsanwälte
                                      Lova-Center
                                      9490 Vaduz



wegen:                                Exekution (CHF 91'605'445.97)



gegen:                                Beschluss des Fürstlichen
                                      Landgerichts zu vom 2. März 2020,
                                      ON 109




# REKURS SAMT ANTRAG AUF HEMMENDE WIRKUNG




                                                        vierfach
                                          Beilage lt. Verzeichnis

In umseits rubrizierter Rechtssache wurde den vormaligen Rechtsvertretern des Verpflichteten und nunmehrigen Rekurswerbers (i.d.F. der **"Verpflichtete"**) der Beschluss des Fürstlichen Landgerichts vom 2. März 2020, ON 109, am 9. März 2020 zugestellt. In der Zwischenzeit hat der Verpflichtete die unterzeichnete Rechtsvertreterin mit seiner rechtsfreundlichen Vertretung betraut und entsprechend bevollmächtigt. Die unterzeichnete Rechtsvertreterin beruft sich auf die erteilte Vollmacht gem. Art. 8 Abs. 2 RAG und Art. 51 EO i.V.m. § 28 Abs. 2 ZPO.

Der Verpflichtete erhebt hiermit gegen den Beschluss, ON 109, binnen offener Frist

## REKURS

an das Fürstliche Obergericht.

Der Beschluss, ON 109, wird seinem gesamten Inhalt nach angefochten. Als Rekursgründe werden unrichtige rechtliche Beurteilung, Mangelhaftigkeit des Verfahrens und Nichtigkeit geltend gemacht. Dazu wird im Einzelnen ausgeführt, was folgt:

## A    Rekursausführungen

1    Mit dem gegenständlich angefochtenen Beschluss bewilligte das Fürstliche Landgericht die Verwertung der "Gesamtrechte", welche dem Verpflichteten in seiner Eigenschaft als Treugeber, Protektor und Begünstigter des ALPHA TRUST gegenüber der CTX TREUHAND AG als Treuhänderin des ALPHA TRUST zustehen sollen (ON 109, Spruchpunkt 1.1). Zuvor waren diese "Gesamtrechte" im Rahmen der Exekutionsbewilligung, ON 3, bereits gepfändet worden.

2  In Spruchpunkt 1.1 des angefochtenen Beschlusses werden die betroffenen "Gesamtrechte" näher spezifiziert. Demnach soll von der Verwertungsbewilligung insb. erfasst sein:

  a. das Recht zum Erhalt von Zahlungen und Zuwendungen aller Art aus dem Treugut;

  b. das Recht zur Bestellung und Abberufung der Treuhänder des ALPHA TRUST;

  c. das Recht des Treuhänders (sic!) zur Beendigung des ALPHA TRUST;

  d. das Recht des Treuhänders (sic!) zur Bestellung der Begünstigten des ALPHA TRUST;

  e. das Recht des Treuhänders (sic!) zur Änderung der Treuhandurkunden des ALPHA TRUST;

  f. das Recht des Treuhänders (sic!) zur Delegation sämtlicher Rechte des Treuhänders einschliesslich seiner Ermessensbefugnisse; und

  g. das Recht des Treuhänders (sic!) zur Ausübung sämtlicher Rechte der in der *First Schedule* der *Declaration of Trust* festgelegten Rechte.

3  In weiterer Folge wird der Gläubiger im angefochtenen Beschluss insb. ermächtigt, anstelle des Verpflichteten:

  a. die derzeitige Treuhänderin des ALPHA TRUST mit sofortiger Wirkung abzuberufen und nach seinem eigenen Gutdünken eine neue Treuhänderin für den ALPHA TRUST zu bestellen; und

  b. von der so bestellten Treuhänderin eine Ausschüttung in Höhe der verfahrensgegenständlichen Forderung an den Verpflichteten, alternativ die Bestellung des Gläubigers als Begünstigter, und sodann eine Ausschüttung an sich selber "*zu fordern und zu wünschen*" und einer solchen Ausschüttung in Ausübung der Protektorenrechte des Verpflichteten zuzustimmen.

*4*    Soweit vom angefochtenen Beschluss Rechte Dritter, nämlich der Treuhänderin, umfasst sind, ist der angefochtene Beschluss allein aus diesem Grund rechtswidrig. Nachfolgend Rz. 8 ff.

*5*    Soweit die vom angefochtenen Beschluss erfassten Rechte dem Verpflichteten zustehen, mangelt es diesen an der Verwertbarkeit. Sie verkörpern keinen realisierbaren Vermögenswert. Nachfolgend Rz. 13 ff.

*6*    Ferner erweist sich der angefochtene Beschluss auch deshalb als rechtswidrig, weil damit im Ergebnis im Rahmen eines Exekutionsverfahrens ein Haftungsdurchgriff auf einen unbeteiligten Dritten vorgenommen wurde, ohne dass dieser Dritte jemals die Gelegenheit gehabt hätte, sich in einem ordentlichen Zivilverfahren zur Wehr zu setzen. Dies ist unzulässig. Nachfolgend Rz. 31 ff.

*7*    Abgesehen davon ist der angefochtene Beschluss jedenfalls krass überschiessend und damit unverhältnismässig. Durch den angefochtenen Beschluss wird der Gläubiger im Ergebnis in die Lage versetzt, den ALPHA TRUST vollständig zu kontrollieren und mit diesem zu verfahren, wie es ihm beliebt. Dies geht nicht an. Nachfolgend Rz. 38 ff.

1.   <u>Rechte Dritter nicht Exekutionsobjekt i.S.v. Art. 241 ff. EO</u>

*8*    Exekutionsobjekt i.S.v. Art. 241 ff. EO können in jedem Fall nur Vermögensrechte **des Verpflichteten** sein.[1] Vermögensrechte Dritter können demgegenüber nicht Exekutionsobjekt sein.

*9*    Spruchpunkt 1.1 nennt als Exekutionsobjekt die "Gesamtrechte", welche dem Verpflichteten in seiner Eigenschaft als Treugeber, Protektor und Begünstigter des ALPHA TRUST

---

[1] *Oberhammer* in *Angst/Oberhammer*, EO[3] § 331 EO (Stand 01.07.2015, rdb.at) Rz. 3.

gegenüber der CTX TREUHAND AG als Treuhänderin des ALPHA
TRUST zustehen. In weiterer Folge werden zur näheren Spe-
zifizierung dieser "Gesamtrechte" dann aber diverse Rechte
genannt, welche nicht dem Verpflichteten, sondern der
Treuhänderin des ALPHA TRUST zustehen. Genannt werden das
Recht des Treuhänders zur Beendigung des ALPHA TRUST, das
Recht des Treuhänders zur Bestellung der Begünstigten des
ALPHA TRUST, das Recht des Treuhänders zur Änderung der
Treuhandurkunden des ALPHA TRUST, das Recht des Treuhän-
ders zur Delegation sämtlicher Rechte des Treuhänders ein-
schliesslich seiner Ermessensbefugnisse, und das Recht des
Treuhänders zur Ausübung sämtlicher Rechte der in der
*First Schedule* der *Declaration of Trust* festgelegten
Rechte.

10   Sollte der Aufzählung der genannten Rechte im Spruch des
angefochtenen Beschlusses selbständige rechtliche Bedeu-
tung zukommen (wovon das Erstgericht selber nicht auszuge-
hen scheint; vgl. ON 109, Erw. 9.1), so verstiesse der an-
gefochtene Beschluss insoweit gegen die Bestimmungen der
Art. 241 ff. EO, wonach, wie eingangs erwähnt, nur Vermö-
gensrechte **des Verpflichteten** Exekutionsobjekt sein kön-
nen.

11   Sollte die Meinung des Erstgerichts demgegenüber gewesen
sein, dass die genannten Rechte des Treuhänders für den
Fall vom Verwertungsbeschluss umfasst sein sollten, dass
sich der Verpflichtete selber zum Treuhänder bestellt, so
wäre der angefochtene Beschluss in sich widersprüchlich.
Denn in Spruchpunkt 1.1 des angefochtenen Beschlusses ist
nur die Rede von "Gesamtrechten" des Verpflichteten **in
seiner Eigenschaft als Treugeber, Protektor und Begünstig-
ter** des ALPHA TRUST, nicht in seiner Eigenschaft als po-
tenzieller Treuhänder.

12    In jedem Fall erweist sich die Nennung von Rechten des
Treuhänders im Spruch des angefochtenen Beschluss somit
als rechtswidrig.

2.    Mangelnde Verwertbarkeit

13    Soweit der angefochtene Beschluss überhaupt Rechte des
Verpflichteten (und nicht Rechte Dritter) betrifft, man-
gelt es diesen Rechten an der Verwertbarkeit.

14    Exekutionsobjekt sind gegenständlich die "Gesamtrechte"
des Verpflichteten **in seiner Eigenschaft als Treugeber,
Protektor und Begünstigter** des ALPHA TRUST. Das Erstge-
richt unterlässt es im angefochtenen Beschluss, im Einzel-
nen darzutun, inwiefern die Rechte, die dem Verpflichteten
in diesen Eigenschaften zustehen sollen, geeignet sein
sollen, verwertbares Vermögen zu realisieren oder den Zu-
griff auf verwertbares Vermögen zu ermöglichen. Vielmehr
belässt es das Erstgericht bei der pauschalen Behauptung,
die fraglichen Rechte seien allesamt "*vermögensrechtlich
zumindest mittelbar relevant*", sie seien allesamt "*ver-
wertbar und vermögenswert*", denn sie seien "*allesamt ge-
eignet, verwertbares Vermögen zu realisieren bzw. den Zu-
griff auf verwertbares Vermögen zu ermöglichen*" (ON 109,
Erw. 9.3). Weshalb dies so sein soll, erklärt das Erst-
gericht jedoch nicht.

15    Tatsächlich wird bei genauerer Betrachtung klar, dass in
Tat und Wahrheit keines der Rechte, welche dem Verpflich-
teten **in seiner Eigenschaft als Treugeber, Protektor und
Begünstigter** zustehen, auch nur mittelbar den Zugriff auf
verwertbares Vermögen ermöglicht:

a.    Soweit der angefochtene Beschluss "Gesamtrechte" des
Verpflichteten in seiner Eigenschaft als Treugeber um-
fasst, ist von vornherein nicht klar, welche Rechte
damit gemeint sein könnten. Dem Treugeber kommen ge-
mäss Treuhandurkunde keine Befugnisse zu. Ausserdem

verbietet bereits Art. 918 Abs. 1 PGR das Aufstellen von Bestimmungen, welche den Treuhänder an fortlaufende Weisungen des Treugebers binden.

b. Soweit der angefochtene Beschluss "Gesamtrechte" des Verpflichteten in seiner Eigenschaft als Protektor umfasst, gilt es darauf hinzuweisen, dass dem Protektor - abgesehen von der Befugnis, den Treuhänder auszuwechseln - ausschliesslich Zustimmungsbefugnisse zukommen. Demgegenüber hat der Protektor nicht das Recht, eigenständig über das Treugut zu verfügen.

Was das Recht zur Auswechslung des Treuhänders angeht, gilt es festzuhalten, dass das Recht des Protektors zur Bestellung und Abberufung des Treuhänders gemäss den gegenständlichen Urkunden zwar nicht an Voraussetzungen gebunden ist. Allerdings ordnet Art. 918 Abs. 1 PGR, wie erwähnt, an, dass der Treugeber keine Bestimmungen aufstellen kann, welche den Treuhänder an fortlaufende Weisungen des Treugebers bindet. In Konstellationen, in welchen, wie vorliegend, dem Treugeber ein Abberufungsrecht gegenüber dem Treuhänder zukommt (z.B. aufgrund seiner Position als Protektor), kann dies nur bedeuten, dass der Treugeber dem Treuhänder nicht dauernd mit dem Damoklesschwert der Abberufung drohen kann, wenn der Treuhänder die Wünsche des Treugebers nicht umsetzt. Vielmehr darf ein Abberufungsrecht (zumindest in solchen Konstellationen) lediglich der "*Kontrolle und Durchsetzung der Pflichten des Treuhänders*" dienen (vgl. auch ON 36, Erw. 6.6.8).[2]

---

[2] So auch öOGH vom 14. Juli 2011, 3 Ob 177/10s, wo der öOGH ausserdem festhielt, einer exekutionsfreundlichen Argumentation könne "*die Gegenprognose entgegengestellt werden*", dass "*ein vom ermächtigten betreibenden Gläubiger bestellter Beirat unter Missachtung des Stiftungszwecks tätig sein und übermässige Zuwendungen an den Begünstigten* [d.h. den Gläubiger] *vornehmen werde*". Es habe deshalb einiges für sich, dass "*Stifterrechte auf Abberufung und Bestellung von Vorstandsmitgliedern als nicht exekutionsfähig*" gelten.

Selbst wenn also gemäss Treuhandurkunde dem Protektor ein unbeschränktes Abberufungsrecht zusteht, kann dieses stets nur innerhalb der Grenzen des Art. 918 Abs. 1 PGR bestehen. Nachdem gegenständlich nicht ersichtlich ist, inwiefern die CTX TREUHAND AG als Treuhänderin des ALPHA TRUST ihre Pflichten verletzt haben sollte (und solches vom Erstgericht auch nicht festgestellt wurde), steht dem Verpflichteten in seiner Eigenschaft als Protektor derzeit folglich auch kein Abberufungsrecht gegenüber der Treuhänderin zu. Entsprechend kann auch der Gläubiger nicht ermächtigt werden, ein solches (nicht bestehendes) Recht anstelle des Verpflichteten auszuüben. Wie das Erstgericht im angefochtenen Beschluss richtig ausführt, sind "*die Rechte des ermächtigten betreibenden Gläubigers jenen des Verpflichteten inhaltsgleich*" (ON 109, Erw. 9.1).

Doch selbst wenn man zum jetzigen Zeitpunkt ein Abberufungsrecht des Verpflichteten gegenüber der Treuhänderin bejahen würde, würde dieses jedenfalls nicht den Zugriff auf verwertbares Vermögen ermöglichen. Denn die Befugnis, über das Treugut zu verfügen, verbleibt in jedem Fall beim Treuhänder, welcher das Treugut nach seinem alleinigen Ermessen verwaltet und auch über Ausschüttungen nach seinem alleinigen Ermessen beschliesst. Es entspricht bereits dem Wesen der Treuhänderschaft liechtensteinischen Rechts, dass die Verfügungsbefugnis über das Treugut stets beim Treuhänder verbleibt.

Zwar argumentiert das Erstgericht im angefochtenen Beschluss in diesem Zusammenhang, dass sich der Verpflichtete auch selber als Treuhänder einsetzen und so Zugriff auf das Treugut erlangen könnte, indem er in weiterer Folge eine Ausschüttung an sich selber beschliessen könnte. In diesem Fall wären es aber nicht Rechte des Verpflichteten in seiner Eigenschaft als

Treugeber, Protektor oder Begünstigter, die ihm den Zugriff auf das Treugut ermöglichen würden, sondern Rechte des Verpflichteten in seiner Eigenschaft als Treuhänder. Solche Rechte sind vom angefochtenen Beschluss jedoch gerade nicht erfasst (die Rede ist explizit ausschliesslich von den "Gesamtrechten" des Verpflichteten in seiner Eigenschaft als Treugeber, Protektor und Begünstigter), und solches wurde vom Gläubiger in seinem Verwertungsantrag, ON 34, auch nicht beantragt.

c.  Soweit der angefochtene Beschluss schliesslich "Gesamtrechte" des Verpflichteten in seiner Eigenschaft als Begünstigter umfasst, gilt es abermals darauf hinzuweisen, dass es sich beim ALPHA TRUST um eine reine Ermessenstreuhänderschaft ohne Begünstigungsberechtigte handelt. Die Vornahme von Ausschüttungen an die Begünstigten steht im alleinigen Ermessen des Treuhänders.

Daran ändert entgegen der Ansicht des Erstgerichts auch der *Letter of Wishes* vom 27. Mai 2015 nichts. Dieser wurde gleichzeitig mit der Errichtung des Trust verfasst. Seine rechtliche Bedeutung beschränkt sich darauf, die Vorstellungen des Treugebers zu konkretisieren, gleich wie ein Stifter dies anlässlich der Stiftungserrichtung in einer Stiftungszusatzurkunde tun kann, ohne dadurch den Charakter der Stiftung als Ermessensstiftung zu ändern, wenn diese gemäss Statuten als Ermessensstiftung ausgestaltet ist. Zudem wurde im gegenständlichen *Letter of Wishes* ausdrücklich festgehalten, dass dieser für die Treuhänderin nicht verbindlich ist.

Soweit in Spruchpunkt 1.1 c) des angefochtenen Beschlusses von einem "*tatsächlich bestehenden Instruktionsrecht*" des Verpflichteten gegenüber der Treuhänderin des ALPHA TRUST die Rede ist, liegt ein **Be-**

11

**gründungsmangel** vor. Zu einem solchen angeblichen Instruktionsrecht finden sich im angefochtenen Beschluss nämlich weder Feststellungen noch rechtliche Erwägungen.

16  Richtig besehen war offensichtlich auch dem Erstgericht klar, dass allein die "Gesamtrechte" des Verpflichteten in seiner Eigenschaft als Treugeber, Protektor und Begünstigter es dem Gläubiger nicht erlauben würden, auf das Treugut des ALPHA TRUST zuzugreifen. Gerade aus diesem Grund musste der Gläubiger im angefochtenen Beschluss auch ermächtigt werden, die derzeitige Treuhänderin des ALPHA TRUST abzuberufen und nach eigenem Gutdünken durch einen neuen (willfährigen) Treuhänder zu ersetzen. Gerade dies macht aber deutlich, dass es sich bei den "Gesamtrechten" des Verpflichteten in seiner Eigenschaft als Treugeber, Protektor und Begünstigter nicht um vermögenswerte Rechte handelt: Um "vermögenswert" zu sein, müssten gerade diese Rechte (also die Rechte des Verpflichteten als Treugeber, Protektor und Begünstigter) dem Gläubiger den Zugriff auf das Treugut ermöglichen, ohne dass erst noch die Treuhänderin durch einen dem Gläubiger wohlgesonnenen Treuhänder ausgetauscht werden muss. "Vermögenswert" wären die betroffenen Rechte m.a.W. nur, wenn gerade diese Rechte (also die Rechte des Verpflichteten als Treugeber, Protektor und Begünstigter) dem Gläubiger den Zugriff auf das Treugut auch dann ermöglichen würden, wenn der Treuhänder ihm nicht wohlgesonnen wäre. Dies ist aber gerade nicht der Fall. Gerade deshalb möchte der Gläubiger die CTX TREUHAND AG ja durch die ihm wohlgesonnenen Rechtsanwälte Mag. Raphael Näscher und Mag. Rudolf Schächle ersetzen.[3]

---

[3] Bei Herrn RA Näscher handelt es sich um den Ehemann von Frau Mag. Christine Reiff-Näscher, welche wiederum Mitarbeiterin der Advocatur Seeger, Frick & Partner AG, sprich der Rechtsvertreterin des Gläubigers, ist, worauf der Verpflichtete bereits in seinen Äusserungen, ON 88 und 97, zum Verwertungsantrag, ON 97, hingewiesen hatte, worauf das Erstgericht im an-

‒ 12 ‒

17   Durch die Möglichkeit, einen ihm wohlgesonnenen Treuhänder einzusetzen, wird dem Gläubiger vielleicht **faktisch** der Zugriff auf das Treugut ermöglicht. An der **Rechts**position ändert dies jedoch nichts. Dass ein bestimmter Treuhänder einem bestimmten Ermessensbegünstigten gegenüber möglicherweise wohlwollender ist als ein anderer Treuhänder, begründet noch lange kein <u>Recht</u> des Ermessensbegünstigten und es macht aus einem Ermessenstrust auch keinen Trust mit Begünstigungsberechtigten. **Allein die <u>Rechts</u>position (und nicht die faktischen Gegebenheiten) ist aber für die Frage entscheidend, ob von vermögenswerten <u>Rechten</u> die Rede sein kann.**

18   All dies verkennt das Erstgericht, wenn es im angefochtenen Beschluss ausführt, dass die "*Ausübung der genannten Einzelrechte*" geeignet sei, verwertbares Vermögen zu realisieren, indem der Gläubiger "*erstens anstelle des Verpflichteten gegenüber dem Alpha Trust die Abberufung der bisherigen Treuhänderin des Alpha Trusts (CTX) und die Einsetzung einer von der betreibenden Partei bestimmten Person als Trustee des Alpha Trusts begehren, zweitens sodann vom (von der betreibenden Partei bestimmten) Trustee des Alpha Trusts eine Ausschüttung – jene des geschuldeten Betrages – an die verpflichtete Partei an eine von der betreibenden Partei zu bestimmende Zahlstelle begehren und drittens anstelle des Verpflichteten (in dessen Position als Protektor und Begünstigter) dieser Ausschüttung und ihrer Durchführung zustimmen*" könne (ON 109, Erw. 9.3).

19   <u>**Was das Erstgericht vergisst ist die Tatsache, dass es in jedem Fall zusätzlich zu den genannten Schritten auch noch eines entsprechenden Ausschüttungsbeschlusses des Treuhänders bedarf. Und gerade darauf hat der Verpflichtete – und in der Folge auch der Gläubiger – eben gerade keinen Rechtsanspruch. Gerade deshalb muss ja die derzeitige**</u>

gefochtenen Beschluss jedoch mit keiner Silbe einging, weshalb insofern auch ein **<u>Begründungsmangel</u>** vorliegt.

**Treuhänderin erst durch einen willfährigen Treuhänder ersetzt werden.**

20    Nicht nachvollziehbar ist es nach dem Gesagten denn auch, wenn das Erstgericht meint, dass "*auch die Ausübung der Rechte aus dem Letter of Wishes (Bestellung der betreibenden Partei als Begünstigte, Begehren und Genehmigung der Ausschüttung an diese) verwertbar*" sei und "*der betreibenden Partei den Zugriff auf ein verwertbares Vermögen*" ermögliche (ON 109, Erw. 9.3). Wäre dem so, so wäre der Umweg über die vorgängige Umbestellung der Treuhänderin gerade nicht notwendig. Es würde dann genügen, den Gläubiger zur Ausübung der (vermeintlichen) Rechte des Verpflichteten aus dem *Letter of Wishes* zu ermächtigen. Indes scheinen sowohl das Erstgericht als auch der Gläubiger davon auszugehen, dass dies eben gerade nicht genügt.

21    Der Fürstliche Oberste Gerichtshof erwog in seinem Beschluss, ON 72, dass die dem Stifter gegenüber einer Privatstiftung zustehenden Gesamtrechte dann der Exekution unterlägen, wenn er sich das Recht auf Widerruf vorbehalten habe und Letztbegünstigter sei oder sich ein Änderungsrecht vorbehalten habe (ON 72, Erw. 7.5.1). Auch der österreichische Oberste Gerichtshof erwog, dass die "*dem Stifter einer Privatstiftung zustehenden Gesamtrechte […] ungeachtet der Bestimmung des § 3 Abs 3 PSG der Exekution nach §§ 331 ff EO*" unterlägen, "*wenn er sich das Recht auf Widerruf vorbehielt und nach der Stiftungserklärung oder nach § 36 Abs 4 PSG zumindest zum Teil Letztbegünstigter ist, und/oder sich ein Änderungsrecht vorbehielt*".[4]

22    Im Umkehrschluss bedeutet dies, dass die Gesamtrechte des Stifters dann nicht der Exekution unterliegen, wenn er sich kein Widerrufsrecht oder Änderungsrecht vorbehalten hat. Es ist kein Grund ersichtlich, weshalb dies nicht

---

[4] RS0120752.

- 14 -

auch mit Bezug auf Trusts gelten soll. Der Verpflichtete hat sich gegenständlich gerade kein Widerrufs- oder Änderungsrecht vorbehalten. Folglich sind seine "Gesamtrechte", folgt man dem österreichischen Obersten Gerichtshof, auch nicht verwertbar.

23   Zusammengefasst gilt es somit zu konstatieren, dass es dem gegenständlichen Exekutionsobjekt, nämlich den "Gesamtrechten" des Verpflichteten in seiner Eigenschaft als Treugeber, Protektor und Begünstigter des ALPHA TRUST gegenüber der CTX TREUHAND AG als Treuhänderin des ALPHA TRUST, an der Verwertbarkeit mangelt. Sie vermitteln keinen Zugriff auf verwertbares Vermögen, weil das Entscheidungsrecht darüber, ob an den Verpflichteten (bzw. an den Gläubiger) ausgeschüttet werden soll, letztlich - wie man es auch dreht und wendet - immer bei der Treuhänderin verbleibt. Und deren Rechte können nicht Gegenstand des angefochtenen Beschlusses sein.

24   Der Verpflichtete brachte all dies bereits in seinen Äusserungen, ON 88 und 97, zum Verwertungsantrag, ON 34, vor. Das Erstgericht befasste sich mit diesem Vorbringen im angefochtenen Beschluss nicht, weil es der Meinung war, dass die "*Einwendungen der verpflichteten Partei und der Drittschuldnerin* […] *über weite Strecken das in den Rechtsmittelschriften im 'Pfändungsverfahren' Vorgebrachte*" wiederholten, "*was im gegenständlichen Verwertungsverfahren nicht mehr relevant*" sei. Ausserdem hätten der Oberste Gerichtshof und der Staatsgerichtshof dazu "*bereits viel und abschliessend ausgeführt und rechtskräftig entschieden*" (ON 109, Erw. 9.4).

25   Tatsächlich hielt der Fürstliche Oberste Gerichtshof im Pfändungsverfahren in seinem Beschluss ON 72 jedoch fest, dass die Frage der Verwertbarkeit für die Zwecke des Pfändungsverfahrens letztlich offen gelassen werde könne, da dies "*einer allfälligen Verwertung der Gesamtrechte des*

*Verpflichteten*" vorbehalten sei (ON 72, Erw. 7.4.3.). Konkret erwog der Fürstliche Oberste Gerichtshof, dass "*die Pfändung der Gesamtrechte des Stifters noch nicht automatisch die Zulässigkeit der Verwertung durch Ermächtigung des betreibenden Gläubigers, alle Einzelrechte des Stifters auszuüben*", bedeute (ON 72, Erw. 7.6.2.). "*Dass auf Gesamtrechte Exekution nach §§ 242 EO geführt werden kann, sagt daher nichts darüber aus, ob in der Folge im konkret zu beurteilenden Fall die gepfändeten Gesamtrechte einen Vermögenswert haben*", so der Fürstliche Oberste Gerichtshof weiter (ON 72, Erw. 7.6.2.). Die Rechtsprechung beurteile "*die Behauptung der möglichen Vermögenshaltigkeit des zu pfändenden Rechts im Pfändungsstadium grosszügig*"; daher sei, "*sollte sich eine fehlende Verwertbarkeit im Verwertungsstadium herausstellen, der einzelne Verwertungsantrag – nicht aber schon der Pfändungsantrag hinsichtlich des Gesamtrechts – abzuweisen*" (ON 72, Erw. 7.6.2.). M.a.W. soll sich die Frage der Verwertbarkeit der in Exekution zu ziehenden Rechte nach Ansicht des Fürstlichen Obersten Gerichtshof erst im Verwertungsstadium, und nicht bereits im Pfändungsstadium stellen.[5]

26   Wenn das Erstgericht nun im angefochtenen Beschluss eine Auseinandersetzung mit den fraglichen Argumenten mit der Begründung verweigert, dass diese Argumente bereits im Pfändungsverfahren rechtskräftig abgehandelt worden seien, verletzt dies den Verpflichteten nicht nur in seinem Anspruch auf rechtliches Gehör, sondern es läuft im Ergebnis auf eine Rechtsverweigerung hinaus. Denn damit verhindert das Erstgericht, dass der Verpflichtete die Frage, ob die infrage stehenden "Gesamtrechte" ein vermögenswertes und verwertbares Recht darstellen, überhaupt vor Gericht geklärt erhält: Zunächst wird die Klärung der Frage im Pfän-

---

[5] So auch *Oberhammer* in *Angst/Oberhammer*, EO[3] § 42 EO (Stand 01.07.2015, rdb.at) Rz. 10 mit Verweis auf 3 Ob 225/07: "*Keine 'Bindungswirkung' der Pfändung eines von vornherein unpfändbaren Rechts für die Entscheidung über den Verwertungsantrag*".

dungsverfahren abgelehnt, weil sie sich dort noch nicht
stelle, und dann wird sie im Rahmen des Verwertungsverfah-
rens nicht beantwortet, weil sie angeblich bereits im
Pfändungsverfahren geklärt worden sei.

27   Somit haftet dem erstinstanzlichen Verfahren auch ein **Ver-
fahrensmangel** an, was hiermit geltend gemacht wird. Zur
Relevanz dieses Verfahrensmangels kann auf die obigen Aus-
führungen verwiesen werden. Hätte sich das Erstgericht mit
dem Vorbringen des Verpflichteten auseinandergesetzt, so
hätte es erkannt, dass es den infrage stehenden "Gesamt-
rechten" des Verpflichteten in seiner Eigenschaft als
Treugeber, Protektor und Begünstiger des ALPHA TRUST an
der Vermögenshaltigkeit bzw. Verwertbarkeit mangelt, und
es hätte den Verwertungsantrag, ON 34, folglich abweisen
müssen.

28   Richtig besehen liegt jedoch nicht nur ein Verfahrensman-
gel, sondern gar **Nichtigkeit** des gesamten gegenständlichen
Verfahrens wegen mangelnder inländischer Gerichtsbarkeit
vor:

29   Die liechtensteinischen Gerichte könnten ihre Zuständig-
keit für das gegenständliche Verfahren einzig aus § 50 JN
ableiten. Anderweitige Zuständigkeiten sind nicht ersicht-
lich. Nach der genannten Bestimmung kann gegen Personen,
welche im Inland keinen Wohnsitz haben, wegen vermögens-
rechtlicher Ansprüche in Liechtenstein Klage angebracht
werden, wenn sich Vermögen dieser Personen oder der mit
der Klage in Anspruch genommene Gegenstand selbst im In-
land befindet. Bei Forderungen gilt der Wohnsitz des
Drittschuldners als der Ort, an welchem sich das Vermögen
befindet.

30   Als solches, einen Vermögensgerichtsstand begründendes
Vermögen kommen vorliegend einzig die (vermeintlichen)
"Gesamtrechte" des Verpflichteten gegenüber dem ALPHA
TRUST in Betracht. Indes sind diese "Gesamtrechte" gerade

nicht geeignet, einen Vermögensgerichtsstand zu begründen. Denn als "Vermögen" i.S.v. § 50 JN gilt nur exekutiv verwertbares vermögen.[6] Wie eingehend gezeigt, mangelt es den gegenständlichen "Gesamtrechten" jedoch gerade an der exekutiven Verwertbarkeit.

3.   Unzulässiger Haftungsdurchgriff

31   Abgesehen davon erweist sich der angefochtene Beschluss als rechtswidrig, weil damit im Ergebnis kurzerhand im Rahmen eines Exekutionsverfahrens, quasi *en passant*, ein Haftungsdurchgriff auf einen unbeteiligten Dritten (den ALPHA TRUST) erklärt wurde, ohne dass dieser Dritte jemals die Gelegenheit gehabt hätte, sich in einem ordentlichen Zivilverfahren gegen den Durchgriff zur Wehr zu setzen, ohne dass also jemals ein Gericht mit voller Kognition in einem kontradiktorischen Verfahren die sich in diesem Zusammenhang stellenden komplexen Fragen beurteilt hätte.

32   Das Erstgericht führt im angefochtenen Beschluss aus:

> *"Wie der Oberste Gerichtshof auch bereits ausgeführt hat, würde selbst eine tatsächliche Ermessensbegünstigung der Verwertung der gepfändeten Rechte nicht entgegenstehen (ON 72, Erw. 7.4.3., vgl. auch Erw. 7.6.4.). Die betreibende Partei weist zu Recht auch darauf hin, **dass – selbst wenn man die Verwaltung formal anhand einer Ermessensausübung gestalten wollte – dies nichts daran ändern würde, dass aus dem Trustvermögen die titulierte Forderung der betreibenden Partei zu befriedigen sei.**"* (ON 109, Erw. 9.4; Hervorhebung hinzugefügt)

33   M.a.W.: Der ALPHA TRUST soll für die Schulden des Verpflichteten haften. Weshalb dies so sein soll, sagt das Erstgericht zwar nicht. Klar ist aber, dass es sich dabei nach liechtensteinischer Diktion um nichts anderes als einen Haftungsdurchgriff handelt.

---

[6] *Simotta* in *Fasching/Konecny*[3] § 99 JN (Stand 30.11.2013, rdb.at) Rz. 20 ff., insb. Rz. 26.

- 18 -

34    Der Staatsgerichtshof erwog in einem Urteil vom 3. Juli
2017, dass ein Durchgriff immer "*erst das materielle Er-
gebnis eines formgerecht durchgeführten Gerichtsverfahrens
sein*" kann.[7] Bereits zuvor hatte der Staatsgerichtshof un-
ter Verweis auf frühere Rechtsprechung des Fürstlichen
Obersten Gerichtshofes festgehalten, dass es sich beim
Haftungsdurchgriff um eine *ultima ratio* handle, welche nur
mit grosser Zurückhaltung Verwendung finden dürfe, wobei
der Missbrauch als Durchgriffsvoraussetzung nur in einem
gerichtlichen Verfahren, in welchem die betroffene juris-
tische Person Parteistellung hat, festgestellt werden
dürfe.[8]

35    Davon kann gegenständlich keine Rede sein. Vielmehr wurde
mit dem angefochtenen Beschluss im Ergebnis kurzerhand ein
Haftungsdurchgriff auf den ALPHA TRUST beschlossen, ohne
dass die Durchgriffsvoraussetzungen jemals in einem ge-
richtlichen Verfahren, in welchem der ALPHA TRUST Partei-
stellung hatte, geprüft worden wären. Der vom Haftungs-
durchgriff betroffene Dritte, nämlich der ALPHA TRUST,
hatte zu keinem Zeitpunkt die Gelegenheit, sich in einem
ordentlichen Zivilverfahren gegen den Durchgriff zur Wehr
zu setzen. Er wurde einfach vor vollendete Tatsachen ge-
stellt. Dies ist im Lichte der soeben zitierten Rechtspre-
chung des Staatsgerichtshofes und des Fürstlichen Obersten
Gerichtshofes unzulässig.

36    Will der Gläubiger den ALPHA TRUST für die Schulden des
Verpflichteten haftbar machen, so kommt der Gläubiger nach
dem Gesagten nicht umhin, zunächst den ALPHA TRUST zu
klagen. Sollte das Ergebnis dieses Verfahrens sein, dass
der ALPHA TRUST für die Schulden des Verpflichteten zu
haften hat (z.B. aufgrund eines Haftungsdurchgriffs oder
als Ergebnis einer Gläubigeranfechtung nach RSO), so kann

---

[7] StGH vom 3. Juli 2017, StGH 2017/48, LES 2018, 2, Erw. 2.3.
[8] StGH vom 18. September 2007, GE 2009, 306, Erw. 5.1, mit Verweis auf OGH
vom 12. Januar 2006, LES 2006, 388, Erw. 9.2.

der Gläubiger im Anschluss gestützt auf dieses Urteil dann
Exekution gegen den ALPHA TRUST führen und sich so aus dem
Treugut des ALPHA TRUST bezahlt machen.

37   Sowohl der Haftungsdurchgriff als auch die Gläubigeran-
fechtung sind im liechtensteinischen Recht an strenge Vo-
raussetzungen geknüpft, welche nur in einem ordentlichen
Zivilprozess geprüft werden können. Ein Exekutionsverfah-
ren ist nicht der richtige Schauplatz dafür. Es geht nicht
an, die gesetzlichen Regeln über den Haftungsdurchgriff
und die Gläubigeranfechtung einfach kurzerhand im Wege ei-
nes Exekutionsverfahrens, welches nicht einmal gegen den
vom Durchgriff bzw. der Anfechtung Betroffenen geführt
wird, quasi im Vorbeigehen beiseite zu schieben.

4.   Unverhältnismässigkeit

38   Wie für jedes staatliche Handeln gilt auch für Eingriffe
in die Rechtsposition des Schuldners im Rahmen eines Exe-
kutionsverfahrens das verfassungsmässige Verhältnismässig-
keitsprinzip. Dieses fordert, dass Massnahmen wie die Exe-
kution gegen Rechte von Privatpersonen unter möglichster
Schonung der Rechte und Freiheiten jener Privatpersonen
getroffen werden. Die staatlichen Massnahmen müssen dem-
nach geeignet sein, um das im öffentlichen Interesse ange-
strebte Ziel zu erreichen (Eignung). Die Freiheitsbe-
schränkung darf nicht weiter gehen, als es das öffentliche
Interesse erfordert (Erforderlichkeit). Ausserdem muss der
angestrebte Zweck in einem vernünftigen Verhältnis zu den
Belastungen stehen, die den Privaten auferlegt werden (Zu-
mutbarkeit).

39   Mit dem angefochtenen Beschluss wurde der Gläubiger er-
mächtigt, sämtliche dem Verpflichteten als Treugeber, Pro-
tektor und Begünstigter des ALPHA TRUST zustehenden Rechte
auszuüben. Insb. wurde der Gläubiger ermächtigt, die der-
zeitige Treuhänderin durch einen dem Gläubiger genehmen

- 20 -

Treuhänder zu ersetzen oder sogar sich selber als Treuhän-
der des ALPHA TRUST einzusetzen und ausserdem sich selber
auch noch als Begünstigten einzusetzen (bzw. einsetzen zu
lassen).

40      Damit wurde der Gläubiger im Ergebnis in die Lage ver-
setzt, den ALPHA TRUST vollständig zu kontrollieren und
mit diesem zu verfahren, wie es ihm beliebt. Der Gläubiger
könnte sich theoretisch das gesamte Treugut (und nicht nur
im Umfang seiner gegenständlichen Forderung) an sich sel-
ber ausschütten, und er würde sich dadurch nicht einmal
strafbar oder haftbar machen, wenn er sich zuvor nur sel-
ber als Begünstigter einsetzt (bzw. von den von ihm er-
nannten Treuhändern einsetzen lässt). Es handelte sich
dann schlicht um eine Ausschüttung an einen Ermessensbe-
günstigten.

41      Dies gestand selbst der Gläubiger in seinem Verwertungsan-
trag, ON 34, ein, als er ausführte:

> "[N]ach vollständiger Befriedigung der betreibenden Partei
> können die bisher handelnden Personen ohnehin wieder ent-
> sprechend agieren, und sie könnten – **würde die betreibende
> Partei trotz vollständiger Befriedigung seine im Wege der
> exekutiven Ermächtigung übertragenen Rechte nicht aufgeben** –
> die betreibende Partei in diesem Fall ohnehin unverzüglich
> abberufen." (ON 34, S. 9; Hervorhebung hinzugefügt)

42      Wenig überzeugend ist freilich das Argument, die "bisher
handelnden Personen" könnten den Gläubiger nach getaner
Arbeit "unverzüglich abberufen". Für die bisher handelnde
Treuhänderin, sprich die CTX TREUHAND AG, trifft dies je-
denfalls nicht zu, wenn diese nun vom Gläubiger abberufen
wird. Sie wird nicht automatisch wieder zur Treuhänderin,
nur weil der Gläubiger seine Forderung bezahlt erhält.
Vielmehr hinge es allein vom Goodwill des Gläubigers ab,
ob er die CTX TREUHAND AG nach getaner Arbeit wieder zur
Treuhänderin bestellt oder nicht. Auch könnte der Gläubi-
ger in der Zwischenzeit den ALPHA TRUST nach seinen Vor-

21

stellungen umgestalten. Er könnte insb. weitere Ausschüttungen tätigen, Begünstigte austauschen, die Trusturkunde abändern, etc.

43    Es ist offensichtlich, dass dies völlig unhaltbar und dem ALPHA TRUST bzw. den Trustbeteiligten nicht zumutbar ist. Der österreichische Oberste Gerichtshof hielt dazu in seiner bereits zitierten Entscheidung vom 14. Juli 2011 fest, einer exekutionsfreundlichen Argumentation könne "*die Gegenprognose entgegengestellt werden*", dass "*ein vom ermächtigten betreibenden Gläubiger bestellter Beirat unter Missachtung des Stiftungszwecks tätig sein und übermässige Zuwendungen an den Begünstigten* [d.h. den Gläubiger] *vornehmen werde*". Es habe deshalb einiges für sich, dass "*Stifterrechte auf Abberufung und Bestellung von Vorstandsmitgliedern als nicht exekutionsfähig*" gelten.[9]

44    Tatsächlich wäre nur bei einer Beibehaltung der aktuellen Treuhänderin gewährleistet, dass einzig die vom Gläubiger begehrte Ausschüttung vorgenommen und ansonsten in das Fortbestehen und das Wesen des ALPHA TRUST nicht eingegriffen würde.

45    Freilich wird der Gläubiger dem entgegenhalten, dass bei einer Beibehaltung der aktuellen Treuhänderin nicht gewährleistet wäre, dass er die von ihm begehrte Zahlung erhält. Dies zeigt aber richtig besehen nur einmal mehr, dass es sich bei den gegenständlichen "Gesamtrechten" des Verpflichteten in seiner Eigenschaft als Treugeber, Protektor und Begünstigter des ALPHA TRUST eben nicht um vermögenswerte Rechte handelt, da sie eben keinen Zugriff auf verwertbares Vermögen vermitteln. Hier schliesst sich also sozusagen der Kreis.

---

[9] öOGH vom 14. Juli 2011, 3 Ob 177/10s, S. 14.

- 22 -

**B   Anträge**

Im Sinne der obigen Ausführungen stellt der Rekurswerber daher folgende

## ANTRÄGE :

Das Fürstliche Obergericht wolle dem vorliegenden Rekurs gegen den Beschluss des Fürstlichen Landgerichts vom 2. März 2020, ON 109, Folge geben und:

1.   den bekämpften Beschluss, ON 109, wegen Nichtigkeit mangels inländischer Gerichtsbarkeit aufheben und das gesamte Verfahren mangels inländischer Gerichtsbarkeit für nichtig erklären;

*in eventu:*

2.   den bekämpften Beschluss, ON 109, dahingehend abändern, dass der Antrag des Rekursgegners vom 24. Juli 2017, ON 34, vollumfänglich abgewiesen wird;

*in subeventu:*

3.   den bekämpften Beschluss, ON 109, aufheben und die Rechtssache unter Bindung an die Rechtsansicht des Fürstlichen Obergerichts an das Fürstliche Landgericht zur neuerlichen Verhandlung und Entscheidung zurückverweisen;

sowie jedenfalls:

4.   den Rekursgegner zum Ersatz der unten verzeichneten Kosten des vorliegenden Rekursverfahrens binnen vier Wochen zuhanden der ausgewiesenen Rechtsvertreterin des Rekurswerbers bei sonstiger Exekution verpflichten.

- 23 -

Weiters stellt der Rekurswerber einen

## ANTRAG AUF HEMMENDE WIRKUNG

und führt dazu im Einzelnen aus, was folgt:

46    Zwar sieht Art. 24 lit. g EO vor, dass im Falle eines Re-
kurses gegen den die Exekution bewilligenden Beschluss die
Exekution aufgeschoben (gehemmt) werden kann, und kann ei-
nem solchen Rekurs aufgrund der bloss subsidiären Geltung
der Bestimmungen der ZPO im Exekutionsverfahren deshalb
nicht die hemmende Wirkung nach Art. 51 EO i.V.m. § 492
Abs. 2 ZPO zuerkannt werden, wenn die Voraussetzungen für
eine Aufschiebung nach Art. 24 lit. g EO nicht gegeben
sind.[10] Indes gelangt Art. 24 lit. g EO nur auf Rekurse
gegen die Exekutionsbwilligung, sprich den Beschluss, mit
welchem die Exekution eingeleitet wird, zur Anwendung,
nicht auch auf andere Beschlüsse, die im Exekutionsverfah-
ren ergehen.[11] Da die Exekutionsordnung somit für Rekurse
gegen derartige andere Beschlüsse keine entsprechende Re-
gelung enthält, steht einer subsidiären Anwendung des
§ 492 Abs. 2 ZPO im Exekutionsverfahren auf andere Rekurse
als solche gegen die Exekutionsbewilligung nichts im
Weg.[12]

47    Gemäss Art. 51 EO i.V.m. § 492 Abs. 2 ZPO hat das Gericht,
gegen dessen Beschluss Rekurs ergriffen wurde, auf Antrag
die einstweilige Hemmung der Vollstreckbarkeit zu verfü-
gen, wenn der Gegenpartei aus der Hemmung kein unverhält-
nismässiger Nachteil erwächst und ohne solche Hemmung der
Zweck des Rekurses vereitelt würde. § 492 Abs. 2 ZPO ver-
langt nach einer Interessenabwägung, das heisst einer Ge-

---

[10] *Jakusch* in *Angst/Oberhammer*, EO³ § 42 EO (Stand 01.07.2015, rdb.at)
Rz. 3.
[11] *Jakusch* in *Angst/Oberhammer*, EO³ § 42 EO (Stand 01.07.2015, rdb.at)
Rz. 52.
[12] *Jakusch* in *Angst/Oberhammer*, EO³ § 42 EO (Stand 01.07.2015, rdb.at)
Rz. 3.

- 24 -

genüberstellung der Zumutbarkeit der Hemmung und der mit
ihr verbundenen Nachteile für die Gegenpartei einerseits
und der Erfolgsaussichten des Rekurses und der durch die
Ausführung des Beschlusses eintretenden objektiven Nach-
teile andererseits.[13]

48   Mit dem gegenständlichen Rekurs wehrt sich der Rekurswer-
ber gegen einen Beschluss des Fürstlichen Landgerichts,
mit welchem die Verwertung der "Gesamtrechte" bewilligt
wurde, welche dem Rekurswerber in seiner Eigenschaft als
Treugeber, Protektor und Begünstigter des ALPHA TRUST ge-
genüber der CTX TREUHAND AG als Treuhänderin des ALPHA
TRUST zustehen. Gleichzeitig wurde der Rekursgegner durch
den angefochtenen Beschluss ermächtigt, diese "Gesamt-
rechte" anstelle des Rekurswerbers auszuüben und insb. die
derzeitige Treuhänderin durch einen dem Rekursgegner ge-
nehmen Treuhänder zu ersetzen oder sogar sich selber als
Treuhänder einzusetzen und ausserdem sich selber auch noch
als Begünstigten des ALPHATRUST einzusetzen (bzw. einset-
zen zu lassen).

49   Damit räumt der angefochtene Beschluss dem Rekursgegner
weit mehr als nur die Möglichkeit ein, die von ihm be-
gehrte Zahlung erhältlich zu machen. Sie räumt dem Rekurs-
gegner die Möglichkeit ein, die vollständige Kontrolle
über den ALPHA TRUST zu übernehmen und diesen nach eigenem
Gutdünken umzugestalten, wobei der Rekursgegner auch sol-
che Umgestaltungen vornehmen könnte, welche im Nachhinein
nicht mehr leicht rückgängig gemacht werden könnten. Tat-
sächlich erlaubt es der angefochtene Beschluss dem Rekurs-
gegner, sich selber sowohl als Treuhänder als auch als Be-
günstigten des ALPHA TRUST einzusetzen und sich in der
Folge das gesamte Treugut (und nicht nur Treugut in Höhe
der gegenständlichen Forderung) auszubezahlen, wobei sich
der Rekursgegner dadurch nicht einmal strafbar oder haft-

---

[13] *Kodek* in *Rechberger*, Zivilprozessordnung[4], Art. 524 Rz. 2.

bar machen würde, weil er dann ja Begünstigter wäre. Tat-
sächlich wurde die CTX TREUHAND AG bereits von den Herren
RA Näscher und Schächle kontaktiert und zur Übergabe
sämtlicher Vermögenswerte des ALPHA TRUST aufgefordert,
weil sie vom Rekursgegner als neue Treuhänder des ALPHA
TRUST bestellt worden seien. Der Rekursgegner ist also be-
reits dabei, Umgestaltungen vorzunehmen. Solche Umgestal-
tungen könnten nicht mehr rückgängig gemacht werden, wenn
der angefochtene Beschluss in der Folge von den Rechtsmit-
telinstanzen aufgehoben würde. Damit ist evident, dass
ohne Gewährung der hemmenden Wirkung der Zweck des gegen-
ständlichen Rekurses vereitelt würde.

Beweis:    -   Schreiben der Kanzlei Wohlwend Näscher Schächle an
               Wilhelm & Büchel Rechtsanwälte vom 10. März 2020 (in
               Kopie)

50   Doch selbst wenn es der Rekursgegner dabei belassen würde,
sich einen Betrag in Höhe der gegenständlichen Forderung
aus dem Treugut auszubezahlen, läge ein nicht wiedergutzu-
machender Nachteil vor. Der Rekursgegner ist nach eigenen
Angaben in Moskau wohnhaft. Es ist davon auszugehen, dass
er das Geld nach Russland oder sonst ins Ausland überwei-
sen würde, sodass davon auszugehen ist, dass die Rechts-
verfolgung zur Wiedererlangung des abdisponierten Geldes
im Falle der Aufhebung des angefochtenen Beschlusses durch
die Rechtsmittelinstanzen mit erheblichen Schwierigkeiten
verbunden wäre.[14]

51   Das Fürstliche Landgericht führte in seinem Beschluss,
ON 15, zum Antrag des nunmehrigen Rekurswerbers, die Exe-
kution für die Dauer des Rekursverfahrens gegen die Exeku-
tionsbewilligung, ON 3, aufzuschieben, aus, dass dieser
Antrag schon deshalb abzuweisen sei, weil dem nunmehrigen
Rekurswerber keine Gefahr eines unersetzlichen oder nur

---

[14]  *Jakusch* in *Angst/Oberhammer*, EO[3] § 44 EO (Stand 01.07.2015, rdb.at)
Rz. 6.

28

schwer zu ersetzenden Vermögensnachteils drohe. Es hielt fest:

> "*Wie die betreibende Partei zu Recht ausführt, droht bei der Rechteexekution nach Art. 242 ff. EO die Gefahr eines unersetzlichen oder nur schwer zu ersetzenden Vermögensnachteils frühestens dann, wenn die Verwertung der gepfändeten Rechte (durch Verkauf) bewilligt wurde oder wenn eine Entscheidung über den Verwertungsantrag unmittelbar bevorsteht. Vorliegend wurde die Verwertung der gepfändeten Rechte noch nicht bewilligt, die betreibende Partei hat noch nicht einmal einen konkreten Verwertungsantrag gestellt. Die von der verpflichteten Partei befürchtete Gefahr droht daher jetzt (noch) gar nicht. Die betreibende Partei darf derzeit – entgegen den Befürchtungen der verpflichteten Partei – noch gar keine Rechte ausüben. Derzeit sind diese Rechte nur gepfändet und können daher – entgegen dem weiteren Vorbringen der verpflichteten Partei – derzeit gar keine Vermögenswerte an die betreibende Partei und ins Ausland abfliessen.*"

52   Diese Situation hat sich durch den angefochtenen Beschluss nun grundlegend geändert. Mittlerweile liegt nicht nur ein Verwertungsantrag, sondern sogar ein Verwertungsbeschluss vor. Der Vermögensnachteil, der durch die (allenfalls rechtswidrige, weil im Falle der Aufhebung des Verwertungsbeschlusses rechtsgrundlose) Ausübung der "Gesamtrechte" durch den Rekursgegner bzw. von diesem zu bestellende und ihm hörige Treuhänder droht, ist offenkundig.

53   Damit ist evident, dass ohne Gewährung der hemmenden Wirkung der Zweck des gegenständlichen Rekurses vereitelt würde.

54   In Bezug auf die Erfolgsaussichten des gegenständlichen Rekurses kann auf die obigen Rechtsmittelausführungen verwiesen werden. Die Erfolgsaussichten können als durchaus intakt bezeichnet werden. Der angefochtene Beschluss erweist sich aus mehrerlei Gründen als rechtswidrig. Tatsächlich liegt gar Nichtigkeit des gesamten Verfahrens mangels inländischer Gerichtsbarkeit vor.

27

55    Auch die letzte in § 492 Abs. 2 ZPO statuierte Vorausset-
      zung für die Gewährung der hemmenden Wirkung ist vorlie-
      gend gegeben. Es ist nämlich nicht ersichtlich, inwiefern
      der Gegenpartei, sprich dem Rekursgegner, aus der Gewäh-
      rung der hemmenden Wirkung ein unverhältnismässiger Nach-
      teil erwachsen könnte. Schliesslich bleiben die gegen-
      ständlichen "Gesamtrechte" auch im Falle der Gewährung der
      hemmenden Wirkung gepfändet. Der Rekursgegner müsste le-
      diglich eine gewisse zeitliche Verzögerung hinnehmen, wo-
      bei seine Forderung mit einem Zins von 5 % p.A. pfand-
      rechtlich und in der Rangordnung vor jedem später hinzu-
      kommenden Gläubiger vorrangig gesichert ist. Dahingegen
      entstünde dem Rekurswerber und dem ALPHA TRUST ein unver-
      hältnismässiger Nachteil, wenn die hemmende Wirkung nicht
      gewährt würde.


Dementsprechend stellt der Rekurswerber den

### ANTRAG,

das Fürstliche Landgericht wolle dem Rekurs gegen den Be-
schluss des Fürstlichen Landgerichts vom 2. März 2020, ON 109,
die einstweilige Hemmung zuerkennen.


Vaduz, 23. März 2020
MBL/NBI


Kosten werden verzeichnet:
(Streitwert: CHF 91'605'445.97)

| | | |
|---|---|---:|
| Rekurs, TP 3B, 40% ES, 10% StGZ | CHF | 83'160.00 |
| Eingabengebühr | CHF | 170.00 |
| Entscheidungsgebühr | CHF | 8'500.00 |
| **CHF** | | **91'830.00** |


Beilage:

-   Schreiben der Kanzlei Wohlwend Näscher Schächle an Wilhelm & Büchel
    Rechtsanwälte vom 10. März 2020 (in Kopie)